IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., ALLMERICA FINANCIAL CORP., JOHN F. O'BRIEN, EDWARD J. PARRY, III, RICHARD M. REILLY and JAMES E. BELLNER.<br><br>Defendants. | § § § § § § § § § § § § § § § § § | **04-40077**<br><br>Civil Action No. _____<br><br>RECEIPT # 704322<br>AMOUNT $ 150.00<br>SUMMONS ISSUED 7<br>LOCAL RULE 4.1 ✓<br>WAIVER FORM ✓<br>MCF ISSUED ✓<br>BY DPTY. CLK. KH<br>DATE 5-18-04 |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Donald P. Speakman ("Speakman"), Stephen H. Wedel ("Wedel")and Mark L. Robare ("Robare") make the following allegations upon information and belief, except as to allegations specifically pertaining to Plaintiffs which are based upon personal knowledge.

### INTRODUCTION

1.      This lawsuit involves claims arising out of the Trail Program (as described below) that Defendants initiated on January 1, 2001. Plaintiffs were three of the highest producing agents of Defendant Allmerica Financial Life Insurance & Annuity Company ("Allmerica Life"). Up until the end of 2002, Allmerica Life sold life and annuity products throughout the country, and its affiliates sold property and casualty policies. Allmerica Life and its predecessor had been in business for almost 150 years. As to the life and annuity products, the largest concentration of

**ORIGINAL CLASS ACTION COMPLAINT - Page 1**

its sales involved variable annuities, which made Allmerica Life one of the largest sellers of such products in the country. During the 1990's and early 2000's, the sale of variable annuity products was extremely competitive. As a result of the heightened competition in the life insurance and annuity market, maintenance of high ratings from agencies such as Standard & Poor's and Moody's was essential to maintain their market share. Conversely, a precipitous drop in ratings can have devastating effects on the company and its competitive position. Moreover, variable annuities are different than other products in that the owner can direct the investments of his deposits. Such features require ongoing service obligations to assure that the owners of the annuities are fully aware of their current value, and can exploit the full benefits of these products. Due to heightened competition, Allmerica Life like many others, marketed various variable annuities with a "guaranteed minimum death benefit" ("GMDB") feature that obligated the Company to pay a minimum death benefit regardless of the actual performance of the annuity's investments. So long as the annuity performed well the value of the accounts would exceed the GMDB, but if the annuity investments substantially deteriorated the Company faced enormous financial risk due to its guarantee.

2.      In connection with the sale of annuities, agents were paid a one-time commission without any ongoing or "trail" commissions. Upon the sale of such annuities Allmerica Life incurred certain expenses, such as commissions and underwriting, that under generally accepted accounting principles were treated as assets and amortized. This asset is referred to as Deferred Acquisition Costs or "DAC." So long as the variable annuities remained in force and the annuity's investments were not materially decreasing in value, Allmerica Life could amortize the DAC in a level manner. Conversely, if the variable annuities were surrendered or materially

**ORIGINAL CLASS ACTION COMPLAINT - Page 2**

decreased in value, then Allmerica Life would have to take a substantial charge or expense in the form of the amount of DAC that was no longer recoverable or subject to amortization. The Company was motivated to keep this business and to minimize surrenders.

3.    To help preserve this business, Allmerica Life instituted the Trail Program for those variable annuities sold prior to January 1, 1996 or subsequently internally replaced with a new Allmerica Life annuity. While explained in greater detail below, the Trail Program offered agents continuous commissions or "trail" commissions in exchange for such agents signing promissory notes that obligated them to repay the outstanding DAC for those annuities. The commissions paid were designed to offset the note obligation, with any excess paid to the agents. Only if there were substantial surrenders or the account values of the annuities were to plummet, would the commissions not be adequate to repay the DAC note. Implicit in the Trail Commission Program was the understanding that Allmerica Life would continue in the business of selling and servicing competitive variable annuity products.

4.    Beginning in the fall of 2002, as a result of the failure to properly hedge the DAC and GMDB exposure arising out of the downturn in the market, Allmerica Life unilaterally and unexpectedly decided to withdraw from the sale of life and annuity products. This decision was particularly surprising in light of Allmerica Life's over 150 year track record, and the long-term relationships it had established with agents such as Plaintiffs. In implementing that decision, Allmerica Life engaged in substantial layoffs of its employees and unilaterally terminated all of its agents including Plaintiffs. These decisions and acts resulted in a precipitous drop in the ratings from the rating agencies. In turn, there was a substantial increase in surrenders of variable

**ORIGINAL CLASS ACTION COMPLAINT - Page 3**

annuities. Moreover, as a result of this decision, Allmerica Life's servicing of the ever-decreasing closed book of annuity business rapidly deteriorated.

