# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

|  |  |  |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 4:04-cv-40077-FDS |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Allmerica Financial Life Insurance & Annuity Co., First Allmerica Financial Life Insurance Co., and Allmerica Financial Corp.*

Dated: August 11, 2004

## <u>CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................1

ALLEGATIONS OF COMPLAINT ...................................................................................2

I.      Parties ...............................................................................................................2

II.     Trail Commission Program.....................................................................................2

III.    AFLIAC's Discontinuance of New Sales of Variable Annuities ......................................3

IV.     Plaintiffs' Legal Claims..........................................................................................4

ARGUMENT...................................................................................................................5

I.      PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM .........................5

        A.     Plaintiffs Do Not Allege They Had Any Contract With AFLI. ..................................5

        B.     Plaintiffs Do Not Identify Any Terms In The Trail Agreement That AFLIAC
               Supposedly Breached.....................................................................................7

        C.     Plaintiffs Cannot "Imply" Contractual Duties To Which The Parties Did Not
               Agree -- And That Contradict -- The Written Contract They Signed.........................8

II.     THE CHAPTER 93A CLAIM FAILS AS A MATTER OF LAW. ...................................11

        A.     Plaintiffs Cannot Litigate Employment Relationships Under Chapter 93A. ............12

        B.     Plaintiffs Cannot Transform Into An "Unfair or Deceptive" Act A Deficient
               Breach of Contract Claim ..............................................................................13

CONCLUSION...............................................................................................................15

BOSTON 1969723v3

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*Accusoft Corp. v. Palo*,
   237 F.3d 31 (1st Cir. 2001)........................................................................................9

*Ahern v. Scholtz*,
   85 F.3d 774 (1st Cir. 1996)......................................................................................14

*Beddall v. State Street Bank & Trust Co.*,
   137 F.3d 12 (1st Cir. 1998)........................................................................................3

*Citicorp North America, Inc. v. Ogden Martin Sys. of Haverhill*,
   8 F. Supp. 2d 72 (D. Mass. 1998)...........................................................................15

*Doyle v. Hasbro, Inc.*,
   103 F.3d 186 (1st Cir. 1996)..................................................................................6, 8

*Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc.*,
   139 F. Supp. 2d 147 (D. Mass. 2001) .....................................................................12

*Elias Bros. Rests., Inc. v. Acorn Enters., Inc.*,
   831 F. Supp. 920 (D. Mass. 1993) ............................................................................8

*Health Plans, Inc. v. New York Life Ins. Co.*,
   898 F. Supp. 941 (D. Mass. 1995) ..........................................................................16

*Institut Pasteur v. Cambridge Biotech Corp.*,
   104 F.3d 489 (1st Cir. 1997).....................................................................................10

*Orell v. UMass Memorial Med. Ctr., Inc.*,
   203 F. Supp.2d 52 (D. Mass. 2002) ..........................................................................6

*Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*,
   840 F.2d Supp. 985 (1st Cir. 1988) ...........................................................................8

*Plumbers & Steamfitters Local
150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443 (11th Cir. 1991) ..............10

*Powderly v. Metrabyte Corp.*,
   866 F. Supp. 39 (D. Mass. 1994) ............................................................................13

*RCI Northeast Servs. Div. v. Boston Edison Co.*,
   822 F.2d 199 (1st Cir. 1987) ...................................................................................11

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996)......................................................................................3

*Smart v. Gillette Co. Long Term Disability Plan,*
    70 F.3d 173 (1st Cir. 1995) ........................................................................10, 11

*Steel Co. v. Citizens For A Better Environ.,*
    523 U.S. 83 (1998).............................................................................................10

<u>State Cases</u>

*Anthony's Pier Four, Inc. v. HBC Assocs.,*
    411 Mass. 451 (1991) .................................................................................14, 15

*Atkinson v. Rosenthal,*
    33 Mass. App. Ct. 219 (1992).....................................................................15, 16

*Chokel v. Genzyme Corp.,*
    No. 032530BLS, 2003 WL 23016549 (Mass. Super. Ct. Nov. 12, 2003) ...................9

*Fertility Ctr. of New England v. Tufts Assoc. Health Maintenance Org., Inc.,*
    No. 99-2597, 2002 WL 1592775 (Mass. Super. Ct. July 18, 2002)........................12

