UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

---

DONALD P. SPEAKMAN, STEPHEN H.   §
WEDEL and MARK L. ROBARE,   §
Individually and On Behalf of All Others   §
Similarly Situated,   §
  §
      Plaintiffs,   §
  §   Civil Action No. 4:04-CV-40077-FDS
v.   §
  §
ALLMERICA FINANCIAL LIFE INS. &   §
ANNUITY CO., FIRST ALLMERICA   §
FINANCIAL LIFE INS. CO., and   §
ALLMERICA FINANCIAL CORP.   §
  §
      Defendants.   §

---

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Stephen L. Hubbard
Robert W. Biederman
Mass. Bar No. 562279
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

Nancy Freeman Gans
Mass. Bar No. 184540
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

**ATTORNEYS FOR PLAINTIFFS**
**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv, v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Nature of the Variable Annuities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.    The Variable Annuity Competitive Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Defendants' Publicly Represented Financial Status as of January 1, 2001. . . . . . . . . 5
    D.    The Trail Commission Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    Impetus for the Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Eligible Annuities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        3.    The Commission Structure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        4.    The DAC Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        5.    Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        6.    Plaintiffs' Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    Defendants' Fall 2002 Public Disclosures and the Precipitous Ratings Drop. . . . . . . 7
    F.    Defendants' Abandonment of the Variable Annuity and Life Insurance Market. . . . . 8
    G.    The Effect of Defendants' Ratings Drop and the Abandonment of the
        Variable Annuity Market on the Trail Commission Program. . . . . . . . . . . . . . . . . 9

Summary of the Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Breach of Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    B.    Mass. Gen. Laws Ann. Chapter 93A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    Plaintiffs State a Claim that Allmerica Life Breached the Trail Commission
        Program with Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        A.    Allmerica Life Breached the Implied Duty of Good Faith and
            Fair Dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            1.    Every Contract Has An Implied Duty of Good Faith and
                Fair Dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            2.    Allmerica Life has Violated the Implied Duty of Good Faith. . . . . . . 11
            3.    Defendants' Position That the Implied Duty Has Not Been
                Violated Because There Is No Provision in the Trail

Commission Program That Explicitly Requires Defendants' Ongoing Commitment to the Eligible Annuities is Untenable. . . . . . . 13

4.    Defendants' Position that the Implied Duty is Foreclosed By the Plain Meaning of the Trail Commission Program is Factually and Legally Wrong. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.    Alternatively, Allmerica Life has Breached an Implied Covenant of Maintaining Financial and Other Commitments to the Eligible Annuities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.    Plaintiffs State A Claim Under Mass. Gen. Laws Ann. Ch. 93A. . . . . . . . . . . . . . . 21

A.    Plaintiffs have not Alleged an Employment Relationship. . . . . . . . . . . . . . . 21

B.    The Predicate for the Ch. 93A Claim Primarily is that Defendants Made Material Misrepresentations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Accusoft Corp. v. Palo*, 237 F.3d 31 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . 15

*Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998) . . . . . 3

*Bolen v. Paragon Plastics, Inc.*, 754 F. Supp.221 (D. Mass. 1990) . . . . . . . 22

*Braintree Baptist Temple v. Holbrook Public Schools*,
616 F. Supp. 81 (D. Mass. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Citicorp North America, Inc. v. Ogden Martin Systems of
Haverhill, Inc.*, 8 F. Supp. 2d 72 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . 24

*DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102 . . . . . . . . . . . . . . . . . . 19

*Dunkin Donuts Inc. v. Gav-Stra Donuts, Inc.*, 139 F. Supp. 2d 147
(D. Mass 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Elias Brothers Rest. Inc. v. Acorn Enterprises, Inc.*, 831 F. Supp.920
(D. Mass. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995) . . . . . . . . . . . . . 16

*Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir.),
*cert. denied*, 521 U.S. 1120, 117 S.Ct. 2511 (1997), <u>abrogated on
other grounds</u> by *Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83, 118 S.Ct. 1003 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Ostler v. Codman Research Group, Inc.*, No. CIV. 98-356-JD,
1999 WL 1059684 (D.N.H. April 20, 1999). . . . . . . . . . . . . . . . . . . . . . . . . 22

*RCI Northeast Services Division v. Boston Edison Co.*, 822 F.2d 199
(1st Circ. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smart v. Gillette Company Long-Term Disability Plan*, 70 F.3d 173
(1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Trent Partners And Associates, Inc., v. Digital Equipment Corp.,*
120 F. Supp. 2d 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATE CASES

*Anthony's Pier Four, Inc., v. HBC Associates*, 411 Mass. 451,
583 N.E.2d 806 (Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bernard v. Cameron And Colby Co., Inc.*, 397 Mass. 320,
491 N.E.2d 604 (Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chokel v. Genzyme Corp.*, 17 Mass.L.Rptr. 83, 2003 WL 23016549
(Mass. Super. Ct. Nov. 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Fertility Center of New England Inc. v. Tufts Associates Health
Maintenance Organization, Inc.*, 2002 WL 1592775 (Mass. Super.
July 18, 2002), aff'd, 61 Mass.App.Ct. 1104 (2004). . . . . . . . . . . . . . . . . . 20

*Gram v. Liberty Mutual Insurance Co.*, 384 Mass. 659, 429 N.E.2d 21
(Mass. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318 (Mass. 2003) . . . . . . . . . . 14

*Larson v. Larson*, 37 Mass. App. Ct. 106, 636 N.E.2d 1365
(Mass. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 324-5,
446 N.E.2d 681 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nile v. Nile*, 432 Mass. 390, 734 N.E.2d 1153 (Mass. 2000) . . . . . . . . . . . 11

*Standard Register Co. v. Bolton-Emerson, Inc.*, 38 Mass. App. Ct. 545,
649 N.E.2d 791 (Mass. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Starr v. Fordham*, 420 Mass. 178, 648 N.E.2d 1261 (Mass. 1995) . . . . . 5, 18

*Stop & Shop v. Ganem*, 347 Mass. 697, 200 N.E.2d 248 (Mass. 1964)  . . . . 20

*Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 782 N.E.2d 1
(Mass. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Uno Restaurants, Inc v. Boston Kenmore Realty Corp.*,
441 Mass. 376, 805 N.E.2d 957 (Mass. 2004)  . . . . . . . . . . 11, 13, 14, 17, 18

*Vmark v. EMC Corp.*, 37 Mass. App. Ct. 610, 642 N.E.2d 587
(Mass. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL RULE

Fed. R. Civ. P. 8(e)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATE STATUTES

