UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. &, ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP.,<br><br>Defendants. | Civil Action No. 4:04-cv-40077-FDS<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANTS' ANSWER TO FIRST AMENDED
### CLASS ACTION COMPLAINT AND COUNTERCLAIMS

Pursuant to Federal Rules of Civil Procedure 8, 12, and 13, Defendants Allmerica

Financial Life Insurance & Annuity Company ("AFLIAC"), First Allmerica Financial Life

Insurance Co. ("AFLI"), and Allmerica Financial Corp. ("AFC") (collectively, "Allmerica" or

"Defendants") hereby respond to the First Amended Class Action Complaint dated June 23, 2004

("Complaint") and assert their affirmative defenses and counterclaims.[1]

### **INTRODUCTION**

1.    Defendants admit that the Trail Program was initiated on or around January 1,

2001, that at various times Plaintiffs Donald P. Speakman, Stephen H. Wedel, and Mark L.

Robare were among the higher producing agents of AFLIAC, that AFLIAC sold life and annuity

---

[1]    To the extent the first unnumbered introductory paragraph and the headings in the Complaint purport to allege any basis for the claims made in the Complaint, Defendants deny those allegations.

products and its affiliates sold property and casualty policies, that at least one Defendant has been in business more than 150 years, that the market for variable annuities was competitive in the 1990s and early 2000s, that maintenance of high ratings from agencies such as Standard & Poor's and Moody's is among numerous factors that bear on an insurer's ability to maintain market share in the variable life insurance and annuity markets, that variable annuities differ from other products, and that AFLIAC marketed various variable annuities.  No response is required to the allegations of paragraph 1 that purport to summarize life insurance policies and annuities, which are contracts that speak for themselves, nor to Plaintiffs' characterization of their claims.  Defendants deny the remaining allegations contained in paragraph 1.

2.     Defendants admit that in the past agents typically were paid a one-time commission without any ongoing or "trail" commissions in connection with the sale of annuities, and that as a general matter in the past AFLIAC also was motivated to maintain the variable annuity business and to minimize surrenders of variable annuities.  To the extent paragraph 2 contains allegations that purport to characterize or interpret certain unidentified Generally Accepted Accounting Principles ("GAAP") or other accounting standards, those standards speak for themselves, and their application presents questions of law to which no response is required. To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations contained in paragraph 2.

3.     Defendants admit that the Trail Program was initiated on or around January 1, 2001.  To the extent that paragraph 3 contains allegations that purport to describe or construe the terms of the Trail Program, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required.  To the extent a response is required, Defendants deny those allegations.  To the extent paragraph 3 contains allegations of Plaintiffs'

understanding of the Trail Program, Defendants lack the knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations contained in paragraph 3.

4.      Defendants admit that AFLIAC withdrew from the sale of life and annuity products beginning in the fall of 2002, that there were reductions in personnel, and that some contract holders surrendered their annuities. To the extent paragraph 4 contains allegations as to what others expected or found surprising, Defendants lack the knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations contained in paragraph 4.

5.      To the extent paragraph 5 contains allegations that purport to describe or construe the terms of or assumptions incorporated into the Trail Program, those terms and assumptions are set forth in documents that speak for themselves, and therefore no response to those allegations is required. To the extent a response is required, Defendants deny those allegations. To the extent paragraph 5 contains allegations as to what others thought or believed, Defendants lack the knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent paragraph 5 contains allegations that purport to characterize or interpret certain unidentified GAAP or other accounting standards, those standards speak for themselves, and their application presents conclusions of law to which no response is required. To the extent a response is required, Defendants deny those allegations. To the extent paragraph 5 contains characterizations of Plaintiffs' claims and legal conclusions, no response to those allegations is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations contained in paragraph 5.

