RECEIVED

# WILMER CUTLER PICKERING
## HALE AND DORR LLP

August 18, 2005

Eric D. Levin

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6879
+1 617 526 5000 fax
eric.levin@wilmerhale.com

**By Facsimile and Regular Mail**

Robert W. Biederman, Esq.
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

Re:    Donald Speakman, et al. v. Allmerica Financial Life Insurance and Annuity Co., et al.
       Civil Action No. 4:04-CV-40077-FDS

Dear Rob:

I am writing to follow up on the unproductive conversations and e-mails we have exchanged over the last ten days in an effort to schedule depositions of the three named plaintiffs in this case.

As you know, we need to take these depositions in the narrow window of time after our receipt of plaintiffs' document production (which you have said will arrive by the last day of August) but before we need to file defendants' Opposition to the Motion for Class Certification on October 5th. Assuming we receive a complete document production at the end of August, we will need at least one week before we file our Opposition to obtain the deposition transcripts and digest the testimony. That means the depositions must take place between September 7th (Labor Day gets in the way) and September 27th (at the latest).

Unfortunately, plaintiffs have been inflexible to the extreme in scheduling these depositions. Starting with Mr. Speakman, you said that because he is a very busy person the *only* date he is available to testify is September 13th, and that he must be deposed in Pittsburgh. When we told you we were not available on the 13th but proposed other dates that week (the 12th and 15th in Boston or any weekend), you said that rather than checking with Mr. Speakman about those dates, we should find some other lawyer who could accommodate his schedule. It was only after unnecessary back-and-forth that you even agreed to ask Mr. Speakman if he was available on our proposed dates; after initially rejecting both dates, he finally agreed to the 12th, but again only if we would come to Pittsburgh.

Plaintiffs Robare and Wedel have been somewhat more flexible on dates, but unyielding on venue. Apparently, they are available on September 21, 23, 27, 28, and 29, but will only testify in Houston and St. Louis. For reasons that have never been clear, plaintiffs will not schedule the requested out-of-town depositions on consecutive days (meaning that we not only would have to travel, but would have a dead day in the middle).

**EXHIBIT**



A

Robert W. Biederman, Esq.
August 18, 2005
Page 2

We have tried to be flexible. We proposed that the parties compromise (on both dates and location) so that everyone shares the inconvenience. Plaintiffs, however, have refused to meet in the middle, and refused to even entertain a modest extension of the briefing schedule so we could create more options for everyone. You have not helped resolve the problem with the repeated assertion that plaintiffs are busy and that we work for a large law firm. We also disagree that class action plaintiffs are somehow entitled to be deposed where they reside. Although as a courtesy we again offer to split the difference so not all of your clients need to get on a plane, the law seems clear that plaintiffs who sue in Massachusetts should expect to be deposed in Massachusetts.[1]

Mr. Speakman's unwillingness to compromise -- refusing to entertain any date after September 15th, and agreeing to the 12th only if it is in Pittsburgh -- is particularly unacceptable. If he cannot invest the time to appear for a deposition in Massachusetts, he should not have elected to file a lawsuit in Massachusetts, and certainly should not have assumed the additional responsibilities as a lead plaintiff representing a putative class. The same is true for Messrs. Robare and Wedel.

Given the accelerated schedule, we unfortunately cannot waste any more time debating the calendar, which given the history is unlikely to make any difference. Lacking a more collegial alternative, I enclose a Notice of Mr. Speakman's Deposition for 9:00 a.m. on September 12th in Boston, which was the date he said he was available. (If he prefers not to travel on Sunday, I believe there is an early flight and if not, we can start the deposition later.) I also enclose deposition notices for Messrs. Robare and Wedel for September 26th and 28th in Boston; the 28th is uncomfortably close to the October 5th due date for our Opposition, but you said you did not want consecutive dates. We remain willing to consider traveling to Houston and St. Louis for those depositions, but they would need to be on consecutive dates (e.g., the 26th and 27th).

Finally, we are noticing these depositions in the belief that your document production will be comprehensive, such that we can prepare fully for them. If that assumption is incorrect, please understand that we will need to extend the briefing schedule by whatever period of time it takes for defendants to have a fair opportunity to review the discoverable material and prepare to and depose your clients in a non-chaotic manner.

---

[1]        The law governing the location of depositions is clear that a plaintiff must make himself or herself available for a deposition in the forum where he or she chooses to file suit. See, e.g., 8A Wright, Miller, & Marcus, Federal Practical Procedure § 2112 (1994) ("As a normal rule plaintiff will be required to make himself or herself available for examination in the district in which suit was brought"); In re Good Hope Indus., 14 B.R. 942 (Bankr. D. Mass. 1981) (where debtor filed a bankruptcy proceeding in Massachusetts, court rejected debtor's motion for protective order to allow him to avoid traveling to Massachusetts to be deposed by creditor in the proceeding); Prozina Shipping Co. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998) (district court rejected foreign plaintiff's attempt to avoid deposition in United States -- "Having chose to bring actions in United States fora, Prozina cannot now argue that it would be too burdensome for it to appear for discovery here"). Accordingly, we do not believe that it is fair or appropriate for any of the named plaintiffs (who are each located in different cities across the country) to refuse to make themselves available for a deposition in Massachusetts, the forum where they chose to file suit.

Robert W. Biederman, Esq.
August 18, 2005
Page 3

Very truly yours,

Eric D. Levin

EDL:edl
Enclosures

cc:     Nancy Freeman Gans, Esq. (by regular mail)



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | Civil Action No. 4:04-cv-40077-FDS |
| v. | ) ) | |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., | ) ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) ) | |

## NOTICE OF DEPOSITION OF MARK L. ROBARE

TO:   Stephen L. Hubbard, Esq.
      Robert W. Biederman, Esq.
      Hubbard & Biederman, LLP
      1717 Main Street, Suite 4700
      Dallas, TX 75201

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30,

Defendants and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity

Company, First Allmerica Financial Life Insurance Company, and Allmerica Financial

Corporation (collectively, the "Allmerica Defendants") will take the deposition by oral

examination of Plaintiff and Counterclaim Defendant Mark L. Robare commencing at 9:00 a.m.

on Monday, September 26, 2005, at the offices of Wilmer Cutler Pickering Hale and Dorr LLP,

60 State Street, Boston, MA 02109.

- 1 -

The deposition shall be recorded by stenographic means before a Notary Public or other officer authorized by law to administer oaths. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary.

You are invited to cross-examine.

