IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO. and ALLMERICA FINANCIAL CORP.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 4:04-cv-40077-FDS<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ORDER EXTENDING SCHEDULE FOR CLASS CERTIFICATION BRIEFING**

Stephen L. Hubbard
Robert W. Biederman
BBO No. 562279
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

Nancy Freeman Gans
BBO No. 184540
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

*ATTORNEYS FOR PLAINTIFFS*

# INTRODUCTION

In their Motion for Order Extending Schedule for Class Certification Briefing (the "Motion") and Memorandum In Support of the Motion ("Defendants' Memorandum"), Defendants have presented an inaccurate chronology of what has transpired since discovery began on July 1. At all times, Plaintiffs have acted in a manner so that the class certification deadlines set forth in paragraph 7 of the Scheduling Order could be met. Plaintiffs initiated discovery on July 1, timely filed the Motion for Class Certification, sought no extensions in responding to Defendants' belated discovery, produced their non-privileged documents, and made themselves available for depositions during September.

Conversely, Defendants have been dilatory in commencing discovery, delayed responding to Plaintiffs' discovery, issued a flurry of subpoenas -- some as late as August 30 -- that either were served in a manner calculated to delay responses, were facially defective, or asked for documents that on their face were irrelevant or certain to draw objections, and failed to avail themselves of dates to depose Plaintiffs during September. Defendants now seek to shift the blame to Plaintiffs and third parties in an attempt to fabricate "good cause" to modify the class certification deadlines to which Defendants agreed. The Court should not permit Defendants to "engineer" grounds for delaying a decision on class certification.

# STATEMENT OF PERTINENT FACTS

A chronology of the events will assist the Court in reviewing Defendants' Motion:

1. June 21    Joint Statement Pursuant to Local Rule 16.1 was filed. In paragraph 6 (Class Certification), the parties <u>agreed</u> on each of the deadlines for filing the Motion, Opposition to the Motion, and Reply in Support of Motion.
2. June 29    Scheduling Order was entered, adopting the parties' deadlines for Class Certification and scheduling oral argument for November 14.

| | | |
|---|---|---|
| 3. | July 1 | The parties exchanged their Initial Disclosures in accordance with the Scheduling Order. In accordance with the Scheduling Order and Local Rule 26.2(A), the parties could initiate discovery on this date. |
| 4. | July 1 | Plaintiffs served their First Request for Production, First Set of Interrogatories, and First Request for Admissions on Defendants. |
| 5. | July 22 | In accordance with the Scheduling Order, Plaintiffs filed their Motion for Class Certification. |
| 6. | July 27 | Defendants served their First Request for Production on Plaintiffs, attached hereto as Exhibit 1.[1] |
| 7. | July 27 | Defendants served the Notice of Subpoena on AXA Life and Annuity Company ("Equitable"), attached as Exhibit C to Defendants' Memorandum, and Lincoln National Life Insurance Company ("Lincoln National"),[2] attached as Exhibit 2 hereto. The documents requested are virtually identical to those sought from Plaintiffs in Defendants' First Request for Production numbers 20 , 21 & 23; namely, the replacement of Allmerica variable annuities in which Plaintiffs' clients asked to surrender and replace with another company including Equitable and Lincoln National.[3] |

---

[1] Defendants served a separate Request for Production on each Plaintiff. Because these Requests are identical, Plaintiffs have attached as Exhibit 1 only one of the Requests.

[2] Instead of serving Equitable in New York, where it is based, and Lincoln National in Fort Wayne, Indiana, where it is based, Defendants served these subpoenas on the Massachusetts Division of Insurance. *See* Defendants' Memorandum, Exhibit C thereto, and Exhibit 2 hereto. While Plaintiffs do not question that such service was proper, it was foreseeable that it would result in unnecessary delay in providing actual notice to Equitable and Lincoln National. To afford notice to those companies, the Insurance Division had to send the subpoenas to them. Defendants do not state in their Memorandum when these third parties actually received the subpoenas. Realizing the scheduling deadlines for class certification, Defendants should have served Equitable and Lincoln National directly at their home offices in order to avoid the uncertainty of when the Massachusetts Insurance Division would forward the subpoenas.

