UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

## NOTICE OF SUBPOENA COMMANDING MAIN STREET SECURITIES, LLC TO PRODUCE DOCUMENTS AND TO TESTIFY BY DEPOSITION

TO:     Stephen L. Hubbard
         Robert W. Biederman
         Hubbard & Biederman, LLP
         1717 Main Street, Suite 4700
         Dallas, TX 75201

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6) and

45, and commencing at 10:00 a.m. on Tuesday, September 20, 2005, at the offices of Wilmer

Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA (or other location by

agreement of counsel), defendants and counterclaim plaintiffs Allmerica Financial Life

Insurance & Annuity Co., First Allmerica Life Insurance Co., and Allmerica Financial Corp.

shall take the deposition by oral examination of Main Street Securities, LLC, by one or more

officers, directors, or managing agents, or other persons who consent to testify on its behalf and

- 1 -

EXHIBIT
14

who are most knowledgeable with respect to each of the topics identified in the attached Schedule B.

The deposition shall be recorded by stenographic means before a Notary Public or other officer authorized by law and pursuant to the Federal Rules of Civil Procedure. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary. A subpoena will be served upon Main Street Securities, LLC, commanding one or more persons of the company to attend the deposition.

You are invited to attend.

ALLMERICA FINANCIAL LIFE INSURANCE & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO., and ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Eric D. Levin
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 30, 2005

-2-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 30th day of August, 2005 by <u>overnight mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s/ Eric D. Levin
Eric D. Levin

USIDOCS 5261612v1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Kansas

Donald P. Speakman, et al.

V.

Allmerica Financial Life Ins. & Annuity Co., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  4:04-CV-40077-FDS

*(Pending in District of Massachusetts)*

TO:  Main Street Securities, LLC
     1407 Main Street
     Hays, KS 67601

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109 (or other location by agreement of counsel) | DATE AND TIME  9/20/2005 10:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A

| PLACE  Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109 | DATE AND TIME  9/13/2005 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *(Attorney for Defendants)* | DATE  8/30/05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Eric D. Levin, Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109 (617) 526-6000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# SCHEDULE A

## DEFINITIONS

1.      "You" or "Your" shall mean Main Street Securities, LLC, and any of its past or present parents, subsidiaries, business segments, predecessors, affiliates, officers, directors, employees, and any other person acting or purporting to act on its behalf.

2.      "Speakman" shall mean Donald P. Speakman.

3.      "Allmerica" shall mean Allmerica Financial Life Insurance & Annuity Company, First Allmerica Financial Life Insurance Company, Allmerica Financial Corp., VeraVest Investments, Inc., and State Mutual Life Insurance Company of America, SMA Life Assurance Company, and SMA Equities, Inc.

4.      "Document" shall have the meaning set forth in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.

5.      "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.      "Person" shall mean any natural person or any business, legal, or governmental entity or association.

7.      "Concerning" shall mean referring to, describing, evidencing, or constituting.

8.      "Action" shall mean the lawsuit entitled Donald P. Speakman, et al. v. Allmerica Financial Life Insurance & Annuity Co., et al., Civil Action No. 4:04-CV-40077-FDS pending in the United States District Court for the District of Massachusetts.

9.      "NASD" shall mean the National Association of Securities Dealers.

10.     "SEC" shall mean the United States Securities and Exchange Commission.

11. "Compensation" shall mean salaries, commissions, cost reimbursements, bonuses, incentives of any kind.

12. "Product" shall mean an insurance policy, annuity, or other contract for the sale of securities or insurance.

## INSTRUCTIONS

1. If you contend any of the Requests are ambiguous or unclear with respect to the materials sought, or that production would create an unnecessary burden or expense, please contact counsel for the parties issuing this Subpoena to address any such issues in a timely and pragmatic manner.

2. All use of language in these Requests that appears in the conjunctive form specifically includes the disjunctive form, and vice versa. All words that are used in their singular form include the plural form, and vice versa. The past tense shall be construed to include the present tense, and vice versa.

3. If any document responsive to any of these Requests is claimed to be privileged or otherwise protected from discovery, then for each such document, provide the information required by Federal Rule Civil Procedure 26(b)(5).

4. If no documents exist that are responsive to a particular Request, state that no documents exist.

5. These Requests are continuing and require supplemental response and production in accordance with the Federal Rules of Civil Procedure and the Local Rules.

## TIME PERIOD

Unless otherwise specified, the time period covered by these requests is from January 1, 2001 to the present.

- 2 -

## REQUESTS FOR DOCUMENTS

1.      All documents concerning Your relationship, dealings, and transactions with Speakman.

2.      All documents concerning or constituting any agreement, arrangement, or understanding pursuant to which Speakman has served as a broker, agent, salesperson, intermediary, or facilitator for the marketing, sale, or issuance of any Product.

3.      All documents concerning Compensation of any sort paid to Speakman from January 1, 2001 to the present, including but not limited to documents concerning:

> (a)     the reasons why that Compensation was provided;
> (b)     when the Compensation was earned;
> (c)     when the Compensation was paid or tendered (if that date is different from the date in subparagraph (b); and
> (d)     the basis upon which that Compensation was calculated.

4.      All documents concerning any training or education provided to or undertaken by Speakman.

5.      All documents concerning any of Your policies and practices as to the transfer or replacement of annuities including but not limited to prohibitions on transfers or replacements, communications with clients regarding transfers or replacements, and commissions paid or not paid for transfers or replacements.

