UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | Civil Action No. 4:04-cv-40077-FDS |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., | ) ) ) ) ) | ORAL ARGUMENT REQUESTED |
| Defendants and Counterclaim Plaintiffs. | ) ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER CONCERNING CONFIDENTIALITY OF DOCUMENTS AND INFORMATION

Defendants and Counterclaim Plaintiffs Allmerica Financial Life Insurance & Annuity Company, First Allmerica Financial Life Insurance Company, and Allmerica Financial Corporation (collectively, "Allmerica") submit this memorandum in Opposition to Plaintiffs' Motion for Protective Order Concerning Confidentiality of Documents and Information (Docket Nos. 36 and 37).

## INTRODUCTION

On September 13, 2005, Plaintiffs filed another Motion for Protective Order (Docket No. 36) ("Plaintiffs' Motion"), this time seeking entry of a Confidentiality Order governing treatment

- 1 -

of discovery material in this case. The order proposed by Plaintiffs would be acceptable to Defendants *but for* Plaintiffs' demands *(i)* that federal and state regulators be excluded from the short list of individuals (expert witnesses, court reporters, etc.) to whom information designated as "confidential" may be disclosed (See Proposed Paragraph 13); and *(ii)* that Allmerica be required to alert Plaintiffs if any regulator made an inquiry to which such material might be relevant (See Proposed Paragraph 22).[1]

Plaintiffs' demands are improper. There is an NASD investigation into one or more Plaintiffs' conduct, in connection with which Allmerica has responded to repeated requests from Enforcement officials about variable annuities sales. Even if there were not an investigation, Allmerica is a pervasively regulated business and has an obligation to respond to inquiries from and to cooperate with the SEC, NASD, and literally dozens of other regulators. Thus, under any circumstances it would be irresponsible for Allmerica to prospectively set boundaries on its ability to communicate with those authorities. To do so under these circumstances – when everyone is on notice of a pending investigation and the regulators reasonably expect Allmerica to reveal the pertinent information it knows or learns – would be even worse.

It is similarly inappropriate for Plaintiffs to seek a Court order – for the stated purposes of managing discovery in a civil litigation – that would require Allmerica to withhold from the regulators whatever documents Plaintiffs deem "confidential." The NASD, SEC, etc., are entitled to receive from Allmerica whatever they want to know (or may in the future want), subject only to claims of work product or privilege and so long as the request falls within their broad authority. Plaintiffs have no "good cause" to keep material from regulators, especially

---

[1]    The order that Plaintiffs have asked the Court to enter is attached as Exhibit 8 to their Memorandum in Support of Plaintiffs' Motion for Entry of Protective Order Concerning Confidentiality of Documents and Information (Docket No. 37) ("Plaintiffs' Memorandum").

because they too are subject to the regulators' jurisdiction.  There also is no reason to believe that securities and other regulators are careless with the often highly confidential information they receive from those under their supervision.  Nor is there any concern over potential misuse of whatever proprietary or sensitive business data may be at issue, which may justify a protective order under Rule 26(c)(7) under some circumstances, but not here (because the regulators are not competitors).

There also is no legitimate reason for Plaintiffs' proposal to require Allmerica to notify Plaintiffs upon receipt of a regulatory request that may call for what Plaintiffs deem is "confidential."  Plaintiffs cite nothing that would entitle them to real-time updates on Allmerica's communications with regulators who are investigating potential misconduct, and Plaintiffs' request is particularly dubious under circumstances where regulators are apparently investigating whether some of their replacements were in customers' best interest.  Although Rule 26(c)(7) does allow for protective orders to govern discovery matters in civil cases where there is "good cause," there is nothing in the Rule to suggest that it also is available to "protect" Plaintiffs from disclosure to regulators of information concerning the conduct and people they regulate.  And it would seem contrary to public policy – which encourages prompt and complete cooperation with authorities – to allow Plaintiffs to potentially delay or obstruct that disclosure, whether by erecting potential barriers to disclosure (such as by allowing plaintiffs to wall off documents they designate as "confidential") or by requiring notification whenever regulators ask questions.[2]

---

[2]    Allmerica does *not contend* that its communications with regulators are beyond discovery in this case.  To the contrary, *both* sides have propounded discovery calling for production of various communications with regulators.  Allmerica intends to produce such communications where responsive/relevant, and expects that Plaintiffs will do the same.  That the parties' communications with regulators may be discoverable in this case under Rule 26 does *not*, however, mean that Plaintiffs are entitled to have any role in those communications before they occur.

