IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO. and ALLMERICA FINANCIAL CORP.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 4:04-cv-40077-FDS<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER CONCERNING CONFIDENTIALITY OF DOCUMENTS AND INFORMATION

Stephen L. Hubbard
Robert W. Biederman
BBO No. 562279
David M. Grossman
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

Nancy Freeman Gans
BBO No. 184540
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

*ATTORNEYS FOR PLAINTIFFS*

## INTRODUCTION

The central issue raised in Defendants' Opposition to Plaintiffs' Motion for Entry of Protective Order Concerning Confidentiality of Documents and Information ("Defendants' Opposition") is whether the protective order should contain a carve-out allowing parties to *unilaterally* choose to share *any* confidential information obtained as fruits of discovery in this lawsuit with regulators. Defendants claim that their duties of candor and cooperation with regulatory agencies concerning their "books, records, or accounts" may somehow require *unsolicited* disclosure of such information, but offer no authority for the proposition that documents Defendants' counsel receive in discovery that Defendants never would have never had, *but for* this litigation, are encompassed by such duties. Defendants' motivations are especially suspect in light of the sale of their remaining variable life and annuity business to Goldman Sachs which is set so close by November 30, thereby essentially eliminating all of Defendants' involvement in the securities business. Plaintiffs believe that Defendants seek this authority for the sole purpose of harassing Plaintiffs in the hope of triggering investigations that will inconvenience Plaintiffs who have engaged in no wrongdoing.

To resolve this Motion, however, the Court merely has to address an issue of process. Adopting Plaintiffs' proposed form of the Order would not deprive any regulatory authority of its investigative powers and would *not* impair Defendants' duty to cooperate with any ongoing investigations. Under Plaintiffs' proposed Order, a party in possession of confidential information that is the subject of a subpoena or other legal request need only promptly notify the party that designated the information as confidential so that the designating party may have the opportunity to seek protection, if appropriate. With respect to giving parties the ability to share unsolicited

REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 1

confidential information; rather than allowing such production in a vacuum, if a party believes, as to *particular* confidential documents, that the need to share information with a regulatory agency outweighs the need for confidentiality, that party may bring the matter to this Court so that a proper weighing of the interests could be made as to such documents. There is established precedent where this Court has performed that function. Conversely, under Defendants' proposed form, Defendants would have carte blanche authority to share confidential information with government agencies, which would have the effect of eviscerating the role of this Court to weigh the potentially competing interests.

I. **PLAINTIFFS' PROPOSED ORDER FACILITATES THE COURT'S ABILITY TO BALANCE PRIVATE AND PUBLIC INTERESTS IN CONFIDENTIAL MATERIALS**

   A. <u>Discovery Obtained in Private Proceedings May and Should Be Kept Private</u>

Absent compelling reasons, discovery obtained in private proceedings may and should be kept private. As the Supreme Court has held:

> It is, of course, clear that information obtained through civil discovery authorized by modern rules of civil procedure would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court. In this case, as petitioners argue, there certainly is a public interest in knowing more about respondents. This interest may well include most--and possibly all--of what has been discovered as a result of the court's order under Rule 26(b)(1). It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery.

*Seattle Times Co. v. Rhinehart* 467 U.S. 20, 31, 104 S.Ct. 2199. 2206 - 2207 (1984).

Applying the above principles, some courts even have gone so far as to restrict access to documents that are *not even* covered by a confidentiality order. In *GAF Corp. v. Eastman Kodak Co.* 415 F.Supp. 129 (D.C.N.Y. 1976), GAF – the antitrust plaintiff – sought permission from the court to transmit fifty-two documents obtained during private litigation to the government. Of those

**REPLY MEMORANDUM IN SUPPORT OF ENTRY OF PROTECTIVE ORDER - PAGE 2**

documents, only two were designated as confidential. The Court held that GAF could not provide the government with any of the documents, including the non-confidential documents. The Court reasoned that GAF and Kodak had both assumed that discovery would be used solely for the instant litigation:

> GAF has the papers in question only by virtue of this lawsuit. There has been throughout an explicit understanding between the parties that discovery was being demanded and given solely for use in, and preparation of, this case. A considerable volume of papers has been given on consent. Sometimes there has been resistance, requiring recourse to the court. Some of the issues raised in motion papers have then been resolved by compromise, with or without the court's assistance. All the positions taken over the years have had presumably in view the understanding that discovery was for the party receiving it, not for strangers to the case, public or private.

