**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  4:04-cv-40077-FDS |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP. | § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

TO:  Defendants, by and through their attorneys of record, Jonathan A. Shapiro, Wilmer Cutler Pickering Hale and Dore, LLP, 60 State Street, Boston MA 02109

Plaintiffs Donald P. Speakman, Stephen H. Wedel and Mark L. Robare by and through counsel, hereby serve upon Defendants Allmerica Financial Life Ins. & Annuity Co., First Allmerica Financial Life Ins. Co. and Allmerica Financial Corp. the following First Request for Production of Documents pursuant to Fed. R. Civ. P. 34.  Answers and Responses are to be served within thirty (30) days to the offices of Hubbard & Biederman, LLP, 1717 Main Street, Suite 4700, Dallas, Texas 75201, and Moulton & Gans, 33 Broad Street, Suite 1100, Boston, Massachusetts 02109-4216.

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 1**

## INSTRUCTIONS

TIME PERIOD - Unless otherwise specified, the time period covered by these requests is from January 1, 2000, to present.

## DEFINITIONS

1.      "ACTION" shall mean the lawsuit entitled Donald P. Speakman et al. V. Allmerica Financial Life Ins. & Annuity Co., et al, Civil Action No. 4:04-cv-40077-FDS pending in the United States District Court for the District of Massachusetts, Central Division.

2.      "AFFIRMATIVE DEFENSES" shall mean the affirmative defenses set forth in DEFENDANTS' Answer to the COMPLAINT in the ACTION.

2.      "ALLMERICA FINANCIAL" shall mean Allmerica Financial Corp.

3.      "ALLMERICA LIFE" shall mean Allmerica Financial Life Ins. & Annuity Co.

4.      "COMMUNICATION" shall have the meaning set forth in LOCAL RULE 26.5(c)(1).

5.      "COMPLAINT" shall mean the First Amended Class Action Complaint filed in the ACTION.

6.      "CONCERNING" shall have the meaning set forth in LOCAL RULE 26.5(c)(7).

7.      "COUNTERCLAIM" shall mean the counterclaims set forth in DEFENDANTS' ANSWER to the COMPLAINT and Counterclaims.

8.      "DAC" shall mean Deferred Acquisition Costs.

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 2**

9.    "DAC NOTE" shall mean the Promissory Notes that were entered into by PERSONS and payable to ALLMERICA FINANCIAL in connection with the TRAIL AGREEMENT.

10.    "DEFENDANTS" shall mean Allmerica Financial Life Ins. & Annuity Co., First Allmerica Financial Life Ins. Co. and Allmerica Financial Corp.

11.    "DOCUMENT" shall have the meaning set forth in LOCAL RULE 26.5(c)(2).

12.    "FIRST ALLMERICA" shall mean First Allmerica Financial Life Ins. Co.

13.    "GMDB" shall mean the guaranteed minimum death benefit feature of certain variable annuities that ALLMERICA LIFE issued.

14.    "LOCAL RULE" shall mean the Local Rules for the United States District Court for the District of Massachusetts.

15.    "PARTIES" shall have meaning set forth in LOCAL RULE 26.5(c)(5).

16.    "PERSON" shall have the meaning set forth in LOCAL RULES 26.5(c)(6).

17.    "PLAINTIFFS" shall mean Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

18.    "TRAIL AGREEMENT" shall mean the "Agent In-Force Trail Commission Agreement" effective on January 1, 2001, entered into by ALLMERICA FINANCIAL and PLAINTIFFS and any other PERSON.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Produce all DOCUMENTS that were provided to PLAINTIFFS or any other PERSON who entered the TRAIL AGREEMENT,  prior to entering the TRAIL AGREEMENT including, but not limited to, memoranda explaining the operation or terms

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 3**

of the TRAIL AGREEMENT, projections or worksheets of contemplated commissions, and memoranda or correspondence about the operation or terms of the TRAIL AGREEMENT.

**RESPONSE**:

2.     Produce the "'worst' case scenario worksheet" that is described in the October 23, 2000, Memorandum from Phyllis Aiello of ALLMERICA FINANCIAL that was provided to PLAINTIFFS or any other PERSON that entered into the TRAIL AGREEMENT.

**RESPONSE**:

3.     Produce all DOCUMENTS CONCERNING the decision to create the TRAIL AGREEMENT including, but not limited to, reports, memoranda or correspondence to or from directors, officers, employees or other agents of DEFENDANTS; minutes of any executive committee, board of director, or ad hoc committee convened by DEFENDANTS; reports, memoranda or correspondence to or from DEFENDANTS or any of their agents and PLAINTIFFS or any other agents of ALLMERICA LIFE; and drafts of TRAIL AGREEMENT.

**RESPONSE**:

4.     Produce all DOCUMENTS CONCERNING the negotiation of the terms of the TRAIL AGREEMENT including, but not limited to, any correspondence, memoranda or reports between any of DEFENDANTS and PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT; reports, memoranda or correspondence to or from directors, officers, employees or other agents of DEFENDANTS; minutes of any executive committee, board of director, or ad hoc committee convened by DEFENDANTS; reports, memoranda or correspondence to or from DEFENDANTS or any of their agents and

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 4**

PLAINTIFFS or any other agents of ALLMERICA FINANCIAL; reports, memoranda, or correspondence of any accountants or actuaries; drafts of any TRAIL AGREEMENT agreements; and projections of the contemplated operation of the TRAIL AGREEMENT.

