IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP. <br><br> Defendants. | § § § § § § § § § § § § § § § § § Civil Action No. 4:04-cv-40077-FDS |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Stephen L. Hubbard
Robert W. Biederman
BBO No. 562279
David M. Grossman
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001

Nancy Freeman Gans
BBO No. 184540
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

*ATTORNEYS FOR PLAINTIFFS*

**Introduction**

Defendants' Opposition to Plaintiffs' Motion to Compel Discovery ("Opposition"), asserts three broad specious arguments. First, Defendants argue that Plaintiffs' Motion is premature, because there may be future discovery disputes, all of which should be considered at the same time. Second, Defendants contend that their only deadline for production of documents should be April 30, 2006, which is the last date for merits depositions. Third, Plaintiffs' discovery, at this time, should be limited to class issues, and that the discovery now sought by Plaintiffs is not relevant to certification. Defendants, however, concede certain requests are relevant, such as the production of the Goldman Sachs purchase documents, but inexplicably refuse to produce such documents requested over 4 months ago.

**I.     Defendants' Positions As to Ripeness, Imposition of Deadlines for Discovery, and Overall Relevance Are Untenable.**

**A.     Plaintiffs' Motion Is Timely And Not Premature.**

In an effort to sidestep this Motion altogether, Defendants argue that the motion is "premature" and should be denied without prejudice since more discovery issues "are likely to arise in the future." *Opposition at 1-2.* This argument is nonsensical. There are immediate issues that need to be resolved concerning Defendants' failure to adequately produce documents in response to Plaintiffs' First Request for Production of Documents served on July 1, 2005. After months of fruitless attempts to resolve these issues,[1] Defendants seek additional delay until some unknown future date when the parties will present at one time all of their discovery disputes. Not only is there no support in the Federal Rules for such an approach but it belies any sense of fairness. Plaintiffs

---

[1] Plaintiffs' first attempt to resolve these issues was reflected in a letter dated August 25, 2005, which Defendants ignored. See Exhibit A.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL - Page 1**

are seeking the production of certain documents, which may bear upon class certification or other imminent issues. These matters are ripe for resolution.[2]

### B. This Court Needs to Impose A Short Deadline for Defendants' Production of Documents.

Defendants argue that any deadline for their production of documents before April 30, 2006, somehow would be a de facto amendment to the Scheduling Order. Defendants apparently believe they should not be required to produce the remaining responsive documents to Plaintiffs' First Request for Production until the April 30 deadline for merits depositions. This position would obviously subvert the deadlines in the Scheduling Order. Defendants would have Plaintiffs face the peril of the deadline of January 31, 2006, to add new parties without Defendants having produced documents that may directly bear on this issue. Moreover, Defendants' position would preclude or hamper Plaintiffs taking meaningful depositions by withholding production of documents authored by the deponents themselves until April 30, 2006. [3]

As to a realistic date for Defendants' production of responsive documents to Plaintiffs' First Request for Production, Defendants make vague, unsupported references to the alleged volume of documents. Generally, a party seeking to avoid discovery due to undue burden must substantiate that position with detailed affidavits or other evidence establishing an undue burden. "An objection must

---

[2] Conversely, the alleged issues involving Plaintiff Speakman's production of documents (*Opposition at 7, n. 7*) are not ripe for resolution, because there has been no conference under L.R. 37.1 to even address these issues.

[3] Defendants' recitation of the activity in the case since July 1 as well as their production to date does not evince that Defendants have adequately dealt with Plaintiffs' discovery requests. To date, Defendants have taken all of Plaintiffs' depositions, and Plaintiffs, at great expense, gathered and produced over 15,000 pages of documents, including hundreds of client files. In other words, Defendants have had the full opportunity to take class and merits discovery of Plaintiffs while their discovery responses to Plaintiffs' requests have languished.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** - Page 2

show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited v. National Bank of Washington,* 103 F.R.D. 52, 59-60 (D.D.C.1984); *see also EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642 (7th Cir.1995). The resisting party must make a particular and specific demonstration of fact and cannot rely on simple conclusory assertions about the difficulty of complying with a discovery request. *See Twin City Fire Ins. Co. v. Ford Motor Co.,* 124 F.R.D. 652 (D.Nev.1989). Unsworn allegations, like those made by Defendants in this case, do not satisfy the burden. As explained in *Employers Commercial Union Ins. Co. of America v. Browning-Ferris Industries of Kansas City, Inc.* 1993 WL 210012, *5 (D.Kan.1993):

> Plaintiff has submitted no affidavit or other proof to show that the requested production of documents would be unduly burdensome. Nor has it otherwise shown undue burden from anything of record. Mere assertions in argument that its record-keeping system prevents production without undue burden do not suffice.