5.      Due to the above events, the assumptions inherent in the Trail Program have been irreparably undermined. Allmerica Life's unilateral decision to leave the life and annuity market and the substantial layoff of its employees has shattered the confidence of both the owners of annuities and the agents who sold these products. These events increase the likelihood of surrenders and transfers and decrease the likelihood that additional deposits will be made to the annuities. These actions have and will continue to result in reductions in the trail commissions, which in some cases have been so severe that the commissions no longer even cover the DAC Notes. Plaintiffs further believe that when Defendants approached Plaintiffs to enter into the Trail Commission Program, Defendants were aware of problems inherent in their business plan involving GMDB and DAC exposure that ultimately resulted in the cessation of the sale of life and annuity products, but that such information was not disclosed to Plaintiffs when they entered into the Trail Program. Plaintiffs seek to recover damages and other appropriate relief arising out the wrongful conduct by Defendants in connection with the Trail Program.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. Plaintiff Speakman is a resident of Pennsylvania, Plaintiff Wedel is a resident of Missouri, and Plaintiff Robare is a resident of Texas. Plaintiffs Speakman, Wedel, and Robare are referred collectively in this Complaint as "Plaintiffs." Defendant Allmerica Life is a Massachusetts domiciled insurance company with its principal place of business in Worcester, Massachusetts. Defendant First Allmerica Financial Life Insurance Company ("First Allmerica") is a Massachusetts

**ORIGINAL CLASS ACTION COMPLAINT - Page 4**

domiciled insurance company with its principal place of business in Worcester, Massachusetts. Defendant Allmerica Financial Corp. ("Allmerica Financial") is a Delaware corporation with its principal place of business in Worcester, Massachusetts. Defendants John F. O'Brien ("O'Brien"), Edward Parry III ("Parry"), Richard M. Reilly ("Reilly") and James E. Bellner ("Bellner") are residents of the Commonwealth of Massachusetts. The amount of each of Plaintiff's damages exceeds $75,000.00, exclusive of interest and costs.

8.      On information and belief, all of Defendants' business decisions and conduct that are the subject of this lawsuit occurred in Worcester, Massachusetts, which is the principal place of business of Allmerica Financial, Allmerica Life, and First Allmerica sometimes referred to collectively as the "Allmerica Companies". Accordingly, the acts and events giving rise to the violations and wrongful conduct complained of herein occurred in this District.

9.      From 1995 to October 2002, O'Brien was the president and Chief Executive Officer of Allmerica Financial.

10.     Since December 1996, Parry has been Chief Financial Officer of Allmerica Financial.

11.     Bellner was an officer of Allmerica Life and in charge of the Trail Program as identified herein.

12.     From August 1995 to December 2001, Reilly was president and Chief Executive Officer of Allmerica Life, and since December 2001, Reilly has been senior vice president of Allmerica Life and First Allmerica. In the Complaint, O'Brien, Parry, Reilly and Bellner are sometimes referred to collectively as the "Individual Defendants."

**ORIGINAL CLASS ACTION COMPLAINT - Page 5**

## FACTUAL ALLEGATIONS

### Background Facts

13.     State Mutual Assurance Co. of America, which had been in business over 150 years, demutualized in 1995 and became known as the Allmerica Companies. Until 2003, First Allmerica was the direct parent of Allmerica Life, and Allmerica Financial was the publicly-traded parent of First Allmerica. In 2003, Allmerica Life became the parent of First Allmerica with Allmerica Financial becoming the direct parent of Allmerica Life. Following the demutualization and up until 2003, Allmerica Life was primarily in the business of designing and marketing variable life insurance and annuity products, which constituted approximately 90% of its total annual premiums and deposits, and was one of the twenty largest sellers of variable annuities. Prior to 2003, Allmerica Financial generally referred to the business operations of First Allmerica and Allmerica Life as "Allmerica Financial Services," which described services involving the design and marketing of primarily variable life insurance and annuity products.

14.     Certain variable annuities designed and sold by the Allmerica Companies had, among other things, the following attributes:

   A.     The client directed the investment of money deposited into the annuity, which investments generally were separate accounts similar to mutual funds. The separate accounts were not co-mingled with Allmerica's general assets;

   B.     Over time the Allmerica Companies touted the number of investment choices and number of investment managers that were available to purchasers of variable annuities;

**ORIGINAL CLASS ACTION COMPLAINT - Page 6**

C.   Allmerica Companies promoted its use of Rogers Casey, an experienced investment consultant, to assist in the selection of the institutional managers of the funds and to monitor the performance of those managers;

D.   The value of the annuity that was held in a separate account fluctuated according to the performance of the funds selected ("Account Value");

E.   Allmerica Life contractually provided a GMDB regardless of the Account Value; and

F.   During the initial years of the annuity, (usually 9 years) surrender charges were imposed if the purchaser surrendered, partially surrendered or terminated the annuity, which partially offset any outstanding expenses incurred in marketing, selling, and underwriting the annuity as described below.