*Gurry v. Cumberland Farms, Inc.,*
    406 Mass. 615 (1990) ........................................................................................7

*Informix v. Rennell,*
    41 Mass. App. Ct. 161 (1996) ............................................................................13

*Levings v. Forbes & Wallace Inc.,*
    8 Mass. App. Ct. 498 (1979)..............................................................................14

*Manning v. Zuckerman,*
    388 Mass. 8 (1983) ...........................................................................................13

*Mass. Muni. Wholesale Elec. Co. v. City of Springfield,*
    49 Mass. App. Ct. 108 (2000).............................................................................7

*Nei v. Boston Survey Consultants, Inc.,*
    388 Mass. 320 (1983) .......................................................................................16

*Telephone Answering Serv. of Boston, Inc. v. New England Tel. & Tel. Co.,*
    358 Mass. 822 (1971) ........................................................................................6

*Turk v. Communication Design, Inc.,*
    10 Pa. D. & C.4th 42 (Pa. Ct. Comm. Pleas Feb. 27, 1991) ..................................14

*Uno Rests., Inc. v. Boston Kenmore Realty Corp.,*
    441 Mass. 376 (2004) .......................................................................................11

*Winsmann v. Choate Health Mgmt., Inc.,*
    No. CIV. A 97-6561, 1998 WL 282901 (Mass. Super. Ct. May 29, 1998)................6

BOSTON 1969723v3

State Statutes

Mass. Gen. Laws ch. 93A............................................................................................passim

Pa. Cons. Stat. § 260.9a ..................................................................................................14

BOSTON 1969723v3

Defendants Allmerica Financial Life Insurance & Annuity Company ("AFLIAC"), First Allmerica Financial Life Insurance Company ("AFLI"), and Allmerica Financial Corporation ("AFC") submit this memorandum in support of their Motion to Dismiss plaintiffs' First Amended Class Action Complaint ("Amended Complaint") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiffs are three former life insurance agents who, along with the putative class they claim to represent, sold life insurance and variable annuities issued by AFLIAC until it closed that segment of its business in 2002, in the wake of the post-bubble stock market collapse. Plaintiffs concede that AFC (AFLIAC's publicly-traded parent) was hit hard by the down economy, and that its departure from the life and annuity business was designed to -- and ultimately did -- restore its profitability. Earlier this year, however, plaintiffs sued defendants, claiming that their withdrawal from the life insurance and annuity business somehow breached a 2001 commission agreement and constituted an "unfair or deceptive" act in violation of Chapter 93A. Both claims fail, as a matter of law.

Specifically, plaintiffs had no contractual or other entitlement to remain employed forever. They have not sued AFC for breach of contract, and should never have sued AFLI because they never allege they had any contract with AFLI. Plaintiffs do not claim that AFLIAC violated any term of its written "Trail Agreement" with plaintiffs, and run afoul of settled Massachusetts law by suing defendants for "implied" terms that find no support in -- and in key respects are contradicted by -- the document they signed years earlier. Plaintiffs come no closer to an actionable claim under Chapter 93A because breaches of contract rarely constitute "unfair or deceptive" acts and cannot possibly satisfy the "rascality" standard for liability where, as here, plaintiffs cannot even identify the contractual provision allegedly breached.

BOSTON 1969723v3

For these and the following reasons, the Court should dismiss plaintiffs' Amended Complaint with prejudice.

## ALLEGATIONS OF COMPLAINT[1]

### I.     Parties.

AFLIAC is a Massachusetts-based insurance company with its principal place of business in Worcester, Massachusetts.  (Am. Compl. ¶ 6.)  AFC is the parent company of AFLIAC, and AFLIAC is the parent company of AFLI.  (Id. ¶ 8.)[2]  Until 2003, AFLIAC primarily sold variable life insurance and annuity products.  (Id.)

Plaintiffs sue on behalf of themselves and a putative class of other AFLIAC agents who participated in the Trail Commission Program (described below) and who ceased to be agents by either the end of 2002 or 2003.  (Id. ¶¶ 12, 48.)