Mass. Gen. Laws Ann. Chapter 93A . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## MISCELLANEOUS

*Corbin On Contract*, Vol. 3, §568 at 331 (West 1960)  . . . . . . . . . . . . . . . . 21

Plaintiffs Donald P. Speakman ("Speakman"), Stephen H. Wedel ("Wedel") and Mark L. Robare ("Robare") make the following response to Defendants Allmerica Financial Life Ins. & Annuity Co. ("Allmerica Life"), First Allmerica Financial Life Ins. Co. ("First Allmerica") and Allmerica Financial Corp.'s ("Allmerica Financial") (and collectively "Allmerica" or "Defendants") Motion to Dismiss:

## Introduction

The First Amended Class Action Complaint ("Complaint") involves the breakdown of the Agent In-Force Annuity Trail Commission Program (the "Program") that Plaintiffs, and other similarly situated long-term agents, entered into with Allmerica Life in early 2001. The Program rewarded Plaintiffs and other successful agents with commissions for both the maintenance of certain variable annuities with Allmerica Life and the prospective sale of new annuity and life products. In return, Plaintiffs signed substantial 10-year note recourse obligations, that were to be offset by commissions, with the balance, which was expected to be a sizable amount, paid to Plaintiffs. The amounts of these obligations were based upon certain unrecovered deferred acquisition costs ("DAC Note") in

connection with the sale of the variable annuities that were in the Program. Outside the terms of the Program, Allmerica Life had no obligation to pay the commissions, and Plaintiffs had no obligation to reimburse Allmerica Life for the amounts set forth in the DAC Note.

The thrust of the Complaint is that Allmerica (and its predecessors), which had been in the life insurance business for 150 years, unilaterally and unexpectedly abandoned their life insurance and annuity business within 20 months of entering into the Program.  Plaintiffs allege that Defendants knew of the structural weaknesses that led to this decision to withdraw from the life and annuity market at the time of entering into the Program yet Defendants did not disclose those problems to Plaintiffs. Allmerica's abandonment entailed terminating all sales of life insurance and annuities, terminating all agents, substantially curtailing the services offered as to all existing life and annuity business, and refusing to update products that already had been sold to meet competitive marketplace requirements.

This abandonment has had catastrophic effects on the Program.  Annuitants (and Allmerica's competitors) recognized that Allmerica no longer was committed to servicing  and updating the annuities in the Program.  This abandonment greatly accelerated the pace of replacements, surrenders and account withdrawals in the Program.  In turn, this directly and materially impacted Plaintiffs' commissions, which are directly proportionate to the annuity account values in the Program.  The reduction in commissions materially impaired Plaintiffs' ability to meet the DAC Note obligations.  Even though Allmerica directly caused the Trail Commission Program meltdown, Allmerica continues to demand  that Plaintiffs perform their obligation under the DAC Notes.

Based upon the foregoing, Plaintiffs alleged two claims against Defendants – breach of contract and engaging in unfair and deceptive practices as defined in ch. 93A Sections 1,2 & 11.  The breach of

contract claim is supported by Massachusetts law that a defendant's voluntary and unexpected conduct that undermines the very essence of an agreement constitutes a breach of the implied duty of good faith. That is exactly what occurred here. Contrary to Defendants' assertion, there is no Program provision that remotely contemplates or permits Defendants to curtail material services and benefits to annuities in the Program while enforcing the DAC Note obligations. In fact, there are specific provisions that contemplate Allmerica Life remain in business during the pendency of the Program including that (i) certain Allmerica Life annuities, that are sold prospectively, are included in the Program; and (ii) the amount of commissions is based, in part, on ongoing future production requirements.

Contrary to Defendants' arguments, the ch. 93A claim is not based primarily upon the breach of contract. Rather, it is based upon Defendants' failing to disclose at the time of entering into the Program certain material facts regarding the structural weakness of the life and annuity business that imperiled the continuation of those lines. Misrepresentation claims are commonplace in ch. 93A actions involving unfair and deceptive practices. As to the Defendants' argument that Plaintiffs were employees, which allegedly precludes the ch. 93A claim, that naked assertion finds no support in the Complaint and should be disregarded.

## Statement of Facts

In connection with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiffs' allegations are accepted as true and any reasonable inferences from them must be drawn in favor of the Plaintiffs. *See*

-3-

*Beddall v. State Street Bank & Trust Co*., 137 F.3d 12, 16 (1ˢᵗ Cir. 1998) (cited in *Def. Mem.* at 3, n.3).[1]

      **A.     The Nature of the Variable Annuities**.

      Generally, the purchaser of Allmerica variable annuities can direct the money deposited into the annuity to be placed in separate accounts similar to mutual funds. *See Complaint*, ¶ 9(A). To prospective purchasers of these annuities, Allmerica touted the number and choices of investments and investment managers, as well as the use of an experienced investment consultant to assist in the selection and monitoring of institutional managers of the funds. *Id*., ¶ 9(B)-(C). Defendants provided a "guaranteed minimum death benefit"("GMDB") regardless of the performance of the funds in the annuity. *Id*., ¶¶1, 9(E). In connection with the sale of such annuities, there are certain deferred acquisition costs ("DAC") involving underwriting, commissions, and other expenses. *Id.,* ¶¶ 2, 10. During the initial years of the annuity (usually 9 years), there are surrender charges that offset DAC. *Id.,* ¶9(F). Under generally accepted accounting practices, DAC is considered an asset and amortized

---

[1] Defendants' abbreviated recitation of the facts is due to their curious statement that, "Significantly, however, virtually all of Plaintiffs' factual allegations are irrelevant to this motion because, as set forth below, Plaintiffs conspicuously fail to allege the essential elements of their claims." Memorandum In Support of Defendants' Motion to Dismiss ("Def. Mem.") at 2, n.1. A motion to dismiss for failure to state a claim must be denied if the facts are "sufficient to justify recovery on any cognizable theory of the case." *Beddall*, *id*. Defendants' statement reflects the inverse of the proper standard governing a motion to dismiss for failure to state a claim. The factual allegations are considered to determine whether they support "any cognizable theory" rather than, as Defendants' suggest, the allegations of the elements of the legal claim first are examined to determine whether they are adequately pled, and if not, then the Court should eschew an examination of the factual allegations. While Plaintiffs submit that they pled all the requisite elements of their claims, Plaintiffs will adhere to the long-standing methodology for evaluating claims under Fed. R. Civ. P. 12(b)(6) by stating the relevant facts and then indicating how they "justify recovery on any cognizable theory of the case."

in proportion to the annuity profits. *Id.*, ¶¶ 2, 10. However, if there is a sharp downturn in earnings, then DAC can be impaired and must be written off. *Id.*

**B.    The Variable Annuity Competitive Market.**

The variable annuity market is highly competitive. *Id.*, ¶¶ 1, 15, 23, 27. Maintenance of high ratings issued by rating agencies such as Standard & Poor's, Moody's and A.M. Best ("Rating Agencies") is essential to remain competitive. *Id.*, ¶¶ 1, 23. Along with the necessary ratings, life insurance and annuity companies compete in the marketplace by providing ongoing services to their annuitants, including updates to existing annuities in the form of riders. *Id.*, ¶ 27.