## JURISDICTION AND VENUE

6.      No response is required to the allegations contained in the first and last sentences of paragraph 6, which purport to state legal conclusions.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiffs' current residences.  The third sentence of paragraph 6 contains characterizations of Plaintiffs' claims to which no response is required.  Defendants admit that Plaintiffs have alleged that they have sustained damages in excess of $75,000, deny that Plaintiffs have sustained damages, and admit the remaining allegations contained in paragraph 6.

7.      Defendants admit that AFLIAC, AFLI, and AFC have their principal place of business in Worcester, Massachusetts and that certain of the events and acts pertinent to this dispute occurred in this District.  Defendants deny the remaining allegations contained in paragraph 7.

## FACTUAL ALLEGATIONS

### Background Facts

8.      Defendants admit the allegations contained in paragraph 8, except to the extent those allegations purport to summarize unspecified documents, which speak for themselves.

9.      To the extent paragraph 9 contains allegations that purport to describe or construe the terms of variable annuity contracts, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required.

A.      To the extent paragraph 9.A. purports to describe or construe the terms of unidentified variable annuity contracts, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required.  To the extent a response is required, Defendants deny those allegations.

B.     To the extent paragraph 9.B. purports to describe or construe documents, those documents speak for themselves, and therefore no response to those allegations is required. To the extent a response is required, Defendants deny those allegations.

C.     Defendants admit that Allmerica used and uses Rogers Casey, an experienced investment consultant. Defendants deny the remaining allegations contained in paragraph 9.C.

D.     To the extent paragraph 9.D. purports to describe or construe the terms of unidentified annuity contracts, those terms are set forth in documents that speak for themselves and therefore no response to those allegations is required.

E.     To the extent paragraph 9.E. purports to describe or construe the terms of unidentified annuity contracts, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required. To the extent a response is required, Defendants deny those allegations.

F.     To the extent paragraph 9.F. purports to describe or construe the terms of unidentified annuity contracts, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required. To the extent a response is required, Defendants deny those allegations.

10.     Defendants admit that Allmerica's financial statements are prepared in accordance with GAAP, and state that those documents speak for themselves. To the extent paragraph 10 contains allegations that purport to characterize or interpret certain unidentified GAAP or other accounting standards, those standards speak for themselves, and their application presents conclusions of law to which no response is required. To the extent a response is required, Defendants deny those allegations. To the extent paragraph 10 purports to describe or

construe the terms of unidentified variable annuity contracts, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required. Defendants deny the remaining allegations contained in paragraph 10.

11.    Defendants admit that life insurance companies are required to maintain surplus in accordance with regulatory requirements.  To the extent the allegations in paragraph 11 purport to summarize Defendants' financial affairs, no response is required because such matters are set forth in financial statements that speak for themselves.  Defendants deny the remaining allegations contained in paragraph 11.

12.    Defendants admit that until 2003, AFLIAC sold its life insurance and annuities through career agents, registered representatives of independent broker-dealers and financial advisers who also sold the products of other companies, and those affiliated with mutual fund companies.  Defendants deny the remaining allegations contained in paragraph 12.

13.    Defendants admit that commission arrangements varied over the years and that those arrangements are set forth in documents that speak for themselves.  To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 13.

14.    Defendants admit that AFLIAC provided office space and certain staff to Plaintiffs Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare prior to January 1, 2003, and at all times provided agents with information about the status of their clients' accounts to the extent necessary and appropriate for the agents to maintain their client relationships, and further admit that it also provided, and continues to provide, appropriate customer service.  Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Plaintiffs understood about the parties' respective responsibilities and obligations, what Plaintiffs understood about the relationship between agents and AFLIAC, and

the nature or degree of trust that agents allegedly reposed in AFLIAC.  Further responding, Defendants state that the relationship between Plaintiffs and Defendants is set forth in documents that speak for themselves.  Defendants deny the remaining allegations contained in paragraph 14.