ALLMERICA FINANCIAL LIFE INSURANCE &
ANNUITY CO., FIRST ALLMERICA
FINANCIAL LIFE INSURANCE CO., and
ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Eric D. Levin
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 18th day of August, 2005 by facsimile and regular mail on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s/ Eric D. Levin
Eric D. Levin

RECEIVED
AUG 09 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | Civil Action No. 4:04-cv-40077-FDS |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., | ) ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) ) | |

## <u>NOTICE OF DEPOSITION OF DONALD P. SPEAKMAN</u>

TO:    Stephen L. Hubbard, Esq.
       Robert W. Biederman, Esq.
       Hubbard & Biederman, LLP
       1717 Main Street, Suite 4700
       Dallas, TX 75201

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30,

Defendants and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity

Company, First Allmerica Financial Life Insurance Company, and Allmerica Financial

Corporation (collectively, the "Allmerica Defendants") will take the deposition by oral

examination of Plaintiff and Counterclaim Defendant Donald P. Speakman commencing at 9:00

a.m. on Monday, September 12, 2005, at the offices of Wilmer Cutler Pickering Hale and Dorr

LLP, 60 State Street, Boston, MA 02109.

- 1 -

The deposition shall be recorded by stenographic means before a Notary Public or other officer authorized by law to administer oaths. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary.

You are invited to cross-examine.

<div style="margin-left:40%;">

ALLMERICA FINANCIAL LIFE INSURANCE &
ANNUITY CO., FIRST ALLMERICA
FINANCIAL LIFE INSURANCE CO., and
ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Eric D. Levin

Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

</div>

Dated: August 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 18th day of August, 2005 by <u>facsimile and regular mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

<u>/s/ Eric D. Levin</u>
Eric D. Levin

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

## <u>NOTICE OF DEPOSITION OF STEPHEN H. WEDEL</u>

TO:    Stephen L. Hubbard, Esq.
Robert W. Biederman, Esq.
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30,

Defendants and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity

Company, First Allmerica Financial Life Insurance Company, and Allmerica Financial

Corporation (collectively, the "Allmerica Defendants") will take the deposition by oral

examination of Plaintiff and Counterclaim Defendant Stephen H. Wedel commencing at 9:00

a.m. on Wednesday, September 28, 2005, at the offices of Wilmer Cutler Pickering Hale and

Dorr LLP, 60 State Street, Boston, MA 02109.

- 1 -

The deposition shall be recorded by stenographic means before a Notary Public or other officer authorized by law to administer oaths. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary.

You are invited to cross-examine.

ALLMERICA FINANCIAL LIFE INSURANCE &
ANNUITY CO., FIRST ALLMERICA
FINANCIAL LIFE INSURANCE CO., and
ALLMERICA FINANCIAL CORP.

By their attorneys,


/s/ Eric D. Levin
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 18, 2005

-2-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on this 18th day of August, 2005 by <u>facsimile and regular mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s/ Eric D. Levin_____
Eric D. Levin

# HUBBARD & BIEDERMAN, L.L.P.

ATTORNEYS AT LAW

*A Texas Registered Limited Liability Partnership*

1717 Main Street
Suite 4700
Dallas, Texas 75201

Telephone: 214-857-6000
Facsimile: 214-857-6001
www.hblawfirm.com

August 19, 2005

Eric D. Levin                                      **VIA FACSIMILE 617-526-5000**
WILMER CUTLER PICKERING
 HALE and DORR LLP
60 State Street
Boston, MA 02109

Re:   **Donald P. Speakman, Stephen H. Wedel and Mark L. Robare v.
      Allmerica Financial Life Ins. & Annuity Co., et al.; 4:04-cv-40077-FDS**

Dear Rick:

We were taken aback by the tone and substance of your letter. The e-mails and discussions that we have had belie many of the statements that you make.

You indicate that these depositions are essential for Defendants' Response to Plaintiffs' Motion for Class Certification. You further indicate that if a particular Plaintiff does not produce the documents that are sought by Defendants' First Request for Production by September 2, 2005, then Defendants will not take his deposition until all the documents are produced, and Defendants will seek to continue the Motion for Class Certification.

As an initial matter, we need to discuss the timing and scope of Defendants' First Request for Production in light of the professed purpose of the depositions to oppose the pending Motion for Class Certification. Inexplicably, Defendants chose not to serve their First Set of Request for Production until July 27, 2005 – 26 days after the first date they could have under the terms of the Scheduling Order.[1] By delaying such service and then

---

[1] Defendants' professed reason for the delay in serving their Request for Production was that they wanted to wait until they had seen the Motion for Class Certification, which was served on July 22nd. But a review of Defendants' First Request for Production reveals that it is not tailored to address the Motion for Class Certification. Rather, the Requests all seek documents relating to the merits of Plaintiffs' First Amended Complaint, and Defendants' Affirmative Defenses and Counterclaims, which were filed on May 12, 2005.

EXHIBIT



Eric D. Levin
Page 2
August 19, 2005

linking the timing of the depositions to the receipt of all the documents, Defendants have created the circumstances that have compressed their time to respond to the Motion for Class Certification.  We understand that delay is Defendants' primary objective.

As to the timing of Plaintiffs' production of documents in response to Defendants' First Request for Production, it is ironic that Defendants would demand such documents must be received by September 2nd, lest they will seek to postpone depositions and continue the Motion for Class Certification. Plaintiffs served their First Request for Production on July 1st.  Due to your repeated requests for extensions, to which Plaintiffs agreed, Defendants' Response – not the documents – is to be received on Friday, August 19.  While demanding that Plaintiffs produce all their documents by September 2nd, Defendants have indicated they can give <u>no</u> assurance when their documents will be produced. This lack of reciprocity speaks for itself.  Defendants want everything but are unwilling to commit to anything.

Apart from the double standard that Defendants seek to impose, as a result of tremendous efforts by each of the Plaintiffs, we expect to make available all documents, to which there are no objections, by September 2nd in the case of Messrs. Wedel and Robare.  As to Mr. Speakman, his office also has expended a tremendous amount of time and effort gathering documents.   While we believe a substantial number of Mr. Speakman's documents will be available by September 2nd, we will not be able to produce all such documents by September 2nd due to the fact, as you are aware, that he had by far the largest amount of  business in the Trail Program.  Correspondingly, as you further are aware, he has a larger number of documents relating to replacements, which Defendants have requested.

In light of the extent of replacement materials as to Mr. Speakman, we repeatedly offered, for purposes of Mr. Speakman's deposition, to provide a sample of replacements so that the September 2nd production date could be achieved.  We based that reasonable request on two grounds that we have mentioned to you. <u>First</u>, during the seven (7) hour limit for the deposition, Defendants could not possibly inquire about every replacement of Mr. Speakman.   <u>Second</u>, because the Court is not going to resolve the merits of Defendants' Counterclaim in ruling on Plaintiffs' Motion for Class Certification, Defendants do not need every document regarding replacements prior to the deposition.  Again, we urge you to accept, for purposes of Mr. Speakman's deposition, a reasonable sample of replacements that Defendants may select that can be produced by September 2nd. Of course, Defendants already are aware of the identity of each replacement, because they received notice when such exchange occurred.  Moreover, to the extent you wish to reserve a portion of your seven hours of deposition time for a subsequent date, we would be willing to discuss such an accommodation.