[3] Apart from the overlapping requests, a review of the documents sought in the Lincoln National and Equitable subpoenas as to Plaintiffs' alleged replacement activities reveals that they seek largely irrelevant information. As to the Lincoln National subpoena, it seeks <u>no</u> documents regarding alleged replacements involving Wedel's and Robare's clients. Moreover, while it does seek information regarding alleged replacements involving Speakman's clients, 9 of the 18 transactions involve replacements occurring <u>before</u> Defendants terminated Speakman, and 8 of the 18 annuities were not in the Trail Program. To the extent Speakman was involved

**<u>OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE</u>** - Page 3

8.  August 5    Realizing Defendants were dragging their feet, <u>Plaintiffs</u> initiated discussions with Defendants on various dates that Plaintiffs would be available for depositions during September. Defendants explicitly indicated that they did not want to take these depositions until after Plaintiffs had responded to Defendants' First Request for Production that was due on August 29.[4]

9.  August 8    After extensions agreed to by Plaintiffs, Defendants served Responses to Plaintiffs' First Set of Interrogatories and First Set of Request for Admissions subject to an understanding of the parties that they would preserve the confidentiality of such information until the Court had entered a Protective Order. Accompanying these Responses, Defendants sent a draft Protective Order, attached hereto as Exhibit 6.

10. August 9    Plaintiffs provided comments to the draft Protective Order, attached hereto as Exhibit 7.

11. August 10   Defendants responded to Plaintiffs' comments to the draft Protective Order, attached hereto as Exhibit 8.

12. August 11   The parties had a teleconference in which they discussed deposition dates for the Plaintiffs as well as the draft Protective Order. As to the latter, there was only one issue in dispute which concerned the last

---

in those 9 transactions, which he was not, before he was terminated, <u>Defendants</u> would have <u>approved</u> those transactions. Finally, as to the post-termination transactions, these were surrenders and replacements that a third party, and <u>not</u> Speakman, effected. Similarly, the Equitable subpoena reveals that the two replacements, for which documents are sought involving Wedel's clients, occurred <u>before</u> Defendants terminated him, and one of those was not even in the Trail Program. Of the 3 replacements, for which documents are sought involving Speakman, 2 were not even in the Trail Program, one occurred before he was terminated and the other two transactions involved surrenders and replacements by a third party and not Mr. Speakman. As to the 99 alleged replacement transactions involving Robare's clients, <u>only</u> 15 of those transactions involve replacements of annuities in the Trail Program that were replaced by Robare at the request of his clients. Accordingly, even if Defendants had timely served these subpoenas, they would yield little, if any, relevant information that would be of any use to Defendants.

[4] In the course of the discussion about available deposition dates, Plaintiffs offered the following: September 9, 12 & 13 for Mr. Speakman; any days in September except September 15 or 19 for Mr. Robare; and September 21 or 28 for Mr. Wedel. *See*, Exhibit 3, E-mail dated August 5; Exhibit 4, E-mail dated August 12; and Exhibit 5, E-mail dated August 15.

**<u>OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE</u>** - Page 4

|     |     |     |
| --- | --- | --- |
|     |     | paragraph of the draft Order. Defendants suggested removing the paragraph, to which Plaintiffs subsequently agreed. |
| 13. | August 18 | Without prior agreement of Plaintiffs, Defendants issued Notices of Deposition for Speakman, Robare & Wedel on September 12, 26 & 28, respectively, in Boston. In a cover letter to the Notices, Defendants, however, alternatively proposed deposing Messrs. Robare & Wedel on September 26 & 27 in Houston & St. Louis, respectively. In the letter, Defendants further indicated that if Plaintiffs did not produce substantially all the documents requested in Defendants' First Request for Production, that Defendants would take no depositions at that time. *See* Defendants' Memorandum, Exhibit A. |
| 14. | August 19 | Plaintiffs responded to Defendants' letter and Notices of Deposition by indicating that the alternate dates and locations for Messrs. Robare's and Wedel's depositions on September 26 & 27 were acceptable, and the date for Mr. Speakman's on September 12 was acceptable. *See* Exhibit 9. Plaintiffs also indicated that they expected Robare & Wedel to produce their non-privileged documents by September 2, but that Speakman, due to the volume requested, would produce many, but not all, documents by that date. Plaintiffs asked Defendants to confirm whether they intended to proceed with the depositions. |
| 15. | August 19 | After multiple extensions agreed to by Plaintiffs, Defendants served their Response to Plaintiffs' First Request for Production of Documents, but made, and have continued to make, <u>no</u> documents available to Plaintiffs. |
| 16. | August 25 | Defendants issued a subpoena on Pacific Life Insurance Company, which is based in Newport Beach, California, again by serving the Massachusetts Division of Insurance. *See* Exhibit 10 (without attachments). As with the prior subpoenas, the requested documents are virtually identical to those sought from Plaintiffs in Defendants' First Request for Production numbers 20, 21 & 23; namely, the replacement of Allmerica variable annuities.[5] |