6.      All documents concerning Speakman's prior or current relationship with Allmerica including but not limited to:

> (a)     Speakman's prior employment or affiliation with Allmerica;
> (b)     the termination of Speakman's prior employment or affiliation with Allmerica;
> (c)     the Compensation paid by Allmerica to Speakman;
> (d)     the marketing or sale of Allmerica products; and
> (e)     the Action.

- 3 -

7.    All documents concerning any transfers or replacements of any Allmerica

contract or policy by any client or customer of Speakman including but not limited to:

    (a)    documents sufficient to show (1) the name and contract/policy number of the Allmerica contract or policy that was transferred or replaced, (2) the person to whom the replaced annuity was issued, (3) the amount of the replaced annuity, (4) the name and contract/policy number of the annuity that replaced the Allmerica contract or policy, (5) the name of the company that issued the replacement annuity, (6) the amount of the transfer or replacement, and (7) the date of the issuance of the replacement annuity;

    (b)    all applications concerning such transfers and replacements;

    (c)    communications with clients or customers concerning such transfers or replacements;

    (d)    communications with Allmerica concerning such transfers or replacements;

    (e)    communications with the company that issued the new annuities that replaced the Allmerica contract or policy;

    (f)    documents concerning any analysis of the suitability of the annuities that replaced the Allmerica contract or policy;

    (g)    memoranda, notes, or reports concerning such transfers or replacements; and

    (h)    documents concerning any commissions or other compensation earned by Speakman as a result of such transfers or replacements.

8.    All documents concerning Speakman's communications (including but not

limited to presentations, solicitations, advice, or instructions) with any holders or former holders

of any Allmerica contract or policy concerning the potential surrender, transfer, or replacement

of any Allmerica contract or policy.

9.    All documents concerning Speakman's communications (including but not

limited to presentations, solicitations, advice, or instructions) with any holders or former holders

of any Allmerica contract or policy concerning the acquisition, purchase, holding, or sale of

annuities written, issued, or administered by any entity other than Allmerica.

- 4 -

10. All documents concerning presentations, speeches, conferences, or meetings given or attended by Speakman in which Speakman discussed Allmerica's business, ratings of Allmerica, Allmerica's service of any Allmerica contract or policy, Allmerica's ability to service Allmerica contracts or policies, Allmerica's payment of a Guaranteed Minimum Death Benefit, Allmerica's ability to pay a Guaranteed Minimum Death Benefit, and Allmerica's accounting of Deferred Acquisition Costs.

11. All documents concerning customer complaints or disputes concerning Speakman.

12. Speakman's filings with the NASD or any other governmental or regulatory agency or organization.

13. All documents concerning the supervision or oversight of Speakman pursuant to NASD Rules 2110, 2310, 3010, and 3110.

14. All documents concerning any inquiry, investigation, or request for information by the NASD, SEC, or any other state or federal regulatory or governmental agency or self-regulatory organization concerning Speakman (including but not limited to requests, responses, documents productions, communications, and transcripts or sworn statements), and also all documents concerning the investigation "in the replacement of Allmerica Variable Annuities" as referenced on the first page of a letter from Rodney K. Vincent to Margot K. Wallin dated May 24, 2005 (which is attached as Exhibit 1).

15. A complete set of the "files" referred to as having been reviewed by Main Street Securities, LLC and Donald Speakman in the third paragraph of the letter from Rodney K. Vincent to Margot K. Wallin dated May 24, 2005 (which is attached as Exhibit 1).

# SCHEDULE B

## Topics for Examination

Please take notice that, pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, defendants and counterclaim plaintiffs Allmerica Financial Corporation, Allmerica Financial Life Insurance & Annuity Company, and First Allmerica Financial Life Insurance Company, by and through their counsel, will take a deposition upon oral examination, before a person authorized to administer oaths, of Main Street Securities, LLC, on September 20, 2005 commencing at 10:00 a.m. at Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109 (or other location by agreement of counsel) and continuing until completed. The testimony will be recorded by stenographic means.

In accordance with Rule 30(b)(6), Main Street Securities, LLC, shall designate and prepare one or more officers, directors, managing agents, partners, records custodians, or other persons who are most knowledgeable about and consent to testify on its behalf about:

1.    The organization and maintenance of the documents sought in Schedule A.

2.    Main Street Securities, LLC's, policies and procedures concerning the sale of annuities as replacements for annuities issued by other companies.

3.    The transactions, events, products, and communications that are the subject of the requests for documents in Schedule A.

- 1 -

# Vincent Law Offices

**Rodney K. Vincent**
**Darla J. Johnson**
Attorneys at Law

May 24, 2005

Ms. Margot K. Wallin
Chief Compliance Officer
Vera Vest Investments, Inc.
440 Lincoln Street'
Worcester, MA 01653

                    VeraVest Investments, Inc. Letter of
                    April 26, 2005

Dear Ms. Wallin:

Upon receiving the above captioned letter, Main Street Securities, LLC. ("Main Street")
contacted both Mr. Speakman and myself.

Main Street recognizes that the allegation that Donald Speakman, a registered
representative of Main Street, made misleading and potentially disparaging comments
regarding Allmerica Financial would, if true, be of concern.    Further your comments
regarding the supervision of Mr. Speakman by Main Street are also of interest to Main
Street.