US1DOCS 5290985v3

Simply put, Allmerica wants to execute a Confidentiality Agreement that will safeguard discovery material exchanged in this case. But Allmerica cannot agree to terms that potentially limit or otherwise affect its communications with the regulators with whom it interacts (and is obligated to interact) on any number of issues. For these reasons, and those set forth below, Allmerica requests that the Court deny Plaintiffs' Motion.

## ARGUMENT

### I.     The Disputed Language.

The parties' dispute regarding the language of the proposed Confidentiality Order is narrow and simple. The parties have agreed to virtually all of the terms of the Order. The only open issue is whether the Confidentiality Order should include the following language (or something similar) that Allmerica proposed but that Plaintiffs rejected:

> Notwithstanding the foregoing, nothing in this Order shall be construed to govern or limit or pertain to a party's ability to provide information or communicate with administrative or governmental agencies, self-regulatory organizations, or to otherwise discharge disclosure or other obligations imposed upon the party.

Plaintiffs object to this language and have sought an Order that *(i)* excludes regulators and government authorities from the list of those allowed to see anything designated by another party as "Confidential" (See Proposed Paragraph 13); and *(ii)* would require Allmerica to notify Plaintiffs "promptly" if a regulator makes a request that would embrace such information (See Proposed Paragraph 22).

- 4 -

## II.    **Allmerica's Position on the Disputed Language.**

A.    *Allmerica is Obligated to Communicate with Regulators and*
      *Therefore Cannot Agree to a Discovery Order that May Limit Its Ability to Do So.*

Allmerica is pervasively regulated under federal and state law.[3]  Collectively, these laws

and the many government authorities and self-regulatory organizations that enforce them, impose

on Allmerica a web of reporting and disclosure obligations and expectations.  Allmerica files

periodic reports with multiple agencies, responds on an ad hoc basis to other requests (such as

the pending NASD investigation), and is subject to on-site inspections (sometimes unannounced)

in which Allmerica personnel are requested to produce documents immediately.  Under a variety

of circumstances, Allmerica is expected to self-report information that comes into its possession.

Given this regulatory environment, it would be imprudent and potentially frustrating to

regulators for any such situated litigant to do anything in a civil litigation that would govern,

much less potentially obstruct or delay, prompt and forthcoming communications with

regulators.[4]

B.    *Plaintiffs' Requested Order in this Civil Case Would Apply to Allmerica's*
      *Communications with Regulators in an Investigation of Plaintiffs' Conduct.*

Plaintiffs' request for a Confidentiality Order that would address the parties' dealings

with regulators is particularly improper given the apparent inquiry by NASD Enforcement

officials into some of the securities transactions that are the centerpiece of Plaintiffs' lawsuit.

---

[3]    For example, Defendant Allmerica Financial Corp. is a public company, subject to reporting and many
other obligations under federal law, including those imposed by the Securities Act, the Exchange Act, and the SEC
regulations promulgated thereunder.  In addition, the variable annuities at issue in this case are securities, and
therefore are regulated by additional federal laws, the SEC, the NASD and state securities departments.  As an
insurance company, Allmerica also is subject to extensive regulation by the Commonwealth of Massachusetts and
authorities in the many other states in which it engages in that business.

[4]    Allmerica notes that the language it proposed but that Plaintiffs resist - exempting regulatory
communications from discovery limitations intended to address pretrial process in a civil lawsuit - would apply
equally to Plaintiffs.  Plaintiffs' resistance is difficult to understand because they are registered representatives
subject to oversight by the SEC, NASD, and others, and therefore should have a similar sensitivity to these issues.

- 5 -

Allmerica does not know with any degree of certainty the scope of the investigation, or when and how it will conclude.[5]  What Allmerica does know is that it has received and responded to multiple NASD requests, over an extended period of time, and that those requests called for documents concerning one or more named Plaintiffs and what Allmerica considers to be their exceptionally high replacement rate.  Given that Allmerica has received these requests, it is understandably reluctant to do anything that may constrain its ability to continue to cooperate, or that may be perceived as reflecting a reluctance to cooperate.