*Id.* at 131. Moreover, any agency to which Defendant may wish to provide Plaintiffs' confidential information, has its own procedures and protections for obtaining such materials. *See also, Data Digests, Inc. v. Standard & Poor's Corp.*, 57 F.R.D. 42 (S.D.N.Y. 1972)("The contention that the protective order should be lifted so as to enable plaintiffs to communicate the protected information to various governmental authorities in furtherance of the public interest is without substance. The governmental authorities, whether executive or congressional, if interested in obtaining the information, have the available means and power, subpoena and otherwise, to obtain or compel its production."); *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979).[1]

---

[1] Other Courts have raised particular concern with the potential for abuse of the Fourth Amendment if private litigants were permitted to do the government's work in the context of private litigation, thereby bypassing procedures and protections that may be provided by law. *See, e.g., OKC Corp. v. Williams*, 490 F.Supp. 560, 561 (D.Tex. 1979).

**REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 3**

**B.  Defendants Cite No Authority Allowing Documents Obtained In Discovery to be Passed to the Government.**

Defendants maintain that NASD rules that require cooperation and inspection of "books, records, or accounts" justify their requested version of Paragraph 22 of their proposed Protective Order, which would allow them complete freedom to unilaterally share any confidential information with the NASD or other regulators.[2] Defendants offer no authority for their position that rules, which were designed to ensure disclosure of an entities' *own* books and records, somehow require or justifies disclosure of information the would not be in their possession, but for this lawsuit.

Moreover, Defendants' reliance upon several cases in support of their claim that there is a strong public policy that favors "voluntary disclosure" of information to regulators is misplaced. Defendants' alleged authority is inapposite as not a single case concerns the question of voluntarily passing confidential materials obtained in discovery obtained in private litigation to the government.[3]

---

[2] Specifically, Defendants want to include the language: "Notwithstanding the foregoing, nothing in this Order shall be construed to govern or limit or pertain to a party's ability to provide information or communicate with administrative or governmental agencies, self-regulatory organizations, or to otherwise discharge disclosure or other obligations imposed upon the party."

[3] *In re Application of Mark Allen Elliott*, 1994 WL 268888 (S.E.C. Release No. 34194 June 10, 1994) concerns imposition of sanctions for failure to comply with NASD's formal requests for information and multiple warnings of consequences for failure to comply. *In re Columbia/HCA Healthcare Corp. Billing Pract. Litig.*, 293 F.3d 289 (6th Cir. 2002) concerns a plaintiff's ability to obtain information disclosed to regulators *by the defendant* in connection with a criminal investigation of defendant's own billing practices. Similarly, *Saito v. McKesson HBOC, Inc.* 2002 WL 31657622 (Del.Ch.,2002) concerns a litigant's motion to compel discovery of information a company provided to regulators investigating the company's own actions.

**REPLY MEMORANDUM IN SUPPORT OF ENTRY OF PROTECTIVE ORDER - PAGE 4**

C. **Plaintiffs' Proposed Protective Order Would Permit Defendants To Ask This Court to Permit Their Providing Confidential Documents Obtained in Discovery to the Government.**

Plaintiffs' proposed Protective Order would treat the materials as confidential and if, after review of the documents, a party were to determine that there is a compelling and legitimate public interest in providing the documents to regulators, that party could simply seek an Order from this Court to modify the protective order to allow disclosure of certain information or categories of information. Courts, and not litigants, are in the best position to perform that function. *See, e.g., Seattle Times*, 467 U.S. at 36, 104 S.Ct. at 2209 ("The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.")(footnote omitted). This Court has performed this very function. *See, e.g., Beals v. General Motors*, 1989 WL 384829 (D.Mass. 1989). In *Beals*, the plaintiff sought modification of a protective order that would allow him to disclose to the National Highway and Transportation Administration, important information uncovered during discovery about a defective braking system that was in GM vehicles that were currently on the road. This Court allowed the disclosure, finding that "General Motors has always known that plaintiff reserved his right to seek modification of the Confidentiality Stipulation" and distinguished *GAF* holding: "this Court finds the public safety concerns implicated here more compelling than the economic interests at stake in *GAF*." *Id.* at n.1.[4]

---

[4] While the *GAF* decision is dispositive on the issue of whether a party can voluntarily turn over fruits of confidential discovery to the government, Defendants in the instant case also challenge Plaintiffs' proposed Paragraph 22 which would require that a party in possession of a subpoena demanding confidential information to "promptly notify the party which so designated material as Confidential of the pendency of such request." This language is consistent with the Court's Order in *Beals* which provided: "If another Court or an administrative agency subpoenas

**REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 5**

## II. DEFENDANTS CANNOT GENUINELY CLAIM THAT INFORMATION CONCERNING ANNUITANTS' FINANCES AND PERSONAL INVESTMENT STRATEGIES SHOULD NOT BE SUBJECT TO A PROTECTIVE ORDER.