**RESPONSE**:

5.    Produce all DOCUMENTS CONCERNING any economic assumptions that DEFENDANTS, PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT made at the time of entering into the TRAIL AGREEMENT, including, but not limited to, the amounts of commissions under the TRAIL AGREEMENT, payments that ALLMERICA LIFE expected to receive in connection with the DAC NOTES, persistency of the annuities that were included in the TRAIL AGREEMENT, future productivity of PLAINTIFFS or any other PERSON that entered into the TRAIL AGREEMENT, and tax treatment of the commissions and DAC NOTE payments under the TRAIL AGREEMENT.

**RESPONSE**:

6.    Produce all DOCUMENTS created or used by DEFENDANTS to induce any PERSON to enter into the TRAIL AGREEMENT.

**RESPONSE**:

7.    Produce all DOCUMENTS CONCERNING any COMMUNICATION with any PERSON to induce them to enter into the TRAIL AGREEMENT.

**RESPONSE**:

8.    Produce all DOCUMENTS that embody the original terms of the TRAIL AGREEMENT, including all DOCUMENTS CONCERNING provisions or terms of the

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 5**

TRAIL AGREEMENT that are not contained in the TRAIL AGREEMENT itself.

**RESPONSE**:

9.    Produce all executed TRAIL AGREEMENTS.

**RESPONSE**:

10.    Produce all completed Advisor Inforce Trail Program Election Forms by each PERSON who entered into the TRAIL AGREEMENT.

**RESPONSE**:

11.    Produce all DOCUMENTS CONCERNING any modifications, amendments, or clarification of the terms of the TRAIL AGREEMENT.

**RESPONSE**:

12.    Produce all DOCUMENTS CONCERNING any proposed or possible modifications,  amendments, or clarification of  the terms of the TRAIL AGREEMENT, including, but not limited to, internal memoranda, notes, or reports of DEFENDANTS, drafts of proposed or possible modifications or amendments.

**RESPONSE**:

13.    Produce all the DAC NOTES.

**RESPONSE**:

14.    Produce all DOCUMENTS CONCERNING any modifications or amendments to the DAC NOTES.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 6**

15.    Produce all DOCUMENTS CONCERNING any settlement with any PERSON who entered into the TRAIL AGREEMENT, including any release, modification, or termination of obligations or terms of the TRAIL AGREEMENT as to that PERSON.

**RESPONSE**:

16.    Produce all DOCUMENTS CONCERNING any modification or restructuring of the terms of the DAC NOTE or TRAIL AGREEMENT as to any PERSON who entered into the TRAIL AGREEMENT.

**RESPONSE**:

17.    Produce all DOCUMENTS CONCERNING the balances allegedly due on the DAC NOTES.

**RESPONSE**:

18.     Produce all DOCUMENTS CONCERNING the DAC NOTES that are allegedly in default.

**RESPONSE**:

19.    Produce all DOCUMENTS CONCERNING any actions taken by any of DEFENDANTS relating to the DAC NOTES that are allegedly in default, including, but not limited to, demand or other letters, or lawsuits.

**RESPONSE**:

20.    Produce all DOCUMENTS CONCERNING any setoffs or offsets taken against commissions due any PERSON who entered into the TRAIL AGREEMENT by any of DEFENDANTS to pay any part of the DAC NOTES.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 7**

21.    Produce all DOCUMENTS CONCERNING all DAC NOTES that have been cancelled.

**RESPONSE**:

22.    Produce all DOCUMENTS  CONCERNING all DAC NOTES that have been paid in full.

**RESPONSE**:

23.    Produce all DOCUMENTS CONCERNING the identity of and all payments to ALLMERICA LIFE in connection with the TRAIL AGREEMENT by any PERSON who did not have a DAC NOTE.

**RESPONSE**:

24.    Produce all the quarterly and annual statements sent to each PERSON who entered into the TRAIL AGREEMENT CONCERNING the payment calculations and commission rates under the TRAIL AGREEMENT.

**RESPONSE**:

25.    Produce all the tax statements sent to each PERSON who entered into the the TRAIL AGREEMENT CONCERNING payments made or received under the TRAIL AGREEMENT.

**RESPONSE**:

26.    Produce all DOCUMENTS CONCERNING how DEFENDANTS identified variable annuities or fixed annuities that were to be included as part of the of the TRAIL AGREEMENT in accordance with paragraph I(2)((a)-(d) of the TRAIL AGREEMENT,

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 8**

including, but not limited to, replacement contracts issued after December 31, 1995, that fall within those sections.

**RESPONSE**:

27.    Produce all DOCUMENTS CONCERNING how DEFENDANTS identified variable annuities or fixed annuities that were to be included as part of the of the TRAIL AGREEMENT in accordance with paragraph I(2)((a)-(d) of the TRAIL AGREEMENT, including, but not limited to, replacement contracts issued after December 31, 1995, that fall within those sections as to PLAINTIFF Speakman.