Even if the Court were to accept Defendants' allegations as true, burden created by a party's own inefficiencies are of no moment:

> The fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, [sic] is not a sufficient reason to prevent disclosure of otherwise discoverable material.

*Id. (citations omitted).*[4]

---

[4]Defendants' position that they will copy all responsive documents and produce them to Plaintiffs, but will not make documents available for Plaintiffs' review with Plaintiffs deciding which documents to copy is completely contrary to the text of Fed. R. Civ. P. 34(a) ("Any party may serve on any other party a request (1) to produce and permit the party making the request . . . to inspect and copy . . . ."). As evidenced by Defendants' production to date, Defendants' approach is inefficient and needlessly runs up Plaintiffs' costs. Thousands of documents that Defendants have copied and produced to Plaintiffs have involved publicly-filed documents, that are available on the internet, that Plaintiffs would have inspected but not copied.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL - Page 3**

### C. Defendants Have Taken Totally Inconsistent Positions In Claiming that Plaintiffs' Requests Are Not Relevant to Class Certification Issues.

Defendants' Opposition is replete with references to certain documents that Plaintiffs have requested that purportedly have no bearing on class certification issues. *See, e.g., Opposition at 2*.[5] As an initial matter, there is no order bifurcating discovery in this case so that whether it even can be ascertained whether a particular document request is limited to merits as opposed to class certification issues is irrelevant. Apart from that fact, Defendants have taken the position in other papers filed with the Court that merits discovery and class certification are intertwined.[6] Accordingly, the Court should reject Defendants' attempt to refuse to produce documents at this time based upon their unilateral assertion that such documents are not relevant to class certification.

## II. The Court Should Compel the Relief That Plaintiffs Seek as to Specific Document Requests.

### A. Request Nos. 13, 20, 24, 51, 54, 55 and 129 Bear Upon Issues that Defendants Intend to Raise in Connection With Class Certification

Defendants state that they have "substantially agreed to produce" documents responsive to Request Nos. 13, 20, 24, 51, 54, 55 and 129, but resist production of the documents by November 15. Notably, Defendants make no attempt to offer the Court an alternate date by which the

---

[5] Defendants argue that Plaintiffs "have failed to explain why they need any of the requested documents *now* to support class certification or how they relate in any way to numerosity, commonality, typicality, adequacy, predominance, or superiority under Rule 23."

[6] "The [Defendants'] document requests seek discovery on the merits of Plaintiffs' claims, which are fundamental to the class certification inquiry as to whether common legal claims and factual allegations predominate the dispute, whether class treatment would be superior to individual litigation, and even if so, whether these particular Plaintiffs' claims (and defenses thereto) are typical of the putative class that they seek to represent." Memorandum In Support of Emergency Motion for Order Extending Schedule for Class Certification Briefing ("Defendants' Continuance Brief") at 4-5.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL - Page 4**

documents will be produced. Instead, Defendants claim that production should be deferred by taking statements from Plaintiffs' Motion out of context to somehow demonstrate that Plaintiffs admitted the documents were not relevant to class certification. As Plaintiffs have made clear, Defendants repeatedly have indicated that they intend to base their opposition to certification upon the alleged vagaries of the merits of the underlying claims and defenses thereto, including Plaintiffs' alleged replacement activity of annuities in the Trail Program, and alleged complaints made by some annuitants. See, e.g., *See, e.g., Defendants' Continuance Brief at p.5, n.4* (explaining that replacements and damage issues somehow relate to typicality and adequacy); *Id.* at p.7, n.6 (claiming that customer complaints "address issues critical to typicality, adequacy and other class certification issues."). While Plaintiffs disagree with the relevance of such issues as to class, that is for the Court ultimately to decide, and Plaintiffs are entitled to discovery to meet these issues that Defendants intend to raise in their opposition to class.