15.   The sale of variable annuities creates expenses incurred in the year of sale in the form of commissions, underwriting, and other expenses that are commonly referred to as DAC. The financial statements of the Allmerica Companies prepared in accordance with generally accepted accounting principles ("GAAP"), allowed DAC to be treated as an asset amortized over time in proportion to the variable annuity profits. Profitability is related in large part to the performance of the underlying investments, which generate fees in proportion to the size of the Account Value. Under GAAP, the Allmerica Companies annually had to determine whether or not to increase or decrease the amount of amortization of DAC based upon the then existing profitability of the variable products. The amortization of DAC in any given year effected a reduction in earnings of the Allmerica Companies. Generally, an increase in profitability resulted

**ORIGINAL CLASS ACTION COMPLAINT - Page 7**

in greater amortization (and a greater offset to earnings) while conversely a decrease in profitability resulted in less amortization (and a lesser offset to earnings), with the following exception. If Allmerica Companies determined that there was an overall impairment in profitability derived from the variable annuities, then the amount of corresponding DAC that could not be recovered had to be amortized or treated as an expense in that year, resulting in a substantial decrease in earnings. If an annuity were surrendered during its early years, the imposition of surrender charges would partially offset any outstanding DAC but the Allmerica Companies would be forced to recognize as an expense the remaining amount of unamortized DAC.

16. The retained earnings of life insurance companies, such as Allmerica Life and First Allmerica, is referred to as statutory surplus. In order to remain competitive and be able to meet their long-term commitments to policyholders, life insurance companies are required to maintain adequate surplus. The only income that Allmerica Financial, the ultimate parent of the Allmerica Companies, could receive from the operations of Allmerica Life was in the form of an upstream dividend that would reduce its statutory surplus. Moreover, variable annuity sales created a strain on or reduction in the statutory surplus of Allmerica Life during the year of sale because reserves had to be established to assure the performance of Allmerica Life's obligations such as the GMDB.

17. Until 2003, Allmerica Life sold its life and annuity products through three types of producers; (i) "agents", such as Plaintiffs and approximately 700 other individuals, who were career agents and who only sold Allmerica Life products; (ii) "select" producers who were independent broker dealers and financial advisors that sold the products of other companies;

**ORIGINAL CLASS ACTION COMPLAINT - Page 8**

and (iii) "partners" who were salesman employed by mutual funds that sold the products of many different companies. Approximately 24% of the variable products were sold by agents, 38% by "select" agents, and 38% by "partners."

18.    Historically, agents, select producers, and partners received a first-year commission in connection with the sale of variable annuities and no subsequent or "trail" commissions.

19.    Until the end of 2000, the basic understanding between agents, such as Plaintiffs and Allmerica Life was that the agents were responsible to sell Allmerica Life's variable products while Allmerica Life was responsible for properly designing the variable products and portfolios, assuring that Allmerica Life remained a financially healthy and viable company that would meet its original policy promises, obligations and representations made to the public and its producers, and providing adequate information to producers so that they could be fully apprized about the status of their clients' policies and annuities.  As to servicing, Allmerica Life prior to the end of 2003 provided agents access to all information concerning the status of their clients' variable annuities, and those agents received copies of any notices sent to clients so that when clients called the agents could respond to their inquiries. Immediate access to such information was essential to maintain their client relationships. As agents, Plaintiffs sold only Allmerica Life annuities and the Company provided office space and certain staff for these agents. This arrangement between Allmerica Life (and its predecessors) and agents, such as Plaintiffs, continued in many cases over a 20-year time frame resulting in substantial business and profits for Defendants.

**ORIGINAL CLASS ACTION COMPLAINT - Page 9**

20.    In late 2000, Allmerica Life approached Plaintiffs and other career agents concerning the variable annuities sold prior to January 1, 1996. Generally, these products had little or no remaining surrender charges but DAC was still being amortized. Due to existing competitive market conditions, Defendants were concerned their customers would surrender or otherwise take their business to other competitors in the life or mutual fund industries. If the policies were surrendered, Allmerica Life would have to realize as an expense the remaining unamortized DAC with no offsetting surrender charges. Upon information and belief, Defendants knew they had emphasized the sale of variable annuity products and were extremely vulnerable to fluctuations or losses in this business due to market downturns or other reasons. At this time, the Allmerica Companies, including Allmerica Life and First Allmerica, received high ratings from all of the Rating Agencies.