### II.     Trail Commission Program.

Prior to January 1, 2001, plaintiffs typically were paid a one-time, lump-sum commission on sales of variable annuities, but did not receive any additional commissions during the period those annuities remained in force.  (Id. ¶¶ 2, 13.)

Beginning on January 1, 2001, AFLIAC offered plaintiffs the opportunity to participate in the Agent In-Force Trail Commission Program ("Trail Commission Program").  (Id. ¶¶ 16-18.)  The Trail Commission Program allowed participating agents to receive ongoing "trail commissions" on the in-force individual variable and fixed annuity contracts that they had sold prior to January 1, 1996 (the "Eligible Annuity Contracts").  (Id. ¶ 17.)  Trail commissions were

---

[1]     For purposes of this Motion only, defendants recite the factual allegations set forth in the Amended Complaint.  See Fed. R. Civ. P. 12(b)(6).  In so doing, defendants admit neither the veracity of plaintiffs' allegations, nor their relevance.  Significantly, however, virtually all of plaintiffs' factual allegations are irrelevant to this motion because, as set forth infra, plaintiffs conspicuously fail to allege the essential elements of their claims.

[2]     Until 2003, AFLI was the direct parent of AFLIAC, and AFC was the publicly-traded parent of AFLI.  In 2003, AFC became the direct parent of AFLIAC and AFLIAC became the parent of AFLI.  (Am. Compl. ¶ 8.)

BOSTON 1969723v3

continuous in nature -- they were paid out over the life of the Eligible Annuity Contracts or twenty years, whichever period was shorter.  (Id. ¶¶ 3, 15, 17.)

The Trail Commission Program was a "*voluntary program*" available to qualifying agents who entered into a written agreement with AFLIAC, known as the "Agent In-Force Annuity Trail Commission Agreement" ("Trail Agreement").  See Trail Agreement of Stephen H. Wedel, attached hereto as Exhibit A.[3]  The Trail Agreement obligated AFLIAC to make trail commission payments (whereas before it had not) based on the account values of the Eligible Annuity Contracts, in exchange for the participating agents' reciprocal obligation to repay a percentage of the upfront commissions that they had received at the time they sold the Eligible Annuity Contracts (in 1996 or earlier).  Each plaintiff elected, but was not required, to finance his or her repayment obligation through a ten-year loan from AFLIAC.  (Am. Compl. ¶ 17.F.)[4]

The Trail Agreement provided that AFLIAC may "terminate or amend the [Trail Commission] Program at any time."  Ex. A - § VII, at 11.

## III.  **AFLIAC's Discontinuance Of New Sales Of Variable Annuities.**

In October 2002, AFLIAC discontinued all new sales of its variable annuities and life insurance products in response to a severe downturn in the equity markets and a downgrade of AFLIAC by ratings agencies, such as Moody's and Standard & Poor's.  (Am. Compl. ¶¶ 22, 23.)

Plaintiffs allege that AFLIAC's decision to discontinue new sales of variable annuities eventually led to their termination as agents and made it difficult to maintain and service their

---

[3]    The Court properly may consider the Trail Agreement in deciding this Motion to Dismiss because the allegations in the Amended Complaint are dependent upon this document.  See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (Where "complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document . . . that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (in deciding motion to dismiss, "court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint").

[4]    The specifics of the ten-year loan, which were reflected in what plaintiffs refer to as "DAC Notes," are, like the vast majority of the allegations in the Amended Complaint, irrelevant to this Motion.

clients.  (Id. ¶¶ 25-28.)  Plaintiffs further allege that by the end of 2003, there was a decline in the services that AFLIAC provided to them, which, in turn, allegedly impaired their ability to service their clients.  (Id. ¶ 28.)

Plaintiff Mark L. Robare was terminated by AFLIAC in late 2002 or 2003.  (Id. ¶¶ 25, 34.)  Plaintiffs Donald P. Speakman and Stephen H. Wedel were terminated in 2003.  (Id. ¶ 26.)  Pursuant to the terms of the Trail Agreements, each of the plaintiffs continues to receive trail commission payments for the Eligible Annuity Contracts they sold prior to 1996.

## IV.    Plaintiffs' Legal Claims.

The Amended Complaint asserts claims for breach of contract (Count I) and a violation of Section 11 of Chapter 93A (Count II).