**C.    Defendants' Publicly Represented Financial Status as of January 1, 2001.**

Allmerica has been in the life insurance business for over 150 years. *Id.*, ¶ 1. By 2000, Allmerica's largest concentration was in variable annuities, which made Allmerica one of the largest sellers in the country. *Id.* As of late 2000, Defendants received high ratings from all the Rating Agencies. *Id.*, ¶¶ 15, 24.

**D.    The Trail Commission Program**

**1.    Impetus for the Program**

In late 2000, Allmerica Life approached Plaintiffs and other agents with a proposal to conserve the variable annuity business. Annuities sold by these agents prior to January 1, 1996, had little or no remaining surrender charges, but DAC still was being amortized. *Id.*, 15. Due to the highly competitive market, Defendants were concerned that these annuitants would take their business elsewhere, resulting in Allmerica Life having to realize as an expense the remaining unamortized DAC with no offsetting surrender charges. *Id.*

### 2.     Eligible Annuities

The variable annuities covered by the Program were those sold before January 1, 1996, and those internal exchanges or replacements occurring <u>after</u> January 1, 1996 ("Eligible Annuities") .  *Id.,* ¶ 17(A); and *Def. Mem.* Ex. A at 2, ¶ 2(a),(c).[2]

### 3.     The Commission Structure

There were two options for quarterly commissions: fixed or variable.  *See Complaint* at ¶ 17(B).  The variable commission ("Variable Commission Option") had a substantial range of .55% to 1.0% of the total account values of the Eligible Annuities, while the fixed commission is .70%.  *Id*. and *Def. Mem.* Ex. A at 6, ¶ IV.  If the account values decrease, the commissions are reduced proportionately.   The Variable Commission Option rate is dependent upon "persistency" and "productivity" factors.  *Id.,* ¶17(B)-(D). "Persistency" is an annual calculation based upon the net increase or decrease in the total surrenders or withdrawals from the total account values of the Eligible Annuities.  Higher persistency (low surrenders and withdrawals) results in a higher rate and lower persistency (high surrenders and withdrawals) results in a lower commission rate.  *Id.,* ¶ 17(C) and *Def. Mem*. at 8, ¶ IV. "Productivity" describes threshold future, <u>annual</u> production requirements in

---

[2] While Defendants attached the Agent In-Force Annuity Trail Commission Agreement entered into by Plaintiff Wedell, Plaintiffs do not concede this Agreement contains all the terms of the Trail Commission Program. Notably, this Agreement does not have a merger or integration provision. The question whether a document is an integrated agreement is one of fact. *See e.g., Starr v. Fordham*, 420 Mass. 178, 188, n. 8, 648 N.E.2d 1261, 1268, n. 8 (Mass. 1995).  Because this is a motion to dismiss, Plaintiffs consider it inappropriate at this time to submit any additional written documents that may contain additional terms.

connection with sales of <u>all</u> Allmerica Life's products with higher productivity corresponding to a higher variable rate, and lower productivity a lower rate. *Id.,* ¶ 17(D) and *Def. Mem.,* Ex. A at 6-7, ¶ IV. The Program further contemplated that if a participating agent left Allmerica Life, he could continue to achieve the "productivity" requirement by selling Defendants' life and annuity products through another agent or the so-called "Select Distribution Channel." *Id.,* ¶ 17(E).[3]

### 4.    The DAC Note

In return for the trail commissions, each participating agent had to repay the DAC associated with the Eligible Annuities that ranged from 4% to 4.5% of the aggregate premiums paid for the Eligible Annuities. *Id.,*17 (F) and *Def. Mem.* Ex. A at 5, ¶ IV. Agents were given the option to finance these amounts with a 10-year note payable on a quarterly basis with offsets from the commissions. *See Complaint,* ¶ 17(E)-(F) & *Def. Mem.* Ex. A at 10, ¶ V.

### 5.    Termination

If an agent was terminated for cause, his participation in the Program ended, and he no longer had any obligation to make payments on the DAC Note. *See Complaint,* ¶ 17(H). While Defendants repeatedly reference Allmerica Life's alleged right to terminate or amend the Program, they omit a material limitation on that power:

> AFLIAC reserves the right to terminate or amend the Program at any time. <u>Provided,</u> <u>however,</u> that any such amendment or termination shall not affect any In-Force Annuity Trail Commission Agreement in effect on the date of the amendment or termination.

---

[3]The "select" distribution network involved independent broker dealers and financial advisors that sold the products of Allmerica Life and other companies. *Id.,* ¶ 12.

> While the Program remains in effect a new Agreement, reflecting newly
> Eligible Annuity Contracts and the terms and conditions of the Program
> then in effect, will be offered to then eligible Agents.

*Def. Mem*. Ex. A at 11, ¶ VII. (Emphasis in the original).

### 6.    Plaintiffs' Participation

Each of the Plaintiffs entered into the Program and selected the Variable Commission Option. , ¶31 (Robare); ¶ 38 (Speakman) & ¶ 44 (Wedel).  Plaintiffs signed sizable  DAC Notes. *Id*., ¶ 32 (Robare-$832,318.39); ¶ 39 (Speakman-$3,138,457.48); &  ¶45 (Wedel-$1,178,538.46).

### E.    Defendants' Fall 2002 Public Disclosures and the Precipitous Ratings Drop.

During the Fall of 2002, Defendants disclosed that they had a tremendous exposure in connection with the performance of the GMDB feature of the variable annuity products. *Id.,*  ¶¶ 1, 4, 19.  This was due to a precipitous drop in the account values of the variable annuities, and Defendants' failure to properly hedge this risk through reinsurance and other means.  *Id*.  As a result of this exposure, Allmerica was forced to take a substantial charge to its income that materially affected its earnings.  *Id*.  At the same time, Allmerica faced a rapid acceleration of the amortization of DAC due to a material decline in the annuity account values. *Id.,* ¶¶ 2,4, 20.   As a direct result of these disclosures, the Rating Agencies substantially reduced the ratings of Allmerica to "marginal" and "questionable" when they previously had been "very strong" and "good" and "excellent." *Id.,* ¶ 24.