15.     Defendants admit that in late 2000, AFLIAC and its agents communicated about variable annuities sold prior to January 1, 1996, that as a general matter those contracts had little or no remaining surrender charges but DAC was still being amortized, and that as of this time Allmerica received what it considered to be high ratings from ratings agencies.  To the extent paragraph 15 contains allegations that purport to characterize or interpret certain unidentified GAAP or other accounting standards, those standards speak for themselves, and their application presents questions of law to which no response is required.  Defendants deny the remaining allegations contained in paragraph 15.

16.     To the extent paragraph 16 contains allegations that purport to describe or construe the terms of the Trail Program, those terms are set forth in documents that speak for themselves.  To the extent a response is required, Defendants deny the allegations contained in paragraph 16.

17.     To the extent paragraph 17 purports to describe or construe the terms of the Trail Program, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required.  Defendants state that paragraph 17 does not accurately describe those terms, and deny the allegations accordingly.

18.     Defendants admit that the Trail Program went into effect on or about January 1, 2001.  Defendants further admit that they lived up to the terms of the Trail Agreement, deny that Plaintiffs lived up to the terms of the Trail Agreement, and given Plaintiffs' conduct deny that the Trail Program has functioned as designed.  To the extent paragraph 18 purports to describe or

construe the terms of the Trail Agreement, those terms are set forth in documents that speak for themselves, and therefore no response to those allegations is required.  Defendants deny the remaining allegations contained in paragraph 18.

19.    To the extent paragraph 19 contains allegations that purport to characterize or interpret certain unidentified GAAP or other accounting standards, those standards speak for themselves, and their application presents questions of law to which no response is required. Defendants admit that the gap between the GMDB and the amount of the account value of a variable annuity is referred to as "net amount of risk," and that when the account value falls below the GMDB, an insurance company has to make adequate provisions to assure payment of GMDB.  Defendants deny the remaining allegations contained in paragraph 19.

20.    Defendants admit that Allmerica filed financial statements on or about November 14, 2002; those financial statements speak for themselves, and therefore no response is required. Defendants deny the remaining allegations contained in paragraph 20.

21.    Defendants admit that in or about September 2002, Allmerica announced that it would reduce sales of its variable annuities and variable life insurance, that Allmerica's consolidated loss in the third quarter of 2002 was approximately $313 million, and that Allmerica's net income was approximately $31 million in the third quarter of 2001.  To the extent paragraph 21 contains allegations that purport to characterize or interpret certain unidentified GAAP or other accounting standards, those standards speak for themselves, and their application presents questions of law to which no response is required.  Defendants deny the remaining allegations contained in paragraph 21.

22.    Defendants admit that Allmerica announced its decisions to stop issuing new life insurance and annuity policies in or about October 2002 and that Allmerica affiliates continue to

sell property and casualty insurance.  Defendants deny the remaining allegations contained in paragraph 22.

23.     Defendants admit that the financial stability of a life insurance company may be reflected in, among other things, ratings assigned by rating agencies such as Standard & Poor's, Moody's and A.M. Best.  Defendants deny the remaining allegations contained in paragraph 23.

24.     To the extent paragraph 24 purports to describe or construe unidentified documents of rating agencies, those documents speak for themselves, and therefore no response to those allegations is required.  Defendants deny the remaining allegations contained in paragraph 24.

25.     Defendants admit that Allmerica eliminated the Select and Partners distribution channels and terminated career agent agreements by the end of 2002, which it had a right to do. Defendants admit that it offered agents the opportunity to execute new agreements, but to the extent paragraph 25 purports to construe or characterize those agreements, no response is required because those agreements speak for themselves.  Defendants admit that Mark L. Robare refused to sign a new agreement with Allmerica, and that (former) agents who did not sign a new agreement with Allmerica were required to leave Allmerica's offices.  Defendants deny the remaining allegations contained in paragraph 25.

26.     Defendants admit that in or about October 2003 Allmerica terminated its agent and broker sales force, and that the (former) agents were required to leave Allmerica's offices. Defendants deny the remaining allegations contained in paragraph 26.