Eric D. Levin
Page 3
August 19, 2005

As to the dates and location of depositions, we agree that Messrs. Robare and Wedel will be on consecutive days of September 26 & 27 in Houston and Pittsburgh, respectively. To accommodate this demand, we intend to use two teams of attorneys. As to Mr. Speakman, until we know whether you intend to proceed with his deposition on September 12[2], there is no point in further discussing the location. Incidentally, contrary to the statements in your letter, the e-mails that I sent reflect that we offered multiple dates for Mr. Speakman's depositions; namely, September 9, 12, & 13. Defendants rejected September 9 & 13 due to your position that only Jonathan Shapiro, who was the second of the four attorneys in your firm listed on the pleadings, could take that deposition.

Please call Steve and me to see whether we can resolve this matter.

Sincerely,

Robert W. Biederman

cc:    Stephen L. Hubbard

---

[2] Your discussion of the case law concerning the location of depositions is inapposite. There is a line of cases that holds that a deposition should be taken where a party resides when that place is a substantial distance from the forum where the lawsuit was filed. *See, e.g.*, *Metrex Research Corp. v. U.S.*, 151 F.R.D. 122, 125 (D. Colo. 1993). While there also is a line of cases holding that the location of a plaintiff's deposition generally should be where he has brought the suit, that proposition is qualified where plaintiff's choice of forum is practically restricted to that venue. *See, e.g.*, *Ellis Air Lines v. Bellanca Aircraft Corp.*, 17 F.R.D. 395, 396 ( D. Del. 1955); *Operative Plasterers & Cement Masons' International Assoc. Of U.S. & Cannada AFL-CIO v. Benjamin*, 144 F.R.D. 87, 91 (N.D. Ind. 1992). That is the case here. If Plaintiffs had brought three separate and identical class actions in three different fora, Defendants would have sought to consolidate the actions through an MDL in Massachusetts, and sharply criticized Plaintiffs for having brought the same action in multiple courts. The only proper venue under 28 U.S.C. §1391(a) for a lawsuit brought by the Plaintiffs, collectively, in one forum is Massachusetts, because that is where Defendants reside as well as where a substantial part of the claims arose. Conversely, the three Plaintiffs, collectively, could not have brought actions in Texas, Missouri, or Pennsylvania, because Defendants did not reside there, or a substantial part of the claims did not arise as to all of the Plaintiffs in any of those fora. Accordingly, the general rule of deposing the party where he resides applies.

# HUBBARD & BIEDERMAN, L.L.P.
## ATTORNEYS AT LAW
*A Texas Registered Limited Liability Partnership*

1717 Main Street
Suite 4700
Dallas, Texas 75201

Telephone: 214-857-6000
Facsimile: 214-857-6001
www.hbllawfirm.com

August 25, 2005

Eric D. Levin                                    **VIA FACSIMILE 617-526-5000**
WILMER CUTLER PICKERING
 HALE and DORR LLP
60 State Street
Boston, MA 02109

Re:    **Donald P. Speakman, Stephen H. Wedel and Mark L. Robare v.**
       **Allmerica Financial Life Ins. & Annuity Co., et al.; 4:04-cv-40077-FDS**

Dear Rick:

In your August 18th letter, you attached notices of depositions in Boston for each of our clients for September 12, 26 & 28 for Messrs. Speakman, Robare & Wedel, respectively. In the body of your letter, however, you indicated that you were amenable to taking Messrs. Robare's and Wedel's depositions on September 26 & 27 in Houston and St. Louis, respectively. In our letter dated August 19th, we agreed to those dates and locations for Messrs. Robare and Wedel. We further indicated in our August 19th letter that we expected to make available Messrs. Robare's and Wedel's documents, to which we had no objections, by Friday, September 2.

As to Mr. Speakman's deposition, while we concurred with the date of September 12, we are uncertain whether you still intend to take the deposition, and if so, the location of that deposition. As we indicated in the August 19th letter, due to the volume of materials requested in Defendants' First Request for Production to Mr. Speakman, we will be unable to make available the documents, to which we do not object, by September 2nd. Due to that situation, it is unclear whether you intend to take his deposition on September 12th. If you do intend to take the deposition on September 12th, we also need to know whether you are refusing to take the deposition in Pittsburgh, in which case, we may need to proceed with a Motion for Protective Order.

We look forward to your prompt response.

Sincerely,

Robert W. Biederman

cc:    Stephen L. Hubbard

EXHIBIT





Yahoo!  My Yahoo!  Mail

Search the Web

**YAHOO! FINANCE**  Sign In  New User? Sign Up

Finance Home - Help


PRNewswire

**Welcome [Sign In]**

To track stocks & more, Register

## Financial News

Enter symbol(s)        Basic         Get  Symbol Lookup

  

**Related Quote**

AFC 29-Aug 1:50pm (C)Yahoo!

```
42.0
41.5
41.0
40.5
40.0
39.5
    10am   12pm   2pm   4pm
```

AFC    41.06   -0.53   News

**View Detailed Quote**
Delayed 20 mins
Providers - Disclaimer

**Press Release**                    Source: Allmerica Financial Corporation

# Allmerica Financial Corporation Announces the Sale of its Run-Off Variable Life Insurance and Variable Annuity Business

Monday August 22, 4:06 pm ET

**Transaction Focuses Company Resources on its Property and Casualty Business**

WORCESTER, Mass., Aug. 22 /PRNewswire-FirstCall/ -- Allmerica Financial Corporation (NYSE: AFC - News) announced today that it has entered into a definitive agreement to sell its run-off variable life insurance and variable annuity business to The Goldman Sachs Group, Inc. In conjunction with this sale, AFC is seeking approval from the Massachusetts Division of Insurance for a dividend of $40 million from its remaining life business. Total cash proceeds from the sale and the dividend are projected to be approximately $385 million, approximately $70 million of which is expected to be deferred and paid over a three year period.

ADVERTISEMENT



The actual purchase price will be determined at closing, and is subject to changes in equity market levels, implied equity market volatility, interest rates and surrender activity. Additionally, the actual purchase price will be adjusted based on the actual surplus level of Allmerica Financial Life Insurance and Annuity Company (AFLIAC), the life insurance affiliate being sold, at closing. Allmerica expects to implement a hedge program that is intended to substantially protect the purchase price from movements in interest rates, equity market levels and implied equity market volatility through closing.