---

[5] As with the other subpoenas directed to insurance companies, Defendants have requested information that on its face is irrelevant to them, but will result in a foreseeable delay in production due to the volume of materials that are requested. For example, in connection with the request for documents regarding replacements of Defendants' annuities with those issued by Pacific Life involving clients of Wedel, <u>143</u> of the files involve alleged replacements occurring

**OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE** - Page 5

| | | |
|---|---|---|
| 17. | August 25 | Brian E. Whiteley and C. Alex Hahn of Scibelli, Whiteley & Stanganelli, LLP filed an appearance as additional counsel for Defendants. With these two appearances, there are a total of 6 lawyers (4 from Wilmer Pickering & 2 from Scibelli Whiteley) who are listed on the pleadings as representing Defendants. |
| 18. | August 25 | Plaintiffs sent two letters to Defendants. Plaintiffs again requested confirmation that the depositions were proceeding on the dates and locations set forth in Plaintiffs' letter of August 19. *See* Exhibit 11. In a second letter, Plaintiffs raised numerous issues concerning Defendants' Responses to Plaintiffs First Set of Request for Production and requested a conference under LR 37.1, which request was ignored. |
| 19. | August 29 | Plaintiffs timely served their Response to Defendants' First Request for Production of Documents. *See* Exhibit 12.[6] |
| 20. | August 30 | Defendants issued subpoenas for Rodney K. Vincent, a Nebraska-based attorney representing Speakman, and Main Street Securities, LLC (Speakman's Kansas-based broker dealer). *See* Exhibits 13 & 14, respectively. The subpoenas were flawed in that they sought production of documents (and depositions) in Boston. *See* Fed. R. Civ. P. 45(a)(2), (b)(2) & (c)(3)(A)(ii) [Production and depositions must be within 100 miles of where the third party resides or regularly conducts business.]. Apart from this fatal infirmity, the thrust of the documents requested from Main Street are substantially similar to those sought from Plaintiffs in Defendants' First Request for Production numbers 20, 21 & 23 to Speakman. Moreover, the principal documents sought from Vincent are identical to those sought from Speakman in Defendants' First Request for Production number 29; namely, any NASD Proceedings.[7] |

---

while Mr. Wedel was an agent/broker for Defendants. As noted above, to the extent that he played any role in those replacements, they would have been approved by Defendants. Moreover, as to Robare, <u>none</u> of alleged 7 replacement transactions for which Defendants seek documents from Pacific Life were in the Trail Program.

[6] Plaintiffs have attached as Exhibit 12 Speakman's Response and Wedel's Response to Defendants' First Request for Production. Robare's Response is identical to Wedel's.

[7] The subpoenas to Main Street and Vincent did seek other documents, but those requests are on their face subject to a myriad of objections. For example, the first category of documents requests,, "All documents concerning Your relationship, dealings, and transactions with Speakman." Defendants knew that such a request to one of Mr. Speakman's lawyers, as well as

| | | |
|---|---|---|
| 21. | September 2 | Plaintiffs made available approximately 7,000 pages of documents, and, consistent with Defendants' request, asked Defendants to agree to be bound by the terms of the draft Protective Order until it had been entered by the Court. *See* Exhibit 15. |
| 22. | September 2 | Having heard no reply by Defendants to Plaintiffs' August 19 & 25 letters seeking to have a conference regarding whether Defendants intended to take Plaintiffs' depositions, and if so, their dates and locations, Plaintiffs filed their Motion for Protective Order. |
| 23. | September 7 | Defendants sent a posturing letter withdrawing the Notice of Deposition of Speakman that was scheduled for September 12, which is attached as B to Defendants' Memorandum. |
| 24. | September 9 | Plaintiffs replied to Defendants' September 7 letter, offering Mr. Speakman in Boston on October 4, seeking to reconfirm the dates for the depositions during September of Messrs. Wedel and Robare, and suggesting modifications to the Scheduling Order that both would permit Defendants to include any testimony of Plaintiffs in their Opposition and preserve the November 14 hearing. *See* Exhibit 16. |