As a result of the of the issues raised by your letter, Main Street and Mr. Speakman have
reviewed all files indicating transactions similar to those alleged in your letter. We have
been unable to find transactions or events that are even similar to those alleged in your
letter.

Mr. Weimer, Main Street's director of compliance, requested that your office provide
Main Street with the names of the customers at issue so that your allegations could be
investigated further. It appears that you have refused to provide the names of the alleged
customers.

Because of your failure to provide Main Street with the names of the customers or any
other identifying information upon which you have based your allegations, one must
conclude that your allegations were without factual basis.

The fact that you sent a copy of your unsupported allegations to the NASD demonstrates
that this most recent letter is a continuation of Vera Vest Investments, Inc. and
Allmerica's efforts to compete in the market place by causing the NASD to institute
investigations in the replacement of Allmerica Variable Annuities by representatives

---

Rodney K. Vincent
5/24/2005
Page 2 of 2

attempting to serve the best interest of their clients.   Vara Vest Investments, Inc. and
Allmerica would be better served by offering the public a quality product backed by a
credible insurance company.  Vera Vest Investments, Inc. unsupported allegations are in
violation of  NASD rule of conduct 2110.

Should you have facts to back your allegations, please provide them to me or Main Street
so that we can investigate your allegations.   If  you do not have the facts, please forward
an apology to Main Street with a copy sent to the NASD.


Sincerely yours

Rodney K. Vincent

Mr. Dan McClain
NASD Enforcement Division
1801 K Street, NW
8th Floor
Washington, DC 20006

Brian Weimer
Director of Compliance
Main Street Securities, LLC
1407 Main Street
Hays, Kansas 67601

Donald P. Speakman
Speakman Financial Group
Penn Center West Two, Suite 325
Pittsburgh, PA 15276

## Robert Biederman

| | |
|---|---|
| **From:** | Robert Biederman |
| **Sent:** | Friday, September 02, 2005 11:16 AM |
| **To:** | 'Shapiro, Jonathan'; 'Levin, Eric' |
| **Cc:** | Stephen Hubbard; David Grossman |
| **Subject:** | Speakman v. Allmerica |

**Attachments:** protect order.wpd

This e-mail is to advise you that we have available for your review documents produced by Plaintiffs in response to
Defendants' Request for Production. Specifically, there are 2,292 pages (and 2 videotapes) that Plaintiff Speakman has
produced, 2,974 pages that Plaintiff Wedel has produced, and 1,978 pages that Plaintiff Robare has produced. Many of these
documents are designated "Confidential." To the extent that you want these documents copied, they are subject to the same
terms and conditions that you provided us information in connection with Defendants' Responses to Plaintiffs' First Set of
Interrogatories and First Set of Request for Admissions. Specifically, these documents will be made available if Defendants
agree to be bound by the terms of the Protective Order even though it has not yet been entered by the Court. As to the terms
of that Protective Order to which you agree to be bound, it encompasses the draft that Defendants sent on August 8, the
changes to which you agreed in connection with our e-mail of August 9, and the change discussed on August 11 to which we
agreed to delete the last paragraph of the Order. We need you to confirm in writing that you will be bound by the provisions of
that Order, as we did in connection with the Responses to Interrogatories and Request for Admission. We have attached that
Protective Order reflecting the above changes that we need to submit to the Court.

Robert W. Biederman
HUBBARD & BIEDERMAN, LLP
1717 Main Street, Suite 4700
Dallas, Texas 75201
(214) 857-6000
(214) 857-6001 fax


EXHIBIT
15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WORCESTER DIVISION**

| | | |
|---|---|---|
| **DONALD P. SPEAKMAN, STEPHEN H.** | § | |
| **WEDEL and MARK L. ROBARE,** | § | |
| **Individually and On Behalf of All Others** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No.  4:04-cv-40077-FDS** |
| **v.** | § | |
| | § | |
| **ALLMERICA FINANCIAL LIFE INS. &** | § | |
| **ANNUITY CO., FIRST ALLMERICA** | § | |
| **FINANCIAL LIFE INS. CO., and** | § | |
| **ALLMERICA FINANCIAL CORP.** | § | |
| | § | |
| **Defendants.** | § | |

## PROTECTIVE ORDER

During the course of this litigation, the parties may need to disclose "Confidential Material" through discovery. This Protective Order governs the production and treatment of such Confidential Material by the parties. This Order is entered pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

### Definitions

1.      "Confidential Material" means documents or information that: (a) is or contains non-public financial data, marketing and advertising data and plans, strategic or long-range plans, internal cost data, performance data; (b) is designated by a party in good faith as confidential because it contains or is information protected from disclosure by Fed. R. Civ. P. 26(c)(7), or (c) contains commercially sensitive information or information the designating party believes pursuant to existing law or a reasonable extension of existing law should be disseminated to Qualified Persons only under the terms of this Order. Documents, information, or

1

testimony obtained by the Receiving Party from a source other than discovery material shall not

be deemed Confidential Material, regardless of whether such information is also contained in

discovery material designated as Confidential Material.

2.    "Producing Party" means the party producing material during discovery.

3.    "Receiving Party" means the party receiving material during discovery.