The overlap between the NASD requests and the subject matter of this litigation is substantial.  In this case, Plaintiffs allege that they lost commissions because a subset of the Allmerica variable annuities that are subject to their various Trail Agreements have been surrendered (essentially cashed-out) and were replaced by new annuities issued by different insurance companies that Plaintiffs sold to the same customers (using the cash value from the surrendered Allmerica annuities).  The named Plaintiffs replaced an extraordinary number of annuities; during various quarters in 2003 and 2004, the named Plaintiffs replaced 28.16%, 22.73% and 54.31% of the Allmerica annuities at issue.  See Defendants' Response to Plaintiffs' Interrogatory No. 1(e) (attached hereto as Exhibit A).  NASD (and other regulators) scrutinize replacement activity to ensure compliance with the agent's legal obligation to engage only in such a transaction where it would be in the best interest of the client, and prohibit agents from

---

[5]    Indeed, Allmerica does not know if authorities in addition to NASD are investigating these issues, which may be the case because Allmerica recently received papers from a non-party witness that referred ambiguously to an inquiry by "NASD and others."

engaging in such transactions where the reason for the transaction is to provide additional compensation to the agent. See NASD Rule 2310 & IM-2310-2(b)(2).[6]

The circumstances of those replacement transactions are not only directly relevant to Plaintiffs' claims and of legitimate interest to NASD, but are equally relevant to Allmerica's defenses and counterclaims. Specifically, although the replacement/surrender of an Allmerica annuity extinguishes the relevant Plaintiff's entitlement to future trail commissions from Allmerica for that annuity, at the same time the Plaintiff who sold the new, "replacement" annuity started earning new commissions from the new insurance company that issued it.[7] The centrality of these transactions is confirmed by the discovery that has already has been propounded; the replacement data referenced above has already been provided in response to Plaintiffs' own interrogatories, and documents concerning those transactions also have been sought by Allmerica in the party and non-party discovery it has served.[8]

Plaintiffs themselves acknowledge that the regulators may want access to same information that is subject to discovery in this case. They have been explicit that the reason they filed their motion was to keep material from falling into the regulators' hands. See Plaintiffs'

---

[6]    See also NASD Notice to Members 96-86, NASD Regulation Reminds Members and Associated Persons That Sales of Variable Contracts Are Subject to NASD Suitability Requirements ("NASD Regulation is aware of the practice whereby a registered representative replaces a customer's existing variable contract with a new variable contract that doesn't improve the customer's existing position, but generates a new sales commission for the registered representative.").

[7]    Indeed, depending on the amount of commissions earned from the sale of the new annuity (which is the subject of outstanding discovery requests), Plaintiffs who have sued Allmerica to recover alleged losses from those transactions *may actually have earned more commissions* (because insurance companies today may be paying commissions that exceed the trail commissions Allmerica has been paying on annuities sold in the mid-1990s).

[8]    Plaintiffs' replacement activity well exceeds that of the members of the putative class they claim are similarly situated and seek to represent. See Exhibit A. This issue also bears on class certification. A Plaintiff who was able to facilitate the replacement of Allmerica annuities (and thereby replace the Allmerica trail commissions with something more lucrative from another insurance company) may be asserting claims that are not typical of those of the putative class, may be subject to unique defenses, or otherwise may not be adequate to serve as a class representative.

- 7 -

Motion at 2 (Plaintiffs concerned that "Defendants may provide information to regulatory agencies that could spark inquiries as to Plaintiffs"). Plaintiffs therefore propose a Court Order that would give them the right to pre-screen what goes to the regulators (by allowing them to exclude whatever they designate as "confidential") and to be apprised of whenever regulators ask for such material. See id.[9] Although Plaintiffs may be concerned about regulatory scrutiny, there is no question that the NASD and other regulators who supervise the industry conduct of Plaintiffs and Allmerica have a legitimate interest and right to information concerning the securities transactions at issue.[10] See, e.g., NASD Rule 8210(c) ("No member or person shall fail to provide information or testimony or to permit an inspection and copying of books, records, or accounts pursuant to this Rule."). Allmerica is obligated to be forthcoming in providing that information, and for this reason has refused to accede to any prospective limitation on it ability to do so – especially under circumstances where Allmerica knows there is an investigation and that the regulators expect it to cooperate.