Defendants next challenge Plaintiffs' showing of "good cause" for a request for a protective order. Plaintiffs have a legitimate interest in protecting their property interest in documents that but for the litigation Defendants would have no access to. Such confidential information, that Defendants seek in connection with the replacement activities of Plaintiffs' clients, includes their net worth, detailed investment information, and investment strategies.

Defendants' argument that such information is not deserving of confidential treatment is disingenuous in that they initiated the request for entry of a protective order on August 8 and proffered the first draft. Defendants also demanded that Plaintiffs treat all of their discovery responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Request for Admissions, that contained certain financial information about the Trail Program and its participants as confidential and for "attorneys' eyes only"[5] until a Protective Order could be agreed to by the parties. Moreover, Defendants asserted general objections to providing information that would reveal the identity of an annuitant. *See, e.g.*, General Objection No. 2 to Plaintiffs' First Request for Production, Interrogatories and Request for Admissions ("[Defendant] objects to the Requests to the extent they seek the 'disclos[ure] of any personal or privileged information about an individual

---

or orders production of stamped confidential documents or information subject to the terms of this Order, such party shall promptly notify General Motors of the pendency of such subpoena or order." 1989 WL 384829 at *5.

[5]See, Eric Levin letter dated August 8, 2005 (attached as Exhibit A). Ironically, Defendants violated their own demand to keep such information private by attaching their interrogatory responses to Defendants' Opposition.

**REPLY MEMORANDUM IN SUPPORT OF ENTRY OF PROTECTIVE ORDER - PAGE 6**

collected or received in connection with an insurance transaction' ... "). Indeed, Defendants even have refused to produce any documents until a protective order is in place. See General Objection No. 15 to Plaintiffs' First Request for Production ("The Allmerica Defendants' production of documents is contingent upon the negotiation and execution of a mutually-acceptable protective order by the parties, and entry of such order by the Court."). Clearly, the question is not whether the information at issue needs to be subject to a protective order; rather, it is what the terms of the order should be.

### III.  DEFENDANTS MISSTATE PLAINTIFFS' ALLEGED REPLACEMENT ACTIVITIES.

While the scope and significance of Plaintiffs' alleged replacement activities are tangentially related to the Motion, Defendants do devote substantial text explicating their position as to those activities. Plaintiffs want to identify certain misstatements and possible misinterpretation concerning those activities.

Initially, Defendants suggest that Plaintiffs' alleged replacement rates exceed all other potential members of the class. To arrive at that conclusion Defendants rely upon charts purportedly reflecting quarterly "outgo rates" that they prepared that purportedly identify the outgo rates of each participant in the trail program, who with the exception of Plaintiffs are identified by numbers. Contrary to Defendants' assertions, "outgo rates" are not synonymous with replacements requested by a particular annuitant to be undertaken by Plaintiffs or any other putative class member. Rather, that terminology is a shorthand expression for "persistency" rate, that is defined in the Trail Agreement, which is the net amount (other than account of death) of surrenders and withdrawals. In other words, it encompasses simple withdrawal of funds, which is not accompanied by a

**REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 7**

surrender, as well as surrenders, that may involve replacements requested by the owner of the annuity by a third party agent or broker (namely, not Plaintiffs or a member of the putative class) or one by Plaintiffs or a member of the putative class. Accordingly, Defendants' overstate the meaning of their own chart.

Apart from that misreading, Defendants omit to mention two additional facts about the chart. First, any agent who engaged in a replacement undertaken at the request of a client to Plaintiffs or a putative class member while an agent/broker at Defendants, which would be as late as 2003, were approved by Defendants. Defendants used what is called a "Switch Form" where they signed off of all such replacements. Accordingly, for Defendants to challenged any replacement activity that occurred while Plaintiffs or any other putative member was an agent or broker of Defendants is to inculpate themselves. The significance of this fact is highlighted by Plaintiff Wedel alone who had approximately 50 replacements in the Trail Program that were approved by Defendants while he was an agent/broker at Defendants. Such replacements were expected, because following the third quarter of 2002 announcement, Defendants ratings plummeted due to terrible earning announcements and the decision to dismantle its agency force and cease selling any of its products. The clients were legitimately fearful of Defendants ability to continue meeting obligations on the annuities that relied upon general creditworthiness of company such as guaranteed minimum death benefit as well as ongoing service duties. Defendants were more than happy to see such surrenders occur, because each surrender eliminated pro tanto their guaranteed minimum death benefit obligation.