**RESPONSE**:

28.    Produce all DOCUMENTS CONCERNING how DEFENDANTS identified the aggregate premiums paid on "the replaced contract," as defined in paragraph III(b) (ii) of the TRAIL AGREEMENT(or a percentage thereof in the case of a partial replacement) plus the aggregate premiums paid on any ALLMERICA LIFE life insurance or annuity contract that was replaced by the replaced contract.

**RESPONSE**:

29.    Produce all DOCUMENTS CONCERNING how DEFENDANTS identified the aggregate premiums paid on all of "the replaced contract(s)," as defined in paragraph III(b) (ii) of the TRAIL AGREEMENT(or a percentage thereof in the case of a partial replacement), plus the aggregate premiums paid on any ALLMERICA LIFE life insurance or annuity contract that was replaced by the replaced contract as to PLAINTIFF Speakman.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 9**

30.    Produce all DOCUMENTS CONCERNING how DEFENDANTS determined the amount set forth in III(b)(iii) of the TRAIL AGREEMENT.

**RESPONSE**:

31.    Produce all DOCUMENTS CONCERNING how DEFENDANTS determined the amount set forth in III(b)(iii) of the TRAIL AGREEMENT as to PLAINTIFF Speakman.

**RESPONSE**:

32.    Produce all DOCUMENTS CONCERNING any COMMUNICATIONS to any PERSON including, but not limited to, any PERSON who entered into the TRAIL AGREEMENT, auditors of any of DEFENDANTS, or any governmental entity that regulates any of DEFENDANTS about writing off, writing down, or cancellation of balances due on DAC NOTES.

**RESPONSE:**

33.    Produce all DOCUMENTS CONCERNING any COMMUNICATIONS to any PERSON about the characterization or treatment on the financial statements of any DEFENDANTS of the payments made by or to DEFENDANTS under the TRAIL AGREEMENT.

**RESPONSE**:

34.    Produce all professional liability, errors and omissions, or director and officers insurance policies, including the applications for those policies, covering the acts or omissions of the employees, officers, or directors of DEFENDANTS.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 10**

35.    Produce all professional liability, or errors and omissions insurance policies, including the applications for those policies, covering the acts or omissions of PLAINTIFFS or any other PERSON, who entered into the TRAIL AGREEMENT.

**RESPONSE**:

36.    Produce all DOCUMENTS CONCERNING the charging to and payment by PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT of any premiums involving professional liability or errors and omissions insurance policies.

**RESPONSE**:

37.    Produce all DOCUMENTS CONCERNING whether  PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT were employees of ALLMERICA LIFE.

**RESPONSE**:

38.    Produce all DOCUMENTS CONCERNING whether PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT were independent contractors or ALLMERICA LIFE.

**RESPONSE**:

39.    Produce all DOCUMENTS CONCERNING any position that DEFENDANTS have taken in any lawsuit, administrative proceeding, or any threatened or actual regulatory action as to whether any PERSON who entered into a Career Agent's Agreement with State Mutual Life Assurance Company of America or ALLMERICA LIFE was an employee or independent contractor of either of those entities.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 11**

40.     Produce all DOCUMENTS CONCERNING any of DEFENDANTS' control over the time, place and manner of solicitation of servicing of the business of ALLMERICA LIFE by PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT, including but not limited, to any position taken in a lawsuit, administrative proceeding, or any threatened or actual regulatory action.

**RESPONSE**:

41.     Produce all Career Agent's Agreements, including all exhibits thereto, that were entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and DEFENDANTS or State Mutual Life Assurance Company of America, on the other hand.

**RESPONSE**:

42.     Produce all modifications or amendments to Career Agent's Agreements, including all exhibits or attachments thereto, that were entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and ALLMERICA LIFE or State Mutual Life Assurance Company of America, on the other hand.

**RESPONSE**:

43.     Produce all Broker's Agreements, including all exhibits thereto, that were entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and ALLMERICA LIFE, on the other hand.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 12**

44.    Produce all modifications or amendments to Broker's Agreements, including all exhibits or attachments thereto, that were entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and ALLMERICA LIFE , on the other hand.

**RESPONSE**:

45.    Produce all Independent Contractor Agreement for Registered Representative entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and VeraVest Investments, Inc., on the other hand.

**RESPONSE**:

46.    Produce all modifications or amendments to Independent Contractor Agreement for Registered Representative , including all exhibits or attachments thereto, entered into by any of PLAINTIFFS and any other PERSONS who entered into the TRAIL AGREEMENT, on the one hand, and VeraVest Investments, Inc., on the other hand.

**RESPONSE**:

47.    Produce all DOCUMENTS CONCERNING any of DEFENDANTS' policies and practices as to the replacement of variable annuities or any other policies issued by DEFENDANTS, including, but not limited to, prohibitions on replacements, permission of replacements, commissions paid or not paid for replacements.

**RESPONSE**:

48.    Produce all DOCUMENTS CONCERNING any of DEFENDANTS COMMUNICATIONS with PLAINTIFFS or any PERSON that entered into the TRAIL

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 13**

AGREEMENT regarding DEFENDANTS' policies and practices as to the replacement of variable annuities or any other policies issued by DEFENDANTS, including, but not limited to, prohibitions on replacements, permission of replacements, commissions paid or not paid for replacements.