1. **Requests 54, 55 and 129**

The focus of the documents that Plaintiffs seek to compel by these requests concerns Defendants' approval of replacement activity (so-called "Switch Letters") and recordings of phone calls made by Plaintiffs' clients in the Trail Program. Defendants make no claim that their production as to such documents is complete, even as to the named Plaintiffs. Indeed, Defendants failed to produce any switch letters. Furthermore, Defendants produced e-mails indicating *hundreds* of telephone calls with Plaintiffs' clients, yet they only produced five audio recordings, only *two* of which were calls from any of the Plaintiffs' clients concerning annuities that are part of the Trail Program. To the extent that Defendants intend to offer evidence of any customer complaints in

connection with class certification, Plaintiffs are entitled to examine the hundreds of positive customer calls that Defendants received and recorded. These documents have yet to be produced.

### 2. Request No. 20

This request concerns setoffs that Defendants have taken in the form of commission outside the Trail Program to pay-down the DAC Note. Defendants claim offsets have no bearing upon class certification, but affirmatively argue damages are relevant to class certification. To the extent that Defendants intend to introduce evidence on damages, Plaintiffs are entitled to present evidence bearing upon class claims of improper offsets.

### 3. Request No. 13

This Request concerns production of the DAC Notes. Defendants claim that Plaintiffs "fail to explain" why they need the promissory notes. This is nonsense. Plaintiffs explained in their opening brief that one document that Defendants produced indicated the existence of DAC Notes payable to an entity other than Defendant Allmerica Financial Life Ins. and Annuity Co ("Allmerica Financial").[7] Because Plaintiffs' class definition is limited to DAC Notes that are payable to Allmerica Financial, a review of the Notes themselves may warrant a change to the class definition.

### 4. Request No. 51

This Request concerns Defendants' production of documents to the NASD. Defendants acknowledge that their production is incomplete, but claim that they will continue to look for documents. The answer is inadequate. As explained in Plaintiffs' opening brief, these are not documents that should be difficult to locate — they are not client files or random pieces of paper;

---

[7] Specifically, ALL 013302 (DAC Trail Program Accounting By Company) specifically indicates that, contrary to Plaintiffs' understanding, certain DAC Notes are payable to one Allmerica company, and other DAC Notes are payable to a separate company.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** - Page 6

rather, they are *electronic exhibits* that were *created by* Defendants in response to *recent* inquiries by regulatory bodies. Much of the correspondence produced to-date is useless because it references the electronic attachments.

      **5.**      **Request No. 24**

As to this Request, all that Plaintiffs seek at this time are the quarterly commission statements from the third quarter of 2002 to present involving Plaintiff Robare. While Defendants have agreed to produce Plaintiff Robare's quarterly commission statements from Q3 2002 to present, they do not state when that production will be made.

    **B.**    **Defendants' Redactions Are Impermissible, Because They Impair the Ability to Understand Certain Documents.**

Defendants mischaracterize Plaintiffs' Motion as somehow seeking the names of all putative class members. As explained in Plaintiffs' opening brief, the problem is that Defendants' redactions make it sometimes impossible to correlate underlying documents to the charts Defendants used in responding to interrogatories and to other documents. As to the interrogatories, Defendants attached various spreadsheets and assigned each participating agent in the Trail Program a number. Unfortunately, Defendants have produced other documents concerning the Trail Program reflecting DAC Notes that are "underwater," annual outgo rates etc. but there are no number references to each participant which precludes correlating this information with the information that is in the charts attached to the Interrogatories. At a minimum, if Defendants are permitted to redact names of putative class members and assign numbers to each participant they need to do so in a consistent manner so that information in the documents can be meaningfully understood.

As to the right to redact itself, there are two other fundamental problems. First, Defendants acknowledge that Plaintiffs actually represent numerous individuals in the Trail Program, and have

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** - Page 7

agreed to remove the redaction to those individuals but still have not done so to date. Second, there is at least one area where Plaintiffs need to understand the actual names of participants. As explained above, there appear to be DAC Notes that are payable to an entity other than Allmerica Financial Life and Annuity Co. Plaintiffs need to know whether any putative class members have Notes that apparently payable to this other entity. Without knowing the identity of these individuals who have Notes payable to this other entity, Plaintiffs cannot ascertain whether the class definition needs to encompass this other Allmerica entity. For example, if these individuals are limited to the participants, who are excluded from this Class (general agents or managing directors), then there will be no need to change the Class definition.