21.    For the stated purpose of retaining this business and to extend the time to amortize the remaining DAC, Defendants created and offered the "Advisor In Force Trail Program" ("Trail Program").

22.    The Trail Program provided as follows:

  A. Only certain variable annuities sold prior to January 1, 1996, and certain internal exchanges of those products were eligible for inclusion ("Eligible Annuities");

  B. Two commission options were available: (i) a flat .70% annual rate of the total Account Values of Eligible Annuities ("Fixed Commission Option"), or (ii) a variable rate that ranged from .55% to 1.0% annually of the total Account Values depending upon "persistency" and "productivity", as

**ORIGINAL CLASS ACTION COMPLAINT - Page 10**

described below ("Variable Commission Option"). Both the Fixed Commission Option and Variable Commission Option are sometimes referred to as "Trail Commissions";

C.    The "persistency" factor was based upon the following ratio: Surrenders + Withdrawals/Total Account Value.  Under the Variable Commission Option, the higher the persistency-low surrenders and withdrawals-the higher the commission rate while the lower the persistency-high surrenders and withdrawals-the lower the commission rate;

D.    The "productivity" factor considered all net first year commissions generated by the career agent. The "productivity" factor that worked in tandem with the "persistency" factor affected the overall Variable Commission Option, but not as materially as the "persistency" factor. As with "persistency," the higher the amount of "productivity" the higher the commission rate, and the lower the amount of "productivity" the lower the commission rate;

E.    If an agent left Allmerica Life, the "productivity" factor could be met by selling through the "select" producer channel described above;

F.    In order to participate in the Trail Program, participating agents had to sign an interest bearing note payable to Allmerica Life in the total amount of the unamortized DAC in connection with the Eligible Annuities ("DAC Note"); and

**ORIGINAL CLASS ACTION COMPLAINT - Page 11**

G.    The DAC Note would be satisfied by offsets taken from Trail Commissions.

23.    The Trail Program went into effect on January 1, 2001. Throughout 2001 and up until the fall of 2002, the Trail Program functioned as it was designed to do. During this period, the Allmerica Companies, including Allmerica Life and First Allmerica, continued to receive high ratings from the Rating Agencies. During this time period, Defendants continued to concentrate on variable annuity sales.

24.    Although undisclosed to Plaintiffs and similarly situated agents until the public pronouncements beginning in the Fall of 2002, the exposure of Allmerica Companies for GMDB in connection with the variable annuities was in direct relationship to the size of the Account Values. The gap between the GMDB and the amount of the Account Value is referred to as "net amount of risk." When the Account Value falls below the GMDB, the insurance company has to make adequate provisions to assure payment of the GMBD. Defendants first publicly disclosed in March 2003 that the "net amount of risk" or GMDB exposure as of December 31, 2002, was approximately **$4.6 billion**. These disclosures also revealed that the Allmerica Companies and the Individual Defendants had failed to take prudent measures, such as obtaining reinsurance for GMDB or other appropriate strategies to hedge against the GMDB risk. By not taking such actions, Defendants imperiled the financial stability and essential ratings of Allmerica Life and First Allmerica when the market began its downturn from historical highs.

25.    Concurrent with the problems arising out the failure to adequately preserve the financial stability and ratings of Allmerica Life and First Allmerica in connection with its GMDB exposure, Defendants faced an enormous acceleration of the amortization of the outstanding

**ORIGINAL CLASS ACTION COMPLAINT - Page 12**

DAC. Because DAC amortization is directly related to gross profits, a material decline of the Account Values materially reduced its income. In turn, this required a recognition in 2002 of hundreds of millions of dollars of DAC as an expense that materially reduced the earnings of the Allmerica Companies.

26.      Beginning in September 2002, Allmerica Companies made a series of startling disclosures. As a result of substantially declining income and materially increased expenses due, in part, to the need to increase reserves for GMDB (for reasons described below) and accelerated amortization of DAC (for reasons described below), the Allmerica Companies announced that they would significantly reduce the sales of their variable annuities and life insurance products. As a result of the above, during the third quarter of 2002, Allmerica Companies consolidated net losses were approximately **$300 million**. In comparison, for the comparable period in 2001 Allmerica Companies made approximately $31 million of net income.