In Count I, plaintiffs allege that AFLIAC and AFLI (but not AFC) breached the Trail Agreement by ceasing to underwrite and sell life insurance and annuity products in 2002 and by failing to provide certain services.  (Id. ¶¶ 28, 56.)  Plaintiffs do not allege any breach of any written term of the Trail Agreement, but instead assert a violation of "implied" terms, most notably, that AFLIAC "would continue underwriting and selling life and annuity products with an active sales force and adequately service clients that were part of the Trail Program."  (Id. ¶¶ 56-59.)

In Count II, plaintiffs allege that each defendant engaged in an "unfair or deceptive act or practice" in violation of Section 11 of Chapter 93A by virtue of the alleged breach of contract and/or their failure to predict the future, including the failure to disclose the potential for a "substantial downturn in the stock market" compromised their future ability to live up to the Trail Agreement.  (Id. ¶ 62.)

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM.

Plaintiffs' claim that defendants AFLIAC and AFLI breached the Trail Agreement (Count I) fails as a matter of law because *(i)* plaintiffs have failed to identify any contract between them and AFLI; *(ii)* plaintiffs have not alleged that AFLIAC breached any written provision of the Trail Agreement; and *(iii)* Massachusetts law does not permit plaintiffs to "imply" new contractual duties that nowhere exist in the written contract.  It is plaintiffs' obligation to allege the existence and breach of a valid, binding agreement with each defendant, and their failure to do so here requires dismissal.

### A.    Plaintiffs Do Not Allege They Had Any Contract With AFLI.

The Court should dismiss the contract claim against AFLI (referred to in the Amended Complaint as "First Allmerica") because *nowhere* in the twenty-plus page Amended Complaint do plaintiffs identify the contract that AFLI supposedly has breached.  See Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 67 (D. Mass. 2002) (dismissing contract claim against defendants where, as here, complaint did not identify any agreement between plaintiff and those defendants).

Plaintiffs cannot obscure their failure to plead the most rudimentary element of their contract claim (i.e., the contract) with broadstrokes about how undifferentiated "defendants breached" never-specified duties.  See id.; Telephone Answering Serv. of Boston, Inc. v. New England Tel. & Tel. Co., 358 Mass. 822, 823 (1971) (affirming demurrer to breach of contract claim; failure to state "with substantial certainty the facts showing the existence of the contract and legal effect thereof" fatal to breach of contract claim); Winsmann v. Choate Health Mgmt., Inc., No. CIV. A 97-6561, 1998 WL 282901, at *2-3 (Mass. Super. Ct. May 29, 1998) (granting motion to dismiss breach of contract claim where, as here, plaintiffs failed to allege nature of

alleged contract with any specificity).   Nor can plaintiffs state a claim by complaining that "First Allmerica failed" to act -- for example, by not "reinsuring" or "hedging" investments, or not making accounting "provisions" -- without identifying any "contract" that required it to do so. See Doyle v. Hasbro, Inc., 103 F.3d 186, 194-95 (1st Cir. 1996) (district court properly granted motion to dismiss contract claim; conclusory statements that defendant and its executives "failed to meet their contractual requirement" insufficient to satisfy pleading requirements).

The contract claim against AFLI collapses entirely when contrasted to the unambiguous text of the only contract that plaintiffs claim was breached, the Trail Agreement.   See Mass. Muni. Wholesale Elec. Co. v. City of Springfield, 49 Mass. App. Ct. 108, 111 (2000) ("Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense").   The very first paragraph of the Trail Agreement is explicit that it is "by and between" the individual agent and "Allmerica Financial Life Insurance and Annuity Company" (i.e., AFLIAC).   See Ex. A.   Indeed, the only pleaded relationship between AFLI and AFLIAC is that the former was "the direct parent" of the latter prior to 2003, see Am. Compl. ¶ 8, which is no basis for this lawsuit because the Supreme Judicial Court has made plain that plaintiffs cannot sue corporate parents or shareholders (i.e., AFLI) for contracts allegedly breached by the separately incorporated companies they own (i.e., AFLIAC).   See Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 625-26 (1990) ("rule in the Commonwealth is that corporations are to be regarded as separate entities where there is no compelling reason of equity

to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries").[5]

The Amended Complaint does not allege any facts to establish that plaintiffs had a contract with AFLI, and thus the breach of contract claim against AFLI should be dismissed.