Plaintiffs allege that Allmerica was aware of these structural problems at the time of entering into the Program, but failed to disclose the problems to Plaintiffs.  *Id.,* ¶62, ¶33 (Robare), ¶ 40 (Speakman), ¶ 46 (Wedel).

### F.    Defendants' Abandonment of the Variable Annuity and Life Insurance Market.

Following these public disclosures, Allmerica unilaterally decided to abandon the life and annuity business. *Id.,* ¶¶ 4, 25. In October 2002, Allmerica announced it would not accept new applications for life insurance and annuity products and ceased retail sales of annuity and life insurance products. *Id.,* ¶ 22. Initially, Defendants terminated the outside distribution channels for their products, including the "Select" network, and concurrently terminated all the agency contracts including those of Plaintiffs. *Id.,* ¶ 25. Plaintiffs were given a "take or leave it" choice to sign new agreements with entirely different terms. *Id.* Plaintiff Robare refused, but Plaintiffs Speakman and Wedel signed the new agreements. *Id.* By October 2003, Defendants terminated all sales of its products, and unilaterally and without notice terminated its entire sales force including Plaintiffs Speakman and Wedel. *Id.,* ¶ 26. In 2004, Allmerica publicly acknowledged that its life and annuity business was not a priority and its singular goal was to become a world class regional property & casualty company. *Id.,* ¶ 27.

### G.     The Effect of Defendants' Ratings Drop and the Abandonment of the Variable Annuity Market on the Trail Commission Program.

The cessation of new business created a "closed" book of business. *Id.,* ¶ 22. In light of the withdrawal from the life and annuity business, servicing of the closed book that included the Eligible Annuities rapidly deteriorated. *Id.,* ¶ 28. The curtailment of services included firing the highly touted expert who selected and monitored fund managers. Also, Defendants reduced the number of funds available, failed to timely update account values, and allowed significant processing errors. *Id.* Additionally, Allmerica ceased providing updates to Eligible Annuities that competitive companies offer, such as guaranteed living benefit riders. *Id.*, ¶¶ 27, 59 (4).

As a direct result of the precipitous rating drop, abandonment of the life and annuity business, deterioration of servicing and failure to offer updates to the Eligible Annuities, Plaintiffs have suffered direct injury in connection with the Program.  *Id.*, ¶ 28.  For example, prior to the advent of these problems, Plaintiff Robare had achieved the highest Variable Commission Option rate due to his high persistency and productivity.  *Id.*, ¶ 35.  Following Defendants' unilateral decisions and actions which resulted in a cascading series of adverse consequences to Eligible Annuities, there was a dramatic increase in the withdrawal and surrenders of Robare's Eligible Annuities.  *Id*.  His account values were reduced from $32 million to $4.8 million, thereby drastically reducing his trail commissions.  *Id*.  This problem was compounded by the reduction of his Variable Commission Option rate from 1.07% to .55% due to the spike in withdrawals and surrenders, negatively impacting his "persistency."  *Id*.  The reduction was so severe that the trail commissions were inadequate to service the DAC Note.  *Id*.  Notwithstanding their unilateral actions that resulted in the reductions, Defendants continue to demand that Robare personally pay the amounts allegedly due under the DAC Note.  *Id.*, ¶ 36.  Plaintiffs Speakman and Wedell have experienced similar problems.  *Id.*, ¶ 42.

### Summary of the Causes of Action

A.     **Breach of Contract**.

In the First Cause of Action (¶¶55-60) of the Complaint, Plaintiffs allege that Allmerica Life breached the Trail Commission Program.[4]  The claim arises out of breach of implied duty of good faith

---

[4] Defendants correctly note that Plaintiffs include in certain allegations in this First Cause of Action references to First Allmerica, and the heading for this claim indicates that Plaintiffs seek to hold First Allmerica liable. To clarify matters, Plaintiffs seek relief in connection with the First Cause of Action only against Allmerica Life.

and fair dealing, and alternatively, implied provisions of the Program. Plaintiffs claim, among other things, that Allmerica Life's abandonment of the annuity business due to its own imprudent business decisions and failure to provide services and updates to the Eligible Annuities has had the effect of destroying or injuring the right of Plaintiffs to receive the fruits of the Program. Plaintiffs claim they have suffered damages arising out of this wrongful conduct.

**B.     Mass. Gen. Laws Ann. Chapter 93A**.

In the Second Cause of Action (¶¶61-63) of the Complaint, Plaintiffs allege that Defendants have violated M.G.L.A. ch. 93A, §§1, 2, & 11. The gravamen of these claims is that Defendants were aware of, but failed to disclose, the structural problems that ultimately resulted in the demise of its life and annuity business at the time of entering into the Program. Alternatively, Plaintiffs allege that the violation of the implied duties alleged in the First Cause of Action also is a violation of ch. 93A.

<strong>Argument</strong>

**I.     Plaintiffs State a Claim that Allmerica Life Breached the Trail Commission Program with Plaintiffs.**

    **A.     Allmerica Life Breached the Implied Duty of Good Faith and Fair Dealing.**

        **1.     Every Contract Has An Implied Duty of Good Faith and Fair Dealing.**

In Massachusetts, it has long been the law that:

> 'every contract implies good faith and fair dealing between the parties. The covenant requires 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .' There is no requirement that bad faith be shown.

-11-

*Nile v. Nile*, 432 Mass. 390, 398, 734 N.E.2d 1153, 1160 (Mass. 2000) (cit. omitted).    The

"purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed

expectations of the parties in their performance."    *Uno Restaurants, Inc v. Boston Kenmore Realty*

*Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (Mass. 2004).

### 2.    Allmerica Life has Violated the Implied Duty of Good Faith.

The thrust of the Program is that in return for the trail commissions, Plaintiffs obligated

themselves to repay certain DAC associated with those Annuities in the form of the DAC Note.  In

other words, the "fruits of the contract" that Plaintiffs were intended to receive are the trail

commissions. As the allegations in the Complaint make clear, Plaintiffs have been denied those benefits

as a result of Allmerica Life's conduct that has the direct effect of reducing those commissions.