27.     To the extent paragraph 27 contains allegations that purport to describe or construe Allmerica's 2004 Annual Statement, that document speaks for itself, and therefore no

response to those allegations is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations contained in paragraph 27.

28.    Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations that unidentified clients voiced concerns. Defendants deny the remaining allegations contained in paragraph 28.

29.    Defendants admit the allegations contained in paragraph 29, and further answering state that those adjustments were appropriate.

### Particular Facts Regarding Plaintiff Robare

30.    Defendants admit that Plaintiff Mark L. Robare was a career agent for AFLIAC and SMA Life Assurance Co. Defendants deny the remaining allegations contained in paragraph 30.

31.    Defendants admit that Robare signed the Trail Agreement, which was dated January 1, 2001, and state that the document speaks for itself.

32.    Defendants admit that Robare signed a Promissory Note in the principal amount of $823,390.90 plus interest.

33.    Defendants deny the allegations contained in paragraph 33.

34.    Defendants admit that Mark L. Robare did not sign the 2003 agreement and that he was terminated as an agent of AFLIAC. Defendants deny the remaining allegations contained in paragraph 34.

35.    Defendants admit that during 2001 and 2002 the persistency ratio for Robare's Eligible Annuity Contract was below 10%, that during this time period he was at the highest productivity level, that the account values for the Eligible Annuities that are part of Robare's Trail Program have decreased from $32.6 million to $3.9 million as of December 31, 2004, and that AFLIAC appropriately reduced Robare's commission percentage. Defendants further admit

that Robare's quarterly trail commissions are not sufficient to cover the quarterly payments due on his Promissory Note and that he is currently in default on his Promissory Note. Defendants deny the remaining allegations contained in paragraph 35.

36.    Defendants admit that there is a dispute between Robare and AFLIAC concerning the Promissory Note because he has defaulted on his obligations thereunder. Defendants deny the remaining allegations contained in paragraph 36.

**Particular Facts Regarding Plaintiff Speakman**

37.    Defendants admit that Plaintiff Donald P. Speakman was a career agent for AFLIAC and SMA Life Assurance Co. and that he was the number one producer for those companies for fifteen years. Defendants deny the remaining allegations contained in paragraph 37.

38.    Defendants admit that Speakman signed the Trail Agreement, which was dated January 1, 2001, and state that the document speaks for itself.

39.    Defendants admit that Speakman signed a Promissory Note in the principal amount of $3,124,744.19 plus interest.

40.    Defendants deny the allegations contained in paragraph 40.

41.    Defendants admit that Speakman signed a Broker's Agreement with AFLIAC and an Independent Contractor Agreement for Registered Representative with VeraVest Investments, Inc., and that both of these agreements were dated January 1, 2003. Defendants deny the remaining allegations contained in paragraph 41.

42.    Defendants deny the allegations contained in paragraph 42.

**Particular Facts Regarding Plaintiff Wedel**

43.    Defendants admit that Plaintiff Stephen H. Wedel was a career agent for AFLIAC and SMA Life Assurance Co. Defendants deny the remaining allegations in paragraph 43.

44.     Defendants admit that Wedel signed the Trail Agreement, which was dated January 1, 2001, and state that the document speaks for itself.

45.      Defendants admit that Wedel signed a Promissory Note in the principal amount of $1,178,538.46 plus interest.

46.     Defendants admit that Wedel signed a Broker's Agreement with AFLIAC and an Independent Contractor Agreement for Registered Representative with VeraVest Investments, Inc., and that both of these agreements were dated January 1, 2003. Defendants deny the remaining allegations contained in paragraph 46.

47.     Defendants state that paragraph 47 contains allegations that purport to describe or construe a document, which speaks for itself, and therefore no response to these allegations is required. Defendants deny the remaining allegations contained in paragraph 47.

## CLASS ACTION ALLEGATIONS

48.     Paragraph 48 contains characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Defendants deny those allegations.

49.     No response is required to the allegations contained in paragraph 49, which consist of legal conclusions. To the extent a response is required, Defendants deny those allegations.