Up to $200 million of the proceeds are expected to be used to fund a share repurchase program commencing after the closing of the transaction. The remaining proceeds will be retained to meet certain corporate obligations and provide additional financial flexibility at the holding company.

"This transaction delivers on our strategy to monetize the value of our life business that has been in run-off since 2002, and enables us to apply even greater focus on the continued

**Related News Stories**

- Market Pulse: Katrina may cost insurers $12B-$26B, AIR Worldwide estimates - MarketWatch (1:41 pm)
- Katrina could cost insurers $10 billion to $25 billion - at MarketWatch (12:10 pm)
- The Hanover Insurance Company Prepared to Help Customers Affected By Hurricane Katrina - PR Newswire (10:47 am)
- Market Pulse: Irwin Financial names Marita Zuraitis to board - MarketWatch (Wed Aug 24)

More...

- By industry: Banking, Insurance

**Top Stories**

- Retail Gas Prices Set to Hit New Highs - AP (1:00 pm)
- 8 Ex-KPMG Execs Indicted, Co. to Pay Fine - AP (1:19 pm)
- Stocks Up As Katrina Torments Refineries - AP (1:24 pm)
- Katrina, Rising Oil Prices Hurt Airlines - AP (1:03 pm)

More...

- Most-emailed articles
- Most-viewed articles

EXHIBIT



growth of our property and casualty business," said Frederick H. Eppinger, president and chief executive officer of Allmerica Financial Corporation. "The sale will accelerate the release of capital from the Life Companies, and provide us with the financial flexibility to implement a share repurchase program. It will deliver immediate value to our shareholders, and will position us to continue to do so going forward."

The transaction will include the sale of Allmerica's primary life insurance company, AFLIAC, to Goldman Sachs. AFLIAC holds 94% of Allmerica's variable insurance and annuity business. In a related transaction, AFLIAC will reinsure the remaining 6% of Allmerica's variable business, held by an affiliate company, First Allmerica Financial Life Insurance Company (FAFLIC), in effect transferring the residual variable business to Goldman Sachs. In connection with these transactions, Allmerica Investment Trust (AIT) has entered into a reorganization agreement pursuant to which it will transfer the assets and liabilities of each of its funds to certain Goldman Sachs managed funds. Lastly, Goldman Sachs will purchase from Allmerica the AIT funds' current investment advisory company.

The transaction is expected to result in a net after tax loss on the sale that is projected to be approximately $400 million, primarily as the result of the write-down of non-cash deferred acquisition cost assets.

The sale of the variable insurance business to Goldman Sachs will not change the terms and conditions of policyholder contracts. AFLIAC will continue to be well capitalized and will benefit from a strong parent company in Goldman Sachs. The operations of AFLIAC will be outsourced to Security Benefit Life Insurance Company, a state-of-the-art insurance and financial services provider.

After the sale, Allmerica will no longer have exposure to variable annuity business with guaranteed minimum death benefit risk. It will continue to own FAFLIC, which holds various blocks of traditional life insurance businesses that are in run-off. FAFLIC will provide transition services to Goldman Sachs until the operations of AFLIAC can be transferred to Security Benefit. At the end of the transition period, which is expected to be in the fourth quarter of 2006, FAFLIC is projected to have statutory total adjusted capital of $175 million and certain tax benefits which are expected to be utilized over time to generate dividendable surplus to the holding company.

Allmerica expects the transactions to close on or after November 30, 2005. Closings of the transactions are subject to satisfaction of various conditions, including regulatory approvals from the Massachusetts Division of Insurance and the New York Department of Insurance, expiration of the Hart- Scott-Rodino waiting period, filings with the Securities and Exchange Commission with respect to the reorganization of the AIT funds, the accuracy of various representations and warranties and compliance with covenants and agreements, and to other provisions customary for transactions of this kind. In addition, Allmerica will indemnify Goldman Sachs for litigation, regulatory matters and other liabilities relating to the pre-closing activities of the business being transferred. The AIT fund reorganization requires fund shareholder approval.

Conference Call

Allmerica Financial Corporation will host a conference call to discuss this announcement on Tuesday, August 23rd at 10:00 a.m. Eastern time. A power point slide presentation will accompany our prepared remarks and has been posted on our website. Interested investors and others can listen to the call and access the presentation through Allmerica's web site, located at http://www.allmerica.com. Web-cast participants should go to the web site at least 15 minutes early to register, and install any necessary audio software. A re-broadcast of the conference call will be available on this web site two hours after the call.

Forward-Looking Statements

All statements in this release and in the above referenced conference call and power point slide presentation, other than statements of historical fact, are forward-looking statements, as

**Inside Yahoo! Finance**

**Today's Markets**

· Earnings Calendar
· Upgrades/Downgrades
· Most Actives
· Stock Screener

that term is defined in the Private Securities Litigation Reform Act of 1995. In addition to the risks and uncertainties noted in this release or in such conference call, there are certain factors that could cause actual results to differ materially from those anticipated by the press release, slide presentation and statements made. These include: (1) the successful consummation of the transactions with Goldman Sachs in a timely manner; (2) the various conditions to the consummation of such transactions being satisfied or waived without the imposition of material burdens or expenses; (3) the required regulatory approvals of the transactions being obtained in a timely manner without the imposition of any material restrictions or burdens, and regulatory approval for future dividend requests from FAFLIC; (4) the uncertainties as to the gross or net proceeds to be received by AFC, including the uncertainty as to the effects of the various purchase price adjustments and expenses incurred by AFC; (5) the shareholder approval of the AIT Fund reorganization; (6) the successful and timely execution of the anticipated repurchase program; (7) the ability to realize post-closing earnings for the property-casualty segment that are taxable and make FAFLIC's tax attributes valuable; (8) the ability to timely achieve overhead and other expense savings; (9) the ability of AFC and FAFLIC to perform the transitional services in connection with the transactions without incurring unexpected expenses and the completion of the transitional services within the projected time so that the company can realize projected cost savings; (10) the uncertainties of the purchase price hedge to effectively hedge the purchase price as currently estimated and at a cost consistent with expectations; (11) the impact of policyholder surrenders on the purchase price adjustment, which are not hedged, and the impact that this announcement or any financial strength rating actions triggered by this announcement could have on surrenders between the date hereof and the closing; (12) the impact of contingent liabilities, including litigation and regulatory matters, assumed by the holding company in connection with the transaction; (13) the ability to outsource the administration of the retained FAFLIC businesses at projected rates; (14) the statutory results of operations of the Life Companies segment until close, which will impact the statutory surplus of AFLIAC and consequently the ultimate purchase price; and (15) the future statutory operating results of FAFLIC, which will affect projected statutory adjusted capital.