## ARGUMENT

**I.  The Court Should Deny the Motion, Because Defendants Have Inexcusably Delayed in Serving Discovery, and Have Improperly Issued Subpoenas.**

**A.  Defendants Waited Until July 27 to Commence Discovery.**

Although Defendants were free to begin discovery on July 1, they waited until July 27. While Defendants contend they waited until Plaintiffs filed their Motion for Class Certification to commence discovery, the requests are not tailored to anything in the Motion. Rather, as Defendants now concede in their Memorandum at 4, the Requests address the merits of the underlying Complaint and Defendants' Counterclaim that Defendants filed on May 12.

**B.  Defendants Served Three of the Five Subpoenas in a Manner that Would Result in a Foreseeable Delay.**

---

to the broker dealer with whom he conducts business, is certain to draw legitimate objections.

**OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE** - Page 7

Three of the five subpoenas (Equitable, Lincoln National and Pacific Life) were served on the Massachusetts Division of Insurance which then had to send the subpoenas to those insurer's respective home offices to afford them actual notice. Realizing the exigency of time regarding the deadlines for class certification, Defendants should have served the subpoenaed parties directly at the third party's home office. Indeed, that is exactly how Defendants served two of the subpoenaed parties (Vincent and Main Street), albeit in connection with subpoenas issued belatedly on August 30 and flawed for other reasons. Accordingly, any delay that is attendant to the insurer's responses to the subpoenas is attributable to Defendants' failure to serve those subpoenas directly at the home office of those companies.

> **C.     Defendants Waited Until August 25-30 to Serve Three Subpoenas, and Two of Those Subpoenas Are Facially Invalid.**

Inexplicably, Defendants waited until <u>August 25</u> to issue a subpoena on Pacific Life, and until <u>August 30</u> to serve subpoenas on Speakman's broker dealer (Main Street) and one of his lawyers (Vincent). This unexplained 2-month delay should not support continuing the class certification hearing. Moreover, as noted above, the subpoenas served on Vincent and Main Street are invalid, because while issued out of the District Courts of Nebraska and Kansas, respectively, they inexplicably seek production and appearances at depositions in Boston, even though Defendants do not reside or regularly conduct business there. *See* Fed. R. Civ. P. 45(a)(2), (b)(2) & (C)(3)(A)(ii); *see also, Anderson v. Government of Virgin Islands*, 180 F.R.D. 284, 289-90 (D. Virgin Islands, 1998) (Quashing subpoenas that sought production of documents outside 100 miles

**<u>OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE</u>** - Page 8

where third party resided); *in accord, Highland Tank & Mfg. Co., v. PS International, Inc.*, 227 F.R.D. 374, 380-1 (W.D. Pa. 2005).[8]

>   II.  **The Court Should Deny the Motion, Because Plaintiffs Have Been Producing Their Non-Privileged Documents, Which Substantially Overlap with Those Requested In the Subpoenas**
>
>   A.  **Plaintiffs Wedel and Robare have Made Available to Defendants their Non-Privileged Documents.**

On September 2, Wedel and Robare made available their non-privileged documents.[9] As noted above, Defendants essentially sought the same documents through third party subpoenas, and has used the alleged delay of those third parties to respond as the basis for the Motion. Because Plaintiffs Wedel and Robare have produced these documents, any reason for not taking the depositions of Wedel and Robare during September due to non-production of third party subpoenas is specious and provides no basis for the continuance that Defendants seek.

>   B.  **Plaintiff Speakman has made and Will Continue to Make Available to Defendants His Non-Privileged Documents for His Deposition That Plaintiffs Have Offered on October 4.**

---

[8] On September 8, Vincent and Main Street filed Motions to Quash which are based, in part, on the facial infirmity of the subpoenas.