4.    "Qualified Persons" means

(a)    a party, or an officer, director, or employee of a party deemed reasonably
necessary by counsel to aid in the prosecution, defense, or settlement of
this action, including class representatives;

(b)    outside experts or consultants (together with their assistants and clerical
staff) retained by such counsel to assist in the prosecution, defense, or
settlement of this action;

(c)    persons identified on the face of the document in question as an author,
addressee or other recipient; and

(d)    a witness in preparation for and/or at any deposition or other proceeding in
this action.

### Designation of Material As "Confidential"

5.    If a Producing Party reasonably and in good faith believes that it is disclosing or

producing Confidential Material, it shall designate the material as "Confidential."

6.    If a Producing Party reasonably and in good faith believes a document contains

Confidential Material, it shall place a "CONFIDENTIAL" stamp or sticker on each page in which

the material appears or, when not practical to do so, by some other method likely to place others on

notice of the confidential designation.

7.    If a Producing Party reasonably and in good faith believes a written disclosure

(e.g., an interrogatory answer) contains Confidential Material, it shall clearly indicate that the

disclosure contains "CONFIDENTIAL" information by typing the word at the beginning and end of the disclosure.

8.      If a Producing Party reasonably and in good faith believes that a deposition involves Confidential Material (whether in the form of testimony or exhibits), it shall, within thirty (30) days of receiving the deposition transcript, provide the court reporter and other party with written notice as to the pages and/or exhibits in which the Confidential Material appears. The Producing Party shall further provide the court reporter with written notice that the deposition transcript shall be kept under seal and provided only to counsel of record for the parties to this Protective Order.

9.      This Order shall be without prejudice to the right of the parties or other persons to: (I) bring before this Court at any time the question of whether any particular document or information is Confidential, or whether its use should be Confidential, or (ii) present a motion to the Court under Fed. R. Civ. P. 26(c) for a separate protective order as to any particular document or information, including restrictions differing from those as specified herein. This Order shall not be deemed to prejudice the parties in any way in any future application for modification of this Order.

10.      This Order is entered solely for the purpose of facilitating the exchange of documents and information between the parties to this action without involving the Court unnecessarily in the process. Nothing in this Order, nor the production in this action of any information or document under the terms of this Order, nor any proceeding pursuant to this Order shall be deemed to have the effect in any other proceeding of an admission or waiver by either party or of altering the Confidential nature of any document or information, or altering any existing obligation of any party or the absence thereof.

3

11.    The parties agree that the filing and entry of this Order shall not constitute a

waiver of any rights under any applicable law, court rules or both.

### Handling of Discovery Material

12.    The parties agree that they shall use all material obtained through discovery

(regardless of whether designated as Confidential) only for purposes of this litigation or an appeal

involving this litigation.

13.    The Receiving Party shall not transmit Confidential Material to any person other

than:

(a)    counsel of record for any party to this Protective Order (and their paralegals, secretaries, clerks and other agents and employees);

(b)    the parties to this Protective Order;

(c)    the Court, Court personnel, and jurors;

(d)    court reporters and stenographers or notaries public;

(e)    any other person who is designated by stipulation of the parties to this Protective Order or by Order of the Court after notice to all parties; and

(f)    Qualified Persons as defined above.

14.    Prior to receiving any Confidential Material, each "Qualified Person" designated

in paragraph 4(b) shall be provided with a copy of this Order and shall execute an

Acknowledgment of Entry of Protective Order in the form of Exhibit "A" ("Acknowledgment").

Prior to receiving any Confidential Material, each "Qualified Person" designated in paragraph

4(d) shall be provided with a copy of this Order and shall be asked to execute the

Acknowledgment.    Each "Qualified Person" designated in paragraph 4(d) who testifies at

deposition or other proceeding in this action may, in lieu of executing the Acknowledgment,

4

agree on the record to abide by the terms of the Protective Order prior to receiving any

Confidential Material. Counsel for the party seeking to disclose Confidential Material to any

"Qualified Person" pursuant to this paragraph shall be responsible for permanently retaining the

executed originals of all such Acknowledgments.

15.     If a Receiving Party desires to disclose Confidential Material to a person that does

not fall into any of the categories (a)-(e) above, the Receiving Party shall provide written notice

to the Producing Party and a reasonable opportunity for the Producing Party to object to the

disclosure. If the Producing Party does not agree to the disclosure, the disclosure shall not be

made except by Court order.

### Attaching Confidential Material to Court Filings

16.     If a party wishes to make a submission to the Court that includes Confidential

Material, the party shall make a motion in accordance with Local Rule 7.2 to file or present the

Confidential Material under seal.  However, if the Court denies permission to file or present

particular Confidential Material under seal, the party seeking to file or present the material

shall not be precluded from filing or presenting the Confidential Material to the Court.

### Objecting to A Designation of Material As "Confidential"

17.     A Receiving Party may object to the designation of particular material as

Confidential Material by giving written notice to the Producing Party not later than sixty (60)

days after: (1) the close of discovery; (2) the date on which the party produced the supposedly

Confidential Material; or (3) the date on which the party was required to have disclosed the

supposedly Confidential Material, whichever is later. Any such objection shall clearly identify

the designation to which the objection is directed and shall provide a detailed basis for the

objection. The parties shall attempt to resolve their differences within ten (10) days from the

5

time notice of written objection is received and, if they are unable to do so, any party may thereafter file a motion requesting that the Court determine whether the material may be designated as Confidential. The material shall be treated as Confidential Material subject to the protections of this Protective Order until the Court rules on the Producing Party's motion.