C.     *Plaintiffs' Request is Contrary to Public Policy.*

Plaintiffs' motion to "protect" against disclosure to regulators offends public policy, which calls for compliance with securities laws and favors the voluntary disclosure of

---

[9]     Under the Order sought by Plaintiffs, upon receipt of a regulatory inquiry involving material that Plaintiffs have labeled confidential, Allmerica would be required to: *(i)* notify the Plaintiffs of the inquiry; and *(ii)* decline to provide the material voluntarily; and *(iii)* only do so upon service of "compulsory process," again subject to notification to Plaintiffs so they can oppose the request. See Plaintiffs' Motion at 1. In addition to all the other reasons why that is an improper request under Rule 26(c)(7), it also ignores that some regulators have the legal authority to receive information from Allmerica and ***do not need*** a subpoena or any other "compulsory process." All they need do is ask, and as noted supra, can do so on-the-spot during an announced or unannounced inspection. See NASD Rule 8210 (providing NASD with authority to request and receive information in writing, orally, and electronically and also to inspect and copy documents without resort to subpoena or other compulsory process).

[10]     For example, the NASD is charged with enforcing a myriad of rules governing the securities transactions at issue, including the requirement that such transactions be undertaken only where suitable for the customer and not for the purpose of providing the agent with an opportunity to earn greater commissions or compensation from the insurance company that sold the new annuity. See NASD Rules 2110 and 2310.

- 8 -

information to government regulators.[11]  See, e.g., In re Application of Mark Allen Elliott, 1994

WL 268888, at *2 (S.E.C. Release No. 34194 June 10, 1994) ("In order for the NASD to carry

out its regulatory functions, it must have the *full and prompt cooperation* of persons subject to its

jurisdiction when requests for information are made." (emphasis added)).  There is no legitimate

reason for Plaintiffs to seek to limit anyone's ability to provide information to the regulators who

are inquiring about one or more Plaintiffs' activities.  But that is exactly what Plaintiffs have

done, both by seeking limitations on disclosure of whatever Plaintiffs say is "confidential" and

by calling for notification when regulators ask questions about them.

Allmerica does not purport to know what, if any, action may be taken against anyone.  It

may prove true no Plaintiff will be charged with wrongdoing and that the requested Court Order

would avoid the "time and expense that such regulatory inquiries would impose on Plaintiffs."

See Plaintiffs' Motion at 1.  Alternatively, an enforcement action may be brought against one or

more Plaintiffs.  None of those potential outcomes can justify Plaintiffs' request, for a protective

order in a civil case, that by its very terms may restrict communications with the regulators, who

are the ones who will decide the outcome of the regulatory matters.[12]

---

[11]     Courts and regulators have expressed this public policy in a variety of other context, all recognizing that cooperation and dialogue with securities regulators is favored.  See, e.g., In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 303 (6th Cir. 2002) (noting that government "investigation of crimes and civil fraud" furthered by voluntary disclosure of information to regulators); Saito v. McKesson HBOC, Inc., No. Civ.A. 18553, 2002 WL 31657622, at *6, *8 (Del. Ch. 2002) (noting "public policy . . . to encourage corporations to comply with law enforcement agencies" and public policy benefit of the SEC being able "to resolve its investigations expeditiously and efficiently"); Lori Richards, Keynote Address by SEC Staff: Furthering Good Compliance: Current Areas of Focus in SEC Examinations, 2002 WL 600003, at *3 (S.E.C. Apr. 8, 2002) ("We also expect candor and cooperation in the examination process.").

[12]     There is no basis for Plaintiffs to have suggested in their court papers that Allmerica has precipitated regulatory scrutiny of their conduct.  See Plaintiffs' Opposition to Defendants' Motion for Order Extending Schedule for Class Certification Briefing (Docket No. 35), at 10.  That said, under some circumstances it is appropriate (or obligatory) for a regulated company to report information suggestive of misconduct, especially given that the securities industry is expected to police itself.  See NASD Rule 3070.