Second, contrary to Defendants' naked assertion, the "outgo" rates for Plaintiffs are not different than for most persons. Scanning the chart., there are numerous individuals with rates either

**REPLY MEMORANDUM IN SUPPORT OF ENTRY**
**OF PROTECTIVE ORDER - PAGE 8**

20% or more for a given quarter and in the aggregate over multiple quarters rates exceeding those numbers. Plaintiffs' outgo rates are not an aberration; rather they are typical of others. Again this comes as no surprise, because since the third quarter of 2002, Defendants made the decision to abandon the life and annuity business which has culminated in the sale of the remaining remnants of that business to Goldman Sachs that is to close on November 30, 2005. As a result of these actions, service predictably has deteriorated and the annuitant owners' confidence in Defendants has continued to deteriorate.

## CONCLUSION

Based upon the above, Plaintiffs request that this Court grant Plaintiffs' Motion for Entry of A Protective Order Concerning Confidentiality of Documents and Information.

Dated September 22, 2005.

Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO No. 184540
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

Stephen L. Hubbard
Robert W. Biederman
BBO No. 562279
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

*ATTORNEYS FOR PLAINTIFFS*

**REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 9**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by facsimile and first class mail on this the 22nd day of September, 2005, to the following attorneys for defendants:

Jonathan A. Shapiro
**WILMER CUTLER PICKERING
 HALE and DORR LLP**
60 State Street
Boston, MA 02109
(617) 526-5000 fax

Brian E. Whiteley, Esq.
C. Alex Hahn, Esq.
**SCIBELLI, WHITELEY and
 STANGANELLI, LLP**
50 Federal Street, Fifth Floor
Boston, MA 02110
(617) 722-6003 fax


/s/ Nancy Freeman Gans
Nancy Freeman Gans

REPLY MEMORANDUM IN SUPPORT OF ENTRY
OF PROTECTIVE ORDER - PAGE 10

# WILMER CUTLER PICKERING
## HALE AND DORR LLP

August 8, 2005

**By E-Mail**

Nancy Freeman Gans, Esq.
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109

RECEIVED
AUG 1 0 2005

Eric D. Levin

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6879
+1 617 526 5000 fax
eric.levin@wilmerhale.com

Re:   Donald Speakman, et al. v. Allmerica Financial Life Insurance and Annuity Co., et al.
      Civil Action No. 4:04-CV-40077-FDS

Dear Nancy:

Enclosed in the above-entitled matter please find the following discovery responses:

1. Defendant Allmerica Financial Life Insurance & Annuity Company's Response to Plaintiffs' First Set of Interrogatories

2. Defendant First Allmerica Financial Life Insurance Company's Response to Plaintiffs' First Set of Interrogatories

3. Defendant Allmerica Financial Corporation's Response to Plaintiffs' First Set of Interrogatories

4. Defendant Allmerica Financial Life Insurance & Annuity Company's Response to Plaintiffs' First Set of Requests for Admissions

5. Defendant First Allmerica Financial Life Insurance Company's Response to Plaintiffs' First Set of Requests for Admissions

6. Defendant Allmerica Financial Corporation's Response to Plaintiffs' First Set of Requests for Admissions

As Rob Biederman and I agreed on August 4, the defendants are providing these written discovery responses subject to plaintiffs' agreement to keep them confidential as "Attorney's Eyes Only" and not to use them for any purpose other than the litigation, until the Court enters a Protective Order in this case.

Enclosed for your review please also find a draft Protective Order.

EXHIBIT
[A]

BALTIMORE   BEIJING   BERLIN   BOSTON   BRUSSELS   LONDON
MUNICH   NEW YORK   NORTHERN VIRGINIA   OXFORD   WALTHAM   WASHINGTON

Nancy Freeman Gans, Esq.
August 8, 2005
Page 2

Please call me if you have any questions.

Very truly yours,

*[signature]*

Eric D. Levin

EDL:edl
Enclosures

cc:     Stephen L. Hubbard, Esq. (by e-mail)