**RESPONSE**:

49.    Produce all DOCUMENTS CONCERNING any of DEFENDANTS' policies and practices as to the replacement of variable annuities or any other policies issued by an insurance company other than DEFENDANTS, including, but not limited to, prohibitions on replacements, permission of replacements, commissions paid or not paid for replacements.

**RESPONSE**:

50.    Produce all DOCUMENTS CONCERNING any COMMUNICATIONS with PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT as to any of DEFENDANTS' policies as to the replacement of variable or fixed annuities, that were issued by an insurance company other than DEFENDANTS.

**RESPONSE**:

51.    Produce all DOCUMENTS CONCERNING any COMMUNICATIONS by DEFENDANTS to or from the  Securities & Exchange Commission, the National Association of Securities Dealers or any other regulatory or governmental agency about the replacement of any variable or fixed annuities issued by ALLMERICA LIFE by any of PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 14**

52.    Produce all DOCUMENTS when DEFENDANTS first determined that PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT had replaced variable or fixed annuities that DEFENDANTS believed was in violation of any agreements that PLAINTIFFS or any other PERSON who entered into the TRAIL AGREEMENT had entered into with DEFENDANTS.

**RESPONSE**:

53.    Produce all DOCUMENTS CONCERNING the replacements of variable or fixed annuities, that were part of the TRAIL AGREEMENT that DEFENDANTS maintain violated any agreement, regulation of the Securities Exchange Commission, rule of the National Association of Securities Dealers, or any other law, rule, or regulation of any governmental authority.

**RESPONSE**:

54.    Produce all DOCUMENTS CONCERNING COMMUNICATIONS to or from DEFENDANTS and PLAINTIFFS or any PERSON who entered into the TRAIL AGREEMENT involving their replacement of annuities that were part of the TRAIL AGREEMENT.

**RESPONSE**:

55.    Produce all DOCUMENTS CONCERNING COMMUNICATIONS to or from DEFENDANTS and any PERSON who entered into a annuity that was part of the TRAIL AGREEMENT and which annuity was replaced.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 15**

56.    Produce all DOCUMENTS CONCERNING any action that any of DEFENDANTS has taken since 2002 to complain about, criticize, defend, or prosecute any PERSON in the Partner or Select distribution channel in connection with the replacement of a variable annuity or variable insurance policy issued by any of DEFENDANTS.

**RESPONSE**:

57.    Produce all DOCUMENTS CONCERNING any action by DEFENDANTS since 2002 to complain about, criticize, defend, or prosecute any PERSON who entered into the TRAIL PROGRAM concerning the replacement of a variable annuity or variable insurance policy.

**RESPONSE**:

58.    Produce all DOCUMENTS CONCERNING any action by DEFENDANTS since 2002 to complain about, criticize, defend, or prosecute any PERSON who entered into a Career Agency Agreement or Broker's Agreement concerning the replacement of a variable annuity or variable insurance policy.

**RESPONSE**:

59.    Produce all DOCUMENTS CONCERNING how DEFENDANTS analyzed, considered, or handled the risk of impairment of DAC, including, but not limited to, projections as to the impairment, use of reinsurance or hedging strategies to limit the risk.

**RESPONSE**:

60.    Produce all DOCUMENTS CONCERNING the assumptions that DEFENDANTS used in 1999 and 2000 as to the amortization of DAC and all

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 16**

COMMUNICATIONS relating thereto.

**RESPONSE**:

61.    For 1999 and 2000, produce all DOCUMENTS CONCERNING (a) all assumptions used to determine the amortization of DAC for each of those years; (b) how downturns in the equity markets created a risk of the partial or permanent impairment of the recovery of DAC; (c) the effect of the partial or permanent impairment of the recovery of DAC in connection with DEFENDANTS' life and annuity business could pose to the earnings or surplus of any of DEFENDANTS, and the ratings assigned to any of DEFENDANTS by the rating agencies such as Standard & Poor's, Best's, and Moody's; (d) the effect of lowered ratings by rating agencies on the ability of DEFENDANTS to sell their proprietary life and annuity products; and (e) strategies to lessen the risk of the permanent or partial impairment of DAC.

**RESPONSE**:

62.    For 1999 and 2000, produce all DOCUMENTS CONCERNING (a) all assumptions used to determine the exposure to the GMDB risk for each of those years; (b) how downturns in the equity markets created an increase in GMDB risk, including how a 1% change in the Standard & Poor's 500 index would affect the amount of statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA and the net amount of risk; (c) the effect of the increase in the GMDB risk in connection with DEFENDANTS' life and annuity business to the earnings or surplus of any of DEFENDANTS, and the ratings assigned to any of DEFENDANTS by the rating agencies such as Standard & Poor's, Best's, and Moody's; (e) strategies to lessen the GMDB risk;

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 17**

**RESPONSE**:

63.    Produce all DOCUMENTS CONCERNING the raising, consideration, discussion, or decision during 2000 by DEFENDANTS of the curtailment, limitation, or modification of the sales of variable annuities or variable universal life products issued by ALLMERICA LIFE and all COMMUNICATIONS relating thereto.