### C. The Consulting Agreements Are Calculated to Discover Evidence of Bias

Defendants next contend that they should not have to respond to Requests 94-99 and 135 which seek employment and consulting agreements with employees and former employees who are witnesses in this case. Defendants cite *Thomspon v. Glenmede Trust Co*. 1993 WL 497952, *2 (E.D.Pa.1993) for the proposition that such agreements are not discoverable where they are not relevant to the claims and defenses of the parties. Defendants overstate the holding of *Thompson* which addresses the discovery issue from a mootness perspective. The Court held, "By Memorandum and Order dated September 8, 1993, this Court granted Hauptfuhrer's Motion for Summary Judgment. As a result, he is no longer a defendant in this action and, thus, the requested materials are not relevant to the remaining claims." There is no indication that the *Thompson* Plaintiffs ever argued that the evidence had any bearing upon bias or prejudice. The fact that a witness is employed by a party to the suit is regarded as a relevant circumstance to be considered by the jury as showing bias or interest. *See, e.g. Thurber Corp. v. Fairchild Motor Corp.* 269 F.2d

841, 845 (5th Cir. 1959); *Central Truck Lines, Inc. v. Lott*, 249 F.2d 722 (5th Cir. 1957)("The interest of a witness in result of suit may always be considered in passing on his credibility").

      **D.**      **The Negotiations Are Highly Pertinent to Both Merits and Class Certification Issues**

Defendants next contend that "it is undisputed" that documents responsive to Requests 117, 133 and 134 are not relevant to class certification. *Opposition* at 13. These requests seek documents concerning the offers to sell and the actual sale of Defendants. On August 22, Defendants publicly announced the sale of Defendant Allmerica Financial Life Ins. & Annuity Co. to The Goldman Sachs Group. As to the Goldman Sachs documents, Defendants argue that more time to confer is necessary. Plaintiffs have exhausted all attempts to obtain these documents, which have resulted in Defendants' refusal to produce any of the Goldman Sachs documents. These documents are relevant to class and the merits, because absent a review of the complete documents concerning the sale (including all exhibits and ancillary agreements), Plaintiffs do not even know which entity will be the holder of the DAC Notes and annuities in the Trail Program after the sale is consummated. If it is an entity other than the current holders, then that entity will likely have to be added as a necessary party. Moreover, there may be multiple representations and warranties made by Defendants in those documents that bear upon this lawsuit and certification.

In addition to the Goldman Sachs documents, Plaintiffs are entitled to see other offers that were made and not consummated, such as to Pacific Life. Such offers may bear upon many issues concerning Defendants' business practices, including approval of replacements during 2002 and 2003.

**Conclusion**

Based upon the foregoing, Plaintiffs move that the Court grant Plaintiffs' Motion to Compel in all respects, and grant such further relief that the Court deems proper.

Dated: November 14, 2005               Respectfully submitted,

                                            Stephen L. Hubbard
                                            Robert W. Biederman, BBO No. 562279
                                            David M. Grossman
                                            **HUBBARD & BIEDERMAN, LLP**
                                            1717 Main Street, Suite 4700
                                            Dallas, Texas 75201
                                            Telephone: (214) 857-6000
                                            Facsimile: (214) 857-6001


                                            **MOULTON & GANS, P.C.**

                                            By: /s/ Nancy Freeman Gans
                                                Nancy Freeman Gans, BBO No. 184540
                                            33 Broad Street, Suite 1100
                                            Boston, Massachusetts 02109-4216
                                            Telephone: (617) 369-7979
                                            Facsimile: (617) 369-7980

                                            **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served by facsimile and first class mail on this the 14th day of November, 2005, to the following:

| | |
|---|---|
| Jonathan A. Shapiro, Esq.<br>WILMER CUTLER PICKERING<br>  HALE and DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-5000 fax | Brian E. Whiteley, Esq.<br>C. Alex Hahn, Esq.<br>SCIBELLI, WHITELEY and<br>STANGANELLI, LLP<br>50 Federal Street, Fifth Floor<br>Boston, MA 02110<br>(617) 722-6003 fax |

                                                /s/ Nancy Freeman Gans
                                                  Nancy Freeman Gans