27.      As a result of the above events, Defendants anticipated a "run on the bank" in the form of accelerated withdrawals and surrenders of variable annuities along with substantial reductions in statutory surplus as a result of the need to increase reserves (or direct contributions to surplus) to meet the ever-growing GMDB exposure. Defendants realized their entire operations were imperiled by their gross financial miscalculations. Upon information and belief, in order to protect themselves, Defendants decided to shut down the life insurance and annuity side of their business in order to allow the property and casualty side to survive. Defendants subsequently announced effective October 16, 2002, it would not accept new applications for life insurance and annuity products and ceased retail sales of annuity and life insurance products.

**ORIGINAL CLASS ACTION COMPLAINT - Page 13**

This created what is known as a "closed" block of business, which described the in-force or outstanding life insurance and annuity policies .

28.     The financial stability of life insurance companies is reflected in "ratings" assigned by such companies as Standard & Poor's, Moody's, and A.M. Best ("Rating Agencies"). Maintenance of a high rating by a life insurance company is essential to sell its product in the very competitive life insurance and variable annuity market. Reduction in ratings by Rating Agencies justifiably causes concern among existing and prospective purchasers of life insurance and variable annuity products regarding the companies stability. Questions as to their ability to meet their obligations and honor representations made to policyholders leads to directly substantial increases in surrenders or exchange of annuities and policies.

29.     The above adverse disclosures caused the ratings of Allmerica Companies, in general, and Allmerica Life and First Allmerica, in particular, to plummet. By October 2002, the financial strength of Allmerica Life and First Allmerica was rated by Standard & Poor's and A.M. Best as "marginal", and "questionable" by Moody's. In contrast, in December 2000 and 2001, Standard & Poor's had rated these companies as "very strong", Moody's as "good", and A.M. Best as "excellent."

30.     As the primary architect of the decision to concentrate in variable annuities O'Brien was forced to resign in October 2002. On information and belief, O'Brien received millions of dollars of additional severance compensation although the Allmerica Companies recorded one of the largest capital losses in the entire industry in 2002.

31.     By the end of 2002, with no notice, Defendants further dismantled the entire sales distribution network by purporting unilaterally to terminate the career agency agreements, many

**ORIGINAL CLASS ACTION COMPLAINT - Page 14**

of which had been in effect for over 20 years. Defendants also eliminated the Select and Partners distribution channels. Allmerica unilaterally "offered" the terminated agents a new agreement on a "take it or leave it" basis. These new agreements purported to change radically their status from agents to brokers. Certain agents, such as Robare, refused to sign the new agreements while others such as Speakman and Wedel did. Those agents that did not sign the new agreements had to immediately vacate their offices in which they had conducted business for many years. In order to maintain contact, continuity, and credibility with their clients, they had to relocate rapidly to new places of business. Allmerica Life provided no assistance to agents such as Plaintiff Robare in this difficult transition period.

33. In October 2003, the Allmerica Companies unilaterally terminated its remaining agency and broker force, including Plaintiffs Speakman and Wedel. As before, agents such as Plaintiffs Speakman and Wedel were required to immediately vacate their offices and immediately relocate in order to maintain contact and credibility with their clients. Allmerica Life provided minimal assistance to these producers who were terminated without cause and solely as a result of Defendants' gross mismanagement and other wrongful conduct.

33. The decision to discontinue the retail sale of life or annuity products also resulted in drastic cut backs in administrative staff serving this business. These cutbacks resulted in the immediate deterioration in service these policyholders in the "closed block" including those who owned annuities in the Trail Program. In its 2004 Annual Statement, the Allmerica Companies explicitly acknowledge that the life and annuity business was not a priority and that its singular goal was to become a world class regional property and casualty company.

**ORIGINAL CLASS ACTION COMPLAINT - Page 15**

34.    As a result of the foregoing events, agents, such as Robare, whose relationship with Allmerica was terminated by the end of 2002 through absolutely no fault of his own, and those such as Speakman and Wedel whose relationship was terminated by the end of 2003 also through absolutely no fault of their own, faced enormous difficulties servicing their clients' business.  Beginning in late 2002, Allmerica Companies wrongfully precluded former sales agents, such as Robare, from interacting with their clients whose annuities were in the Trail Program.  They were thus unable to allay any concerns that clients may have had about the ongoing viability of Allmerica Companies to meet their obligations, such as GMDB, as a result of the precipitous drop in ratings and the Companies' decision no longer to sell any of their products.  Compounding this problem was that by the end of 2003, there was a marked deterioration in the services that Allmerica Companies previously had provided to producers and their clients.  This substantially impaired their ability to properly maintain client relationships with those in the Trail Program.  The deterioration in services included the following:

A.    On information and belief, Defendants discontinued using Rogers Casey previously touted as an essential consultant to choose and monitor the performance of the funds for the variable annuities;

B.    On information and belief, Defendants curtailed the number of available funds and managers available to variable annuities;

C.    Defendants discontinued database downloads to the "Contact Person" client management database system;

D.    Defendants failed to timely update essential client information including Model performance data;

**ORIGINAL CLASS ACTION COMPLAINT - Page 16**

E.    Defendants caused significant processing errors involving clients' separate accounts contained in Eligible Annuities in the Trail Program;

F.    Defendants failed to timely process service requests by clients, including division of annuities in connection with divorces and other matters; and

G.    On information and belief, Defendants failed to send copies of client correspondence to agents even though the letters indicate that agents are copied on the letters that contain important information concerning the annuities.

Based upon the public pronouncements of Allmerica Companies that its life and annuity products are a "closed" book, that it has no sales producers, and that the life and annuity business is no longer a priority, it is clear that services Allmerica Life is obligated to provide to Plaintiffs (and their annuity holders) will continue to deteriorate.

35.    During 2003 and 2004, Allmerica Life made certain adjustments to the interest rate, persistency or productivity requirements in connection with the Trail Program.

## Particular Facts Regarding Plaintiff Robare

36.    Plaintiff Robare was a long-time career agent for Allmerica Life and its predecessor State Mutual Assurance Co. of America and produced substantial business for the company.

37.    Robare entered into the Trail Program as of January 1, 2001 and selected the Variable Commission Option.

38.    The DAC Note signed by Robare was in the amount of $739,842.

**ORIGINAL CLASS ACTION COMPLAINT - Page 17**

39.    Prior to the announcements beginning in September 2002, Robare had no knowledge of Defendants' failure to provide adequate means to meet the GMDB or DAC exposure.

40.    Robare did not sign the 2003 agreements and, therefore, was terminated as an agent of Allmerica Life without cause.

41.    During 2001 and 2002, the "persistency" ratio for Plaintiff Robare's Eligible Annuities in the Trail Program was below 10% (Withdrawals + Surrenders/Total Account Value) and he was at the highest "productivity" level. As a result of Allmerica Life's ceasing to sell on a retail basis life insurance and annuity products, Robare's "productivity" level fell dramatically. In large part due to the adverse persistency, which was the result of Defendants' wrongful actions, the Account Values of the Eligible Annuities that are part of Robare's Trail Program, have **decreased from $32 million to $4.8 million**. As a result of the decrease in persistency, Allmerica Life reduced Robare's commission percentage from 1.07% annually to .55% annually or .1375% quarterly. Consequently, his trail commissions are below the amount necessary to offset the quarterly installments purportedly due under the terms of the DAC Note.

42.    In 2004, Robare notified Allmerica Life that as a result of its conduct, that he was not liable under the terms of the DAC Note. Allmerica Life responded by claiming that Robare allegedly was liable under the DAC Note.

### Particular Facts Regarding Plaintiff Speakman

43.    Plaintiff Speakman was a long-time career agent for Allmerica Life and its predecessor State Mutual Assurance Co. of America and was the companies number one producer for fifteen years.

**ORIGINAL CLASS ACTION COMPLAINT - Page 18**

44.    Speakman entered into the Trail Program as of January 1, 2001 and selected the Variable Commission Option.

45.    The DAC Note signed by Speakman was in the amount of $3,138,457.48.

46.    Prior to the announcements beginning in September 2002, Speakman had no knowledge of Defendants' failure to provide adequate means to meet the GMDB or DAC exposure.

47.    Speakman did sign the new agreements that were effective on January 1, 2003. In late 2003, Allmerica Companies unilaterally terminated those agreements.

## Particular Facts Regarding Plaintiff Wedel

48.    Until 2003, Plaintiff Wedel was a long-time career agent for Allmerica Life and its predecessor State Mutual Assurance Co. of America and produced substantial business for the company.

49.    Wedel entered into the Trail Program as of January 1, 2001 and selected the Variable Commission Option.

50.    The DAC Note signed by Wedel was in the amount of $1,178,538.46.

51.    Prior to the announcements beginning in September 2002, Wedel had no knowledge of Defendants' failure to provide adequate means to meet the GMDB or DAC exposure.

52.    Wedel did sign the new agreements that were effective on January 1, 2003. In late 2003, Allmerica Companies unilaterally terminated those agreements.