### B.     Plaintiffs Do Not Identify Any Terms In The Trail Agreement That AFLIAC Supposedly Breached.

The Court should dismiss the contract claim against AFLIAC because, although it was party to the Trail Agreement, plaintiffs do not allege the particular provision(s) of the document that it supposedly breached.  See Elias Bros. Rests., Inc. v. Acorn Enters., Inc., 831 F. Supp. 920, 927 (D. Mass. 1993) (denying motion to amend counterclaim where defendant's proposed contract claim failed to identify any term or provision in written agreement that allegedly was breached).  For example, plaintiffs claim that an "underlying term" of the Trail Agreement was that AFLIAC "had to continue underwriting and selling products" and do so through "an active sales force" (implicitly, to employ plaintiffs in perpetuity), see Am. Compl. ¶ 56, but nowhere identify any language in the detailed, twelve-page contract that remotely requires it to do so.  See Doyle, 103 F.3d at 194-95 (conclusory allegations of breach insufficient to meet pleading standard).

Simply put, if AFLIAC was never contractually obligated under the Trail Agreement to sell annuities in the future, *a fortiori* plaintiffs cannot sue AFLIAC for breaching that or any of the other nonexistent duties upon which their contract claim is based.  See generally Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("when the wording of a contract is unambiguous, the terms will be enforced").

---

[5]     Plaintiffs further plead themselves out of court by affirmatively alleging that their employment relationship was with AFLIAC, not AFLI.  See Am. Compl. ¶ 1 ("Plaintiffs were three of the highest producing agents of Defendant Allmerica Financial Life Insurance and Annuity Company"); see also infra Section II.A.

**C.    Plaintiffs Cannot "Imply" Contractual Duties To Which The Parties Did Not Agree -- And That Contradict -- The Written Contract They Signed.**

Unable to state a claim for breach of the Trail Agreement they signed, plaintiffs impermissibly reach for the "implied duty of good faith and fair dealing" to impute to AFLIAC duties to which it never agreed to be bound.  See Am. Compl. ¶¶ 58-59.  Most notably, plaintiffs depart from the plain language of the Agreement -- which obligated AFLIAC to pay specified "trail" commissions on annuities that were sold *five years or more before* the Agreement was signed (prior to January 1, 1996) -- by asking the Court to recognize an unlimited, *prospective* "implied term" requiring Allmerica to "continue underwriting and selling life and annuity products" into the indeterminate future.  See id. ¶ 56.  Plaintiffs further imply that AFLIAC and/or AFLI was/were obligated to maintain their employment as "an active sales force," even though nowhere in the Trail Agreement is there anything approaching an employment contract or guaranteed status as "career agents."  See Ex. A.

Plaintiffs' attempts to imply their way into a viable contract claim ignore that defendants' duty of good-faith performance is "circumscribed by the obligations . . . *actually contained in the agreement*."  See Accusoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001) (special master erred by using the duty of good faith and fair dealing to impose obligations "that exist nowhere in the agreement between the parties") (emphasis supplied).  For this reason, Massachusetts law permits plaintiffs to invoke the covenant of good faith only where necessary to enforce the express terms of a contract, but not to impose *additional* requirements to which the parties did not agree in their contract.  See, e.g., Chokel v. Genzyme Corp., No. 032520BLS, 2003 WL 23016549, at *4 (Mass. Super. Ct. Nov. 12, 2003) (granting motion to dismiss where, as here, defendants "acted precisely in accord with the provisions of the contract" and were not liable for breaching never-negotiated additional terms).  Simply put, the written instrument controls.

"New or independent rights or duties separate from those already in a contract cannot be added by a judge in the cloak of the implied covenant of good faith and fair dealing."  Id.