There are two facets of that conduct that independently breached the implied duty of good faith:

Allmerica Life's unilateral and voluntary act of abandoning the annuity market, and alternatively, the

manner in which Allmerica Life has neglected the Eligible Annuities.[5]   First,   Allmerica Life's

abandonment of the annuity market was due to its own unilateral and voluntary decision arising out of its

imprudent conduct in not properly hedging the GMDB and DAC risks.  The decisions and conduct

predictably rattled the confidence of Ratings Agencies in the financial responsibility of Allmerica Life

---

[5] Contrary to Defendants' position Plaintiffs are not claiming that the implied duty entailed
Allmerica Life selling products into the "indeterminate future" or that there was an implied term creating
an "employment contract or guaranteed status as 'career agents.'" *Def. Mem.* at 8. Any implied duty is
coextensive with the duration of the Program which itself has a fixed 10-year term as to the DAC Note,
and an overall 20-year term. Moreover, Plaintiffs are not basing any breach upon any guaranteed
retention as agents.

while concurrently destroying the trust of annuitants, who, in many cases, sought a safer haven with more stable competitors. This "run on the bank" directly reduced the commissions due Plaintiffs.

Second, apart from whether Allmerica had an implied duty to remain in the annuity business, the manner in which it has withdrawn from that market has given rise to an implied breach. Specifically, Allmerica Life has ceased to properly service and offer updates to the Eligible Annuities. This conduct has resulted in owners surrendering or replacing their Eligible Annuities with more responsible companies, and concurrently, Plaintiffs suffering drastic reductions in their trail commissions.

Compounding the injury caused by Allmerica Life's misconduct is that while Plaintiffs have been denied the "fruits of the contract," Allmerica Life unilaterally has determined that it should not be denied any "fruits" in the form of DAC Note payments. As noted above, in the case of Plaintiff Robare, Allmerica Life has sought to require Robare to make the DAC Note payments which far exceed his commissions. This one-sided conduct on Allmerica Life's part alone to garner full payment of the DAC Note, while leaving Plaintiffs with the detriment, has had the effect of destroying "the intended and agreed expectations of the parties in their performance" of the Program.[6]

----

[6] In the terminology of *Uno*, there are specific provisions of the Program that reflect "the intended and agreed expectations of the parties" that Allmerica Life would remain in the retail annuity business or committed to maintaining the Eligible Annuities. First, as noted in the Statement of Facts, the Program specifically permits inclusion of certain post-January 1, 1996 annuities by replacements with Allmerica Life annuities. Second, the "productivity" factor in the Commission Variable Option Rate is based upon prospective (i.e., post-January 1, 2001) sales of life and annuity products of Defendants. Third, there is a reasonable expectation that to the extent the Program releases an agent from his DAC Note obligation if he is terminated "for cause" that if Allmerica Life terminates its annuity business, then Plaintiffs should be relieved of their DAC Note obligations. Finally, the entire thrust of the Program and the parties' expectations is that the owners of Eligible Annuities would retain their annuities with Allmerica Life, lest commissions would evaporate and there would be no funds to pay the DAC Notes. Achievement of the contemplated outcome necessarily required Allmerica Life to

-13-

3.    **Defendants' Position That the Implied Duty Has Not Been Violated Because There Is No Provision in the Trail Commission Program That Explicitly Requires Defendants' Ongoing Commitment to the Eligible Annuities is Untenable.**

Defendants' argue Plaintiffs' claim is untenable, because there is no provision in the Program that <u>explicitly</u> required Allmerica Life to properly service and update the Eligible Annuities or remain in business and to recognize these duties would impermissibly create new terms of the Program.    *See Def. Mem.* at 8-10.   An implied covenant of good faith and fair dealing necessarily is "implied" not "explicit".   The essential inquiry is whether the implied duty furthers the expectations of the parties as to the contract's performance, and not whether the contract contains an expressed reference to the implied duty.   *See Uno*, 441 Mass. at 385, 805 N.E.2d at 964.   For example, in *Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318 (Mass. 2003), the Court addressed an attempted modification of a separation agreement entered into in 1985 where the husband, who was in the military, assigned half of his military pension rights to his wife.   In 1997, without his wife's knowledge, the husband, who then had retired from the military, applied for and received VA disability benefits on the basis that he was 100% disabled due to post-traumatic stress disorder.   Pursuant to federal law, the military retirement benefit was reduced dollar for dollar for the disability benefit received.   While there was <u>no</u> provision in the separation agreement that prevented an application for disability by the husband with the effect of reducing his pension dollar for dollar, the Court found a violation of the covenant of good faith and fair dealing.   *See Krapf*, 329 Mass. at 106, 786 N.E.2d at 324 ("It [the retirement benefit] became

maintain their financial and other commitments to the Eligible Annuities.

-14-

worthless because of Defendant's unilateral and voluntary action . . . by converting his and Plaintiff's military retirement benefits to VA disability benefits for his own benefit . . . he denied the Plaintiff the fruits of her bargain."). As in *Krapf*, Allmerica Life has violated the duty of good faith by its "unilateral and voluntary action" to abandon the annuity business and the proper servicing and updating of the Eligible Annuities. In turn, these breaches

have caused a material decrease in the commissions due Plaintiffs, while Allmerica Life improperly has

vwhich Defendant has the apposite seeking to enforce full payment. In *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st. Cir. . . . . . . . . . . . . . . . . . . . . . . . .

2001) (*Def. Mem*. at 8), the Court held that there was no breach of the implied covenant because the claim occurred "before the settlement agreement was signed," and that the implied duty of good faith "applies only to conduct during performance of the contract, not to conduct occurring prior to the contract's existence, such as conduct affecting contract negotiations." *Accusoft, id*.

In *Chokel v. Genzyme Corp.*, 17 Mass.L.Rptr. 83, 2003 WL 23016549 at * 4 (Mass. Super. Ct. Nov. 12, 2003) (*Def. Mem*. at 8), there was an explicit provision of the Articles of Incorporation that prescribed in great detail how and at what price to effect the exchange of "tracking" stock for common stock in the company, including that the price for the exchange was based upon the

---

[7] See also *Larson v. Larson*, 37 Mass. App.Ct. 106, 636 N.E.2d 1365 (Mass. App. 1994) (Breach of implied duty of good faith found where separation agreement provided, in part, for payment by husband-surgeon of "thirty percent of annual gross earned income", and he voluntarily retired from practice at the age of 55 which resulted in depriving other spouse of her percentage of his earned income. While there was no provision requiring the husband to keep working, "that decision [voluntary retirement] deprived the wife of her reasonably anticipated fruits of the separation agreement and amounted to an 'evasion of the spirit of the bargain.'" *Larson*, 37 Mass. App. at 110, 563 N.E.2d at 1368 (cit. omitted).