50.     Defendants state that paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in paragraph 50.

51.     No response is required to the allegations contained in paragraph 51, which consist of legal conclusions. To the extent a response is required, Defendants deny those allegations.

52.     No response is required to the allegations contained in paragraph 52, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

53.     No response is required to the allegations contained in paragraph 53, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

54.     No response is required to the allegations contained in paragraph 54, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

## FIRST CAUSE OF ACTION

**Breach of Contract on Behalf of the 2002 Class and 2003 Class Against Allmerica Life and First Allmerica**

55.     Defendants repeat and incorporate herein their responses to paragraphs 1 through 54 as if fully set forth herein.

56.     No response is required to the allegations in paragraph 56, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

57.     No response is required to the allegations in paragraph 57, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

58.     No response is required to the allegations in paragraph 58, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

59.     No response is required to the allegations in paragraph 59, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

60.     No response is required to the allegations in paragraph 60, which consist of legal conclusions.  To the extent a response is required, Defendants deny those allegations.

## SECOND CAUSE OF ACTION

### Violations of M.G.L.A. 93A on Behalf of the 2002 Class and 2003 Class
### Against All Defendants

61.     Defendants repeat and incorporate herein their responses to paragraphs 1 through

60 as if fully set forth herein.

62.     No response is required to the allegations in paragraph 62, which consist of legal

conclusions.  To the extent a response is required, Defendants deny those allegations.

63.     No response is required to the allegations in paragraph 63, which consist of legal

conclusions.  To the extent a response is required, Defendants deny those allegations.

### JURY TRIAL DEMANDED

64.     Defendants demand a trial by jury.

### PRAYER FOR RELIEF

65.     Defendants deny that Plaintiffs are entitled to any relief.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs are estopped from asserting their claims by virtue of their own actions or

omissions.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims fail for lack of consideration.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs assumed the risk that their trail commissions would be insufficient to cover their Promissory Note obligations, and therefore, they may not recover under their claims, in whole or in part.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the statute of frauds.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their own breaches of contract.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of set-off.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the parol evidence rule.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the economic loss doctrine.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims cannot be maintained as a class action.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because there was no meeting of the minds between the parties.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims under M.G.L. ch. 93A are barred because the dispute arises in the context of the parties' employment relationship.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the business judgment rule.


Defendants reserve their right to assert any additional affirmative defenses which discovery hereafter may reveal to be appropriate.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Allmerica asserts the following counterclaims against Plaintiffs and Counterclaim Defendants Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare for breaches of contract and to recover amounts owed under Promissory Notes. These counterclaims also are asserted against members of the putative plaintiff classes to the extent that this Court certifies those classes, as alleged *infra*. (Plaintiffs Speakman, Wedel, Robare and members of those putative plaintiff classes are herein collectively referred to as "Counterclaim Defendants.")

### Jurisdiction

1.    AFLIAC and AFLI are incorporated in Massachusetts and have their principal places of business in Worcester, Massachusetts. AFC is incorporated in Delaware and has its principal place of business in Worcester, Massachusetts.

2.    Upon information and belief, Donald P. Speakman ("Speakman") is a citizen of Pennsylvania, Stephen H. Wedel ("Wedel") is a citizen of Missouri, and Mark L. Robare ("Robare") is a citizen of Texas.

3.    This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1332(a) as they are between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. The Court also has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a). Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a).

### Facts

4.    Counterclaim Defendants are former agents or brokers of AFLIAC and/or independent contractors affiliated with Allmerica affiliate, VeraVest Investments, Inc. ("VeraVest"). At all times relevant to these Counterclaims, the Counterclaim Defendants were

members of the National Association of Securities Dealers ("NASD") and were subject to NASD rules and regulations.