Forward-looking statements are not guarantees of future performance, and actual results could well differ materially. Investors should consider these and other risks and uncertainties in our business that may affect future performance (including Life Companies operations) and that are discussed in readily available documents, including Allmerica's Annual Report on Form 10-K, quarterly reports on Form 8-K and other documents filed by Allmerica with the Securities and Exchange Commission and which are also available at http://www.allmerica.com under "Investor Relations."

Allmerica Financial Corporation is the holding company for a group of insurance companies headquartered in Worcester, Massachusetts.

```
Contact Information
 Investors:                       Media:
 Sujata Mutalik                   Michael F. Buckley
 E-mail:  smutalik@allmerica.com  E-mail:  mibuckley@allmerica.com
 1-508-855-3457                   1-508-855-3099
```

Source: Allmerica Financial Corporation

✉ Email Story     📢 Set News Alert     🖨 Print Story

Search News

Sponsor Results

Home Improvement Loans
Ameriquest helps you qualify for a home consolidation loan in your area even if you have bad credit. Refinance to get



# Allmerica Financial Corporation

## Sale of Variable Life and Annuity Business

**To be read only in conjunction with the conference call scheduled for August 23, 2005.**

EXHIBIT



E



# Forward-looking Statements

All statements in this power point slide presentation, accompanying press release and conference call, other than statements of historical fact, are forward-looking statements, as that term is defined in the Private Securities Litigation Reform Act of 1995. In addition to the risks and uncertainties noted in this release or in such conference call, there are certain factors that could cause actual results to differ materially from those anticipated by the press release, slide presentation and statements made. These include: (1) the successful consummation of the transactions with Goldman Sachs in a timely manner; (2) the various conditions to the consummation of such transactions being satisfied or waived without the imposition of material burdens or expenses; (3) the required regulatory approvals of the transactions being obtained in a timely manner without the imposition of any material restrictions or burdens, and regulatory approval for future dividend requests from FAFLIC; (4) the uncertainties as to the gross or net proceeds to be received by AFC, including the uncertainty as to the effects of the various purchase price adjustments and expenses incurred by AFC; (5) shareholder approval of the AIT Fund reorganization; (6) the successful and timely execution of the anticipated repurchase program; (7) the ability to realize post-closing earnings for the property-casualty segment that are taxable and make FAFLIC's tax attributes valuable; (8) the ability to timely achieve overhead and other expense savings; (9) the ability of AFC and FAFLIC to perform the transitional services in connection with the transactions without incurring unexpected expenses and the completion of the transitional services within the projected time so that the company can realize projected cost savings; (10) the uncertainties of the purchase price hedge to effectively hedge the purchase price as currently estimated and at a cost consistent with expectations; (11) the impact of policyholder surrenders on the purchase price adjustment, which are not hedged, and the impact that this announcement or any financial strength rating actions triggered by this announcement could have on surrenders between the date hereof and the closing; (12) the impact of contingent liabilities, including litigation and regulatory matters, assumed by the holding company in connection with the transaction; (13) the ability to outsource the administration of the retained FAFLIC businesses at projected rates; (14) the statutory results of operations of the Life Companies segment until close, which will impact the statutory surplus of AFLIAC and consequently the ultimate purchase price; and (15) the future statutory operating results of FAFLIC, which will affect projected statutory adjusted capital.

Forward-looking statements are not guarantees of future performance, and actual results could well differ materially. Investors should consider these and other risks and uncertainties in our business that may affect future performance (including Life Companies operations) and that are discussed in readily available documents, including Allmerica's Annual Report on Form 10-K, quarterly reports on Form 8-K and other documents filed by Allmerica with the Securities and Exchange Commission and which are also available at www.allmerica.com under "Investor Relations".

2.


ALLMERICA
FINANCIAL

# Transaction Overview

- Sale of VA and VUL business to The Goldman Sachs Group.

- Projected proceeds related to the sale of approximately $345 million.

- In conjunction with the sale, we will seek regulatory approval for $40 million dividend from remaining life company (FAFLIC).

- Projected GAAP after tax loss on the sale is expected to be approximately $385 million in 2005 and $15 million in 2006.

- Transaction is currently projected to close November 30, 2005.

- Remaining traditional life business of FAFLIC is projected to have approximately $175 million in statutory total adjusted capital post-transition.



# Form of Transaction

- ◆ Sale of AFLIAC legal entity, which contains most of the VA and VUL business – $10 billion in Account Value.

- ◆ Transfer of remaining VA and VUL business which is contained in FAFLIC via reinsurance – $0.6 billion in Account Value.

- ◆ Transfer of Allmerica Investment Trust (AIT) assets and liabilities via fund reorganization into the Goldman Sachs Variable Insurance Trust.

ALLMERICA
FINANCIAL



**ALLMERICA FINANCIAL**

# Major Terms

◆ Total projected proceeds of approximately $385 million.

  – $345 million projected proceeds related to the sale transaction.
   ◆ $310M related to sale of AFLIAC
   ◆ $  9M related to reinsurance of FAFLIC business
   ◆ $ 26M related to transfer of AIT Funds and sale of AFIMS

  – $40 million estimated proceeds at closing from proposed dividend out of retained life company (FAFLIC).

◆ $70 million of the projected proceeds from the sale will be deferred and paid out over 3 years.

◆ Actual purchase price is subject to adjustment from certain changes in the equity market, implied equity market volatility, interest rates, surrender activity and changes in AFLIAC surplus until closing.

◆ We are implementing a hedge program intended to substantially protect us from changes in the purchase price from market movements until closing.

◆ Allmerica has agreed to provide transition services to Goldman Sachs for up to 18 months.

◆ AFLIAC stock sale closing is expected to occur on November 30, 2005; other closings are expected at the same time or later.

5

# Use of Proceeds



ALLMERICA
FINANCIAL

2005 projected cash proceeds of $315 million (total projected proceeds of $385 million less $70M deferred payment).

◆ Anticipated share repurchase program of up to $200 million, commencing after the close.

◆ Remaining cash held at holding company for:

   – Reinstatement of a common stock dividend, expected in the fourth quarter.

   – Interest expense on debt and trust preferred.

   – Payment of certain expenses associated with the transaction.

   – Possible future payments in connection with liabilities assumed and other transaction indemnification obligations.

   – Other holding company obligations.

◆ Enhanced holding company financial flexibility and liquidity.

6



# Projected GAAP Financial Impact

**ALLMERICA** FINANCIAL

◆ Life Segment Earnings

– Earnings for 2005 and beyond will only reflect the retained Life business.