[9] Defendants' position that they have refused to accept the documents because it is subject to a condition that the documents be kept confidential and subject to terms of the Protective Order until finally entered by the Court is ridiculous. This is exactly the same condition that <u>Defendants imposed</u> and Plaintiffs accepted when they received Defendants' Responses to Interrogatories and Request for Admission. In any event, Plaintiffs have submitted to Defendants a draft Joint Motion for Entry of Protective Order, which Defendants rejected on September 12. Plaintiffs expect to file a pleading to enter a Protective Order by September 13.

**<u>OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE</u>** - Page 9

### 1. As to Documents submitted to NASD, Plaintiff Speakman has Produced those documents.

Defendants sought documents Speakman provided to the NASD regarding its inquiry concerning replacement activity, which inquiry Plaintiff Speakman believes was precipitated by Allmerica.[10] Those documents have been available for Defendants' review since September 2. Accordingly, there is no basis for a continuance based upon the belated subpoena on Mr. Speakman's NASD lawyer (Mr. Vincent).

### 2. As to Replacements, Plaintiff Speakman Currently has Produced Over 70 Replacement Files.

In connection with the NASD inquiry, there are 66 replacement files involving variable annuities that Speakman has produced to Defendants, along with 8 additional replacement files that the NASD did not request. Speakman has told Defendants he will produce additional replacement files by the end of September.

### 3. Defendants do not need all the Documents relating to each Replacements to Oppose Class.

While Speakman has other documents that have not yet been produced regarding replacements, Defendants grossly overstate the need for these documents in connection with their opposition to class. First, Defendants' explanation in their Memorandum at 5, n.4, of the purported need for the replacement documents in opposing class is not consistent with their request for the paperwork regarding these replacements. Rather, the argument purportedly is predicated on the alleged "greatly disproportionate" number of their replacements that were undertaken by Plaintiffs, which is a statistical analysis that does not require all the underlying documentation.

---

[10] While there has been no NASD determination of wrongdoing by Speakman, there have been multiple sanctions leveled against Defendants by the NASD. *See, e.g.*, Exhibits 17 & 18.

**OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE** - Page 10

Second, Defendants were aware of the replacements when each occurred, since they were sent a notice in connection with each one to permit them to undertake so-called "conservation" of the affected annuity to prevent its replacement. *See*, e.g., 211 CMR 34.06. (Notice is required to be sent to the company whose annuity is intended to be replaced in order to afford that company the opportunity to undertake a "conservation" of that annuity.); 20 Mo. CSR 400-5.400(7)(B)(same); and 31 Pa. Code §81.6(same).

Third, while the relevance of the replacement activity as to class certification is doubtful,[11] Defendants are free to argue whatever significance exists without reviewing the substantial number of documents concerning each replacement that they have requested. *Compare Stewart v. Winter*, 669 F.2d 328, 331-2 (5th Cir. 1982)(In connection with a motion to certify class concerning the condition of prisons throughout Mississippi, plaintiffs were not entitled to discover every document "relating to every aspect of the life in the jails in Mississippi's 82 counties", because "(w)hile much of the material may have been relevant to the merits of the class claims, very little of it could have been 'necessary or helpful' to determining the threshold issue posed by Rules 23(a) and (b).").

---

[11] As noted above, Defendants cannot be complaining about replacement activity when they were agents/brokers for Defendants, because Defendants approved such transactions. Defendants encouraged such replacements to limit its exposure to the GMDB liability, which, incidentally, was a major motivation for the ultimate sale announced on August 22 of the variable annuity business to Goldman Sachs. *See* Exhibit 19 at 11. In connection with sales made after Plaintiffs' termination, questions about the legitimacy of such activity are highly questionable due to the fact that Defendants ceased to be in the business, did not update products which competitors routinely do, adding new features that were very attractive to annuitants, such as principal and income guarantees, service deteriorated, and ratings of Defendants plummeted, causing legitimate concern of annuitants. The fact that some owners of annuities in the Trail Program may have replaced while others did not may have some effect on the lost profit methodology for damages, but that may be determined without reviewing every detail of each replacement.

**OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE** - Page 11

### III. The Court Should Deny the Motion, Because Plaintiffs Have and Continue to Make Themselves Available For Depositions.

#### A. Plaintiffs Robare and Wedel Continue to Offer Themselves for Depositions on the Dates and Locations That Defendants Proposed, and Have Offered Plaintiff Speakman on October 4.