18.     The inadvertent production of any arguably privileged attorney-client communications or protected work product shall be without prejudice to any claims that the documents are privileged or protected, and shall not constitute a waiver of any privilege or protection that otherwise may attach thereto, provided that the Producing Party notifies the Receiving Parties promptly upon its discovery of the inadvertent production. Such production also shall not be deemed a general waiver of such privilege or protection, and the parties agree not to argue that such production constitutes a waiver of such privilege or protection, or in any way impairs the privileges and discovery objections the Producing Party otherwise could assert. Upon request of the Producing Party, all non-producing parties shall return all copies of any inadvertently provided documents, although nothing in this paragraph shall preclude a non-producing party's right to seek whatever relief if appropriate with respect to such returned documents.

### Use of and Return of Confidential Material

19.     Material designated as Confidential under this Order, the information contained therein, and any summaries, copies, abstracts, or other documents derived in whole or in part from material designated as Confidential shall be used only for the purpose of the prosecution, defense, or settlement of this action, and for no other purpose.

20.     This Order shall survive the termination of this action and continue in full force and effect.

21.     Within sixty (60) days of the termination of this action by final non-appealable judgment, the parties and their counsel shall return all material obtained during discovery to the Producing Party or shall confirm in writing that all such copies have been destroyed. Nothing in this paragraph, however, shall preclude counsel from retaining pleadings, transcripts, exhibits, responses, notes and memoranda, and other material archived as part of their case and client files.

**APPROVED AND SO ORDERED:**

**Dated: _____**                    _____

                                         **JUDGE F. DENNIS SAYLOR IV**
                                         **UNITED STATES DISTRICT COURT**

## EXHIBIT A

### Acknowledgment of Entry of Protective Order

The undersigned hereby states that he or she received a copy of the Protective Order governing the disclosure and treatment of Confidential Material produced in this action, *Donald P. Speakman, et al. v. Allmerica Financial Life Insurance & Annuity Co., et al.,* Civil Action No. 4:04-CV-40077-FDS, has read the same, agrees to be bound by its terms. The undersigned further acknowledges that failure to so comply could expose me to a motion to enforce the Order or seek relief under the terns of this Order.

Signature: _____

Date: _____

Name: _____

Address: _____

_____

_____

Company: _____

8

# HUBBARD & BIEDERMAN, L.L.P.

### ATTORNEYS AT LAW

*A Texas Registered Limited Liability Partnership*

<table>
<tr><td>1717 Main Street<br>Suite 4700<br>Dallas, Texas 75201</td><td>Telephone: 214-857-6000<br>Facsimile: 214-857-6001<br>www.hblawfirm.com</td></tr>
</table>

September 9, 2005

**Via Facsimile (617) 526-5000**

Jonathan A. Shapiro
Wilmer Cutler Pickering
Hale And Dorr, LLP
60 State Street
Boston , MA 02109

> Re:    **Donald P. Speakman, et al. v. Allmerica Financial Life Insurance &
> Annuity Co., et al.; No. 4:04-cv-4077-FDS**

Dear Jonathan:

This letter is in response to your letter dated September 7. We will address the scheduling of the depositions of each of the Plaintiffs and then proposed modifications to the briefing schedule on class certification that will enable us to preserve the November 14 hearing date.

As to Mr. Speakman's deposition, you withdrew, on less than 5 days' notice, the notice for his deposition on September 12. We had previously offered you alternate dates of September 9 & 13, which you refused. In connection with the location of the deposition, while we believed that it was more appropriate to take the deposition in Pittsburgh, given his abbreviated availability in September due to prior business commitments, you never responded to our August 18 & 19 letters in which we sought to confer about the date and location of Mr. Speakman's deposition. Consequently, we filed the Motion for Protective Order to have the Court determine the date and location of the deposition.

In connection with the production of Mr. Speakman's non-privileged documents, we made available for your review on September 2 nearly 2,000 pages of documents, including many replacement files. As we indicated in the September 2 correspondence, we are asking that you treat these documents as subject to the terms of the draft Protective Order, with the modifications we had agreed to, until such time as the Court has entered a Protective Order. This is exactly the same condition that we agreed to as you requested in connection with the receipt of Defendants' Responses to Plaintiffs' First Set of

EXHIBIT



Jonathan A. Shapiro
page 2
September 9, 2005

Interrogatories and First Set of Request for Admissions. As to the production of the remainder of Speakman documents, we again question your need for every replacement file for purposes of his deposition. Because the Court is not going to decide the merits of Defendants' counterclaim, that focuses on replacement activity, in its decision on class certification, Defendants do not need every replacement file for his deposition. We have proposed reasonable alternatives, including producing a representative sample of replacement files and permitting Defendants to reserve deposition time for a subsequent examination of Mr. Speakman. We gather from your lack of response that you have rejected these alternatives. Apparently, Defendants' interest in demanding all these files is not due to any genuine need to oppose class certification, but to harass and interfere with Mr. Speakman's business operations. Notwithstanding the above impermissible purpose, we will endeavor to produce the remaining replacement files by September 27.

In light of your withdrawal of the Speakman Notice of Deposition, and our repeatedly telling you that he will be out of the continental United States from September 16 through October 2 on a previously scheduled trip, we are willing to make him available for deposition in Boston on October 4. Additionally, we are willing to reconfirm the dates and locations for Messrs. Robare and Wedel on September 26 & 27 in Houston and St. Louis, respectively as you offered in your August 18 letter. Based upon this schedule, we are willing to discuss modifying the briefing schedule so that you have until October 10 to file your Response to Class Certification, and Plaintiffs would have until November 10 to file their Reply Brief. This revised schedule would obviously be subject to Court approval.