- 9 -

D.    *Plaintiffs Have Not Demonstrated "Good Cause."*

As noted <u>supra</u>, there are several reasons why Plaintiffs' request for a protective order is not appropriate. The burden, however, does not fall to Allmerica to explain why the motion should be denied. To the contrary, *Plaintiffs bear the burden to establish "good cause"* under Rule 26(c)(7) for the relief they seek. <u>See, e.g.,</u> <u>Anderson v. Cryovac</u>, 805 F.2d 1, 7 (1st Cir. 1986) (movant's showing of good cause must be based on "particular factual demonstration of potential harm, not on conclusory statements"); 8 Wright & Miller, <u>Federal Practice & Procedure</u> § 2035 (courts have insisted that moving party make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements in order to establish good cause").

Plaintiffs have not come close to discharging that burden. In fact, they do not provide Defendants or the Court with any basis to analyze their request under the "good cause" standard set by the Rule because they do not say what "information" they will be producing that would be subject to such an order. <u>Compare</u> Plaintiffs' Memorandum at 5, <u>with</u> <u>Baker v. Liggett Group, Inc.</u>, 132 F.R.D. 123, 125-26 (D. Mass. 1990) (denying defendant's motion for protective order where defendants failed to make "particularized showing of good cause necessary" for entry of protective order prohibiting dissemination of documents").

There is no basis to assume that the never-described "information" falls within the Rule they cite, which protects litigants' legitimate business interest in not sharing proprietary information and trade secrets with competitors, but does not apply here because the regulators do not compete with them. <u>Compare</u> Rule 26(c)(7) (allowing for protection of "a trade secret or other confidential research, development, or commercial information"). The one case they cite doesn't help them; it is a thirty-year old New York case where the court entered a protective

- 10 -

order to bring some measure of confidentiality to the "hundreds" of non-parties who were deposed in major litigation against IBM. See United States v. IBM, No. 69 Civ. 200 (DNE), 1974 WL 985, at *1 (S.D.N.Y. May 6, 1974).

Plaintiffs instead argue no more than that they want "protection" against whatever exposure they face to a regulatory proceeding. See supra. A desire to avoid regulatory scrutiny, however, is not "good cause" for a protective order under Rule 26(c)(7), and certainly is not under circumstances where a regulator is investigating conduct at issue in the litigation.[13]

## CONCLUSION

Allmerica remains willing to agree to a Confidentiality Order, and in fact was the party that proposed the initial draft. Allmerica also has every interest in safeguarding discovery material and believes that a Confidentiality Order would be more convenient for everyone because it would avoid periodic motion practice seeking protection for the material the parties produce under Rule 26(c), which would apply if the parties cannot agree or the Court does not order something to supplant that Rule.

However, Allmerica objects to a Confidentiality Order that would circumscribe its dealings with regulators, because that should be unnecessary, may interfere with its disclosure obligations, and is inconsistent with the public policy that encourages Allmerica to cooperate with regulators where appropriate to do so, and therefore does not justify whatever convenience or efficiency Plaintiffs claim would result from the Confidentiality Order they propose.

---

[13]      Plaintiffs also are not entitled to a protective order by arguing that Allmerica somehow agreed to limit its dealings with regulators, and then went back on its word. See Plaintiffs' Memorandum at 4. That is contradicted by Plaintiffs' own brief, which cut-and-pastes multiple alternative language that Allmerica proposed to address the situation. It also ignores that Allmerica told Plaintiffs that it would not agree. See E-mail from Eric Levin to David Grossman dated September 12, 2005 2:50 P.M. (attached hereto as Exhibit B). The notion that Allmerica has refused to agree to a Confidentiality Order to avoid receiving the documents that Allmerica has asked for in discovery is nonsensical.

- 11 -

For the foregoing reasons, Allmerica respectfully requests that the Court deny Plaintiffs' Motion for Entry of Protective Order, or in the alternative enter an order with the language set forth on page 4, supra.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants hereby request that the Court grant a hearing on Plaintiffs' Motion.  In support of their request, Defendants believe that oral argument will assist the Court in clarifying and evaluating the issues raised in the Motion.

Respectfully Submitted,

ALLMERICA FINANCIAL LIFE INSURANCE & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO., and ALLMERICA FINANCIAL CORP.

By their attorneys,

/s/ Jonathan Shapiro
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: September 20, 2005

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on this 20th day of September, 2005 by <u>overnight mail</u> on:

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201


<u>/s/ Brett R. Budzinski</u>
Brett R. Budzinski

- 13 -