**RESPONSE**:

64.    Produce all DOCUMENTS CONCERNING the raising, consideration, discussion, or decision during 2000 by DEFENDANTS of the curtailment, modification or termination of their life and annuity sales force and all COMMUNICATIONS relating thereto.

**RESPONSE**:

65.    Produce all DOCUMENTS CONCERNING the raising, consideration, discussion, or decision after 2000 by DEFENDANTS of the curtailment, limitation, or modification of the sales of variable annuities or variable universal life products issued by ALLMERICA LIFE and all COMMUNICATIONS relating thereto.

**RESPONSE**:

66.    Produce all DOCUMENTS CONCERNING the raising, consideration, discussion, or decision after 2000 by DEFENDANTS of the curtailment, modification or termination of their life and annuity agency sales force and all COMMUNICATIONS relating thereto.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 18**

67.    Produce all DOCUMENTS CONCERNING the raising, discussion, consideration, or decision after 2000 by DEFENDANTS that the DAC in connection with variable annuities and variable life policies issued by ALLMERICA LIFE was, in whole or part, permanently impaired, or had to be written or charged off and all COMMUNICATIONS relating thereto.

**RESPONSE**:

68.    Produce all DOCUMENTS CONCERNING the amount of reserves that had to be increased, or the amount of charges taken to earnings or income after 2000 due to GMDB and all COMMUNICATIONS relating thereto.

**RESPONSE**:

69.    Produce all DOCUMENTS CONCERNING the assumptions used for each year after 2000 to determine the amount of reserves for GMDB, or adjustments to statutory surplus.

**RESPONSE**:

70.    Produce all DOCUMENTS CONCERNING the assumptions used for each year after 2000  to determine the amount of DAC to amortize, including any retroactive adjustments.

**RESPONSE**:

71.    Produce all DOCUMENTS CONCERNING the profitability analysis performed in 1999 and 2000 to determine the amortization of DAC attributable to variable annuities and variable insurance sold by DEFENDANTS' Select and Partner distribution channels

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 19**

and all COMMUNICATIONS relating thereto.

**RESPONSE**:

72.    Produce all DOCUMENTS CONCERNING the profitability analysis performed for each year after 2000 to determine the amortization of DAC attributable to variable annuities and variable insurance sold by DEFENDANTS' Select and Partner distribution channels.

**RESPONSE**:

73.    For 1999 and 2000, produce all DOCUMENTS CONCERNING the effect for each 1% change in the Standard & Poor's 500 index would affect the amount of DAC that had to be amortized.

**RESPONSE**:

74.    For each year after 2000, produce all DOCUMENTS CONCERNING the effect for each 1% change in the Standard & Poor's 500 index would affect the amount of DAC that had to be amortized.

**RESPONSE**:

75.    For 1999 and 2000, produce all DOCUMENTS CONCERNING the effect for each 1% change in the Standard & Poor's 500 index would affect the amount of statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA or the net amount of risk in connection with GMDB.

**RESPONSE**:

76.    For each year after 2000, produce all DOCUMENTS CONCERNING the effect for each 1% change in the Standard & Poor's 500 index would affect the amount of

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 20**

statutory surplus of FIRST ALLMERICA or ALLMERICA LIFE or the net amount of risk in connection with GMDB.

**RESPONSE**:

77.    Produce all DOCUMENTS CONCERNING the GMDB mortality reinsurance program effective December 1, 2002 and all COMMUNICATIONS relating thereto.

**RESPONSE**:

78.    Produce all DOCUMENTS CONCERNING the hedge program commenced on December 5, 2003, to hedge the exposure to the GMDB risk and all COMMUNICATIONS relating thereto.

**RESPONSE**:

79.    Produce all DOCUMENTS CONCERNING any COMMUNICATIONS between any of DEFENDANTS and any state department or division of insurance relating to the TRAIL AGREEMENT, the effect of GMDB on the statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA, the decision by DEFENDANTS to cease issuing new annuity and life products, the decision by DEFENDANTS to terminate the sales force of ALLMERICA LIFE, DEFENDANTS' amortization of DAC, the financial condition of ALLMERICA LIFE or FIRST ALLMERICA, or complaints by owners of variable annuities issued by ALLMERICA LIFE about the servicing of those annuities, the failure to update the products, or ALLMERICA LIFE's discontinuation of the sale of proprietary life and annuity business, the discontinuation of the sale of non-proprietary life and annuity policies, minimum amount of risk based capital that ALLMERICA LIFE or FIRST ALLMERICA had

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 21**

to maintain, and the authority to make and distribute dividends by ALLMERICA LIFE or FIRST ALLMERICA.

**RESPONSE**:

80.    Produce all DOCUMENTS CONCERNING COMMUNICATIONS between any of DEFENDANTS and the Securities & Exchange Commission relating to the TRAIL AGREEMENT, the effect of GMDB on the statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA, the decision by DEFENDANTS to cease issuing new annuity and life products, the decision by DEFENDANTS to terminate the sales force of ALLMERICA LIFE, DEFENDANTS' amortization of DAC, or complaints by owners of variable annuities issued by ALLMERICA LIFE about the servicing of those annuities, the failure to update the products, ALLMERICA LIFE's discontinuation of its sale of proprietary life and annuity business, or the discontinuation of its sale of non-proprietary life and annuity policies.