**ORIGINAL CLASS ACTION COMPLAINT - Page 19**

## CLASS ACTION ALLEGATIONS

53.    Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who entered into the Trail Program with Allmerica Life and who ceased to be sales producers at the end of 2002 by virtue of their refusal to sign the proposed new agreements ("2002 Class"), and those persons who entered into the Trail Program with Allmerica Life and whose positions were eliminated by the end of 2003 by Allmerica Life ("2003 Class"). The 2002 Class and 2003 Class are collectively referred to as the "Class."

54.    The members of the Class are so numerous that the joinder of all members is impractical. While the exact number and location of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are over seventy-five members of the Class residing throughout the United States.

55.    Plaintiffs' claims are typical of the claims of the other members of the Class, and all members of the Class including Plaintiffs sustained injuries arising out of Defendants' wrongful conduct complained of herein.

56.    Plaintiffs will fairly and adequately protect the interests of the Class and has chosen counsel experienced in insurance class action litigation. Plaintiffs have no interests antagonistic to, or in conflict with, the other members of the Class they seek to represent. As such, Plaintiffs and their counsel are adequate representatives of the Class.

57.    The questions of law and fact common to the other members of the Class, and which predominate over any questions affecting individual members, include the following:

**ORIGINAL CLASS ACTION COMPLAINT - Page 20**

(1)  Whether Allmerica Life breached the express and implied terms of the Trail Program by ceasing to engage in the business of selling life insurance and annuities;

(2)  Whether Allmerica Life breached the express and implied terms of the Trail Program by not adequately servicing the Eligible Annuities; and

(3)  Whether Allmerica Life engaged in unfair and/or deceptive trade practices within the meaning of M.G.L.A. 93A.

58.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1)  without a class action, class members will continue to suffer damage, Defendants' violations of law will proceed without remedy, and it will continue to retain the proceeds of their misconduct; and

(2)  this action presents no difficulty that would impede the Court's management of it as a class action, and it is the best available means by which members of the Class can seek redress for the harm caused to them by Defendants.

59.    Alternatively, certification is appropriate under Federal Rules of Civil Procedure 23(b)(2), because Allmerica Life and First Allmerica has acted or refused to act on grounds generally applicable to the class, merely making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### Breach of Contract (Failure of Consideration) Against Allmerica Life And First Allmerica As to the 2002 Class

60.    Plaintiff Robare, individually and on behalf of the Class, reallege and incorporate by reference, the preceding paragraphs.

**ORIGINAL CLASS ACTION COMPLAINT - Page 21**

61.    An implied term of the Trail Program was that Allmerica Life would continue underwriting and selling life and annuity products and permit agents to continue to service the clients that were part of the Trail Program.

62.    Allmerica Life's decision to terminate life and annuity production and failure to permit Plaintiff Robare and the 2002 Class members to continue to maintain their relationship with their clients who were part of the Trail Program constituted a material breach of the Trail Program so as to render performance impossible thereby creating a failure of consideration.

63.    Plaintiff Robare and the 2002 Class Members are entitled to an judgment declaring that the DAC Notes are unenforceable.

## SECOND CAUSE OF ACTION
### Breach of Duty of Good Faith, Fair Dealing Against Allmerica Life On Behalf of The 2002 Class and 2003 Class Against Allmerica Life and First Allmerica

64.    Plaintiffs, individually and on behalf of the Class, reallege and incorporate by reference, the preceding paragraphs.

65.    In every contract, including the Trail Program, there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

66.    Defendants breached their implied duty of good faith and fair dealing in connection with the Trail Program in at least in the following ways:

(1)    Allmerica Life and First Allmerica failed to adequately reinsure, hedge or otherwise prudently reserve for its obligations on variable annuity and insurance products, including GMDB, which impaired the ability of Allmerica Life and First Allmerica to remain a viable company with good ratings from the Rating Agencies, which was essential for the Trail Program to meet its objectives of persistency

**ORIGINAL CLASS ACTION COMPLAINT - Page 22**

of the Eligible Annuities and the ability of Plaintiffs and the Class Members to remain active producers;

(2)    Allmerica Life and First Allmerica failed to make adequate provisions for preventing the impairment of recovery of DAC, which failure impaired its ability to remain a viable company with good ratings from the Rating Agencies, which was essential for the Trail Program to meet its objectives of persistency of the Eligible Annuities and the ability of Plaintiffs and the Class Members to remain active producers;

(3)    Allmerica Life and First Allmerica placed Plaintiffs and the Class Members in an "all or nothing" situation by terminating the career agent agreements and tendering the materially different and adverse 2003 agreements, which if not signed, precluded Plaintiff Robare and the 2002 Class Members from continuing to maintain their relationships with the owners of the Eligible Annuities; and

(4)    Allmerica Life's and First Allmerica's discontinuance of the retail sale of life insurance and annuities along with their severe deterioration in the administration of the Eligible Annuities has prevented Plaintiffs from servicing their clients who are part of the Trail Program, which has defeated an essential element of the Program.