First Circuit courts are particularly loathe to judicially imply additional terms in a contract where, as here, the parties entered into a detailed written agreement whereby they articulated the specific obligations they assumed, but did not provide for the additional duties that plaintiffs claim in after-the-fact litigation.  The "doctrine of *expressio unius est exclusio alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded."  See Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d 489, 495 (1st Cir. 1997) (quoting Plumbers & Steamfitters Local 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443, 1449 (11th Cir. 1991)), abrogated on other grounds by Steel Co. v. Citizens For A Better Environ., 523 U.S. 83 (1998).

Here, the Trail Agreement is exceptionally detailed in the obligations imposed on both plaintiffs and AFLIAC, but says "*absolutely nothing*" requiring AFLIAC to sell any product for any future period, much less anything to suggest an "implied" promise that it would continue to offer "guaranteed living benefit riders" for the products (that it never agreed it always would continue to sell).  Compare Am. Compl. ¶ 59(4), with Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995) (dismissing claim for disability benefits where no such obligation existed on face of written agreement; doctrine of *expressio unius* applied where, as here, there is "*absolutely nothing* in the agreement's text that hints at some additional item") (emphasis supplied).

The Trail Agreement also *says nothing* about plaintiffs' right to continued employment as AFLIAC's "active sales force."  Compare Am. Compl. ¶ 56, with Gillette, 70 F.3d at 179.  If, as plaintiffs allege, the "entire thrust" of the Trail Agreement was to guarantee their future

employment or that AFLIAC would never "terminate life and annuity production," the parties presumably would have included such allegedly critical provisions among the detailed terms that they did reduce to writing.  Compare Am. Compl. ¶ 57, with RCI Northeast Servs. Div. v. Boston Edison Co., 822 F.2d 199, 204 (1st Cir. 1987) (affirming trial court ruling for defendant on contract claim; if plaintiff was concerned about supposedly implied term, it could have provided for it in contract; where parties failed to so it is "unbefitting that [the court] accomplish by judicial fiat what [parties] neglected to achieve contractually").

Plaintiffs come no closer to an actionable contract claim by asserting other implied duties.  The parties certainly could have agreed that AFLIAC would "reinsure, hedge, or otherwise prudently reserve" for guaranteed minimum death benefit obligations ("GMDB"), and could have stipulated as to how Allmerica's accountants were to make "provisions for preventing the impairment" of Deferred Acquisition Costs ("DAC") or other assets.  Compare Am. Compl. ¶ 59.  Having failed to include any such terms in the Trail Agreement, however, plaintiffs cannot now ask the Court to imply those or any other never-negotiated actuarial or accounting guidelines into the documents they signed years ago.  See Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 388 (2004) (granting motion for directed verdict on implied covenant of good faith and fair dealing claim; "purpose of the covenant of good faith and fair dealing is not to supply contractual terms that the parties are free to negotiate").

Finally, plaintiffs' implied contract claim is particularly improper because some of the proposed new duties are foreclosed by the plain meaning of the document they did sign.  The notion that AFLIAC impliedly agreed in the 2001 Trail Agreement to never "terminate life and annuity production" and to maintain plaintiffs' employment going forward *(i)* makes no sense because by its terms the Agreement applies only to annuities "issued prior to January 1, 1996";

and *(ii)* collapses entirely under the parties' agreement that AFLIAC could "*terminate or amend the [Trail Commission] Program at any time.*"  Ex. A, at 11 (emphasis supplied).  See Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 156 (D. Mass. 2001) (entering summary judgment; defendant's termination of franchise could not violate good faith covenant where agreement provided right to terminate -- "covenant of good faith cannot override the express terms of a contract"); Fertility Ctr. of New England v. Tufts Assoc. Health Maintenance Org., Inc., No. 99-2597, 2002 WL 1592775, at *8 (Mass. Super. Ct. July 18, 2002) (entering summary judgment on implied covenant of good faith and fair dealing claim where contract enabled either party to terminate agreement without cause), aff'd, 61 Mass. App. Ct. 1104 (2004).

Simply put, the Trail Agreement is lengthy, and exceptionally detailed.  Plaintiffs should not be entitled to impose on AFLIAC or AFLI the expense of discovery -- especially on behalf of a putative national class of allegedly "similarly situated" plaintiffs -- if they cannot identify any term in that Agreement that allegedly was breached, and instead only contrive implied terms that perhaps could have been (but were not) part of the written "voluntary" agreement they elected to sign.  See Ex. A, at 1 (Agent agrees that he or she "is desirous of participating in the [Trail Commission] Program *under the terms and conditions described herein*") (emphasis supplied).