20-day average of the tracking stock. *Chokel*, 2003 WL 23016549 at * 2. There was no question that Defendants had adhered to each of those requirements, but Plaintiffs claimed that the implied duty required Defendants to select a different 20-day period than they had used, because the average trading price of the tracking stock during that period allegedly was "depressed." *Id*. The Court rejected this claim, because Defendants had "acted precisely in accord with the provisions of the Articles – the contract." *Chokel*, 2003 WL 23016549 at * 4. In sharp contrast to *Chokel*, Defendants can point to no provision in the Program to which it adhered in abandoning the retail annuity market, or in failing to service and provide updates for the Eligible Annuities while continuing to enforce the DAC Notes.

Defendants further rely upon *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir.), *cert. denied*, 521 U.S. 1120, 117 S.Ct. 2511 (1997), abrogated on other grounds, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003 (1998) ) (*Def. Mem*. at 9) for the principle that the doctrine of *expressio unius est exclusio alterius* precludes the claim. This case has no application here. Significantly, *Pasteur* did not even involve a claim of a breach of an implied duty of good faith. Also, the Court of Appeals reviewed the trial court's ruling on the merits. The issue in *Pasteur* involved whether a patent licensing agreement permitted assignment of the license to the bankrupt reorganized licensee, whose stock was acquired by a third party that happened to be a competitor of the patent holder. Based upon the specific terms of the license, the Court inferred using, in part, the doctrine of *expressio unius* as an aid to construction that any change of control of the

-16-

licensee was not prohibited.  In sharp contrast to *Pasteur*, here there is no specific Program provision that precludes the implied duties alleged.[8]

Defendants further rely upon *Smart v. Gillette Company Long-Term Disability Plan*, 70 F. 3d 173 (1st Cir. 1995).  As with *Pasteur*, in *Gillette*, there was no claim involving a breach of an implied covenant of good faith and fair dealing; rather, it deals with the review on the merits after an evidentiary hearing of a claim under a severance agreement.  *Gillette* also applied the *expressio unius* doctrine, but it was in the context of a severance agreement that contained an "enumerated list" of specific benefits ("participation in employee health and dental plans, life insurance, a savings plan, and an employee stock ownership plan"), but expressly did not mention an additional one that Plaintiff sought (long term disability plan).  *Gillette*, 70 F. 3d at 179.  Incidentally, the long term disability benefit was included in a prior version of the severance offer that plaintiff had rejected. *Gillette*, 70 F.3d at 177.  As in *Pasteur*, the principle of *expressio unius* is inapplicable to Plaintiff's claims in the Complaint, particularly at the motion to dismiss stage, because there is no enumerated list of items in the Program relating to Allmerica Life's servicing and other commitments to the Eligible Annuities, from which one can infer some intention to negate other unenumerated obligations.

Defendants then refer to the opinion in *RCI Northeast Servs. Div. v. Boston Edison Co.*, 822 F.2d 199,(1st Circ. 1987) (*Def. Mem.*at 10).  As with *Pasteur* and *Gillette*, *Boston Edison* involved a review on the merits after a full evidentiary hearing, and did not involve the breach of an implied duty

---

[8] The principle of *expressio unisus* is a mere aid to construction and not an inflexible rule that courts have rejected when it does not further the intent of the parties. *See*, *e.g.*, *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995).

of good faith and fair dealing. Boston Edison argued in vain that the plain meaning of an agreement that it had solicited precluded recapture of certain increased insurance expenses where the contract explicitly stated that "insurance" was one of the "labor cost rates" that was "subject to escalation." *Boston Edison*, 822 F.2d at 203-4. *Boston Edison*, therefore, has no relevance to the facts alleged here.

Finally, Defendants rely upon *Uno* (*Def. Mem*. at 10). As with many of the cases upon which Defendants rely, the case involved appellate review after a full trial on the merits. *Uno* involved a claim for breach of an implied duty of good faith in connection with a Right of First Refusal under a lease. It turned on the <u>lack</u> of evidence proffered to establish that the allocation of the purchase offer (subject to the Right of First Refusal) was made in bad faith and in collusion between the buyer and seller. *See Uno*, 441 Mass. at 387-8, 805 N.E.2d at 965-6. That situation is irrelevant here, particularly at the motion to dismiss stage.

> **4.      Defendants' Position that the Implied Duty is Foreclosed By the Plain Meaning of the Trail Commission Program is Factually and Legally Wrong.**

Defendants next contend that "some of the proposed new duties are foreclosed by the plain meaning of the document they did sign." *Def. Mem*. at 10. Specifically, Defendants argue that the implied duties are foreclosed by the alleged provisions that the Program only applies to annuities issued prior to January 1, 1996, and that Allmerica Life allegedly retained the right to "terminate or amend the Program at any time." *Def. Mem*. at 10-11. This argument is factually and legally flawed.

<u>First</u>, the Program is not limited to Eligible Annuities issued prior to January 1, 1996. Rather, any pre-January 1, 1996 annuity that is internally replaced after that date by the same agent who sold

-18-

the original annuity is included. *See Def. Mem*. Ex. A at 2, ¶ 2(a),(c). Even if Defendants were

correct, their position is totally irrelevant. If the Defendants retained no duties to service or update the

Eligible Annuities, the agreement would be rendered absurd. *See*, *for example*, *Starr*, 420 Mass. at

192, 648 N.E.2d at 1270 ("'We have said that a contract should be construed to give it effect as a

rational business instrument and in a manner which will carry out the intent of the parties.'")(cit.

omitted). Thus, Defendants cannot seriously contend that there would be no breach of the Program if

they ceased to render any meaningful services in connection with the Eligible Annuities. Such a

breakdown in services undermines the entire business rationale of the Program.

Second, as to the termination provision, as noted in the Statement of Facts, Defendants have

omitted material language following the language that they quote. The "proviso" that they neglected to

mention explicitly states that any termination or amendment, "shall not affect any In-Force Annuity Trail

Commission Agreement in effect on the date of the amendment or termination." A reasonable

construction of this provision is that the Program contemplated that additional agents, who met the

various qualification requirements, could enroll after January 1, 2001. Allmerica Life retained the right

to terminate or amend the program as to such new enrollees, but such amendment or termination would

have no effect on the existing enrollees; namely "any In-Force Annuity Trail Commission Agreement in

effect on the date of the amendment or termination." Adopting Defendants' construction that they had

an unbridled right to terminate or amend would create an unenforceable, illusory contract devoid of

mutuality. *See, e.g. DeLuca v. Bear Stearns & Co.*, 175 F. Supp.2d 102, 112 ("However, a

promise that binds one to do nothing at all is illusory and cannot be consideration").