5.      On or about January 1, 2001, AFLIAC offered certain agents, including Counterclaim Defendants, the opportunity to participate in the Agent In-Force Trail Commission Program ("Trail Commission Program"). The Trail Commission Program allowed participants to receive ongoing "trail commissions" on in-force individual variable and fixed annuity contracts that the participants had sold prior to January 1, 1996 (the "Eligible Annuity Contracts").

6.      Each of the Counterclaim Defendants chose to participate in the Trail Commission Program and entered into a written agreement with AFLIAC entitled the "Agent In-Force Trail Commission Agreement" (hereinafter, "Trail Agreement").

7.      Prior to entering into the Trail Agreement in 2001, the Counterclaim Defendants already had received commissions from the sale of the Eligible Annuity Contracts (which were sold five or more years earlier) and were not entitled to receive any additional commissions for those earlier sales.

8.      Pursuant to the Trail Agreement, AFLIAC agreed to make trail commission payments to participants based on the account values of the Eligible Annuity Contracts. In exchange, the participants agreed to make an upfront payment to AFLIAC, which was calculated as a percentage of the upfront commissions that the participants already had received following the sale of the Eligible Annuity Contracts prior to January 1, 1996.

9.      AFLIAC offered participants the option of financing their upfront payment required under the Trail Agreement through a loan from AFLIAC. However, participants were

not required to finance that payment through AFLIAC and, in fact, one participant made the upfront payment required under the Trail Agreement without incurring a debt to AFLIAC.

10.     The Counterclaim Defendants elected to finance the upfront payment through a loan from AFLIAC and signed a Promissory Note requiring them to repay the loan in accordance with its terms.

11.     As set forth in the Trail Agreement, the parties executed the Trail Agreement to minimize the surrender of Eligible Annuity Contracts, *i.e.*, to "maintain[] the persistency of [AFLIAC's] variable and fixed annuity block of business."  Trail Agreement at 1.

12.     Accordingly, the Trail Agreement expressly and impliedly required the parties to use their best efforts to maintain the persistency of the Eligible Annuity Contracts.  Conversely, the Trail Agreement prohibited (impliedly, if not expressly) participants from unnecessarily encouraging their clients to surrender Eligible Annuity Contracts, and AFLIAC reasonably understood that participants would not take such action.

13.     Counterclaim Defendants also entered into other contracts with AFLIAC and VeraVest, including the "Career Agent Agreement" and, with respect to Counterclaim Defendants Speakman and Wedel, also the "Broker's Agreement," and the "Independent Contractor Agreement For Registered Representative."  (Together with the Trail Agreement, these contracts are referred to collectively as the "Allmerica Contracts.")

14.     Collectively, the Allmerica Contracts permitted Allmerica to set-off commissions against any amounts owed by Counterclaim Defendants to Allmerica or its affiliates, prohibited Counterclaim Defendants from engaging in any activity that was not in the best interests of Allmerica or its affiliates, and required that Counterclaim Defendants comply with NASD rules and regulations and Allmerica policies.

15.    Upon information and belief, Counterclaim Defendants have violated the Allmerica Contracts, *inter alia*, by encouraging clients unnecessarily to surrender and/or replace the Eligible Annuity Contracts (including, for example, where such surrenders and/or replacements may not have been suitable or appropriate for the client); by taking actions to the detriment of Allmerica and its affiliates; by failing to comply with NASD rules and regulations and Allmerica policies; and with respect to Robare and certain members of the putative class by defaulting on their obligations under the Promissory Notes they signed.

### Additional Allegations as to Robare

16.    Pursuant to the Trail Agreement and as a condition of participating in the Trail Commission Program, on February 1, 2001, Robare agreed to make an upfront payment of $823,390.90, which amount was a portion of the commissions he previously received from his sale of Eligible Annuity Contracts prior to January 1, 1996.

17.    Robare elected to finance his upfront payment through a loan from AFLIAC. Robare signed a Promissory Note on February 1, 2001, as amended on March 2, 2001, promising to repay this amount.

18.    Pursuant to the terms of the Promissory Note, Robare agreed to make quarterly payments of $28,795.70 to AFLIAC over a ten-year period.  However, Robare has failed to make those payments as required under the Promissory Note.