– Expected loss in 2005 and 2006, resulting principally from timing of expense reductions.

– Results for 2007 and beyond are expected to approximate breakeven.

◆ Discontinued Operations

– The AFLIAC variable business that has been sold will be reported as discontinued operations under SFAS 144.

   – Effective upon signing in Q3 of 2005.

   – 2005 Q1 and Q2 reported results will be restated.

– Projected after-tax loss on sale of approximately $385 million reported as discontinued operations in Q3 2005.

   – True-up reflecting final purchase price including the impact of the hedge expected in Q4 2005.

   – Additional after tax loss of $15M projected in 2006.

7



# Projected Earnings Impact

8

***Projections Assume 11/30 Closing***

| | 2005 | 2006 | 2007 |
|---|---|---|---|
| **Pre-tax Life Companies Segment Earnings** | $( 30) M | $( 7) M | Nil |
| **Discontinued Operations** | | | |
| Income from operations of discontinued life business, net of taxes | $  25 M | $   0  M | $   0 |
| Loss from disposal of life business, net of taxes | $(385) M [(1)] | $( 15) M [(2)] | $   0 |

- Projected loss from disposal of $(385)M in 2005 composed of projected proceeds of approximately $345M less estimated GAAP equity of $705M and estimated $25M of closing costs, adjustments and net transition services expenses.

- Estimated loss from disposal of ($15)M in 2006 composed of an estimated $8M of net transition services expenses and $7M in severance costs.



# FAFLIC Retained Business

## Retained Business

*($ in millions)*

| | Statutory Reserves (As of June 30, 2005) | Description |
|---|---|---|
| Traditional Life, principally Closed Block | $770 | Traditional participating whole-life (approximately 70,000 policies). |
| Pension Annuities | $510 | Primarily purchased benefits providing monthly payments (approximately 15,000 annuitants). |
| GICs | $400 | Funding agreements of $345M maturing within the next twelve months. |
| Group Life & Health | $ 70 | Residual business from discontinued group Life & Health segment exited in 1999. |

9



**ALLMERICA**
FINANCIAL

# Financial Highlights – FAFLIC Retained Business

◆ Projected statutory total adjusted capital of approximately $175 million after the transition period.

◆ Projected breakeven statutory results from operations after the transition period is completed.

◆ Tax attributes of approximately $170 million at June 30, 2005; majority are not reflected in statutory total adjusted capital.

◆ Tax attributes are projected to generate approximately $20-25 million per year of dividendable statutory capital for a four to five year period beginning in 2006.

◆ Residual projected total adjusted capital of $175M should be realizable over time.

◆ AFC expects to provide a 100% RBC keepwell to FAFLIC.

10

# Summary



- Total projected proceeds estimated to be $385M.

- Anticipate initiating share repurchase program of up to $200M commencing at closing of sale of AFLIAC.

- Exit vast majority of life business and eliminate Guaranteed Minimum Death Benefit and other market-driven risks.

- Retained residual business will consist of run-off blocks of primarily traditional lines of business with valuable tax assets and projected post-transition total adjusted capital of $175M.

11



## Robert Biederman

**From:** Robert Biederman
**Sent:** Friday, August 05, 2005 11:34 AM
**To:** 'Shapiro, Jonathan'; 'Levin, Eric'
**Cc:** Stephen Hubbard
**Subject:** Speakman et al. Allmerica

As I discussed with Rick earlier this week about the depositions of the Plaintiffs, we need to lock in dates in September. As to Don Speakman, the only date that works is 9/13. As to Mark Robare, he generally is available during that month except on 9/15 or 9/19. I have not yet heard back from Steve Wedel. Please get back to us as soon as possible as to the date for Don Speakman. As to the location of the deposition, we expect that they will be where the parties reside. Thanks.

Robert W. Biederman
HUBBARD & BIEDERMAN, LLP
1717 Main Street, Suite 4700
Dallas, Texas 75201
(214) 857-6000
(214) 857-6001 fax

EXHIBIT
F

8/31/2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF DONALD P. SPEAKMAN

Pursuant to Federal Rules of Civil Procedure 26 and 34 and Local Rule 34.1, Defendants

and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity Company

("AFLIAC"), First Allmerica Financial Life Insurance Company ("AFLI"), and Allmerica

Financial Corp. ("AFC") request that Plaintiff and Counterclaim Defendant Donald P. Speakman

produce the following documents and things for inspection and copying at the offices of Wilmer

Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109, within 30 days of

service of this request.

## DEFINITIONS

1.      The terms "document," "communication," "parties," "person," and "concerning"

shall have the meanings set forth in Local Rule 26.5(C).


EXHIBIT
G

- 1 -

2. The term "Plaintiffs" shall mean Plaintiffs and Counterclaim Defendants Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare, collectively and individually, and any of their past and present employees, representatives, trustees, attorneys, and any other person acting or purporting to act on their behalf.

3. The term "Defendants" shall mean Defendants and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity Company, First Allmerica Financial Life Insurance Company, and Allmerica Financial Corp.

4. The term "Complaint" shall mean the First Amended Class Action Complaint dated July 23, 2004 and filed in the present lawsuit.

5. The term "Answer to Complaint and Counterclaims" shall mean Defendants' Answer to First Amended Class Action Complaint and Counterclaims dated May 12, 2005 and filed in the present lawsuit.

6. The term "Answer to Counterclaims" shall mean Plaintiffs' and Counterclaim Defendants' Answer and Affirmative Defenses to Counterclaims dated June 1, 2005 and filed in the present lawsuit.

7. The term "NASD" shall mean the National Association of Securities Dealers.

8. The term "Trail Agreement" shall mean the "Agent In-Force Trail Commission Agreement" effective on or about January 1, 2001 entered into by AFLIAC and any of the Plaintiffs and any other persons.

9. The term "Trail Commission Program" shall mean the Agent In-Force Trail Commission Program.

10.     The term "Promissory Note" shall mean the Promissory Notes that were entered into by AFLIAC and any of the Plaintiffs and any other persons in connection with the Trail Commission Program.

11.     The term "Eligible Annuity Contracts" shall mean the in-force individual variable and fixed annuity contracts that participants in the Trail Commission Program had sold prior to January 1, 1996.

12.     The term "Broker's Agreement" shall mean the Broker's Agreement entered into by AFLIAC and any of the Plaintiffs and any other persons.

13.     The term "Independent Contractor Agreement for Registered Representative" shall mean the Independent Contractor Agreement for Registered Representative entered into by VeraVest Investments, Inc. and any of the Plaintiffs and any other persons.

14.     The term "Career Agent Agreement" shall mean the Career Agent Agreement entered into by AFLIAC and any of the Plaintiffs and any other persons.