Plaintiffs filed their motion for protective order because Defendants repeatedly refused to confirm whether they intended to proceed with the depositions prior to October 5 (when their opposition to class is due), and, if so, the dates and locations of those depositions. Defendants were alerted to Plaintiffs' active schedules prompting Plaintiffs to file the Motion to have the Court fix the dates and locations of the depositions to the extent Defendants intended to proceed with them prior to October 5. As to Wedel and Robare, Defendants still have not confirmed, or repudiated their suggestion in their August 18 letter to depose them on September 26 & 27 in Houston and St. Louis, respectively. As to Speakman, on September 7, Defendants finally responded that they have no intention of taking his deposition on September 12. Accordingly, the issue of the deposition location on that date is moot. Moreover, in a letter dated September 9, Plaintiffs agreed to produce Mr. Speakman in Boston on October 4.[12]

#### B. Plaintiffs Agree to Modify Paragraph 7 of the Scheduling Order to Afford Defendants Until October 10 to file their Opposition to Class.

As an accommodation to Defendants, Plaintiffs are willing to modify paragraph 7 of the Scheduling Order to give Defendants until October 10 to file their Opposition to Class. This extension will enable Defendants to depose each of the Plaintiffs and incorporate any materials from those depositions in their Opposition. Plaintiffs are also requesting that paragraph 7 of the

---

[12] As acknowledged in Defendants' September 7 letter, Plaintiffs repeatedly told Defendants that Mr. Speakman will be out of the continental United States from September 16 through October 2.

**OPPOSITION TO MOTION FOR ORDER EXTENDING SCHEDULE** - Page 12

Scheduling Order be modified to permit Plaintiffs until November 10 to file their Reply, which is consistent with the 30-day period that Plaintiffs were given to file a reply memorandum.

### IV. If the Court Grants Defendants' Motion, Plaintiffs will be Prejudiced

Delay of this case inures to Defendants' benefit and to Plaintiffs' and the putative class' detriment. Predictably, if class certification is delayed for 60 days, then Defendants will ask for extension of other dates in the Scheduling Order. Delay benefits Defendants because they continue to collect on DAC Notes. Moreover, in an increasing number of cases where the commissions are inadequate to pay the amount allegedly due on the DAC Notes, Defendants have resorted to offsetting the amount allegedly due on the DAC Notes against commissions due to the particular agent outside the Trail Program. These events prejudice Plaintiffs while benefitting Defendants.

### CONCLUSION

Based upon the above, Plaintiffs request that Defendants' Motion for Order Extending Schedule for Class Certification Briefing be denied. Plaintiffs request that the Court modify paragraph 7 of the Scheduling Order to extend the time for Defendants to file their Opposition to Class until October 10, and Plaintiffs to file their Reply until November 10.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs request oral argument on Defendants' Motion and believe that such argument will assist the Court in resolving this matter.

| | |
|---|---|
| Dated: September 12, 2005 | **MOULTON & GANS, P.C.**<br><br>By: /s/ Nancy Freeman Gans<br>    Nancy Freeman Gans, BBO No. 184540<br>33 Broad Street, Suite 1100<br>Boston, Massachusetts 02109-4216<br>Telephone: (617) 369-7979<br>Facsimile: (617) 369-7980<br><br>Stephen L. Hubbard<br>Robert W. Biederman, BBO No. 562279<br>**HUBBARD & BIEDERMAN, LLP**<br>1717 Main Street, Suite 4700<br>Dallas, Texas 75201<br>Telephone: (214) 857-6000<br>Facsimile: (214) 857-6001<br><br>***ATTORNEYS FOR PLAINTIFFS*** |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by first class mail on this the 12th day of September, 2005, to the following:

| | |
|---|---|
| Jonathan A. Shapiro, Esq.<br>**WILMER CUTLER PICKERING**<br>  **HALE and DORR LLP**<br>60 State Street<br>Boston, MA 02109 | Brian E. Whiteley, Esq.<br>C. Alex Hahn, Esq.<br>**SCIBELLI, WHITELEY AND**<br>  **STANGANELLI, LLP**<br>50 Federal Street, Fifth Floor<br>Boston, MA 02110 |

/s/ Nancy Freeman Gans
Nancy Freeman Gans