Please contact us as soon as possible in order that we can confirm the above dates with our clients.

Sincerely,

Robert W. Biederman

cc:    Donald P. Speakman
       Stephen H. Wedel
       Mark L. Robare
       Stephen L. Hubbard

b) Use of a Web site that implied that tax benefits in tax-deferred plans are only available if they are funded with annuity contracts;

c) Failure to adequately disclose that the investment vehicles funding the plans are variable contract sub-accounts, as opposed to mutual funds; and

d) Inadequate written supervisory procedures.

Under the NASD rules, the individuals and the firms named in the complaints can file a response and request a hearing before an NASD Regulation disciplinary panel. Possible sanctions include a fine, suspension, bar, or expulsion from the NASD.

## 2. Prudential Securities, Inc. - Case No. C06010005

Prudential Securities, Inc. settled the following charges without admitting or denying NASD Regulation allegations. The findings include:

Failure to enforce the firm's written procedures relating to the sale of annuities—certain documentation (e.g., order tickets and other documents required under the firm's own procedures) was missing in 201 transactions reviewed.

The firm was censured and fined of $10,000.

## 3. First Union Brokerage Services, Inc. - Case No. C05010010

First Union Brokerage Services, Inc. settled the following charges without admitting or denying NASD Regulation allegations. The findings include:

a) The firm failed to establish and maintain adequate written procedures to supervise the sale of variable annuity contracts in terms of how reviews were to be done, how to evidence the review, how to supervise the suitability of the allocation of premium payments to sub-accounts, and how certain of the review responsibilities could be delegated.

b) The firm failed to obtain customer information required pursuant to its written procedures.

The firm was censured and fined $32,500, which includes $5,000 of disgorgement.

## 4. Allmerica Investments, Inc.- Case No. C06010004

Allmerica Investments, Inc. settled the following charges without admitting or denying NASD Regulation allegations. The findings include:

Deficient written supervisory procedures relating to annuity sales - routine procedure not in place to ensure adequate principal review of customers' investment objectives.

The firm was censured and fined $15,000.00.

## 5. Ralph C. Evans - Case No. C05010009

Ralph C. Evans settled the following charges without admitting or denying NASD Regulation allegations. The findings include:

Evans sold a $325,000 annuity contract into a revocable trust for the benefit of a 76-year-old widow. Funds for the purchase were derived from the sale of Class B mutual funds, for which the account incurred contingent deferred sales charges, and from a margin loan. The transaction was unsuitable because Evans had not made any determination about whether the anticipated holding period was long enough such that the taxdeferred benefits would be likely to outweigh the fees imposed on the annuity relative to other investments. These included the contingent deferred sales charges paid in connection with the sale of the mutual fund shares and the margin interest.

Evans was censured, fined $10,000, and ordered to pay restitution to the affected customer in the amount of $20,130.61.

## 6. Lutheran Brotherhood Securities Corp. - Case No. C06010003

Lutheran Brotherhood Securities Corporation settled the following charges without admitting or denying NASD Regulation allegations. The findings include:

EXHIBIT



17

securities dealers. NASD also found that the firm failed to provide accurate and timely information regarding municipal securities trades to the National Securities Clearing Corporation (NSCC), which caused the firm's T-Input Percentage to be consistently below the industry average. **(NASD Case #C8A020065)**

**Allmerica Investments, Inc. (CRD #3960, Worcester, Massachusetts)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured and fined $30,000. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that it failed to establish an adequate supervisory system reasonably designed to prevent and detect unsuitable mutual fund transactions in customer accounts. The findings also stated that the firm failed to establish reasonable written supervisory procedures for identifying the process the firm used in reviewing and detecting unsuitable mutual fund transactions, and to the extent the firm had written supervisory procedures related to mutual fund transactions, the firm failed to take steps to ensure that the procedures were followed. **(NASD Case #C11020036)**

**Conseco Equity Sales, Inc. (CRD #4125, Carmel, Indiana)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured and fined $10,000. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that it allowed representatives to act in a capacity requiring registration without being so registered due to a failure to complete the Regulatory Element of Continuing Education. The findings also stated that the firm failed to establish, maintain, and enforce written supervisory procedures to ensure compliance with the Regulatory Element of Continuing Education. **(NASD Case #C8A020073)**

**First Institutional Securities, LLC (CRD #23910, West Paterson, New Jersey)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured, fined $15,000, and required to pay $1,840 in restitution to public customers. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that it incorrectly reported to the Automated Confirmation Transaction Service$^{SM}$ (ACT$^{SM}$) the capacity in which it had acted and failed to report trades properly. The findings also stated that the firm failed to display immediately customer limit orders in its public quotation when each such order was at a price that would have improved the firm's bid or offer in each such security, and failed to contemporaneously or partially execute customer limit orders after it traded each subject security for its own market-making account at a price that would have satisfied each customer's limit order. In addition, NASD found that the firm incorrectly notified a customer that the trade had been executed on an agency basis, when, in fact, the trade had been effected on a principal basis and failed to maintain an order ticket for transactions and the order tickets failed to reflect the correct execution or entry time. **(NASD Cases #C9B020072 and C9B020073)**