**RESPONSE:**

81.    Produce all DOCUMENTS CONCERNING COMMUNICATIONS between any of DEFENDANTS and Standard & Poor's, Moody's, A.M. Best relating to the TRAIL AGREEMENT, the effect of GMDB on the statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA, the decision by DEFENDANTS to cease issuing new proprietary annuity and life products, the decision by DEFENDANTS to terminate the life and annuity sales force of ALLMERICA LIFE, DEFENDANTS' amortization of DAC, the decision to not sell any non-proprietary life and annuity products, and the ratings assigned by Standard & Poor's, Moody's or A.M. Best to ALLMERICA LIFE or FIRST ALLMERICA.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 22**

82.    Produce all DOCUMENTS CONCERNING the names and titles of all employees and officers of ALLMERICA LIFE and FIRST ALLMERICA as of January 1, 2000; January 1, 2001; January 1, 2002; January 1, 2003; January 1, 2004; and January 1, 2005, and the last known address of each employee or officer.

**RESPONSE**:

83.    Produce all DOCUMENTS CONCERNING the budget, business plan, financial forecast or projections for ALLMERICA LIFE and FIRST ALLMERICA for 2000, 2001, 2002, 2003, 2004, and 2005, including dividends by either of those entities, amounts of statutory surplus, GMDB exposure, payments to be made or received under the TRAIL AGREEMENTS.

**RESPONSE**:

84.    Produce all DOCUMENTS CONCERNING all complaints made to DEFENDANTS about the servicing of variable annuities issued by ALLMERICA LIFE, the failure to update those variable annuities through new features, riders or endorsements, or ALLMERICA LIFE's cessation of its sale of proprietary life and annuity policies and all COMMUNICATIONS relating thereto.

**RESPONSE:**

85.    Produce all DOCUMENTS CONCERNING the fund options that were available to owners of variable annuities that are part of the TRAIL AGREEMENT during 2000, 2001, 2002, 2003, 2004, and 2005.

**RESPONSE:**

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 23**

86.    Produce all DOCUMENTS CONCERNING the decisions to select, increase, or reduce the number of fund options that were available to owners of variable annuities that are part of the TRAIL AGREEMENT during 2000, 2002, 2002, 2003, 2004, and 2005 and all COMMUNICATIONS relating thereto.

**RESPONSE:**

87.    Produce all DOCUMENTS CONCERNING the retention of, payment to, and rendition of services by consultants by any of DEFENDANTS to select the performance of the mutual fund advisors or independent management firms who manage the funds for variable annuities that are part of the TRAIL AGREEMENT during 2000, 2001, 2002, 2003, 2004, and 2005 and all COMMUNICATIONS relating thereto.

**RESPONSE:**

88.    Produce all DOCUMENTS CONCERNING the name and address of the mutual fund advisors or independent management firms who manage the funds available for variable annuities that are part of the TRAIL AGREEMENT during 2000, 2002, 2002, 2003, 2004, and 2005.

**RESPONSE:**

89.    Produce all DOCUMENTS CONCERNING all past and present practices and procedures to notify PERSONS who are enrolled in the TRAIL AGREEMENT that an owner of a variable annuity in the TRAIL AGREEMENT intends to terminate, replace or exchange the variable annuity and all COMMUNICATIONS relating thereto.

**RESPONSE:**

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 24**

90.     Produce all DOCUMENTS CONCERNING current and past practices and procedures to notify PERSONS who are enrolled in the TRAIL AGREEMENT about any COMMUNICATIONS with any owners of variable annuities that are part of the TRAIL AGREEMENT.

**RESPONSE:**

91.     Produce all DOCUMENTS CONCERNING all past and present updates, riders or endorsements to the variable annuities that are offered to owners of the variable annuities that are part of the TRAIL AGREEMENT and all COMMUNICATIONS relating thereto.

**RESPONSE:**

92.     Produce all DOCUMENTS CONCERNING the identify, address, and telephone number of each PERSON who entered into the TRAIL AGREEMENT at any time.

**RESPONSE:**

93.     Produce all DOCUMENTS CONCERNING COMMUNICATIONS between any of DEFENDANTS and analysts any other PERSON about the amortization of DAC and its effect on the earnings of ALLMERICA FINANCIAL, the effect of GMDB on the statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA or earnings of ALLMERICA FINANCIAL, the decision by DEFENDANTS to cease issuing proprietary annuity and life products, the decision by DEFENDANTS to terminate the life and annuity sales force of ALLMERICA LIFE, DEFENDANTS' decision to cease selling non-proprietary annuity and

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 25**

life products, or the ratings assigned by Standard & Poor's, Moody's or A.M. Best to ALLMERICA LIFE or FIRST ALLMERICA.

### RESPONSE:

94.     Produce the Consulting Agreement dated October 25, 2002, between ALLMERICA FINANCIAL and John F. O'Brien.

### RESPONSE:

95.     Produce all DOCUMENTS CONCERNING payment to and services rendered by John O'Brien pursuant to the October 25, 2002 Consulting Agreement and all COMMUNICATIONS relating thereto.