67.    Plaintiffs and Class Members suffered damages as a result of the above breaches.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF M.G.L.A. 93A On Behalf Of the 2002
## Class and 2003 Class Against All Defendants

68.    Plaintiffs, individually and on behalf of the Class, reallege and incorporate by reference, the preceding paragraphs.

69.    Defendants, individually and collectively, have engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce, as defined in M.G.L.A. 93A, §§ 1, 2 & 11 by, among other things:

(1).    Failing to disclose to Plaintiffs and members of the Class at the time of entering into the Trail Program that Allmerica Life and First

**ORIGINAL CLASS ACTION COMPLAINT - Page 23**

Allmerica could not continue to sell variable annuity products and remain a viable company if there was a substantial downturn in the stock market;

(2). Failing to disclose to Plaintiffs and members of the Class at the time of entering into the Trail Program that Allmerica Life and First Allmerica did not have adequate resources or strategies to meet its GMDB obligations, without material adverse consequences to its financial condition and ratings, if there was a substantial downturn in the stock market;

(3). Failing to disclose to Plaintiffs and members of the Class at the time of entering into the Trail Program that Allmerica Life and First Allmerica did not have adequate resources or strategies to absorb the recognition of DAC, without placing Allmerica Life in peril, if there was a substantial downturn in the stock market; and

(4). Unfair acts or practices by ceasing to sell on a retail basis life insurance and annuity products, precluding Plaintiffs and members of the Class from servicing the Eligible Annuities, all of which acts had the effect of undermining the basis and destroying the value of the Trail Program.

70. Plaintiffs and members of the Class have been damaged by Defendants' unfair or deceptive practices or acts described above.

## JURY TRIAL DEMANDED

63. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendants as follows:

A. That this Court certify this action as a class action and appoint Plaintiff Robare as representative of the 2002 Class and Plaintiffs Speakman and Wedel as

**ORIGINAL CLASS ACTION COMPLAINT - Page 24**

representatives of the 2003 Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    That this Court further appoint Plaintiffs' counsel as lead counsel for the Class;

C.    That Plaintiffs and Class Members recover damages, treble damages, costs and reasonable attorneys' fees;

D.    That the Court award equitable relief, as appropriate;

E.    That Plaintiffs and Class members recover pre- and post-judgment interest; and

F.    Such other and further relief as the Court may deem necessary or appropriate.

Dated: May 17, 2004              Respectfully submitted,

Stephen L. Hubbard
Robert W. Biederman, BBO# 562279
David M. Grossman
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

**MOULTON & GANS, P.C.**

By: _____
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

*ATTORNEYS FOR PLAINTIFFS AND THE CLASS*

**ORIGINAL CLASS ACTION COMPLAINT - Page 25**

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET 04 - 40077

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK J. ROBARE, Individually and On Behalf of All Others Similarly Situated

**DEFENDANTS**

ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST AMERICA FINANCIAL LIFE INS. CO., ALLMERICA FINANCIAL CORP., JOHN F. O'BRIEN, EDWARD J. PARRY, III, RICHARD M. REILLY and JAMES E. BELLNER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Allegheny Cty.,
(EXCEPT IN U.S. PLAINTIFF CASES)    PA

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

See ATTACHMENT "A"

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Just |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  May 17, 2004

SIGNATURE OF ATTORNEY OF RECORD  Nancy Freeman Gans

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

# ATTACHMENT "A"

Nancy Freeman Gans, BBO #184540
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, MA 02109-4216
(617) 369-7979
(617) 369-7980 (Fax)


Stephen L. Hubbard
Robert W. Biederman, BBO #562279
David M. Grossman
**HUBBARD & BIEDERMAN, L.L.P.**
1717 Main Street, Suite 4700
Dallas, TX 75201
(214) 857-6000
(214) 857-6001 (Fax)

# 04-40077

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  Donald P. Speakman, et al., etc. v. Allmerica Financial Life Ins. & Annuity Co., et als.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   XXX  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                        YES        (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

                                                        YES        (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                        YES         NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                        YES        (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                        YES        (NO)

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION           CENTRAL DIVISION               WESTERN DIVISION

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION         (CENTRAL DIVISION)               WESTERN DIVISION

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Nancy Freeman Gans

ADDRESS  MOULTON & GANS, P.C., 33 Broad St., Suite 1100, Boston, MA 02109-4216

TELEPHONE NO.  617-369-7979

(Cover sheet local.wpd - 11/27/00)