## II.     THE CHAPTER 93A CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' claim under Section 11 of Chapter 93A (Count II) should be dismissed because as a matter of law *(i)* the statute does not cover any dispute arising out of plaintiffs' alleged employment relationship with defendants; and *(ii)* no matter how generously construed, plaintiffs' inadequate breach of contract allegations fall far short of the "rascality" standard necessary to plead an "unfair or deceptive" practice.

A.    **Plaintiffs Cannot Litigate Employment Relationships Under Chapter 93A.**

The Supreme Judicial Court has made clear that "disputes arising from an employment relationship between an employee and the organization that employs him . . . *are not covered* by the c. 93A remedies afforded in commercial transactions." See Manning v. Zuckerman, 388 Mass. 8, 14 (1983) (affirming lower court's dismissal of employee's Chapter 93A, § 11 claim for failure to pay retirement benefits) (emphasis supplied).

Here, plaintiffs have plead themselves out of court by making quintessentially employment claims (none supported by the contract they contend was breached) about how the entire sales force was "dismantled" and the "agency and broker force" was "terminated." See id. ¶¶ 25-26. Even assuming the truth of these allegations, as a matter of law they cannot be litigated under Chapter 93A because it is "*firmly established that disputes between employers and employees fall outside the scope of § 11*." Informix v. Rennell, 41 Mass. App. Ct. 161, 162-63 (1996) (reversing judgment for employer on Chapter 93A claim based on alleged breach of confidentiality and noncompetition agreements) (emphasis supplied); see also Powderly v. Metrabyte Corp., 866 F. Supp. 39, 44 (D. Mass. 1994) (granting motion to dismiss; "*any claim arising from the employee/employer relationship [is] not actionable* under G.L. c. 93A") (emphasis supplied).[6] Indeed, the Amended Complaint could not be more explicit (in paragraph

---

[6]    That plaintiffs' dispute arises from their employment relationship also is immediately apparent from the allegations that named plaintiff Stephen Wedel made in another class action he brought against AFLIAC in the Court of Common Pleas in Pennsylvania, again on behalf of a putative national class of agents, which defendants removed and is the subject of a pending Motion to Transfer to this Court. See Complaint filed in Ries, et al. v. Allmerica Financial Corp., et al., Civil Action No. 04-0898 (W.D. Pa.). Although Mr. Wedel voluntarily dismissed his claim to be a named plaintiff in that Pennsylvania lawsuit after it was removed, the other plaintiffs still claim, *inter alia*, lost wages under Pennsylvania's Wage Payment and Collection Law, which by definition is a claim that can only arise from an employment relationship. See 43 Pa. Cons. Stat. § 260.9a (providing remedy for "any employee or group of employees, labor organization or party to whom any type of wages is payable"); see also Turk v. Communication Design Inc., 10 Pa. D. & C.4th 42, 44 (Pa. Ct. Comm. Pleas Feb. 27, 1991) (granting defendant's demurrer; court noting that Pennsylvania Wage Payment and Collection Law is "designed to protected separated *employees* in the collection of wages") (emphasis supplied).

one, and throughout) that plaintiffs' "lawsuit involves claims arising out of the Trail Program" under which they were entitled to earn commissions on products they sold (subject to the terms set forth in the Trail Agreement).  See, e.g., Am. Compl. ¶ 1 & ¶¶ 30, 37, 43 (alleging that each named plaintiff was "long-time career agent for [AFLIAC]").

### B.    Plaintiffs Cannot Transform Into An "Unfair Or Deceptive" Act A Deficient Breach of Contract Claim.

In the alternative, Count II should be dismissed because plaintiffs' Chapter 93A claim is essentially a cut-and-paste of their failed implied contract allegations, which no matter how generously construed are not sufficiently egregious to trigger the statute.  See Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979).  To state a claim, plaintiffs must allege an "unfair or deceptive" act or practice that would "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce."  Id.