-19-

Apart from Defendants' misreading of this section, even if they were correct, Massachusetts law requires that Allmerica Life could not effect a termination or amendment that divested Plaintiffs of the right to commissions for services rendered prior to that date. *See Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 672, 429 N.E.2d 21, 29 (Mass. 1981)("We think that the obligation of good faith and fair dealing imposed on an employer requires that the employer be liable for the loss of compensation that is so clearly related to any employee's past service, when the employee is discharged with good cause."); *Trent Partners And Associates, Inc., v. Digital Equipment Corp.*, 120 F. Supp.2d 84, 101, n. 18 (*Gram* doctrine also applies to independent contractors). Accordingly, even if Allmerica Life's construction of the termination and amendment provision were correct, it cannot invoke those powers to divest Plaintiffs of commissions on annuities sold prior to the exercise of that right, lest they violate the implied duty of good faith.[9]

### B.    Alternatively, Allmerica Life has Breached an Implied Covenant of Maintaining Financial and Other Commitments to the Eligible Annuities.

Massachusetts courts will imply terms in a contract "if the instrument as a whole produces a conviction that a particular result was fixedly desired although not expressed by formal words.'" *Bernard v. Cameron And Colby Co., Inc.*, 397 Mass. 320, 322, 491 N.E.2d 604, 606 (Mass.

---

[9] Defendants' cited cases are inapposite. In *Dunkin Donuts Inc. v. Gav-Stra Donuts, Inc.*, 139 F. Supp.2d 147 (D. Mass 2001) and *Fertility Center of New England Inc. v. Tufts Associates Health Maintenance Organization, Inc.*, 2002 WL 1592775 (Mass. Super. July 18, 2002), aff'd, 61 Mass.App.Ct. 1104 (2004) (*Def. Mem.* at 11), the courts held that the particular manner in which Plaintiffs in those cases were seeking to invoke the implied duty of good faith was inconsistent with the terms of specific termination provisions in the agreements. Apart from the fact neither of these cases involved claims for commissions for past services, the termination provision in this case on its face is not inconsistent with the implied duties that Plaintiffs maintain arise in this case.

1986)(cit. omitted).[10]  The Massachusetts Supreme Judicial Court has recognized that an implied term

of "continued operations" could arise involving a tenant where there is a leasehold with a below market

fixed rate and a market percentage of profits rate.  *See Stop & Shop v. Ganem*, 347 Mass. 697,702,

200 N.E.2d 248, 251 (Mass. 1964).[11]  In such a circumstance the failure to recognize such an implied

term would undermine the parties' expectation that  the continued operation of the tenant's business

would generate sufficient profits so that a market amount of rent would be achieved. An analogous

doctrine applies here.  In this situation, the commissions are a form of a percentage of profits.  By

withdrawing its commitment to the Eligible Annuities, and all other life and annuity products that it had

issued, Allmerica has effectively curtailed Program commissions.  Under these circumstances, the Court

at this stage of the case cannot rule out the possibility that an implied covenant exists here that during

the existence of the Program it continue its financial and other commitment to the Eligible Annuities, lest

Plaintiffs be unable to achieve the expected level of commissions.[12]

---

[10] Defendants' reference to *Elias Bros. Rest. Inc. v. Acorn Enters., Inc*., 831 F. Supp.920
(D. Mass. 1993) (*Def. Mem*. at 7) is not instructive.  Apart from the fact that the issue in *Elias* was not
the existence of an implied covenant, the Court precluded Plaintiffs' contract claim that sought to create
additional contractual franchising obligations, because there were specific disclaimers in the agreement,
as well as an integration or merger clause, that precluded any additional terms. 831 F. Supp. at 927.
No such provisions are part of the Trail Commission Program.

[11] *See also Corbin On Contract*, Vol. 3, §568 at 331 (West 1960):

In any commercial agreement in which the compensation promised by one to the other is a
percentage of profits or receipts, or is a royalty on goods sold, manufactured or mined, there
will nearly always be found an implied promise of diligent and careful performance in good faith
and of forbearance to make performance impossible by going out of business or otherwise.

[12]As noted in n.6, there are numerous provisions of the Program that are consistent with the
creation of an expectation that Allmerica would maintain its financial and other commitments to the
Eligible Annuities.

## II.     Plaintiffs State A Claim Under Mass. Gen. Laws Ann. Ch. 93A.

### A.     Plaintiffs have not Alleged an Employment Relationship.

Defendants first contend that the ch. 93A claim fails because Plaintiffs were employees of Allmerica Life. *See Def. Mem*. at 12-13. While Plaintiffs maintain they are independent contractors, any challenge concerning Plaintiffs' employment status is a factual issue which cannot be decided on a Motion to Dismiss basis.[13] As independent contractors, they have standing to bring a ch. 93A claim. *See*, *e.g.*, *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp.221, 228 (D. Mass. 1990). While it is certainly premature to resolve at this point in time, the issue of whether Plaintiffs are independent contractors instead of employees under ch. 93A turns on the issue of who has "control over the individual [agents]." *Id.*[14]

---

[13] Defendants' bare assertion that Plaintiffs are employees should be disregarded. *See, e.g., Braintree Baptist Temple v. Holbrook Public Schools*, 616 F. Supp. 81, 84, n. 6 (D. Mass. 1984)("In deciding the motions to dismiss by the state Defendants, the Holbrook Defendants, and the East Longmeadow Defendants, I exclude from consideration all such matters outside the pleadings and accept as true the factual allegations contained in the complaint.").