19.    Robare is currently in default on the Promissory Note and owes AFLIAC $112,245.58 under the Promissory Note.

### COUNT I

### Breach of Contract

20.    Allmerica repeats and realleges the allegations contained in paragraphs 1-19 of the Counterclaims as though fully set forth herein.

21.     Counterclaim Defendants entered into the Allmerica Contracts, as alleged *supra*.

22.     Counterclaim Defendants breached the terms of those contracts, as alleged *supra*.

23.     Allmerica has been damaged as a result of the Counterclaim Defendants' breaches and actions.

24.     This count also is asserted against members of the putative plaintiff classes to the extent that any such class is certified and includes those who, like the putative class representatives (Robare, Speakman, and Wedel), engaged in such improper conduct.  In the event that this Court certifies such a class, Allmerica will amend this counterclaim, if necessary, to conform its allegations to the Court's order on certification and evidence adduced during discovery.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

25.     Allmerica repeats and realleges the allegations contained in paragraphs 1-24 of the Counterclaims as though fully set forth herein.

26.     Counterclaim Defendants entered into the Allmerica Contracts, as alleged *supra*.

27.     Counterclaim Defendants breached the covenant of good faith and fair dealing implied into the Allmerica Contracts by virtue of the conduct alleged *supra*.

28.     Allmerica has been damaged as a result of Counterclaim Defendants' breaches and actions.

29.     This count also is asserted against members of the putative plaintiff classes to the extent that any such class is certified and includes those who, like the putative class representatives (Robare, Speakman, and Wedel), engaged in such improper conduct.  In the event that this Court certifies such a class, Allmerica will amend this counterclaim, if necessary,

to conform its allegations to the Court's order on certification and evidence adduced during discovery.

## COUNT III

### Action on Promissory Note

30.    Allmerica repeats and realleges the allegations contained in paragraphs 1-29 of the Counterclaims as though fully set forth herein.

31.    On or about March 2, 2001, Robare executed and delivered to AFLIAC a Promissory Note whereby Robare promised to pay to AFLIAC $823,390.90, together with 7% interest per annum, through quarterly payments of $28,795.70.

32.    Robare is in default on the Promissory Note and currently owes AFLIAC $112,245.58.

33.    This count also is asserted against Speakman and Wedel to the extent that during the course of this litigation they default on the Promissory Notes that they signed. In such an event, Allmerica will amend this counterclaim as necessary to conform its allegations to reflect the specific amounts owed by Speakman and Wedel.

34.    This count also is asserted against members of the putative plaintiff classes to the extent that any such class is certified and includes those who, like Robare, are already in default on their Promissory Notes or during the course of the litigation default on their Promissory Notes. In the event that this Court certifies such a class, Allmerica will amend this counterclaim, if necessary, to conform its allegations to the Court's order on certification and evidence adduced during discovery.

WHEREFORE, the Defendants respectfully request that the Court:

(1)    Dismiss Plaintiffs' claims and enter judgment for Defendants on each Count of Plaintiffs' Complaint;

(2)    Enter judgment for Defendants and against Plaintiffs on each Count of Defendants' Counterclaims against Plaintiffs;

(3)    Award to Defendants damages or equitable relief, as appropriate based on the evidence;

(4)    Award to Defendants pre-judgment and post-judgment interest;

(5)    Award to Defendants their reasonable attorneys' fees, costs, and expenses; and

(6)    Award to Defendants whatever further and additional relief this Court deems fair and just.

Respectfully Submitted,

ALLMERICA FINANCIAL LIFE INSURANCE & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO., and ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Eric D. Levin
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  May 12, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on this 12th day of May 2005 on:

<u>By Fax</u>

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

<u>By Overnight Mail</u>

Stephen L. Hubbard
Robert W. Biederman
David M. Grossman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201


/s/ Eric D. Levin
Eric D. Levin