15.     The term "Career Agent's Agreement" shall mean the Career Agent's Agreement entered into by State Mutual Life Assurance Company of America and any of the Plaintiffs and any other persons.

## INSTRUCTIONS

1.     If any document responsive to any of these Requests is claimed to be privileged or otherwise protected from discovery, then for each such document, provide the information required by Federal Rule Civil Procedure 26(b)(5) and Local Rule 34.1(E).

2.     If any one of these Requests is claimed to be objectionable: (a) identify the portion of such Request that is claimed to be objectionable and set forth the nature and basis of the objection in sufficient fashion to permit the Court to rule on the validity of the objection; and (b) identify any document withheld from production pursuant to such objection with sufficient

particularity and in sufficient detail to permit the Court to determine whether such document falls within the scope of such objection.

    3.      If no documents exist that are responsive to a particular Request, state that no documents exist.

    4.      These Requests are continuing and require supplemental response and production in accordance with the Federal Rules of Civil Procedure and the Local Rules.

    5.      All use of language in these Requests that appears in the conjunctive form specifically includes the disjunctive form, and vice versa. All words that are used in their singular form include the plural form, and vice versa. The past tense shall be construed to include the present tense, and vice versa.

## TIME PERIOD

Unless otherwise specified, the time period covered by these requests is from January 1, 2000 to the present.

## REQUESTS FOR DOCUMENTS

### Request No. 1

All Trail Agreements executed by Plaintiffs, including any modifications or amendments thereto.

### Request No. 2

All completed Advisor In-Force Trail Program Election Forms executed by Plaintiffs, including any modifications or amendments thereto.

### Request No. 3

All Promissory Notes executed by Plaintiffs, including any modifications or amendments thereto.

### Request No. 4

All documents concerning any actual or proposed modifications or amendments of the terms of the Trail Agreement or the Promissory Notes.

-4-

**Request No. 5**

All documents concerning the terms or operation of the Trail Agreement, the Trail Commission Program, or the Promissory Notes.

**Request No. 6**

All documents concerning the negotiation of the terms of the Trail Agreement or the Promissory Notes including but not limited to (a) any communications with any of the Defendants; (b) any communications with any of the Plaintiffs; (c) drafts of the Trail Agreement or the Promissory Notes; (d) proposals for terms to be included in the Trail Agreement or the Promissory Notes; and (e) any memoranda, reports, or spreadsheets.

**Request No. 7**

All documents concerning actual commissions received or commissions expected to be received pursuant to the Trail Agreement.

**Request No. 8**

All documents concerning the financing of the commission payments made or expected to be made to AFLIAC pursuant to the Trail Agreement, and the loan payments made or expected to be made to AFLIAC pursuant to the Promissory Notes.

**Request No. 9**

All documents concerning any reports or memoranda by, or communications with, any accountants, actuaries, or consultants concerning the Trail Agreement, the Trail Commission Program, or the Promissory Notes.

**Request No. 10**

All documents concerning any forecasts, projections, worksheets, or economic assumptions concerning (a) the persistency of the Eligible Annuity Contracts, (b) future productivity of Plaintiffs or any other person that entered into the Trail Agreement, and (c) tax treatment of the commissions earned under the Trail Agreement and payments made pursuant to the Promissory Notes.

**Request No. 11**

All documents concerning the method of calculating commissions payable under the Trail Agreement (including those containing formulas, commission rates, persistency rates, productivity rates, and account values of the Eligible Annuity Contracts) and the method of calculating taxes payable under the Trail Agreement, including but not limited to quarterly and annual earnings statements, tax statements, memoranda, and reports.

**Request No. 12**

All documents concerning the amount of loan payments due under the Promissory Notes and the method of calculating such payments.

**Request No. 13**

All documents concerning information or communications on which any of the Plaintiffs relied in deciding to enter into the Trail Agreement or the Promissory Notes.

**Request No. 14**

All documents concerning the balances due on the Promissory Notes, including but not limited to statements, letters, and default notices.

**Request No. 15**

All documents concerning the cancellation or proposed cancellation of the balances due on the Promissory Notes.

**Request No. 16**

All Broker's Agreements entered into by any of Plaintiffs, including any modifications or amendments thereto.

**Request No. 17**

All Independent Contractor Agreement for Registered Representative contracts entered into by any of Plaintiffs, including any modifications or amendments thereto.

**Request No. 18**

All Career Agent Agreements entered into by any of Plaintiffs, including any modifications or amendments thereto.

**Request No. 19**

All Career Agent's Agreements entered into by any of Plaintiffs, including any modifications or amendments thereto.

**Request No. 20**

All documents concerning any surrenders of any Eligible Annuity Contract by any client or customer of Plaintiffs including but not limited to:

    (a)    communications with clients or customers concerning such surrenders;

    (b)    communications with Defendants concerning such surrenders;

(c)     communications with other companies or persons writing, issuing, or
        administering annuities concerning such surrenders; and

(d)     memoranda, notes, or reports concerning such surrenders.

## Request No. 21

All documents concerning any transfers or replacements of any Eligible Annuity Contract
by any client or customer of Plaintiffs including but not limited to:

(a)     documents sufficient to show (1) the name and contract/policy number of the
        Eligible Annuity Contract that was transferred or replaced, (2) the person to
        whom the replaced annuity was issued, (3) the amount of the replaced annuity, (4)
        the name and contract/policy number of the annuity that replaced the Eligible
        Annuity Contract, (5) the name of the company that issued the replacement
        annuity, (6) the amount of the transfer or replacement, and (7) the date of the
        issuance of the replacement annuity;

(b)     all applications concerning such transfers and replacements;

(c)     communications with clients or customers concerning such transfers or
        replacements;

(d)     communications with Defendants concerning such transfers or replacements;

(e)     communications with the company that issued the new annuities that replaced the
        Eligible Annuity Contracts;

(f)     documents concerning any analysis of the suitability of the annuities that replaced
        the Eligible Annuity Contracts;

(g)     memoranda, notes, or reports concerning such transfers or replacements; and

(h)     documents concerning any commissions or other compensation earned by
        Plaintiffs as a result of such transfers or replacements.

## Request No. 22

All documents concerning any of Defendants' policies and practices as to the transfer or
replacement of annuities including but not limited to prohibitions on transfers or replacements,
communications with clients regarding transfers or replacements, and commissions paid or not
paid for transfers or replacements.

## Request No. 23

All documents concerning Plaintiffs' communications (including but not limited to
presentations, solicitations, advice, or instructions) with any holders or former holders of any
Eligible Annuity Contract concerning the potential surrender, transfer, or replacement of any

Eligible Annuity Contract.