**First Montauk Securities Corp. (CRD #13755, Red Bank, New Jersey)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured and fined $15,000. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that it failed to display immediately customer limit orders in NASDAQ securities in its public quotation, when each such order was at a price that would have improved the firm's bid or offer in each such security; or when the order was priced equal to the firm's bid or offer and the national best bid or offer in such security, and the size of the order represented more than a de minimis change in relation to the size associated with its bid or offer in each such security. The findings also stated that the firm failed to report to the Fixed Income Pricing System$^{SM}$ (FIPS$^{SM}$) transactions in FIPS securities within five minutes after execution. **(NASD Case #CMS020178)**

**KBC Financial Products USA, Inc. (CRD #46709, New York, New York)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured and fined $10,000. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that it failed, within 90 seconds after execution, to NASD transmit through ACT last-sale reports of transactions in NASDAQ National Market$^{®}$ (NNM$^{®}$), NASDAQ SmallCap$^{SM}$ (SC$^{SM}$), and Consolidated Quotation Service (CQS) securities. NASD also found that the firm incorrectly designated as ".SLD" through ACT last-sale reports of transactions in NNM securities and CQS securities reported to ACT within 90 seconds of execution. The findings stated that the firm failed to accept or decline in ACT transactions in eligible securities within 20 minutes after execution. **(NASD Case #CMS020163)**

**Northeast Securities, Inc. (CRD #25996, Mitchelfield, New York)** submitted a Letter of Acceptance, Waiver, and Consent in which the firm was censured and fined $10,000. Without admitting or denying the allegations, the firm consented to the described sanctions and to the entry of findings that, during the contingency period of a private placement offering in which the firm served as placement agent for a best efforts "part-or-none" private placement self-offering of interests in the firm, it failed to ensure that the money or other considerations received were promptly transferred to a bank that had agreed in writing to hold all such funds in escrow for the persons who had the beneficial interests therein, and to transmit or return such funds directly to the persons entitled thereto when the appropriate event or contingency had occurred. **(NASD Case #CLI020008)**

**Spencer Trask Ventures, Inc. (CRD #28373, New York, New York)** was censured and fined $41,636, of which $1,000 was jointly and severally. The sanctions were based on findings that the firm, in violation of the Free-Riding Withholding Interpretation, sold "hot issues" to prohibited accounts and failed to exercise reasonable supervision and to establish and maintain supervisory procedures reasonably designed to achieve compliance with NASD Rule IM-2110-1. **(NASD Case #C8A020010)**

EXHIBIT


181







**ALLMERICA** FINANCIAL

# Forward-looking Statements

All statements in this power point slide presentation, accompanying press release and conference call, other than statements of historical fact, are forward-looking statements, as that term is defined in the Private Securities Litigation Reform Act of 1995. In addition to the risks and uncertainties noted in this release or in such conference call, there are certain factors that could cause actual results to differ materially from those anticipated by the press release, slide presentation and statements made. These include: (1) the successful consummation of the transactions with Goldman Sachs in a timely manner; (2) the various conditions to the consummation of such transactions being satisfied or waived without the imposition of material burdens or expenses; (3) the required regulatory approvals of the transactions being obtained in a timely manner without the imposition of any material restrictions or burdens, and regulatory approval for future dividend requests from FAFLIC; (4) the uncertainties as to the gross or net proceeds to be received by AFC, including the uncertainty as to the effects of the various purchase price adjustments and expenses incurred by AFC; (5) the shareholder approval of the AIT Fund reorganization; (6) the successful and timely execution of the anticipated repurchase program; (7) the ability to realize post-closing earnings for the property-casualty segment that are taxable and make FAFLIC's tax attributes valuable; (8) the ability to timely achieve overhead and other expense savings; (9) the ability of AFC and FAFLIC to perform the transitional services in connection with the transactions without incurring unexpected expenses and the completion of the transitional services within the projected time so that the company can realize projected cost savings; (10) the uncertainties of the purchase price hedge to effectively hedge the purchase price as currently estimated and at a cost consistent with expectations; (11) the impact of policyholder surrenders on the purchase price adjustment, which are not hedged, and the impact that this announcement or any financial strength rating actions triggered by this announcement could have on surrenders assumed by the holding company closing; (12) the impact of contingent liabilities, including litigation and regulatory matters, assumed by the holding company in connection with the transaction; (13) the ability to outsource the administration of the retained FAFLIC businesses at projected rates; (14) the statutory results of operations of the Life Companies segment until close, which will impact the statutory surplus of AFLIAC and consequently the ultimate purchase price; and (15) the future statutory operating results of FAFLIC, which will affect projected statutory adjusted capital.

Forward-looking statements are not guarantees of future performance, and actual results could well differ materially. Investors should consider these and other risks and uncertainties in our business that may affect future performance (including Life Companies operations) and that are discussed in readily available documents, including Allmerica's Annual Report on Form 10-K, quarterly reports on Form 8-K and other documents filed by Allmerica with the Securities and Exchange Commission and which are also available at www.allmerica.com under "Investor Relations"

2



# Transaction Overview

- Sale of VA and VUL business to The Goldman Sachs Group.

- Projected proceeds related to the sale of approximately $345 million.

- In conjunction with the sale, we will seek regulatory approval for $40 million dividend from remaining life company (FAFLIC).