### RESPONSE:

96.     Produce the 83(b) Agreements dated March 21, 2000, entered into by FIRST ALLMERICA and John F. O' Brien, Richard Reilly, and J. Kendall Huber and all COMMUNICATIONS relating thereto.

### RESPONSE:

97.     Produce the Severance Agreement dated February 24, 2004, between FIRST ALLMERICA and Mark Hug and all COMMUNICATIONS relating thereto.

### RESPONSE:

98.     Produce all DOCUMENTS CONCERNING payments made to Mark Hug in connection with the February 24, 2004 Severance Agreement.

### RESPONSE:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 26**

99.    Produce the Agreement between Michael P. Angelini and ALLMERICA FINANCIAL dated November 6, 2002.

**RESPONSE**:

100.    Produce all DOCUMENTS CONCERNING the 2000 restructuring plan for any of DEFENDANTS.

**RESPONSE:**

101.    Produce the letter between John F. Kelly and the Massachusetts Division of Insurance dated March 4, 1999.

**RESPONSE**:

102.    Produce the letter dated October 24, 2002, between FIRST ALLMERICA and the Massachusetts Division of Insurance.

**RESPONSE**:

104.    Produce all DOCUMENTS identified in Defendants' Disclosure pursuant to Fed. R. Civ. P. 26(a)(1)(B).

**RESPONSE:**

105.    Produce all DOCUMENTS that form the basis for calculation of damages made by DEFENDANTS pursuant to Fed. R. Civ. P. 26(a)(1)(C).

**RESPONSE:**

106.    Produce all DOCUMENTS that form the basis for the Third AFFIRMATIVE DEFENSE.

**RESPONSE:**

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 27**

107.   Produce all DOCUMENTS that form the basis for the Fourth AFFIRMATIVE DEFENSE.

**RESPONSE:**

108.   Produce all DOCUMENTS that form the basis for the Seventh AFFIRMATIVE DEFENSE.

**RESPONSE:**

109.   Produce all DOCUMENTS that form the basis for the Eighth AFFIRMATIVE DEFENSE.

**RESPONSE:**

110.   Produce all DOCUMENTS that form the basis for the Ninth AFFIRMATIVE DEFENSE.

**RESPONSE:**

111.   Produce all DOCUMENTS that form the basis for the Tenth AFFIRMATIVE DEFENSE.

**RESPONSE:**

112.   Produce all DOCUMENTS that form the basis for the Fourteenth AFFIRMATIVE DEFENSE.

**RESPONSE:**

113.   Produce all DOCUMENTS that form the basis for the Fifteenth AFFIRMATIVE DEFENSE.

**RESPONSE:**

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 28**

114.    Produce all DOCUMENTS that form the basis for the allegations in paragraph 15 of the COUNTERCLAIM.

**RESPONSE:**

115.    Produce all DOCUMENTS CONCERNING COMMUNICATIONS with PLAINTIFFS or other PERSONS who entered into the TRAIL AGREEMENT including but not limited to those occurring on December 12, 2002, February 4, 2003, February 5, 2003, March 18, 2003, November 1, 2003, and November 6, 2003.

**RESPONSE:**

116.    Produce all DOCUMENTS CONCERNING the defined contribution plan or defined benefit pension plan contributions that were to include a percentage of gross commissions from the TRAIL AGREEMENT during each year since 2000; the actual amount of the defined contribution plan or defined benefit pension plan contributions based upon the percentage of gross commissions from the TRAIL AGREEMENT that were made on behalf of PLAINTIFFS, or any other PERSON who entered into the TRAIL AGREEMENT; and the decision to cease making contributions to the defined contribution plan or defined benefit pension plan as a percentage of gross commissions from the TRAIL AGREEMENT.

**RESPONSE**:

117.    Produce all DOCUMENTS CONCERNING disclosures about the TRAIL AGREEMENT and/or this litigation in any offers to sell or solicitation of bids to purchase the annuities that are part of the TRAIL AGREEMENT or any other annuities or life

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 29**

business that is on the books of ALLMERICA LIFE and all COMMUNICATIONS relating thereto.

**RESPONSE:**

118.   Produce all DOCUMENTS CONCERNING any media interviews of DEFENDANTS as to the effect of GMDB on the statutory surplus of ALLMERICA LIFE or FIRST ALLMERICA, the decision by DEFENDANTS to cease issuing proprietary annuity and life products, the decision by DEFENDANTS to terminate the sales force of ALLMERICA LIFE, the decision by DEFENDANTS to cease selling non-proprietary life and annuity products, and the ratings assigned by Standard & Poor's, Moody's or A.M. Best to ALLMERICA LIFE or FIRST ALLMERICA.

**RESPONSE:**

119.   Produce all DOCUMENTS CONCERNING projected surrender rates for variable annuities included in the TRAIL AGREEMENT since January 1, 2000.

**RESPONSE:**

120.   Produce all Annual Statements filed by ALLMERICA LIFE and FIRST ALLMERICA with the Massachusetts or Delaware Departments of Insurance  for 2000, 2001, 2002, 2003, 2004, and 2005.