Massachusetts courts have repeatedly rejected plaintiffs' attempts to elevate contract claims into Chapter 93A claims because, absent something more, a breach of contract simply does "not rise to the level of rascality required" by the statute.  See Ahern v. Scholtz, 85 F.3d 774, 799-800 (1st Cir. 1996) (reversing finding that defendant violated Chapter 93A because defendant's conduct in connection with alleged breach of contract could not support Chapter 93A liability).  To give rise to liability under Chapter 93A, plaintiffs must allege that defendants intentionally breached "in disregard of known contractual arrangements and intended to secure benefits for the breaching party," Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991), or that their conduct had an "extortionate quality that gives it the rancid flavor of unfairness."  Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992).

This Court recently distinguished between the exceptional contract-based claim that may also give rise to liability under Chapter 93A, and the standard-issue breach of contract pleading

that plaintiffs often but impermissibly attempt to re-plead under Section 11 and that should be

dismissed on the pleadings:

> [I]f it is apparent from the complaint that the underlying contract
> dispute involves nothing more than reasonably conflicting
> interpretations of a genuinely ambiguous contract term, a court
> might properly dismiss an associated Chapter 93A claim at the
> outset. . . .  Generalizing, if it clearly appears from the complaint
> and the contract itself that reasonable people might reach different
> conclusions regarding the merits of the underlying contract
> dispute, then, absent special circumstances, a court should at least
> give serious consideration to the early dismissal of the 93A count
> for failure to state a claim.

Citicorp N. Am., Inc. v. Ogden Martin Sys. of Haverhill, 8 F. Supp. 2d 72, 77 (D. Mass. 1998).

There are no "special circumstances" alleged here.  Nowhere does the Amended

Complaint allege that anyone acted in flagrant disregard of any known contractual right, much

less interpreted a contract in a manner that was "so unreasonable as to support a finding of bad

faith and unfairness."  See id. at 79.  To the contrary, at most plaintiffs allege that one of three

defendants (AFLIAC) breached an "implied" contractual term that plaintiffs admit is not written

in the Trail Agreement, and apparently was "known" only to plaintiffs.  Compare Anthony's Pier

Four, 411 Mass. at 473-74 (Chapter 93A claims legally sufficient where defendant used leverage

under contract to force financial concessions from plaintiff).

Nor do plaintiffs allege that the supposed breach of the never-specified contract was

"extortionate."  Atkinson, 33 Mass. App. Ct. at 226.  The contract was "voluntary."  See Ex. A,

at 1.  It could be terminated "at any time."  See id. § VII, at 11.  And it never required any

defendant to disclose that a "substantial downturn in the stock market" could have "material

adverse consequences."  Compare Am. Compl. ¶ 62(2), with Ex. A.  Indeed, plaintiffs could not

possibly characterize Allmerica's closure of its life insurance and annuity operations two years

later as "rancid" or "rascality" because plaintiffs themselves allege that the Company did so to

-14-

avert a financial crisis, and thereby allowed the rest of the business "to survive."[7]  See Am. Compl. ¶ 22.[8]

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss plaintiffs' Amended Complaint, with prejudice.

Respectfully submitted,

ALLMERICA FINANCIAL LIFE INSURANCE & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO., and ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Eric D. Levin
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 11, 2004

---

[7]    Although not pertinent to this Motion, by way of background Allmerica's supposedly "unfair and deceptive" business judgment to close a portion of its business did, in fact, preserve many other jobs and allowed the company to go from what plaintiffs allege was a $300 million loss in the third quarter of 2002 to a $32.4 million profit last quarter.  See also Health Plans, Inc. v. New York Life Ins. Co., 898 F. Supp. 941, 948 (D. Mass. 1995) ("implied covenant of good faith and fair dealing does not require (1) [defendant] to be a successful insurance company, and/or (2) that [defendant] take actions contrary to its own economic welfare in order to benefit [plaintiff]").

[8]    Plaintiffs' Chapter 93A claims against AFLI and AFC should be dismissed for the additional reason that there are no allegations that these defendants played an "active role" in the complained of conduct.  See Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324-25 (1983) (affirming dismissal of Chapter 93A claims).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on this 11th day of August, 2004 by <u>overnight mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
David M. Grossman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201


                                        <u>/s/ Eric D. Levin</u>
                                        Eric D. Levin