[14] Defendants refer to a superseded pleading filed by certain Allmerica Life agents in Pennsylvania state court seeking relief, in part, under a Pennsylvania Wage Payment and Collection Law *See Def. Mem*. at 12, n. 6. Apparently, Defendants maintain this establishes that Plaintiffs are employees. This argument is flawed for numerous reasons. First, while one of Plaintiffs here (Wedel) was a named Plaintiff in that action, the other two Plaintiffs have never been Plaintiffs, and Wedel no longer is joined as a Plaintiff in the Pennsylvania action. Accordingly, whatever the import of these allegations in Pennsylvania, they never were made by Plaintiffs Robare and Speakman, and even as to Wedel, they are not binding in light of the amendment which removes him as a Plaintiff. *See, e.g., Ostler v. Codman Research Group, Inc.*, No. CIV. 98-356-JD, 1999 WL 1059684 at * 5 (D.N.H. April 20, 1999) ("Although statements of fact in a pleading are judicial admissions, once an amended complaint is filed, the original complaint is of no legal effect unless the original is specifically adopted or incorporated into the amended complaint."). Second, apart from the above, there is an alternative claim of breach of contract in the Pennsylvania action that is not dependent upon alleged employee status, which further precludes giving preclusive effect to any purported statement as to employee status. *See,*

**B.  The Predicate for the Ch. 93A Claim Primarily is that Defendants Made Material Misrepresentations.**

Defendants incorrectly argue that the gravamen of the ch. 93A claim is their breach of implied contractual obligations.  *See Def. Mem*. at 13.  Plaintiffs' ch. 93A claim is based upon Defendants' failure to disclose certain material facts at the time of entering into the Program concerning structural weaknesses that eventually resulted in the abandonment of the life and annuity business.  *See Complaint*, ¶62(1)-(3).  It is well-accepted that  misrepresentations are a basis for a ch. 93A claim. *See, e.g., Vmark v. EMC Corp*., 37 Mass. App. Ct. 610, 620, 642 N.E.2d 587, 595 (Mass. App. 1994).  Because Defendants do not challenge whether these allegations state a claim, Plaintiffs have stated a ch. 93A claim.[15]

---

Fed. R. Civ. P. 8(e)(2) (permitting alternative or hypothetical allegations).  <u>Third</u>, while Defendants have not filed a responsive pleading to the Pennsylvania complaint (other than seeking to transfer venue to this Court), it is likely that they will deny that the Pennsylvania  Plaintiffs were employees under the Pennsylvania Wage Payment and Collection Law.

[15] While not challenging the adequacy of these allegations, Defendants argue that Plaintiffs fail to state a claim as to Defendants Allmerica Finance and First Allmerica on the basis that "there are no allegations that these Defendants played an 'active role' in the complained of conduct."*Def. Mem*. at 15, n. 8 (citing *Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 324-5, 446 N.E.2d 681 (1983)).  In *Nei* and other cases hold, there is no requirement of "privity" for a ch. 93A claim. *See, Nei*, 446 N.E.2d at 684 ("Although we recognize that there is no requirement of privity of contract . . ."); *Standard Register Co. v. Bolton-Emerson, Inc*., 38 Mass. App. Ct. 545, 551, 649 N.E.2d 791, 795 (Mass. App. 1995) ("Likewise, privity is not required to maintain a nonwarranty-based action under 93A, i.e., one based on fraud, so long as the parties are engaged in more than a minor or insignificant business relationship."). In the instant case, Plaintiffs have alleged that Defendants operated as an entire business enterprise (*Complaint*,¶ 8) and that the non-disclosures involving the structural weaknesses were the result of Defendants' collective decisions (*Complaint*, ¶¶10,19, 20, 21, 22,25, 26,27).  In contrast to the instant case, in *Nei* the Court upheld the dismissal of the ch. 93A claim against a land surveyor  based upon the fact that the report that the surveyor had prepared did not contain any misstatements and "was accurate." *Nei*, 446 N.E.2d at 684. Finally, Plaintiffs, who were long-time career agents dealt with Defendants on "more than a minor or insignificant business

Plaintiffs allege the breach of implied duties as an additional and independent basis for ch. 93A liability. *See Complaint*, ¶62(4). It is well accepted that a breach of the implied duty of good faith and fair dealing can form the basis for a ch. 93A claim. *See, e.g., Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 179, 782 N.E.2d 1, 6 (Mass. App. 2003). As Defendants' acknowledge, the standard set forth by the Massachusetts Supreme Judicial Court where such claim forms the predicate for a ch. 93A claim is whether Defendants' conduct is "'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party." *Anthony's Pier Four, Inc., v. HBC Assocs.*, 411 Mass. 451, 457, 583 N.E.2d 806, 821 (Mass. 1991)(cit. omitted) (*Def. Mem*. at 13). As Defendants' own authority states, "Not surprisingly, the line that separates 'mere breaches of contract' from breaches that constitute unfair acts or practices in violation of Chapter 93A is an elusive one." *Citicorp North America, Inc. v. Ogden Martin Systems of Haverhill, Inc.*, 8 F. Supp.2d 72, 76 (D. Mass. 1998) (*Def. Mem*. at 14).

Defendants ask this Court to adopt the *Citicorp* test for evaluating a ch. 93A claim involving breaches of contract. *See Def. Mem*. at 14. The *Citicorp* test is readily satisfied here. Plaintiffs submit that Defendants' position that they are free to cease their commitments to the Eligible Annuities, resulting in the predictable result of accelerating withdrawals and surrenders and the inexorable result of reducing commissions, while concurrently seeking to enforce the DAC Notes is "sufficiently implausible to raise questions about whether it [Defendants' position] is asserted in good faith, which in turn preserves at least the possibility that [Defendants] will be found to have committed an unfair trade

relationship."

-24-

practice." *Citicorp*, 8 F. Supp.2d at 78.  Plaintiffs state an alternative and independent claim under ch.

93A based upon the breach of contract.

### Conclusion

Based upon the foregoing, Defendants' Motion to Dismiss should be denied.

Dated: September 29, 2004                             Respectfully submitted,

                                                      Stephen L. Hubbard
                                                      Robert W. Biederman
                                                      Mass. Bar No. 562279
                                                      **HUBBARD & BIEDERMAN, LLP**
                                                      1717 Main Street, Suite 4700
                                                      Dallas, Texas 75201
                                                      Telephone: (214) 857-6000
                                                      Facsimile: (214) 857-6001


                                                      **MOULTON & GANS, P.C.**


                                                      By: /s/ Nancy Freeman Gans
                                                      Nancy Freeman Gans, BBO No. 184540
                                                      33 Broad Street, Suite 1100
                                                      Boston, Massachusetts 02109-4216
                                                      Telephone: (617) 369-7979
                                                      Facsimile: (617) 369-7980

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via hand delivery on this the29th day of September, 2004, to the following:

Andrea J. Robinson, Esq.
Jonathan A. Shapiro, Esq.
Eric D. Levin, Esq.
Brett R. Budzinski, Esq.
**WILMER CUTLER PICKERING**
  **HALE and DORR LLP**
60 State Street
Boston, MA 02109
(617) 526-5000 fax

**ATTORNEYS FOR ALL DEFENDANTS**

/s/ Nancy Freeman Gans
NANCY FREEMAN GANS