### Request No. 24

All documents concerning Plaintiffs' communications (including but not limited to presentations, solicitations, advice, or instructions) with any holders or former holders of any Eligible Annuity Contract concerning the acquisition, purchase, holding, or sale of annuities written, issued, or administered by any entity other than the Defendants.

### Request No. 25

All documents concerning presentations, speeches, conferences, or meetings given or attended by Plaintiffs in which Plaintiffs discussed the Defendants' business, ratings of the Defendants, the Defendants' service of any Eligible Annuity Contracts, the Defendants' ability to service the Eligible Annuity Contracts, the Defendants' payment of a Guaranteed Minimum Death Benefit, the Defendants' ability to pay a Guaranteed Minimum Death Benefit, and the Defendants' accounting of Deferred Acquisition Costs.

### Request No. 26

All documents concerning the suitability of the annuities that replaced any Eligible Annuity Contract, including but not limited to communications with the holders of any such annuities, communications with companies who issued the replacement annuities, and communications with the NASD or other governmental or regulatory agency or organization.

### Request No. 27

All documents concerning complaints by holders or former holders of any Eligible Annuity Contracts regarding the suitability of annuities that replaced the Eligible Annuity Contracts, and any documents concerning any response to any such complaints.

### Request No. 28

Plaintiffs' filings with the NASD or any other governmental or regulatory agency or organization.

### Request No. 29

All documents (including but not limited to requests, responses, document productions, communications, and transcripts or sworn statements) concerning any inquiry, investigation, or request for information of Plaintiffs by the NASD or other governmental or regulatory agency or organization, including but not limited to inquiries, investigations, or requests for information concerning:

    (a)    Plaintiffs' sale of life insurance or annuities;

    (b)    Plaintiffs' involvement in the surrender, transfer, or replacement of any Eligible Annuity Contracts or other annuities or policies issued by the Defendants; and

(c)     this lawsuit or any of the allegations in the Complaint, the Answer to the
        Complaint and Counterclaims, or the Answer to the Counterclaims.

### Request No. 30

All documents identifying, classifying, describing, evaluating, or treating Plaintiffs or any other person who entered into the Trail Agreement as an employee or independent contractor of any of the Defendants or any affiliate of the Defendants.

### Request No. 31

All documents concerning any position that Plaintiffs have taken in any lawsuit, administrative proceeding, or any threatened or actual regulatory action as to whether any person who entered into the Trail Agreement or a Broker's Agreement, Independent Contractor Agreement for Registered Representative, Career Agent Agreement, or Career Agent's Agreement was an employee or independent contractor of any of the Defendants or any affiliate of the Defendants.

### Request No. 32

All documents concerning any of Defendants' or any affiliate of the Defendants' control over the time, place and manner of solicitation or servicing of the business of AFLIAC by Plaintiffs or any other person who entered into the Trail Agreement.

### Request No. 33

All communications among Plaintiffs regarding this lawsuit or the allegations of the Complaint, the Answer to the Complaint and Counterclaims, or the Answer to the Counterclaims.

### Request No. 34

All documents identified or referred to in Plaintiffs' Initial Disclosures.

### Request No. 35

All documents supporting or forming the basis of Plaintiffs' calculation of damages in their Initial Disclosures.

### Request No. 36

All documents concerning projections of commissions expected to be earned under the Trail Agreement.

### Request No. 37

All documents reflecting commissions received by Plaintiffs as a result of the transfer or replacement of any Eligible Annuity Contracts.

**Request No. 38**

Resumes or *curricula vitae* for each of the Plaintiffs.

**Request No. 39**

All transcripts and exhibits to any deposition or trial testimony, and all affidavits, certifications, or other written statements, given by any of the Plaintiffs in any legal or regulatory proceedings.

**Request No. 40**

All documents concerning or supporting the allegations in paragraph 5 of the Complaint that "Plaintiffs further believe that when defendants instituted the Trail Program, they were aware of problems inherent in their business plan involving GMDB and DAC exposure that ultimately resulted in the cessation of the sale of life and annuity products."

**Request No. 41**

All documents concerning or supporting the allegations in paragraph 42 of the Complaint that "As a result of Allmerica Companies' instability and cessation of life and annuity business and resulting loss of competitive position, certain of Speakman's clients have requested to transfer their accounts, many of which are in the Trail Program, to other more stable companies with better guarantees."

**Request No. 42**

All documents concerning or supporting the allegations in paragraph 28 of the Complaint that "Beginning in late 2002, Allmerica Companies wrongfully precluded former sales agents, such as Robare, from interacting with their clients whose annuities were in the Trail Program."

**Request No. 43**

All documents concerning or supporting the allegations in paragraph 28.A. of the Complaint that "Allmerica discontinued using Rogers Casey previously touted as an essential consultant to choose and monitor the performance of the funds for the variable annuities."

**Request No. 44**

All documents concerning or supporting the allegations in paragraph 28.B of the Complaint that "Defendants curtailed the number of available funds and managers available to variable annuities."

**Request No. 45**

All documents concerning or supporting the allegations in paragraph 28.C. of the Complaint that "Defendants discontinued database downloads to the 'Contact Partner' client management database system."

**Request No. 46**

All documents concerning or supporting the allegations in paragraph 28.D. of the Complaint that "Defendants failed to timely update essential client information including Model performance data."

**Request No. 47**

All documents concerning or supporting the allegations in paragraph 28.E. of the Complaint that "Defendants caused significant processing errors involving clients' separate accounts contained in Eligible Annuities in the Trail Program."

**Request No. 48**

All documents concerning or supporting the allegations in paragraph 28.F. of the Complaint that "Defendants failed to timely process service requests by clients, including division of annuities in connection with divorces and other matters."

**Request No. 49**

All documents concerning or supporting the allegations in paragraph 28.G. of the Complaint that "Defendants failed to send copies of client correspondence to agents even though the letters indicate that agents are copied on the letters that contain important information concerning the annuities."

**Request No. 50**

All documents concerning or supporting the allegations in paragraph 59(1) of the Complaint that "Allmerica Life and First Allmerica failed to adequately remove, hedge, or otherwise prudently reserve for its obligations on variable annuity and insurance products, including GMDB."

**Request No. 51**

All documents concerning complaints to Plaintiffs or Defendants by owners of variable annuities issued by AFLIAC about the servicing of those annuities or AFLIAC's discontinuation of the sale of life insurance and annuities, and any documents concerning any response to any such complaints.

ALLMERICA FINANCIAL LIFE INSURANCE & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO., and ALLMERICA FINANCIAL CORP.

By their attorneys,

Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: July 27, 2005

-12-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on this 27th day of July, 2005 by <u>overnight mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s/ Eric D. Levin
Eric D. Levin

-13-