- Projected GAAP after tax loss on the sale is expected to be approximately $385 million in 2005 and $15 million in 2006.

- Transaction is currently projected to close November 30, 2005.

- Remaining traditional life business of FAFLIC is projected to have approximately $175 million in statutory total adjusted capital post-transition.



# Form of Transaction

◆ Sale of AFLIAC legal entity, which contains most of the VA and VUL business – $10 billion in Account Value.

◆ Transfer of remaining VA and VUL business which is contained in FAFLIC via reinsurance – $0.6 billion in Account Value.

◆ Transfer of Allmerica Investment Trust (AIT) assets and liabilities via fund reorganization into the Goldman Sachs Variable Insurance Trust.

# Major Terms



**ALLMERICA** FINANCIAL

- Total projected proceeds of approximately $345 million
  - $345 million projected proceeds related to the sale transaction
    - $310M related to sale of AFLIAC
    - $  9M related to reinsurance of FAFLIC business
    - $  26M related to transfer of AIT Funds and sale of AFIMS
  - $40 million estimated proceeds at closing  from proposed dividend out of retained life company (FAFLIC).

- $70 million of the projected proceeds from the sale will be deferred and paid out over 3 years.

- Actual purchase price is subject to adjustment from certain changes in the equity market, implied equity market volatility, interest rates, surrender activity and changes in AFLIAC surplus until closing.

- We are implementing a hedge program intended to substantially protect us from changes in the purchase price from market movements until closing.

- Allmerica has agreed to provide transition services to Goldman Sachs for up to 18 months.

- AFLIAC stock sale closing is expected to occur on November 30, 2005; other closings are expected at the same time or later.



# Use of Proceeds

2005 projected cash proceeds of $315 million (total projected proceeds of $385 million less $70M deferred payment).

◆ Anticipated share repurchase program of up to $200 million, commencing after the close.

◆ Remaining cash held at holding company for:

– Reinstatement of a common stock dividend, expected in the fourth quarter.

– Interest expense on debt and trust preferred.

– Payment of certain expenses associated with the transaction.

– Possible future payments in connection with liabilities assumed and other transaction indemnification obligations.

– Other holding company obligations.

◆ Enhanced holding company financial flexibility and liquidity.

# Projected GAAP Financial Impact


ALLMERICA
FINANCIAL

◆ Life Segment Earnings

– Earnings for 2005 and beyond will only reflect the retained Life business.

– Expected loss in 2005 and 2006, resulting principally from timing of expense reductions

– Results for 2007 and beyond are expected to approximate breakeven.

◆ Discontinued Operations

– The AFLIAC variable business that has been sold will be reported as discontinued operations under SFAS 144

– Effective upon signing in Q3 of 2005.

– 2005 Q1 and Q2 reported results will be restated

– Projected after-tax loss on sale of approximately $385 million reported as discontinued operations in Q3 2005.

– True-up reflecting final purchase price including the impact of the hedge expected in Q4 2005.

– Additional after tax loss of $15M projected in 2006.



# Projected Earnings Impact

*Projections Assume 11/30 Closing*

| | 2005 | 2006 | 2007 |
|---|---|---|---|
| **Pre-tax Life Companies Segment Earnings** | $( 30)M | $( 7)M | Nil |
| **Discontinued Operations** | | | |
| Income from operations of discontinued life business, net of taxes | $ 25 M | $ 0 M | $ 0 |
| Loss from disposal of life business, net of taxes | $(385)M [1] | $( 15)M [2] | $ 0 |

- Projected loss from disposal of $(385)M in 2005 composed of projected proceeds of approximately $345M less estimated GAAP equity of $705M and estimated $25M of closing costs, adjustments and net transition services expenses.

- Estimated loss from disposal of ($15)M in 2006 composed of an estimated $8M of net transition services expenses and $7M in severance costs.

8

ALLMERICA
FINANCIAL

# FAFLIC Retained Business

## Retained Business

*($ in millions)*

| | Statutory Reserves (As of June 30, 2005) | Description |
|---|---|---|
| Traditional Life, principally Closed Block | $770 | Traditional participating whole-life (approximately 70,000 policies). |
| Pension Annuities | $510 | Primarily purchased benefits providing monthly payments (approximately 15,000 annuitants). |
| GICs | $400 | Funding agreements of $345M maturing within the next twelve months. |
| Group Life & Health | $ 70 | Residual business from discontinued group Life & Health segment exited in 1999. |

9



# Financial Highlights – FAFLIC Retained Business

- Projected statutory total adjusted capital of approximately $175 million after the transition period.

- Projected breakeven statutory results from operations after the transition period is completed.

- Tax attributes of approximately $170 million at June 30, 2005; majority are not reflected in statutory total adjusted capital.

- Tax attributes are projected to generate approximately $20-25 million per year of dividendable statutory capital for a four to five year period beginning in 2006.

- Residual projected total adjusted capital of $175M should be realizable over time.

- AFC expects to provide a 100% RBC keepwell to FAFLIC.

10

# Summary

ALLMERICA
FINANCIAL

- Total projected proceeds estimated to be $385M.

- Anticipate initiating share repurchase program of up to $200M commencing at closing of sale of AFLIAC.

- Exit vast majority of life business and eliminate Guaranteed Minimum Death Benefit and other market-driven risks.

- Retained residual business will consist of run-off blocks of primarily traditional lines of business with valuable tax assets and projected post-transition total adjusted capital of $175M.