**RESPONSE:**


121.   Produce all Form 10-K and 8-Q filings by ALLMERICA FINANCIAL for 2000, 2001, 2002, 2003, 2004 and 2005.

**RESPONSE:**


**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 30**

122.   Produce all examination reports by any Department of Insurance of ALLMERICA LIFE or FIRST ALLMERICA including draft reports, and any responses to same.

**RESPONSE:**

123.  Produce all DOCUMENTS CONCERNING all PERSONS who had entered into the TRAIL AGREEMENT and (a) were terminated by ALLMERICA LIFE prior to December 31, 2002, and whether the termination was for cause or not; (b) who resigned as a career agent of ALLMERICA LIFE prior to December 31, 2002; (c) entered into a Broker's Agreement with ALLMERICA LIFE effective as of January 1, 2003; (d) were terminated by ALLMERICA LIFE between January 1, 2003 and December 31, 2003, and whether the termination was for cause or not; and (e) had resigned as a broker with ALLMERICA LIFE after January 1, 2003.

**RESPONSE**:

124.   Produce each of DEFENDANTS' document retention policy.

**RESPONSE**:

125.   Produce all DOCUMENTS CONCERNING the amount of contributions that any of DEFENDANTS made into any retirement and/or pension plan for the benefit of any PERSON that entered into the TRAIL AGREEMENT that was based upon commissions.

**RESPONSE**:

126.  Produce all DOCUMENTS CONCERNING the discontinuation of contributions that any of DEFENDANTS made into any retirement and/or pension plan for

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 31**

the benefit of any PERSON that entered into the TRAIL AGREEMENT that was based upon commissions.

**RESPONSE**:

127.    Produce all DOCUMENTS CONCERNING other compensation for discontinuation of contributions made by any of DEFENDANTS into any retirement and/or pension plan for the benefit of any PERSON that entered into the TRAIL AGREEMENT.

**RESPONSE**:

128. Produce all DOCUMENTS CONCERNING any retirement and/or pension plan that was entered into by any PERSON that entered into the TRAIL AGREEMENT and any amendments thereto.

**RESPONSE**:

129.    Produce all DOCUMENTS CONCERNING the surrenders of all annuities that were part of the TRAIL AGREEMENT for each PERSON that entered into the TRAIL AGREEMENT from October 1, 2002 to present.

**RESPONSE**:

130.    Produce all DOCUMENTS CONCERNING the surrenders of all annuities and life insurance policies issued by any of DEFENDANTS that were sold by any of PLAINTIFFS, and were not part of the TRAIL AGREEMENT, from October 1, 2002 to present.

**RESPONSE**:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 32**

131.    Produce all DOCUMENTS CONCERNING the reduction or changes since 2002 in the services that DEFENDANTS offered to PERSONS who own variable annuities and all COMMUNICATIONS relating thereto.

**RESPONSE:**

132.    Produce all DOCUMENTS CONCERNING the investigation, internal or external audit of services that any of DEFENDANTS offer or provide to annuitants.

**RESPONSE**:

133.    Produce  all DOCUMENTS CONCERNING any proposals to sell or to entertain offers for any life or annuity business of ALLMERICA LIFE or  FIRST ALLMERICA and all COMMUNICATIONS relating thereto.

**RESPONSE**:

134.    Produce all DOCUMENTS CONCERNING any negotiations to sell any life or annuity business of ALLMERICA LIFE OR FIRST ALLMERICA and all COMMUNICATIONS relating thereto.

**RESPONSE**:

135.    Produce all employment, severance, or consulting agreements between DEFENDANTS and James Bellner, Mark Hug, or Phil Alston and all COMMUNICATIONS relating thereto.

**RESPONSE**:

136.    Produce all DOCUMENTS CONCERNING the aggregate amount of DAC that remained unamortized for the annuities that were part of all the TRAIL AGREEMENTS as

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 33**

of January 1, 2001 and the items that comprised the unamortized DAC and all COMMUNICATIONS relating thereto.

**RESPONSE**:

137.   Produce all DOCUMENTS CONCERNING the average age of annuitants in the TRAIL AGREEMENTS as of January 1, 2001, and for each quarter thereafter.

**RESPONSE**:

138.   Produce all DOCUMENTS CONCERNING the aggregate dollar amount and percentage allocation by type of funds for all annuities in the TRAIL AGREEMENTS.

**RESPONSE:**



Respectfully Submitted,

HUBBARD & BIEDERMAN, L.L.P.

By:_____

Stephen L. Hubbard
Robert W. Biederman
BBO No. 562279
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Fax: (214) 857-6001

Nancy Freeman Gans
BBO No. 184540
Moulton & Gans, P.C.
33 Broad Street, Suite 1100
Boston, Massachusetts 02109
Telephone: (617) 369-7979
Facsimile:(617) 369-7980

ATTORNEY FOR PLAINTIFFS


**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 34**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via Fedex on this the _1ST_ day of July 2005, to the following:

Jonathan A. Shapiro
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109
(617) 526-6000

_____
Stephen L. Hubbard

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION - Page 35**