UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 4:04-cv-40077-FDS |

## STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between and among Donald P.
Speakman, Stephen H. Wedel, and Mark L. Robare, individually and as representatives of others
similarly situated, and Allmerica Financial Life Insurance and Annuity Company ("AFLIAC"),
The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation
("AFC"), and First Allmerica Financial Life Insurance Company ("FAFLIC"), through their duly
authorized counsel, that the above-captioned lawsuit ("Lawsuit") and the matters raised by the
Lawsuit, are settled, compromised and dismissed on the merits and with prejudice on the terms
and conditions set forth in this Stipulation of Settlement (the "Settlement Agreement" or
"Agreement") and the Releases set forth herein, subject to the approval of the Court.

EXHIBIT

1

1.      **INTRODUCTION**

     1.1.    Speakman v. Allmerica Financial Life Ins. & Annuity Co.

          1.1.1.       On May 18, 2004, Plaintiffs Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare filed on behalf of themselves and the Class, a class action complaint ("Complaint") in the Lawsuit. The Complaint asserted claims relating to the Trail Program and a wide variety of other matters concerning the prior and current relationship between and among Allmerica, the Plaintiffs, and the Class. Plaintiffs alleged, among other things, that Allmerica *(i)* violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years; *(ii)* knew but failed to disclose certain risks to Plaintiffs at the time they entered into the Trail Program; and *(iii)* engaged in a variety of other alleged misconduct to the detriment of the Plaintiffs and the Class.

          1.1.2.       On June 23, 2004, Plaintiffs filed an amended complaint ("First Amended Complaint"). Among other things, the First Amended Complaint removed as defendants certain officers and former officers of Allmerica.

          1.1.3.       On August 11, 2004, Defendants moved to dismiss the First Amended Complaint. Defendants argued, among other things, that Plaintiffs had failed to state a claim for a violation of the covenant of good faith and fair dealing and did not have standing to bring a claim under Mass. Gen. Laws ch. 93A. On April 21, 2005, the Court denied Defendants' motion to dismiss.

          1.1.4.       On May 12, 2005, Defendants answered the First Amended Complaint and asserted counterclaims against the Plaintiffs concerning the Trail Program and a variety of other matters (the "Counterclaims").

          1.1.5.       On June 1, 2005, Plaintiffs answered the Counterclaims.

1.1.6.        On July 22, 2005, the Plaintiffs moved for certification of the putative class. Defendants opposed that motion on November 18, 2005. The Plaintiffs filed a reply brief and Defendants filed a surreply on December 6 and 13, 2005, respectively. The Court heard oral argument on Plaintiffs' motion for class certification on December 14, 2005, and that motion is under consideration.

1.2.    Discovery

1.2.1.        Prior to execution of this Agreement, Plaintiffs' Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of their claims and potential claims and to determine how best to serve the interests of the Plaintiffs and the Class (as defined below).

1.2.2.        The Parties conducted extensive discovery, including the depositions of each of the Plaintiffs, interrogatories, requests for admissions, the production of voluminous documents, and service of subpoenas on multiple non-parties, and engaged in motion practice concerning the appropriate scope and extent of discovery.

1.3.    Settlement

1.3.1.        Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Plaintiffs' Counsel have agreed to settle the Lawsuit pursuant to the provisions of this Agreement after considering such factors as *(i)* the substantial benefits to Plaintiffs and the Class under the terms of this Agreement, *(ii)* the attendant risks and uncertainty of litigation, *(iii)* the difficulties and delays inherent in such litigation; and *(iv)* the desirability of consummating this Agreement promptly, in order to provide expeditious relief to Plaintiffs and the Class.

1.3.2.        Plaintiffs expressly deny any wrongdoing alleged in the Counterclaims and in any of the pleadings and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Lawsuit.

1.3.3.        Plaintiffs and Plaintiffs' Counsel have agreed that this Agreement is fair, reasonable, and adequate because it provides substantial benefits to, and is in the best interests of, the Class.

1.3.4.        The settlement reflected in this Agreement was the product of an arms-length negotiation process, which included extensive negotiation, multiple in-person meetings and telephone conferences, written communications, and an exchange and review of additional documents and data relevant to issues of liability and damages that had arisen in the Lawsuit.  Prior to execution of this Agreement, the parties executed a Memorandum of Understanding on April 10, 2006.

1.3.5.        Allmerica expressly denies any wrongdoing alleged in the Complaint, First Amended Complaint and other pleadings and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in the Lawsuit, but considers it desirable for the Lawsuit to be settled and dismissed because this settlement will:  *(i)* avoid further disruption of the management and operation of Allmerica's business due to the pendency and defense of the Lawsuit; *(ii)* finally put to rest the claims of Plaintiffs and the Class and the underlying matters; and *(iii)* avoid the substantial expense, burdens and uncertainties associated with continued litigation.

## 2.    DEFINITIONS

2.1.    As used in this Agreement and the annexed exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless a part or subpart of this Agreement or its exhibits provides otherwise:

2.2.    "Agent Plans" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.3.    "Agent Policies" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.4.    "Allmerica" means: *(i)* the Defendants; *(ii)* each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; *(iii)* each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in *(i)* and *(ii)*; and *(iv)* each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in *(i)*, *(ii)*, and *(iii)*.

2.5.    "Allmerica's Counsel" means the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, counsel to the Defendants.

2.6.    "Attorneys' Fees" means such funds as may be awarded to Plaintiffs' Counsel to compensate them (and any other counsel for Plaintiffs herein) for their fees and expenses in connection with the Lawsuit.

- 5 -

2.7.    "Class" means the Plaintiffs and all other original participants in the Trail Program who executed a DAC Note, except any such participants who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants.

2.8.    "Class Members" means all members of the Class, excluding all Opt-Outs.

2.9.    "Class Members' Release" means the release set forth in parts 7.1.2 through and including 7.1.2.5.

2.10.    "Class Notice" means the notice package, as approved in form and content by the Parties and attached hereto as Exhibit B, to be provided to Class Members pursuant to subpart 4.1 of this Agreement.

2.11.    "Court" means the United States District Court for the District of Massachusetts (Judge F. Dennis Saylor, IV) where the Lawsuit is pending.

2.12.    "DAC Notes" means the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001.

2.13.    "Defendants" means Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation, and First Allmerica Financial Life Insurance Company.

2.14.    "Defendants' Release" means the release set forth in parts 7.1.3 through and including 7.1.3.5.

2.15.    "Defendant Releasees" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.16.    "Disbursement Date" means the tenth day following the close of the quarter during which there has been a Final Settlement Date.

2.17.   "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to finally certify the Class for settlement purposes, whether to approve this Agreement as fair, reasonable and adequate, and whether to approve Plaintiffs' Counsel's application for Attorneys' Fees, and Plaintiffs' application for Incentive Awards.

2.18.   "Final Order and Judgment" means the order approving the Settlement Agreement and the Judgment entered pursuant to that order.

2.19.   "Final Settlement Date" means the date on which the Final Order and Judgment approving the Settlement Agreement becomes final, which for purposes of this Agreement, means: *(i)* if no appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired (i.e., 33 days from the entry of such Final Order and Judgment); or *(ii)* if any appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment.

2.20.   "Hearing Order" means the order to be entered by the Court concerning notice, administration and the Fairness Hearing, as contemplated in part 9 of this Agreement.

2.21.   "Incentive Awards" means such amounts as may be awarded to Plaintiffs as compensation for their role as class representatives and contribution to the prosecution of the Lawsuit.

2.22.   "Lawsuit" means the lawsuit captioned Donald P. Speakman, Stephen H. Wedel and Mark L. Robare, Individually and On Behalf of All Others Similarly Situated v. Allmerica

Financial Life Ins. & Annuity Co., First Allmerica Financial Life Ins. Co. and Allmerica

Financial Corp., Civil Action No. 4:04-cv-40077-FDS (D. Mass.).

      2.23.   "Lead Counsel" means the law firm of Hubbard & Biederman, LLP.

      2.24.   "Opt-Out" means any member of the Class who is excluded from the settlement in accordance with part 5 of this Agreement.

      2.25.   "Opt-Out and Objection Date" means a date no later than fifteen days before the date of the Fairness Hearing, by which any member of the Class must exclude himself or herself from any settlement, or object to this Agreement or the proposed Settlement or to any award of Attorneys' Fees or Incentive Awards, in accordance with the terms of this Agreement.

      2.26.   "Parties" means the Plaintiffs and Defendants, collectively.

      2.27.   "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

      2.28.   "Plaintiffs' Counsel" means the law firms of Hubbard & Biederman, LLP and Moulton & Gans, LLP.

      2.29.   "Plaintiff Releasees" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

      2.30.   "Post-Settlement Notice" means the notice package, as approved in form and content by the Parties and attached hereto as Exhibit D, to be provided to Class Members pursuant to subpart 4.2 of this Agreement.

      2.31.   "Quarterly Overpayment" means the extent that any Class Member paid (by direct payment, offset, or otherwise) during any quarter an amount greater than the fixed quarterly payment (reflecting principal plus interest) set forth on the face of the original DAC Notes he or she executed.

2.32.   "Release" means the Releases and Waiver as set forth in subpart 7.1 of this Agreement.

2.33.   "Released Transactions" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.34.   "Ries Complaint" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.35.   "Segregated Set-Off Account" means a separate account that Defendants shall maintain on their books equal to the amount of Set-Offs used or applied from May 1, 2005 through the Disbursement Date.

2.36.   "Set-Offs" means any commissions or sums other than Trail Commissions that Defendants used or applied, after May 1, 2005, to cover or reduce any shortfall between any Class Member's quarterly DAC Note payments and the Trail Commissions payable in a given quarter.

2.37.   "Settlement Agreement" or "Agreement" means this Stipulation of Settlement and the attached exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

2.38.   "Supplemental Relief" means the relief described in parts 3.3 and 3.4.

2.39.   "Third-Party Claims" means any claim, complaint, legal action, demand, NASD or other arbitration, any investigation or regulatory action or any other governmental, judicial or quasi-judicial proceeding against Allmerica or Class Members that: *(i)* is initiated by any person or entity other than Allmerica or Class Members; and *(ii)* involves (in whole or in part) the rights of any person or entity other than Allmerica or Class Members.

2.40.  "Trail Agreements" means the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001.

2.41.  "Trail Commissions" mean those commissions payable to members of the Class on a quarterly basis pursuant to their respective Trail Agreements.

2.42.  "Trail Program" means the contractual obligations and business relationship embodied by the Trail Agreements and the DAC Notes, collectively.

2.43.  Capitalized terms used in this Agreement but not defined above shall have the meaning ascribed to them herein.

3.      **SETTLEMENT RELIEF**

      3.1.      Pursuant to this Agreement, the Parties agree as follows:

      3.2.      Satisfaction of DAC Notes and Cessation of Trail Commissions.

          3.2.1.      The DAC Notes executed by Class Members shall be deemed satisfied on the Disbursement Date.

          3.2.2.      All obligations of Allmerica to pay, and all rights to receive, Trail Commissions pursuant to the Trail Agreements executed by Class Members shall cease on the Disbursement Date.

          3.2.3.      As a condition of their receipt of relief pursuant to the Agreement, Class Members each represent and warrant that they have not assigned, and prior to the Disbursement Date will not assign, any of their rights under the Trail Agreements.

      3.3.      True-Up Supplemental Relief.

          3.3.1.      To the extent that any Class Member made any Quarterly Overpayment, then on the Disbursement Date, Defendants will pay to each such Class Member the net amount of their Quarterly Overpayments (overpayments minus underpayments), subject to subpart 3.5 below.

          3.3.2.      The calculation of Quarterly Overpayments assumes that interest continued to accrue for each Class Member through the Final Settlement Date as set forth in the DAC Notes they signed.  To illustrate:

              3.3.2.1.      A hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $10,000, but each quarter paid $11,000, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date (i.e., $1,000 times the number of quarters that will have elapsed by that Final Settlement Date).

- 11 -

3.3.2.2.        Assuming that 21 quarters elapsed by the Final Settlement Date, a hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $15,000, but *(i)* paid $17,000 per quarter (i.e., $2,000 over the fixed quarterly payment) for 18 quarters, and *(ii)* paid only $14,000 per quarter (i.e., $1,000 under the fixed quarterly payment) for 3 quarters, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date of $33,000 (i.e., $36,000 minus $3,000).

3.3.3.        To the extent that any Class Member eligible for a true-up payment under this part had, prior to April 10, 2006, paid all amounts due under his or her DAC Note, the true-up payment for such Class Members would be calculated as of the date the DAC Note was paid in full.

3.4.        Set-Off Supplemental Relief.

3.4.1.        To the extent that Defendants used or applied Set-Offs with respect to a Class Member, then on the Disbursement Date, Defendants will pay to each such Class Member the aggregate amount of such Set-Offs that were used or applied (or will be used or applied) during the period May 1, 2005 to the Disbursement Date, subject to subpart 3.5 below.

3.4.2.        Upon execution of this Agreement, Defendants shall maintain a Segregated Set-Off Account.

3.4.2.1.        On the Disbursement Date, the amounts in the Segregated Set-Off Account shall be paid to each Class Member in accordance with subpart 3.4.1, above; provided, however, that any amounts in the Segregated Set-Off Account that are associated with any Opt-Outs shall revert to Defendants.

3.4.2.2.        The entire Segregated Set-Off Account shall revert to Defendants in the event that: *(i)* this Agreement is terminated in accordance with its terms; or *(ii)* a Final Settlement Date does not occur, without waiver of the claims of Plaintiffs and/or the Class with respect to such amounts.

3.5.    No Entitlement to Both True-Up and Set-Off Supplemental Relief.

3.5.1.        To the extent that a Class Member qualifies for a payment under both the True-Up Supplemental Relief in subpart 3.3 and the Set-Off Supplemental Relief in subpart 3.4, such Class Member nonetheless shall receive only one form of Supplemental Relief (not both), which shall be the form of the Supplemental Relief that provides the greater payment.

3.5.2.        Defendants shall calculate any Supplemental Relief available to a Class Member pursuant to subpart 3.3 or 3.4 based on information available in Allmerica's business records, and shall state the amount(s) of such Supplemental Relief, if any, in the Post-Settlement Notice; provided, however, if a Class Member disagrees with that calculation, he or she bears the burden of establishing within 10 business days of the postmark date of the Post-Settlement Notice, based on supporting documentary evidence, the existence and amount of the error claimed.

4.    **NOTICE TO THE CLASS AND
      COMMUNICATIONS WITH CLASS MEMBERS.**

     4.1.    <u>Class Notice</u>.  Subject to the requirements of the Hearing Order, no later than 45 days before the Fairness Hearing, the Parties shall send the Class Notice to each member of the Class by first-class mail postage prepaid, to the member's last known address, as reflected in Allmerica's records.  Allmerica shall pay for the costs associated with Class Notice.

     4.1.1.    <u>General Terms of Notice</u>.  The Class Notice shall inform members of the Class that, if they are not excluded from the Class, they may be eligible to receive relief under the proposed settlement.  The Class Notice shall *(i)* contain a short, plain statement of the background of the Lawsuit, the certification of the Class and the proposed settlement; *(ii)* describe the Satisfaction of DAC Notes and Cessation of Trail Commissions; *(iii)* describe the True-Up Supplemental Relief; *(iv)* describe the Set-Off Supplemental Relief; *(v)* explain the impact of the proposed settlement on any existing litigation; *(vi)* advise as to the disposition of unknown claims; and *(viii)* state that any relief to Class Members is contingent on the Court's final approval of the proposed settlement.  The Class Notice shall conform to all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution and the Rules of the Court and otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

     4.1.2.    <u>Notice of Opt-Out and Objection Rights</u>.  The Class Notice will advise members of the Class that: *(i)* they may exclude themselves from the Class by submitting written exclusion requests postmarked no later than the Opt-Out and Objection Date or, in the case of a Class Member subject to Bankruptcy Proceedings, may be excluded as set forth in part 5.5; *(ii)* any member of the Class who has not been excluded from the Class may, if he or she desires, object to the proposed settlement by filing and serving a written statement of objections

no later than the Opt-Out and Objection Date; *(iii)* any Class Member who has filed and served written objections to the proposed settlement may enter an appearance at the Fairness Hearing either personally or through counsel; and *(iv)* any judgment entered in the Lawsuit, whether favorable or unfavorable to the Class, will include and be binding on all Class Members who have not been excluded from the Class, even if they have objected to the proposed settlement and even if they have any other claim, lawsuit or proceeding pending against Allmerica.

       4.1.3.           Notice of Fees and Costs.  The Class Notice shall provide information about the Attorneys' Fees and Incentive Awards.  It shall also state that Allmerica will pay the Attorneys' Fees and Incentive Awards and any costs arising from notifying the Class or administering the proposed settlement, except that individual Class Members shall be responsible for any fees and costs of any counsel they may retain to represent them individually for any reason, including, but not limited to, counsel retained in connection with the Fairness Hearing.

       4.1.4.           Remailing of Notice.  Allmerica shall remail any notices returned by the Postal Service with a forwarding address that are received by Allmerica at least 20 days before the Fairness Hearing.

       4.1.5.           Proof of Notice.  Allmerica or its administrator shall provide an affidavit to the Court, at or prior to the Fairness Hearing as the Court may direct, with a copy to Plaintiffs' Counsel, attesting to the measures taken to provide notice of the settlement to members of the Class.

       4.2.           Post-Settlement Notice.  On the Disbursement Date, Allmerica shall send the Post-Settlement Notice to all Class Members who have not been excluded from the Class.

- 15 -

    4.2.1.      The Post-Settlement Notice shall inform Class Members: *(i)* that the order approving the settlement has become final and no longer subject to appeal; and *(ii)* that they are entitled to the relief available under, and are subject to all the terms set forth in this Agreement and the Final Order and Judgment.

    4.3.    <u>Right of Communication with Class Members</u>.  The Parties and their counsel agree that Allmerica may communicate with and respond to inquiries from Class Members orally and/or in writing.

## 5.    EXCLUSION FROM THE CLASS

5.1.    Any member of the Class who wishes to be excluded from the Class must *(i)* mail

a written request for exclusion to the Clerk of the Court, in care of the address provided in the

Class Notice, postmarked no later than the Opt-Out and Objection Date, or as the Court

otherwise may direct, and *(ii)* deliver to Plaintiffs' Counsel and Allmerica's Counsel a copy of

the same. A list of the requests for exclusion shall be filed with the Court by Plaintiffs' Counsel

or Allmerica's Counsel at or before the Fairness Hearing.

5.2.    Any member of the Class who neither files a timely, valid written request for

exclusion as provided in the preceding subpart, nor is excluded pursuant to subpart 5.5 below,

shall be bound by all subsequent proceedings, orders and judgments in this Lawsuit, even if he or

she has pending, or subsequently initiates, litigation against Allmerica relating to the claims

released in this Lawsuit. Allmerica shall have no obligation to notify separately adverse counsel

in other pending litigation concerning the facts or terms of the proposed settlement.

5.3.    A request for exclusion will be invalid if it does not provide the information

required by part 5.1, is postmarked after the deadline or is not sent to the correct address.

5.4.    Allmerica shall have the right to permit a member of the Class who has filed a

timely written request for exclusion to withdraw such request and to participate in the settlement

as if such request had never been made.

5.5.    If, on or before the Final Settlement Date, any Class Member is a debtor subject

to a pending bankruptcy proceeding with respect to such Class Member under the federal

bankruptcy laws (a "Bankruptcy Proceeding"), such Class Member shall be excluded from the

Class and neither this Agreement nor the Final Order and Judgment (including, without

limitation, the Release and the relief set forth in parts 7 and 3, respectively) shall have any effect

with respect to the Class Member, unless on or before the Final Settlement Date: *(i)* a final order

and judgment approving and incorporating the terms of this Agreement as to such Class Member (in its entirety and without qualification or conditions that affect Allmerica's rights hereunder), or such other final order and judgment that the Parties agree to, has been entered by the federal court having jurisdiction over such Bankruptcy Proceeding; and *(ii)* the Class Member files such an order with this Court and delivers to Plaintiffs' Counsel and Allmerica's Counsel copies of the same.

## 6.    OBJECTIONS TO SETTLEMENT

6.1.    Any Class Member who has not been excluded from the Class and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, or to any award of Attorneys' Fees or any Incentive Awards, must deliver to Plaintiffs' Counsel and Allmerica's Counsel and file with the Court, no later than the Opt-Out and Objection Date or as the Court otherwise may direct, a statement of the objection, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of the objection. Class Members may do so either on their own or through an attorney hired at their own expense.

6.2.    Any member of the Class and his or her own attorneys may obtain access at his or her own expense to the documents disclosed through discovery to Plaintiffs' Counsel by Allmerica in this Lawsuit, and also to deposition transcripts and attached exhibits generated in the Lawsuit, but first must agree in writing to be bound by the Protective Order entered in this Lawsuit. These documents shall be made available at the offices of Plaintiffs' Counsel. Plaintiffs' Counsel promptly shall inform Allmerica's Counsel of any requests by members of the Class or their attorneys for access to such documents.

6.3.    If a member of the Class hires an attorney to represent him or her, the attorney must *(i)* file a notice of appearance with the Clerk of Court no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, and *(ii)* deliver to Plaintiffs' Counsel and Allmerica's Counsel no later than the Opt-Out and Objection Date a copy of the same.

6.4.    Any Class Member who files and serves a written objection, as described in the preceding subpart, may appear at the Fairness Hearing, either in person or through an attorney hired at the Class Member's expense, to object to the fairness, reasonableness or adequacy of this

- 19 -

Agreement or the proposed settlement, or to any award of Attorneys' Fees or any Incentive Awards. Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing must deliver to Plaintiffs' Counsel and Allmerica's Counsel and file with the Court no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, a notice of intention to appear.

      6.5.    Any Class Member who fails to comply with the provisions of the preceding subparts 6.1, 6.3 and 6.4 shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in this Lawsuit. By filing an objection, a member of the Class *does not* exclude his or herself from the Class, and if the Settlement Agreement is approved by the Court, that Class Member will be bound by the terms of this Agreement and by all proceedings, orders and judgments in the Lawsuit.

7.    **RELEASES AND WAIVER, AND ORDER OF DISMISSAL**

    7.1.    Releases and Waiver.

        7.1.1.    Definitions.  As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

            7.1.1.1.    "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

            7.1.1.2.    "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

            7.1.1.3.    "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4, including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

            7.1.1.4.    "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27 and 2.8, including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors,

successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

        7.1.1.5.      "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

        7.1.1.6.      "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr., No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

        7.1.2.      Class Members' Release. Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form

of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

       7.1.2.1.    <u>Release of Unknown Claims</u>.  Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

       7.1.2.2.    In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those

which they now know or believe to be true with respect to the matters released herein.

Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to

fully, finally and forever settle and release all such matters, and all claims relating thereto, which

exist, hereafter may exist, or might have existed (whether or not previously or currently asserted

in the Lawsuit).

        7.1.2.3.      Without in any way limiting its scope, the Release set forth

in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or

disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or

Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related

in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such

settlement and/or the Released Transactions, except to the extent otherwise specified in the

Settlement Agreement.

        7.1.2.4.      Nothing in the Release set forth in part 7.1.2 shall be

deemed to alter:

                7.1.2.4.1.      claims that *(i)* arise after the Opt-Out and Objection

                                Date; and *(ii)* relate to a Class Member's rights

                                under the express terms of Agent Plans or Agent

                                Policies;

                7.1.2.4.2.      Class Members' rights to assert claims, defenses, or

                                counterclaims with respect to any matters

                                encompassed by subpart 7.1.3.4.1;

                7.1.2.4.3.      any rights, defenses, or other claims, if any, that

                                  Class Members may have against any of the

Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

7.1.2.4.4.   the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5.   any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.2.5.        Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.1.3.        Defendants' Release.  Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.3.1.        Release of Unknown Claims.  The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees

- 26 -

under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights the Defendants may have under California Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Defendants hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

    7.1.3.2.  In connection with the Release set forth in part 7.1.3, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Defendants in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

    7.1.3.3.  Without in any way limiting its scope, the Release set forth in part 7.1.3 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Defendants' Counsel or any other counsel representing Defendants, or by Defendants, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

    7.1.3.4.      Nothing in the Release set forth in part 7.1.3 shall be deemed to alter:

        7.1.3.4.1.    Defendants' rights with respect to any of the Agent Plans or Agent Policies referred to in subpart 7.1.2.4.1, including the right (if any) to modify, amend or terminate such Agent Plans or Agent Policies;

        7.1.3.4.2.    Defendants' rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.1;

        7.1.3.4.3.    any rights, defenses, or other claims, or counterclaims, if any, that the Defendants may have against any of the Plaintiff Releasees with respect to indemnification, contribution or recovery from the Plaintiff Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims or any matter encompassed by subpart 7.1.2.4.3;

7.1.3.4.4.    Allmerica's rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.4; or

7.1.3.4.5.    any claim by The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates against a Plaintiff Releasee solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.3.5.    Nothing in the Release set forth in part 7.1.3 shall preclude any action to enforce the terms of the Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.2.    <u>Order of Dismissal and Release</u>.  The Parties shall seek and obtain from the Court, as a condition of settlement, a Final Order and Judgment (as to which the time for appeal has expired without any modifications in the Final Order and Judgment) as further described below in part 10.  The Final Order and Judgment shall, among other things, *(i)* certify the Class for settlement purposes, *(ii)* approve this Settlement Agreement as fair, reasonable and adequate, *(iii)* dismiss the Lawsuit with prejudice and on the merits, and *(iv)* incorporate the terms of the Release set forth in part 7.1.

8.    **ATTORNEYS' FEES, INCENTIVE AWARDS AND ADMINISTRATIVE EXPENSES.**

8.1.    The Parties in good faith shall seek to agree on an amount for which Plaintiffs' Counsel may submit an application for awards of Attorneys' Fees and Incentive Awards in the Lawsuit, which application Allmerica would not oppose.  If the Parties are unable to reach such agreement, any such awards shall be as determined by the Court in the Lawsuit.  Such awards shall be paid by Allmerica within 10 business days of the Final Settlement Date.

8.2.    Lead Counsel will allocate and distribute any award of Attorneys' Fees and expenses among Counsel for the Class.

8.3.    Allmerica shall bear the administrative expenses reasonably incurred after the execution of this Settlement Agreement, including printing and mailing costs of the Class Notice and the Post-Settlement Notice; post-office rental box costs; any processing costs for requests for exclusion; fees and disbursements to the administrator and any other third-party contractors or administrators.

8.4.    Neither Allmerica nor its past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person, either directly or indirectly, in connection with this Lawsuit, this Settlement Agreement, or the proposed settlement, other than the amount or amounts expressly provided for in this Settlement Agreement.

**9.   ORDER OF NOTICE, SETTLEMENT HEARING AND ADMINISTRATION.**

9.1.   Prior to June 21, 2006, the Parties will submit this Agreement, including all attached exhibits, to the Court and seek and obtain from the Court an Order Preliminarily Certifying a Class for Settlement Purposes, Appointing Lead Counsel for the Class, Directing Issuance of a Class Notice to the Class, an Scheduling A Fairness Hearing (the "Hearing Order") in the form attached hereto as Exhibit A, unless otherwise agreed to by the Parties:

9.1.1.   Providing for the certification of the Class for settlement purposes only, appointing Plaintiffs as Class representatives, and appointing Hubbard & Biederman, LLP as Lead Counsel for the Class;

9.1.2.   Finding that the proposed settlement is sufficient to warrant sending notice to the Class;

9.1.3.   Scheduling the Fairness Hearing to be held on _____, 2006, or at such later date as the Court may direct, to consider the fairness, reasonableness and adequacy of the proposed settlement, whether it should be approved by the Court, and to consider any award of Attorneys' Fees and Incentive Awards;

9.1.4.   Approving the proposed Class Notice and notice methodology described in this Agreement;

9.1.5.   Directing Allmerica or its designee(s) to mail the Class Notice to each Class Member by first-class mail, postage prepaid, to his or her last known address no later than 45 days before the Fairness Hearing;

9.1.6.   Determining that the Class Notice: *(i)* is the best practicable notice, *(ii)* is reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Lawsuit and of their right to object to or exclude themselves from the proposed settlement, *(iii)* is reasonable and constitutes due, adequate and sufficient notice to all

- 31 -

persons entitled to receive notice, and *(iv)* meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution and the Rules of the Court;

9.1.7.　　Ruling that Allmerica, or the administrator(s), shall remail any notices returned by the Postal Service with a forwarding address that are received by Allmerica or the administrator(s) at least 20 days before the Fairness Hearing;

9.1.8.　　Requiring Allmerica to file proof of the mailing of the Class Notice at or before the Fairness Hearing;

9.1.9.　　Authorizing Allmerica to communicate with potential members of the Class about the Lawsuit and the terms of the proposed settlement and to engage in any other communications within the normal course of Allmerica's business;

9.1.10.　　Requiring each member of the Class who wishes to exclude himself or herself from the Class to submit an appropriate, timely written request for exclusion, postmarked no later than the Opt-Out and Objection Date, to the Clerk of the Court, in care of the address provided in the Class Notice.

9.1.11.　　Preliminarily enjoining all Class Members who have not been excluded from the Class (and all persons acting on behalf of Class Members who have not been excluded from the Class) from *(i)* directly, representatively, or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise) any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto, and *(ii)* organizing

- 32 -

Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto;

9.1.12.    Ruling that any member of the Class who does not submit a timely, valid written request for exclusion from the Class, or is not excluded by virtue of a Bankruptcy Proceeding as set forth in part 5.5, will be bound by all proceedings, orders and judgments in this Lawsuit, even if such Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release;

9.1.13.    Requiring each Class Member who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, or to any award of Attorneys' Fees or Incentive Awards, to deliver to Plaintiffs' Counsel and Allmerica's Counsel and to file with the Court, no later than the Opt-Out and Objection Date, or at such other time as the Court may direct, a statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his or her objection, or be forever barred from separately objecting;

9.1.14.    Requiring any attorney hired by a Class Member at the Class Member's expense for the purpose of objecting to this Agreement or the proposed settlement, or to the award of Attorneys' Fees or Incentive Awards, to file with the Clerk of Court and deliver to Plaintiffs' Counsel and Allmerica's Counsel a notice of appearance no later than the Opt-Out and Objection Date, or as the Court otherwise may direct;

9.1.15.    Requiring any Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to deliver to Plaintiffs' Counsel and Allmerica's Counsel and file with the Court no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, a notice of intention to appear;

9.1.16.    Authorizing Allmerica *(i)* to establish the means necessary to administer the proposed settlement relief in accordance with the terms of this Agreement, and *(ii)* to retain one or more administrators, in consultation with Plaintiffs' Counsel, to help administer the proposed settlement, including the notice provisions;

9.1.17.    Directing Allmerica or its designated agents to rent a post-office box in the name of the Clerk of the Court, to be used for receiving requests for exclusion and any other communications, and providing that, other than the Court or the Clerk of Court, only Allmerica, Allmerica's Counsel, Plaintiffs' Counsel and their designated agents shall have access to this post-office box;

9.1.18.    Directing Allmerica's Counsel or Plaintiffs' Counsel, and any other counsel for Plaintiffs or the Class, promptly to furnish each other with copies of any and all objections or written requests for exclusion that might come into their possession;

9.1.19.    Providing a means for those filing objections to obtain access at Plaintiffs' Counsel's office to the documents disclosed through discovery to Plaintiffs' Counsel by Allmerica in this Lawsuit, and also to deposition transcripts and exhibits thereto in this Lawsuit, at their own expense, provided that such individuals enter into the Protective Order described in subpart 12.5 below; and

9.1.20.        Containing any additional provisions that might be necessary to implement and administer the terms of this Agreement and the proposed settlement.

## 10.    FINAL APPROVAL AND FINAL ORDER AND JUDGMENT.

10.1.    After the Fairness Hearing, and upon the Court's approval of this Agreement, the Parties shall seek and obtain from the Court a Final Order and Judgment essentially identical to the form attached hereto as Exhibit C. The Final Order and Judgment shall, among other things:

10.1.1.    Find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve this Agreement and all exhibits thereto;

10.1.2.    Approve this Agreement and the proposed settlement as fair, reasonable and adequate, and consistent and in compliance with the applicable provisions of the United States Constitution, as to, and in the best interests of, each of the Parties and the Class Members; direct the Parties and their counsel to implement and consummate this Agreement according to its terms and provisions; and declare this Agreement to be binding on, and have res judicata and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release maintained by or on behalf of, Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors and assigns;

10.1.3.    Finally certify the Class for settlement purposes;

10.1.4.    Find that the Class Notice and the notice methodology implemented pursuant to this Agreement *(i)* constitute the best practicable notice, *(ii)* constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Lawsuit, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing, *(iii)* are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and *(iv)* meet all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the Rules of the Court.

- 36 -

10.1.5.    Find that the Post-Settlement Notice and the post-settlement notice methodology to be implemented pursuant to this Agreement *(i)* constitute the most effective and practicable notice of the Final Order and Judgment, the relief available to Class Members pursuant to the Final Order and Judgment, and applicable time periods, and *(ii)* constitute due, adequate and sufficient post-settlement notice for all other purposes to all Class Members;

10.1.6.    Find that Plaintiffs' Counsel and the Class representatives adequately represented the Class for purposes of entering into and implementing the settlement;

10.1.7.    Dismiss the Lawsuit (including all individual claims and Class claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in this Agreement;

10.1.8.    Incorporate the Release set forth above in part 7.1, make the Release effective as of the date of the Final Order and Judgment, and forever discharge the Defendant Releasees and the Plaintiff Releasees from the claims or liabilities that are the subject of the Class Members' Release and Defendants' Release, respectively;

10.1.9.    Bar and enjoin all Class Members who have not been excluded from the Class (and all persons acting on behalf of Class Members who have not been excluded from the Class) from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto, and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class

- 37 -

action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto;

   10.1.10.  Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all exhibits attached hereto as *(i)* shall be consistent in all material respects with the Final Order and Judgment or *(ii)* do not limit the rights of Class Members under this Agreement;

   10.1.11.  Authorize Allmerica, at its sole discretion but in consultation with Plaintiffs' Counsel and without approval from the Court, to implement the settlement prior to the Final Settlement Date;

   10.1.12.  Without affecting the finality of the Final Order and Judgment for purposes of appeal, retain exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of this Agreement and the Final Order and Judgment (including, but not limited to, the Release and Permanent Injunction), and for any other necessary purpose; and

   10.1.13.  Incorporate any other provisions, as the Court deems necessary and just.

## 11.    **MODIFICATION OR TERMINATION OF THIS AGREEMENT.**

11.1.    The terms and provisions of this Agreement may be amended, modified or expanded by agreement of both Allmerica and Plaintiffs' Counsel and approval of the Court; provided, however, that after entry of the Final Order and Judgment the Parties may by agreement effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without notice to or approval by the Court if such changes are consistent in all material respects with the Court's Final Order and Judgment or do not limit the rights of Class Members.

11.2.    Allmerica, in consultation with Plaintiffs' Counsel and without approval of the Court, may implement the terms of the settlement after entry of the Final Order and Judgment but prior to the Final Settlement Date.

11.3.    This Agreement shall terminate at the option of Plaintiffs (through Plaintiffs' Counsel) or Allmerica if *(i)* the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement that the terminating party reasonably determines is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class and/or the terms of the Release, or *(ii)* the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party reasonably determines is material. The terminating party must exercise the option to withdraw from and terminate this Agreement, as set forth in this subpart, no later than twenty days after receiving notice of the event prompting the termination. Nothing herein shall be construed to permit Plaintiffs to terminate this Agreement because of the amount of Attorneys' Fees or Incentive Awards awarded by the Court or any

- 39 -

appellate court(s). Allmerica, however, may elect to terminate this Agreement if the amount of Attorneys' Fees or Incentive Awards awarded exceeds any amount agreed upon by the Parties.

      11.4.   By written notice to Plaintiffs' Counsel no later than five days prior to the Fairness Hearing, Allmerica also may unilaterally withdraw from and terminate this Agreement if Requests for Exclusion in the aggregate include the holders of 15% or more of the aggregate annuity account values that on September 30, 2005, were subject to the Trail Agreements.

      11.5.   If an option to withdraw from and terminate this Agreement arises under subparts 11.3 and/or 11.4, *(i)* neither Allmerica nor Plaintiffs are required for any reason or under any circumstance to exercise that option, and *(ii)* any exercise of that option shall be made in good faith.

      11.6.   If this Agreement is terminated pursuant to subparts 11.3 and/or 11.4, then:

          11.6.1.      This Agreement shall be null and void and shall have no force or effect, and no party to this Agreement shall be bound by any of its terms, except for the terms of this subpart 11.6 and subparts 1.3.2, 1.3.5, 12.2, 12.3, 12.4, 12.5 and 12.26-12.31.

          11.6.2.      This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Allmerica, Plaintiffs or any other member of the Class, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

          11.6.3.      Defendants, Plaintiffs and the Class expressly reserve all defenses, arguments, and motions as to all claims and counterclaims that have been or might later be asserted in the Lawsuit, including but not limited to any defenses and arguments relating to class certification; and

11.6.4.    Neither this Agreement, its negotiation, drafts thereof, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever; provided, however, that this Agreement (in the form executed by the Parties and filed with the Court) may be admissible and entered into evidence in any proceeding to enforce its terms pursuant to parts 7.1.2.5 and 7.1.3.5.

## 12.    GENERAL MATTERS AND RESERVATIONS.

12.1.    The obligation, although not the ability, of the Parties to conclude the proposed settlement is and will be contingent upon each of the following:

12.1.1.    Plaintiffs' filing of a motion for leave, unopposed by Defendants, to file a Second Amended Complaint that is brought on behalf of the putative Class as defined above and asserts claims and allegations that are in all material respects the same as those asserted in the First Amended Complaint, and the Court's allowance of such motion to amend.

12.1.2.    Plaintiffs' modification of their pending Motion for Class Certification, unopposed by Defendants, to seek certification for settlement purposes of the Class as defined above.

12.1.3.    Preliminary approval by the Court of a settlement, consistent with the terms of this Agreement, and certification by the Court of the Class.

12.1.4.    Adjudication that there had been adequate and sufficient notice of a settlement to the Class.

12.1.5.    Adjudication that upon review of each of the various claims asserted and defenses raised in the Lawsuit, the terms and conditions of a settlement as set forth in this Agreement are fair, reasonable and adequate to the Class and the Defendants.

12.1.6.    Entry of a Final Order and Judgment in accordance with part 10.1 that is not vacated or modified (by appeal or otherwise) and results in a Final Settlement Date.

12.1.7.    The Court's reservation and retention of exclusive jurisdiction to consider such approvals, findings, orders and other matters as may arise from a settlement, including but not limited to enforcement of the Agreement, Release, Injunction, and Final Order and Judgment.

12.1.8.    Execution of this Agreement by all Parties by May 26, 2006,

unless such date is extended in writing by mutual agreement of the Parties.

12.1.9.    Any other conditions stated in this Agreement.

12.2.    Allmerica's obligation to provide any and all relief provided to the Class in this

Agreement is expressly contingent upon and in exchange for the Release on behalf of all Class

Members contained in this Agreement.

12.3.    The Parties and their counsel agree to keep the existence and contents of this

Agreement and all related negotiations confidential until the date on which Class Notice is first

mailed to the Class; provided, however, that *(i)* the Parties' responses to unsolicited press

inquiries shall be made in consultation with one another; and *(ii)* this subpart shall not prevent

the disclosure by Allmerica of such information, prior to the date on which Class Notice is first

mailed to the Class, to *(a)* The Goldman Sachs Group, Inc.; *(b)* regulators, *(c)* rating agencies,

*(d)* financial analysts, *(e)* accountants, auditors and attorneys, *(f)* insurers and reinsurers, or *(g)*

any other person or entity (such as experts, courts, and/or administrators) to whom the Parties

agree disclosure must be made in order to effectuate the terms and conditions of this Agreement;

and *(iii)* this subpart shall not apply to Plaintiffs' Counsel's communications with their clients

and the Class.

12.4.    Plaintiffs, Plaintiffs' Counsel, Allmerica and Allmerica's Counsel shall make no

statement (whether orally or in writing) that: *(i)* suggests in words or substance that the Lawsuit

was not resolved to the Parties' mutual satisfaction; and *(ii)* derogates or disparages any other

party to this Agreement or the Agreement itself.

12.5.    The Parties and their counsel agree that the information made available to them

through the discovery process was made available subject to a Protective Order between

- 43 -

Plaintiffs and Allmerica entered by the Court on October 5, 2005, and that same will remain in full force and effect.

12.6.    On or before one year after the Final Settlement Date or promptly after termination of this Agreement, whichever comes first (unless the time is extended by agreement of the Parties), the Parties and their counsel (including their experts and consultants) shall, at their discretion, destroy or return to opposing counsel all documents (and all copies of such documents in whatever form made or maintained) produced by another Party to this Lawsuit. Documents produced by non-parties shall be destroyed on or before one year after the Final Settlement Date. Provided, however, that this subpart shall not apply to *(i)* any documents made part of a Court filing; *(ii)* counsel's work product; and *(iii)* any document that any Party reasonably determines should be preserved in accordance with regulatory or legal obligations.

12.7.    Nothing in this Settlement Agreement or in any further documents executed pursuant hereto is intended to give or shall be construed as giving any third party or parties not expressly referenced herein any rights or as imposing upon any of the Parties any obligations or responsibilities to such third party or parties.

12.8.    By execution of this Agreement, Allmerica does not intend to release any claim against any of its insurers, reinsurers or other third parties for any cost or expense incurred hereunder in connection with the Lawsuit, including attorneys' fees and costs.

12.9.    Plaintiffs' Counsel represents and warrants that it has explained the terms and effect of this Agreement to the Plaintiffs and that the Plaintiffs are informed of the nature of the claims released, the obligations undertaken on behalf of the Class and the relief to be obtained by the Class.

12.10.  Plaintiffs' Counsel represents *(i)* that it is authorized to enter into this Agreement on behalf of Plaintiffs and any other attorneys who have represented or who now represent Plaintiffs and *(ii)* that Plaintiffs' Counsel is seeking to protect the interests of the entire Class.

12.11.  Each of the Plaintiffs represents and certifies that *(i)* he has agreed to serve as a representative of the Class proposed to be certified herein; *(ii)* he is willing, able, and ready to perform all of the duties and obligations of a representative of the Class, including, but not limited to, the need to be available for, and involved in, discovery and fact finding; *(iii)* he has read the pleadings in this Lawsuit, including the First Amended Complaint; *(iv)* he is familiar with the results of the fact finding undertaken by Plaintiffs' Counsel; *(v)* he has been kept apprised of settlement negotiations among the Parties, and has either read this Agreement, including the exhibits annexed thereto, or has received a detailed description of it from Plaintiffs' Counsel, and that he has agreed to its terms; *(vi)* he has consulted with Plaintiffs' Counsel — and/or other Plaintiffs' counsel of record — about the Lawsuit, this Agreement and the obligations of a representative of the Class; *(vii)* he has authorized Plaintiffs' Counsel to execute this Agreement on his behalf; *(viii)* he will remain and serve as a representative of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiff cannot represent the Class; and *(ix)* he will not request exclusion from the Class, object to the proposed settlement, or file an appeal from or otherwise seek review of any order approving the proposed settlement.

12.12.  Plaintiffs' Counsel, on behalf of the Class, and Allmerica's Counsel, on behalf of Allmerica, represent and warrant that they shall agree to recommend approval of and vigorously support this Agreement to the Court and to undertake their best efforts to carry out the terms of this Agreement.  To that end, they shall take all steps necessary or appropriate to: *(a)* obtain an

- 45 -

order from the Court granting preliminary approval of this Agreement; *(b)* facilitate the dissemination of the Court-approved notices to the Class; *(c)* demonstrate the fairness and adequacy of the settlement and this Agreement at the Fairness Hearing; *(d)* obtain a final order approving this Agreement; and *(e)* in the event of appeal, support the terms and goals of this Agreement on appeal. The Parties shall also take such action as may be legally proper to assure the jurisdiction of the Court over this Agreement and all subsequent proceedings.

12.13. Plaintiffs' Counsel and the Plaintiffs agree that payment of any legal fees in the full amount awarded by the Court, together with the Release of claims set forth in part 7, is effective to release all interest, if any, of Plaintiffs' Counsel, the Plaintiffs, and Class Members against the Defendant Releasees with respect to such claims. Plaintiffs' Counsel and Plaintiffs agree not to make a collateral attack on the judgment.

12.14. The procedure for, and the allowance or disallowance by the Court of, any application for Attorneys' Fees (including expert and consultant fees) and Incentive Awards are to be considered by the Court separately from its consideration of the fairness, reasonableness and adequacy of the settlement.

12.15. Allmerica's Counsel represents that it is authorized to enter into this Agreement on behalf of Defendants.

12.16. Michael A. Reardon represents that he is authorized to enter into this Agreement on behalf of AFLIAC. Edward J. Parry, III represents that he is authorized to enter this Agreement on behalf of The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and FAFLIC.

12.17. This Agreement sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by

- 46 -

Lead Counsel and Allmerica's Counsel. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them.

12.18. Except as provided in this Settlement Agreement, each Party shall bear its own costs of the Lawsuit, including taxable court costs.

12.19. This Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, excluding its conflict of laws provisions.

12.20. Without affecting the finality of the Final Order and Judgment entered in accordance with this Settlement Agreement, the Court shall retain exclusive jurisdiction with respect to implementation, construction and enforcement of this Settlement Agreement, administration of the Settlement and all orders issued with respect thereto. The Parties and the members of the Class shall submit to the jurisdiction of the Court for purposes of implementation, interpretation and enforcement of this Settlement Agreement.

12.21. The waiver by one Party of any breach of this Settlement Agreement shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement by any Party.

12.22. Whenever this Agreement requires or contemplates that notice shall or may be given to any Party, notice shall be provided by facsimile and/or next-day (excluding Sunday) express delivery service as follows:

1.    If to Allmerica, then to:

        Andrea J. Robinson, Esq.
        Jonathan A. Shapiro, Esq.
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, Massachusetts 02109

Telephone: (617) 526-6000
Facsimile: (617) 526-5000

and

Mark H. Stepakoff, Esq.
Assistant Vice President and Counsel
The Hanover Insurance Group, Inc.
440 Lincoln Street
Worcester, MA 01653
Telephone: (508) 855-1000
Facsimile: (802) 855-3523

2.      If to Plaintiffs, then to:

Stephen L. Hubbard, Esq.
Robert W. Biederman, Esq.
Hubbard & Biederman, L.L.P.
1717 Main Street
Suite 4700
Dallas, TX 75201
Telephone:    (214) 857-6000
Facsimile:    (214) 857-6001

12.23.  All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Agreement or by order of Court, the day of the act, event, or default from which the designated

period of time begins to run shall not be included.  The last day of the period so computed shall

be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the

filing of a paper in court, a day on which weather or other conditions have made the office of the

clerk of the court inaccessible, in which event the period shall run until the end of the next day

that is not one of the aforementioned days.  As used in this subpart, "legal holiday" includes New

Year's Day, Birthday of Martin Luther King, Jr., Washington's Birthday, Patriot's Day,

Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving

- 48 -

Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the Commonwealth of Massachusetts.

12.24. The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

12.25. The Parties agree that *(i)* this Agreement was drafted jointly by counsel for the Parties at arm's length and shall not be construed or interpreted against any Party originating or preparing any part of it, and *(ii)* no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

12.26. In no event shall the Agreement, any of its provisions or any negotiations, statements or court proceedings relating to them in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Lawsuit, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement and the Final Order and Judgment. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Allmerica, the Plaintiffs or members of the Class, or as a waiver by Allmerica, the Plaintiffs or members of the Class of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Allmerica, the Plaintiffs or members of the Class of any claims, causes of action or remedies; provided, however, that this Agreement

(in the form entered by the Parties and filed with the Court) may be admissible and entered into evidence in any proceeding to enforce its terms pursuant to Parts 7.1.2.5 and 7.1.3.5.

12.27.  Allmerica expressly denies any wrongdoing alleged in the First Amended Complaint and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in the Lawsuit.

12.28.  Plaintiffs' Counsel, the Plaintiffs, Class Members, Allmerica's Counsel and Defendants shall not argue in any forum that this settlement shows or evidences in any way that any of them has violated any laws or legal obligation or that there is any strength or weakness in the claims contained in the First Amended Complaint, the Counterclaims, or otherwise asserted in the Lawsuit.

12.29.  Plaintiffs expressly affirm that the allegations contained in the First Amended Complaint were made in good faith and do not admit or concede that any of the claims alleged in the First Amended Complaint lack merit.

12.30.  Plaintiffs expressly deny any wrongdoing alleged in Defendants' Counterclaims and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Lawsuit.

12.31.  Allmerica expressly affirms that the allegations contained in the Counterclaims were made in good faith and do not admit or concede that any of the claims alleged in the Counterclaims lack merit.

12.32.  This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiffs, members of the Class, Allmerica, and their respective successors, successors in

interest, heirs and assigns and to any corporation, partnership, joint venture, trust or any other entity into or with which Allmerica may hereafter merge, consolidate or reorganize.

12.33.  No opinion concerning the tax consequences of the proposed settlement to individual members of the Class is given or will be given by Allmerica, Allmerica's Counsel or Plaintiffs' Counsel, nor are any representations in this regard made or any warranties made by virtue of this Agreement.  The Class Notice shall direct members of the Class to consult their own tax advisors regarding the tax consequences of the proposed settlement, including any payments, contributions or credits provided hereunder, and any tax reporting obligations they may have with respect thereto.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

12.34.  The Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

12.35.  The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

12.36.  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the alleged breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any actions to enforce any rights under this Agreement.

12.37.  This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

## 13.    **ARBITRATION OF DISPUTES**

13.1.    Unless another forum is required by law, any disputes between Allmerica and the Class Members encompassed by subparts 7.1.2.4.1 & 7.1.2.4.2 and 7.1.3.4.1 & 7.1.3.4.2 shall be submitted to the American Arbitration Association for binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules").

13.2.    Any dispute subject to arbitration under subpart 13.1 above shall be submitted to *(i)* a single arbitrator appointed in accordance with the AAA Rules if the amount in controversy is less than $300,000 (exclusive of any claims for interest or injunctive relief); or *(ii)* a panel of three arbitrators appointed in accordance with the AAA Rules if the amount in controversy is equal to or greater than $300,000 (exclusive of any claims for interest or injunctive relief).

13.3.    The parties to any arbitration proceeding commenced under subpart 13.1 above shall each bear their own costs with respect to such proceeding; provided, however, that in the event a party fails to proceed with arbitration, unsuccessfully seeks judicial review of the arbitrator's award, or fails to comply with the arbitrator's award, that party shall be responsible for the reasonable attorneys' fees and expenses incurred by any other party in a successful effort to compel arbitration, defend the award against judicial review, or to enforce the award.

Agreed to this 23rd day of May, 2006.

APPROVED AND AGREED TO BY AND ON BEHALF OF THE
PLAINTIFFS IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES

By:    *Donald P. Speakman*
       DONALD P. SPEAKMAN

By: _____
     MARK L. ROBARE

By: _____
     STEPHEN H. WEDEL

By: _____
     STEPHEN L. HUBBARD, ESQ.
     HUBBARD & BIEDERMAN, L.L.P.
     LEAD COUNSEL FOR PLAINTIFFS

**APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS**

By: _____
     EDWARD J. PARRY, III
     THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
     AS ALLMERICA FINANCIAL CORPORATION

By: _____
     MICHAEL A. REARDON
     ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.

By: _____
     EDWARD J. PARRY, III
     FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY

By: _____
     ANDREA J. ROBINSON, ESQ.
     WILMER CUTLER PICKERING HALE AND DORR LLP
     COUNSEL FOR DEFENDANTS

By: _____

    MARK L. ROBARE

By: _____

    STEPHEN H. WEDEL

By: _____

    STEPHEN L. HUBBARD, ESQ.
    HUBBARD & BIEDERMAN, L.L.P.
    LEAD COUNSEL FOR PLAINTIFFS


APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS


By: _____

    EDWARD J. PARRY, III
    THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
    AS ALLMERICA FINANCIAL CORPORATION

By: _____

    MICHAEL A. REARDON
    ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.

By: _____

    EDWARD J. PARRY, III
    FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY

By: _____

    ANDREA J. ROBINSON, ESQ.
    WILMER CUTLER PICKERING HALE AND DORR LLP
    COUNSEL FOR DEFENDANTS

By: _____

      MARK L. ROBARE


By: _____

      STEPHEN H. WEDEL


By: _____

      STEPHEN L. HUBBARD, ESQ.
      HUBBARD & BIEDERMAN, L.L.P.
      LEAD COUNSEL FOR PLAINTIFFS


APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS


By: _____

      EDWARD J. PARRY, III
      THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
      AS ALLMERICA FINANCIAL CORPORATION


By: _____

      MICHAEL A. REARDON
      ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.


By: _____

      EDWARD J. PARRY, III
      FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY


By: _____

      ANDREA J. ROBINSON, ESQ.
      WILMER CUTLER PICKERING HALE AND DORR LLP
      COUNSEL FOR DEFENDANTS

By: _____

　　　MARK L. ROBARE


By: _____

　　　STEPHEN H. WEDEL


By: _____

　　　STEPHEN L. HUBBARD, ESQ.
　　　HUBBARD & BIEDERMAN, L.L.P.
　　　LEAD COUNSEL FOR PLAINTIFFS


APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS

By: _____

　　　EDWARD J. PARRY, III
　　　THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
　　　AS ALLMERICA FINANCIAL CORPORATION


By: _____

　　　MICHAEL A. REARDON
　　　ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.


By: _____

　　　EDWARD J. PARRY, III
　　　FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY


By: _____

　　　ANDREA J. ROBINSON, ESQ.
　　　WILMER CUTLER PICKERING HALE AND DORR LLP
　　　COUNSEL FOR DEFENDANTS


- 54 -

By: _____

MARK L. ROBARE


By: _____

STEPHEN H. WEDEL


By: _____

STEPHEN L. HUBBARD, ESQ.
HUBBARD & BIEDERMAN, L.L.P.
LEAD COUNSEL FOR PLAINTIFFS


APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS


By: _____

EDWARD J. PARRY, III
THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
AS ALLMERICA FINANCIAL CORPORATION


By: _____

MICHAEL A. REARDON
ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.


By: _____

EDWARD J. PARRY, III
FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY


By: _____

ANDREA J. ROBINSON, ESQ.
WILMER CUTLER PICKERING HALE AND DORR LLP
COUNSEL FOR DEFENDANTS

By:    _____

       **MARK L. ROBARE**


By:    _____

       **STEPHEN H. WEDEL**


By:    _____

       **STEPHEN L. HUBBARD, ESQ.**
       **HUBBARD & BIEDERMAN, L.L.P.**
       **LEAD COUNSEL FOR PLAINTIFFS**


**APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANTS**


By:    _____

       **EDWARD J. PARRY, III**
       **THE HANOVER INSURANCE GROUP, INC. FORMERLY KNOWN
       AS ALLMERICA FINANCIAL CORPORATION**


By:    _____

       **MICHAEL A. REARDON**
       **ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO.**


By:    _____

       **EDWARD J. PARRY, III**
       **FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY**


By:    _____

       **ANDREA J. ROBINSON, ESQ.**
       **WILMER CUTLER PICKERING HALE AND DORR LLP**
       **COUNSEL FOR DEFENDANTS**

# EXHIBIT A

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

## ORDER PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, APPOINTING LEAD COUNSEL FOR THE CLASS, DIRECTING ISSUANCE OF A CLASS NOTICE TO THE CLASS, AND SCHEDULING A FAIRNESS HEARING

WHEREAS the Court is familiar with all the pleadings and hearings and orders in the above action;

WHEREAS Plaintiffs Donald P. Speakman, Stephen H. Wedel and Mark L. Robare (collectively, "Plaintiffs") have filed an unopposed motion to amend the putative class action complaint in the matter captioned Donald P. Speakman, Stephen H. Wedel and Mark L. Robare, Individually and On Behalf of All Others Similarly Situated v. Allmerica Financial Life Ins. & Annuity Co., First Allmerica Financial Life Ins. Co., and Allmerica Financial Corp., Civil Action

No. 4:04-cv-40077-FDS in the United States District Court for the District of Massachusetts (the "Lawsuit");

WHEREAS the Parties and their attorneys have undertaken extensive discovery, including the depositions of each of the Plaintiffs, interrogatories, requests for admission, the production of voluminous documents, and service of subpoenas on multiple non-parties, and engaged in motion practice concerning the appropriate scope and extent of discovery;

WHEREAS after extensive negotiation and analysis, the Parties and their attorneys have entered into a Stipulation of Settlement, dated May 23, 2006 (together with exhibits thereto, the "Settlement Agreement"), in which the Parties have agreed upon a settlement of the Lawsuit subject to the approval and determination of the Court as to the fairness, reasonableness and adequacy of the settlement, which, if approved, will result in dismissal of the Lawsuit with prejudice;

WHEREAS the Court has carefully reviewed the Settlement Agreement and the memoranda submitted to date in support of the Settlement Agreement;

WHEREAS the Court has determined that it would be in the best interests of the Parties, the Class and the Court to conduct hearings and other proceedings about the Settlement Agreement;

NOW, after review of the Settlement Agreement, and the matter having come before the Court by hearing on **[date]**, 2006; and the Plaintiffs having appeared by Stephen L. Hubbard, Esq. and Robert W. Biederman, Esq. of the law firm of Hubbard & Biederman, LLP, and the Defendants having appeared by Andrea J. Robinson, Esq. and Jonathan A. Shapiro, Esq. of the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, on application of the Parties and based on the record;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows (all capitalized terms used herein are defined as they are defined in the Settlement Agreement, unless otherwise defined herein):

1.     Staying the Lawsuit.  All discovery and other pretrial proceedings in this Lawsuit are hereby stayed and suspended until further order of the Court.

2.     Filing Amended Complaint.  The Court hereby grants Plaintiffs' unopposed motion to file a Second Amended Complaint.

3.     Jurisdiction.  Pending resolution of the settlement proceedings in this matter, the Court hereby asserts jurisdiction over the members of the Class for purposes of effectuating this settlement and releasing their claims.

4.     Class Certification for Settlement Purposes Only.  The Court finds that a class should be preliminarily certified only for settlement purposes.  The Class consists of Plaintiffs and all other original participants in the Trail Program who executed a DAC Note, except any such participants who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants.[1]  The Court directs that, for the sole purpose of settlement, and without an adjudication on the merits, the Lawsuit shall proceed as a class action on behalf of the Class.

5.     Class Representatives and Lead Counsel.  Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare are designated as representatives of the Class for the purpose of seeking approval of the settlement of the Lawsuit.  The law firm of Hubbard & Biederman, LLP is hereby designated as Lead Counsel for the Class.

---

[1]     The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001"; and "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

6.    <u>Granting Preliminary Approval</u>.  The Settlement Agreement is preliminarily

approved as fair, reasonable and in the best interests of the Class, subject to the right of any Class

Member to challenge the Settlement Agreement and to show cause, if any exists, why a Final

Order and Judgment dismissing this Lawsuit (based on the Settlement Agreement) should not be

entered after due and adequate notice to the Class and a Fairness Hearing as ordered herein.

7.    <u>Findings Regarding Proposed Settlement</u>.  The Court finds that:  *(i)* the proposed

settlement resulted from extensive arm's-length negotiation and was concluded only after

Plaintiffs' Counsel had conducted extensive discovery and *(ii)* the proposed settlement evidenced

by the Settlement Agreement is sufficient to warrant *(a)* notice thereof to the members of the

Class and *(b)* a full hearing on the settlement.

8.    <u>Fairness Hearing</u>.  A hearing (the "Fairness Hearing") will be held on **[date]**,

2006, at **[time]** in Room _____ of the United States District Court for the District of

Massachusetts, 595 Main Street, Worcester, Massachusetts 01068, to determine:  *(i)* whether the

Lawsuit should be finally certified for class action settlement purposes; *(ii)* whether the

settlement of the Lawsuit should be approved as fair, reasonable and adequate; *(iii)* whether the

Lawsuit should be dismissed with prejudice pursuant to the terms of the Settlement Agreement;

*(iv)* whether Class Members should be bound by the Release set forth in the Settlement

Agreement; *(v)* whether Class Members should be subject to a permanent injunction that, among

other things, bars Class Members from filing, commencing, prosecuting, intervening in, or

participating as class members in, any lawsuit in any jurisdiction based on or relating to the

claims and causes of action, or the facts and circumstances related thereto, in this Lawsuit; and

*(vi)* whether the application of Plaintiffs' Counsel for an award of attorneys' fees and expenses,

and the application of Plaintiffs for Incentive Awards, should be approved.  The Parties' initial

submissions in support of the settlement shall be filed with the Court by **[date]**, 2006. The Parties' responses, if any, to any objections or appearances filed pursuant to paragraph 14 of this Order shall be filed with the Court by **[date]**, 2006.

9.    Pre-Hearing Notices.

(a)    Notice by Mail.  Notice and the accompanying materials substantially in the form filed with this Court as Exhibit B to the Settlement Agreement (the "Class Notice") shall be mailed, at the Defendants' expense, by first-class mail, postage prepaid, no later than **[date (45 days before Fairness Hearing)]**, 2006, to the last known address of each member of the Class.

(b)    Remailing and Additional Notice.  Allmerica or an administrator shall remail any notices returned by the Postal Service with a forwarding address that are received by Allmerica or the administrator at least 20 days before the Fairness Hearing.

(c)    Proof of Mailing.  At or before the Fairness Hearing, the Defendants or an administrator shall file with the Court a proof of mailing of the Class Notice.

10.    Findings Concerning Notice.  Having considered, among other factors *(i)* the various methods by which notice to members of the Class might be given, *(ii)* the stake of each member of the Class, and *(iii)* the likelihood that significant numbers of members of the Class might desire to exclude themselves from the Class or appear individually, the Court finds that notice given in the form and manner provided in paragraph 9 of this Order is the best practicable notice and is reasonably calculated, under the circumstances, to apprise members of the Class of *(a)* of the pendency of this Lawsuit, *(b)* of their right to exclude themselves from the proposed settlement, *(c)* that any judgment, whether favorable or not, will include all Class Members who have not been excluded; and *(d)* that any Class Member who has not been excluded may object

-5-

to the settlement and, if he or she desires, enter an appearance either personally or through counsel. The Court further notes that the Class Notice provided in the Settlement Agreement is written in simple English and is readily understandable by members of the Class. In sum, the Court finds that such notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to be provided with notice, and that it meets the requirements of due process, the Federal Rules of Civil Procedure and the Rules of the Court.

11.    Communications with Class Members. The Defendants are authorized to communicate with members of the Class about the Lawsuit and the terms of the proposed settlement provided for in the Settlement Agreement, and Allmerica is authorized to engage in any other communication within the normal course of its business.

12.    Retention of Administrators. The Court authorizes the Defendants, in consultation with Lead Counsel, to retain one or more administrators to help implement the terms of the proposed settlement, and authorizes such administrators to assist the Defendants in *(i)* mailing the Class Notice, and *(ii)* carrying out such other responsibilities as are provided for in the Settlement Agreement or may be agreed to by the Parties in the Lawsuit.

13.    Exclusion from Class.

(a)    Requests for Exclusion. Any member of the Class who wishes to be excluded from the Class must send a written request for exclusion to the Clerk of the Court, with copies to Allmerica's Counsel and Lead Counsel, by first-class mail, postage prepaid, to the following addresses:

Clerk of the Court
U.S. District Court for the District of Massachusetts
P.O. [_____]
_____, Massachusetts _____
Re: Case No. 04-40077

Stephen L. Hubbard, Esq.
Robert W. Biederman, Esq.
Hubbard & Biederman LLP
1717 Main Street, Suite 4700
Dallas, Texas 75201
Lead Counsel for Plaintiffs and the Class

Andrea J. Robinson, Esq.
Jonathan A. Shapiro, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Counsel for Allmerica

Any such exclusion request must be postmarked no later than **[date (Opt-Out and Objection Date)]**, 2006. If the proposed settlement is approved, any member of the Class who has neither submitted an appropriate, timely, written request for exclusion from the Class, nor has been excluded pursuant to paragraph 13(b) below, shall be bound by all subsequent proceedings, orders and judgments in this Lawsuit, even if he or she has pending or subsequently initiates litigation encompassed by the Class Members' Release against the Defendants (or any of them) relating to the claims released in the Settlement Agreement.

(b)     Class Members Involved in Bankruptcy Proceedings.  If, on or before the Final Settlement Date, any Class Member is a debtor subject to a pending bankruptcy proceeding with respect to such Class Member under the federal bankruptcy laws (a "Bankruptcy Proceeding"), such Class Member shall be excluded from the Class and neither the Settlement Agreement nor the Final Order and Judgment (including, without limitation, the Release and the relief provided therein) shall have any effect with respect to the Class Member, unless on or before the Final Settlement Date: *(i)* a final order and judgment approving and incorporating the terms of the Settlement Agreement as to such Class Member (in its entirety and without qualification or conditions that affect Allmerica's rights thereunder), or such other final order

-7-

and judgment that the Parties agree to, has been entered by the federal court having jurisdiction over such Bankruptcy Proceeding; and *(ii)* the Class Member files such an order with this Court and delivers to Plaintiffs' Counsel and Allmerica's Counsel copies of the same at the addresses set forth in paragraph 13(a) above.

      14.     <u>Objections and Appearances</u>.

      (a)     <u>Written Objections</u>.  Any Class Member who has not been excluded from the Class and who complies with the requirements of this paragraph may object to any aspect of the proposed settlement and/or the award of attorneys' fees and expenses and/or Plaintiffs' Incentive Awards, either on his or her own or through an attorney hired at his or her expense. Any Class Member who wishes to object to the proposed settlement must file with the Court and deliver to Lead Counsel for the Class and Allmerica's Counsel a written statement of objection by no later than **[date (Opt-Out and Objection Date)]**, 2006.  Such statement shall include the specific reason(s), if any, for each objection, including any legal support, evidence, papers or briefs that the Class Member wishes the Court to consider, shall include a reference to the case number, and shall be provided to each of the following:

      Clerk of the Court
      U.S. District Court for the District of Massachusetts
      P.O. [_____]
      _____, Massachusetts _____
      Re: Case No. 04-40077

      Stephen L. Hubbard, Esq.
      Robert W. Biederman, Esq.
      Hubbard & Biederman LLP
      1717 Main Street, Suite 4700
      Dallas, Texas 75201
      Lead Counsel for the Class

      Andrea J. Robinson, Esq.
      Jonathan A. Shapiro, Esq.
      Wilmer Cutler Pickering Hale and Dorr LLP

60 State Street
Boston, MA 02109
Counsel for Allmerica

Any Class Member who does not timely file and serve a written objection pursuant to the terms

of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any

objection to the settlement, and any objection that is not timely or validly made shall be barred.

      (b)     Appearance at Settlement Hearing.  Any Class Member who files and

serves a timely and valid written objection pursuant to the terms of paragraph 14(a) of this Order

and complies with the requirements of this paragraph may also appear at the Fairness Hearing

either in person or through counsel retained at the Class Member's expense.  Class Members or

their attorneys intending to appear at the Fairness Hearing must deliver to Lead Counsel for the

Class and Allmerica's Counsel and file with the Court, at the address specified in paragraph

14(a) of this Order, by no later than **[date (Opt-Out and Objection Date)]**, 2006, notice of

intention to appear, setting forth the case number, and the name, address and telephone number

of the Class Member (and if applicable, the name of the Class Member's attorney).  Any Class

Member who does not timely and validly file and serve a notice of intention to appear pursuant

to the terms of this paragraph shall not be permitted to appear, except for good cause.

      15.    Post-Office Box.  The Defendants or their designated agents are directed to rent a

post-office box in the name of the Clerk of the Court to be used for receiving requests for

exclusions, objections and any other Class Member communications.  In addition to the Court

and the Clerk of the Court, only Defendants, Allmerica's Counsel, Plaintiffs' Counsel and their

designated agents shall have access to the post-office box.

      16.    Access to Discovery Materials.  Lead Counsel for the Class shall make available

to any member of the Class during regular business hours, at the member's expense, the

documents exchanged by the Parties during discovery in this Lawsuit, and deposition transcripts and attached exhibits generated in this Lawsuit. These documents shall be made available for review only at the offices of Hubbard & Biederman LLP, 1717 Main Street, Suite 4700, Dallas, TX 75201. Any member of the Class wishing to obtain access to these materials must first agree in writing to be bound by the Protective Order entered in this Lawsuit. Any breach of the Protective Order shall constitute a violation of this Order and may, upon application to this Court by any party aggrieved by the violation, result in an order of contempt of Court or other sanctions. If a Class Member hires an attorney to represent him or her in connection with the review of such documents, the attorney must *(i)* file a notice of appearance with the Clerk of the Court at the address specified in paragraph 14(a) of this Order by no later than **[date (Opt-Out and Objection Date)]**, 2006, and *(ii)* deliver to Lead Counsel for the Class and Allmerica's Counsel at the addresses specified in paragraph 14(a) of this Order a copy of the notice of appearance by no later than **[date (Opt-Out and Objection Date)]**, 2006.

17.    <u>Preliminary Injunction</u>. All members of the Class who have not been excluded from the Class (and all persons acting on behalf of Class Members who have not been excluded from the Class) are hereby enjoined from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or subject of the Class Members' Release, or the facts and circumstances relating thereto; and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending

-10-

complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto. This Court finds that the issuance of this preliminary injunction is necessary and appropriate to aid the Court's jurisdiction over the Lawsuit and to protect and effectuate the Court's preliminary approval and consideration of the Settlement Agreement.

18.   <u>Service of Papers</u>. Allmerica's Counsel and Plaintiffs' Counsel shall serve on each other and on all other parties who have filed notices of appearance, at or before the Fairness Hearing, any further documents in support of the proposed settlement, including responses to any papers filed by Class Members. Allmerica's Counsel and Plaintiffs' Counsel shall promptly furnish to each other any and all objections or written requests for exclusion that may come into their possession and shall file such objections or requests for exclusion with the Court on or before the date of the Fairness Hearing. Plaintiffs' Counsel and Allmerica's Counsel shall be prepared at the Fairness Hearing to respond to any objections filed by Class Members and to provide other information, as appropriate, bearing on whether or not the settlement should be approved by the Court.

19.   <u>Termination of Settlement</u>. This Order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: *(i)* the proposed settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Settlement Agreement; or *(ii)* the proposed settlement is terminated in accordance with the Settlement Agreement or does not become effective as required by the terms of the Settlement Agreement for any other reason. In such event, the proposed settlement and Settlement

-11-

Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, shall be used or referred to for any purpose whatsoever.

20.    Use of Order. This Order shall be of no force or effect if the settlement does not become final, and shall not be construed or used as an admission, concession or declaration by or against Defendants or Plaintiffs or members of the Class of the validity of any claim or Counterclaim or any actual or potential fault, wrongdoing or liability whatsoever, or by or against Plaintiffs, members of the Class or Defendants, that their claims or the Counterclaims lack merit or that the relief requested in the Second Amended Complaint or the Counterclaims is inappropriate, improper, or unavailable, or as a waiver by any Party of any defense or claims it or they may have.

21.    Reservation of Rights. The Court reserves the right to approve the Settlement Agreement with such modifications as may be agreed by the Parties and without requiring further notice to the Class Members.

22.    Continuation of Hearing. The Court reserves the right to continue the Fairness Hearing without further written notice.


    IT IS SO ORDERED.


                                        _____
                                        THE HONORABLE F. DENNIS SAYLOR, IV
                                        U.S. DISTRICT COURT JUDGE


    Dated: _____, 2006

# EXHIBIT B

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 4:04-cv-40077-FDS

**THIS NOTICE IS SENT TO YOU BY A FEDERAL DISTRICT COURT.**

**IT DESCRIBES THE PROPOSED SETTLEMENT OF A
CLASS ACTION LAWSUIT.**

**IMPORTANT BENEFITS MAY BE AVAILABLE TO
YOU UNDER THE PROPOSED SETTLEMENT.**

**YOU NEED NOT RESPOND TO THIS NOTICE IN
ORDER TO RECEIVE THESE BENEFITS.**

**IF YOU DO NOT WANT TO BE PART OF THE SETTLEMENT,
YOU *MUST* EXCLUDE YOURSELF BY _____, 2006.**

**IF YOU CURRENTLY HAVE A LAWSUIT AGAINST ALLMERICA
FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, FIRST ALLMERICA
FINANCIAL LIFE INSURANCE COMPANY, ALLMERICA FINANCIAL
CORPORATION, OR THE HANOVER INSURANCE GROUP, INC.—
OR IF YOU INTEND TO START SUCH A PROCEEDING—THE
PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHT TO DO SO.**

- 1 -

1.  **OVERVIEW—WHY DID YOU RECEIVE THIS NOTICE?** You received this Notice because you may be eligible to receive benefits under the proposed settlement of a class action lawsuit that has been brought against Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation), and First Allmerica Financial Life Insurance Company. (These companies are referred to together as "Allmerica" in this Notice.) The Court has given its preliminary approval to the settlement and preliminarily certified the Class, and has ordered that this Notice be sent to you and all other members of the Class so that you may consider your options.

This Notice summarizes essential terms of the settlement, which are fully detailed in the Settlement Agreement. If there is any conflict between this Notice and the Settlement Agreement, the provisions of the Settlement Agreement govern. Capitalized terms not otherwise defined in this Notice shall have the meaning ascribed to them in the Settlement Agreement.

Your options are explained in detail in this Notice, but may be summarized as follows:

1.  **You may do nothing at this time.** If you do nothing and the Court gives its final approval to the settlement, you will stay in the Class be entitled to receive the settlement benefits described below, **unless,** subject to the terms of section 6.B below, you are involved in a Bankruptcy Proceeding.

2.  **You may remove yourself from the Class by filing a valid "request for exclusion."** The deadline for filing a request for exclusion is **[date].** Your request for exclusion must comply with the requirements described in section 6.A below.

3.  **You may stay in the Class, but file an objection to the proposed settlement.** The deadline for filing an objection is **[date].** Your objection must comply with the requirements described in section 7 below.

The Court will hold a hearing (the "Fairness Hearing") on _____, 2006 at **[time]** in Room _____ of the United States District Court for the District of Massachusetts, 595 Main Street, Worcester, Massachusetts 01068, to decide whether to give final approval to the proposed settlement. If the Court approves the settlement, and if you have not been excluded from the Class, you will receive a Second Notice. The Second Notice will tell you that the settlement has been approved and provide more information about any benefits you receive.

2.  **DEFINITION OF THE CLASS—ARE YOU A MEMBER?** The Class includes all original participants in the Trail Program who executed a Promissory Note in connection with the Trail Program.[1]

The Class does not include those persons or entities:

---

[1]  The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; and the "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001." The Settlement Agreement defines "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

    a.    who prior to April 10, 2006 entered into a settlement agreement with Allmerica that released their claims in connection with the Trail Program; or

    b.    who the Court finds to have filed a timely and valid "request for exclusion" from the Class or who otherwise have been excluded from the Class (see section 6 below).

### 3.    NATURE OF THE LAWSUIT AND THE SETTLEMENT PROCESS.

On May 18, 2004, three former Allmerica advisors—they are named as the "Plaintiffs" on the first page of this Notice—filed a class action lawsuit against Allmerica in the United States District Court for the District of Massachusetts. The Lawsuit alleges, among other things, that Allmerica *(i)* violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years; *(ii)* knew but failed to disclose certain risks to the Plaintiffs and the Class at the time they entered into the Trail Program; and *(iii)* engaged in a variety of other alleged misconduct to the detriment of the Plaintiffs and the Class. Allmerica has denied the Plaintiffs' allegations in the Lawsuit.

Allmerica has also asserted several Counterclaims against Plaintiffs and the Class Members (the "Counterclaims"). Allmerica asserts in the Counterclaims that Plaintiffs and Class Members violated their contracts with Allmerica and allegedly engaged in other misconduct, including, among other things, *(i)* by encouraging clients unnecessarily to surrender and/or replace certain annuity contracts; *(ii)* by taking actions to the detriment of Allmerica and its affiliates; and *(iii)* with respect to certain Plaintiffs and Class Members, by defaulting on their obligations under the DAC Notes they signed. Plaintiffs have denied the allegations in the Counterclaims.

**Plaintiffs' Investigation of the Claims and Access to Discovery Material.** The attorneys appointed to represent the Plaintiffs and the Class ("Lead Counsel") have conducted a thorough investigation of the facts and law at issue in the Lawsuit. In the course of their examination, they have reviewed tens of thousands of pages produced by the Allmerica and third parties. The materials produced to the Plaintiffs during discovery are available to Class Members to inspect upon signing a Protective Order. To inspect such documents, contact Lead Counsel at the following address:

    Stephen L. Hubbard, Esq.
    Robert W. Biederman, Esq.
    Hubbard & Biederman, LLP
    1717 Main Street, Suite 4700
    Dallas, Texas 75201
    (214) 857-6000

**Why did Plaintiffs and Allmerica agree to settle?** Plaintiffs and Lead Counsel have conducted a substantial investigation of the law and facts relating to the allegations made in the Lawsuit. Plaintiffs and Lead Counsel are fully advised of the potential strengths and weaknesses of the claims they have brought against Allmerica, and are mindful of the defenses that Allmerica could assert in response to those claims. Plaintiffs and Lead Counsel are also fully advised of the potential strengths and weakness of the Counterclaims against Plaintiffs and the Class Members, and the defenses that Plaintiffs and Class Members could assert in response to the Counterclaims.

- 3 -

Based on their evaluation of the facts and law, Plaintiffs, Allmerica, and their respective counsel have determined that the proposed settlement is fair, reasonable and adequate. They have reached this conclusion based on the risks, uncertainties and costs inherent in litigation; the benefits conferred by the proposed settlement; and the desirability of resolving the Lawsuit promptly rather than continuing protracted litigation.

The Court will fully consider at the Fairness Hearing the record developed in the Lawsuit, and will decide whether to give final approval to the settlement. The Court will not rule on the merits of the case or decide whether the Plaintiffs' or Allmerica's allegations are true or false.

4. **SETTLEMENT BENEFITS AVAILABLE.** If you remain in the Class (that is, if you are not excluded from the Class) and the settlement is approved, you will be entitled to relief.

A. **Summary of Proposed Benefits.**

(1) <u>Satisfaction of DAC Notes and Cessation of Trail Commissions</u>. The DAC Note executed by you shall be deemed satisfied on the tenth day following the close of the quarter in which the Final Order and Judgment becomes final (the "Disbursement Date"). Allmerica's obligations to pay, and your rights to receive, Trail Commissions pursuant to the Trail Agreement executed by you also shall cease on the Disbursement Date.

(2) <u>Supplemental Relief</u>. You may also be eligible for two kinds of supplemental relief: True-Up Supplemental Relief and Set-Off Supplemental Relief. You cannot receive both forms of Supplemental Relief (<u>see</u> paragraph 4.A.(4) below).

a. <u>True-Up Supplemental Relief</u>. If you paid (by direct payment, offset or otherwise) during any quarter an amount greater than the fixed quarterly payment (reflecting principal plus interest) set forth on the face of the original DAC Note you executed ("Quarterly Overpayment"), then on the Disbursement Date, you will receive the net amount of your Quarterly Overpayments (overpayments minus underpayments), subject to paragraph 4.A.(4) below.

The calculation of Quarterly Overpayments assumes that interest continued to accrue through the Final Settlement Date. To illustrate:

- A hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $10,000, but each quarter paid $11,000, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date (<u>i.e.</u>, $1,000 times the number of quarters that will have elapsed by that Final Settlement Date).

- Assuming that 21 quarters elapsed by the Final Settlement Date, a hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $15,000, but (*i*) paid $17,000 per quarter (<u>i.e.</u>, $2,000 over the fixed quarterly payment) for 18 quarters, and (*ii*) paid only $14,000 per quarter (<u>i.e.</u>, $1,000 under the fixed quarterly

- 4 -

payment) for 3 quarters, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date of $33,000 (i.e., $36,000 minus $3,000).

If you are eligible for a True-Up payment under this paragraph, and, prior to April 10, 2006, you paid all amounts due under your DAC Note, your True-Up payment will be calculated as of the date your DAC Note was paid in full.

(3)    Set-Off Supplemental Relief. To the extent that on or after May 1, 2005, Allmerica used or applied commissions or sums other than Trail Commissions to cover or reduce a shortfall between your quarterly DAC Note payments and the Trail Commissions payable in any given quarter ("Set-Offs"), then on the Disbursement Date, Allmerica will pay you the aggregate amount of such Set-Offs that were used or applied (or will be used or applied) during the period May 1, 2005 to the Disbursement Date, subject to paragraph 4.A.(4) below.

(4)    No Entitlement to Both True-Up and Set-Off Supplemental Relief. If you qualify for a payment under both the True-Up Supplemental Relief in paragraph 4.A.(2) and the Set-Off Supplemental Relief in paragraph 4.A.(3), you nonetheless shall receive only one form of Supplemental Relief (not both), which shall be the form of the Supplemental Relief that provides you with the greater payment.

**B.    Notification of Eligibility for Settlement Benefits—Second Notice Package.** If the Court approves the settlement, you will be sent a Second Notice describing the form of relief available to you.

**C.    Income Tax Consequences.** Your receipt of settlement benefits could have tax consequences for you. No opinion concerning the tax consequences of any payments, contributions or other relief provided to you through the settlement is given or will be given by Allmerica, Allmerica's Counsel or Lead Counsel, nor are any representations or warranties made in this regard. You should consult your own tax advisor to determine any federal, state, local or foreign tax consequences of the receipt of benefits in your particular circumstances.

**5.    DISMISSAL AND RELEASE OF CLAIMS.** If the Court approves the settlement, all claims described in the Class Members' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other proceeding, and, as set forth in the Settlement Agreement, certain claims that Class Members potentially may be able to assert in the future would be subject to mandatory arbitration.*

In addition, if the Court approves the settlement, all claims described in the Defendants' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other proceeding, and, as set forth in the Settlement Agreement, certain claims that Defendants potentially may be able to assert in the future would be subject to mandatory arbitration.*

*Because the Class Members' Release and the Defendants' Release are critical elements of the proposed settlement, they are reprinted in their entirety in Appendix A, together with the*

- 5 -

*provisions of the Settlement Agreement pertaining to arbitration.*

6.    **EXCLUSION FROM THE CLASS.**

     **A.**   **Request for Exclusion.**  You may request to be excluded from the Class.  If you do, you will *not* receive settlement benefits, you will remain subject to Allmerica's Counterclaims and claims it may assert in the future, and you may *not* file an objection with the Court.  To request exclusion, you must send a written request to the Clerk of the Court, with copies to Lead Counsel and Allmerica's Counsel, no later than _____, 2006 at the following addresses:

     Clerk of the Court
     U.S. District Court for the District of Massachusetts
     P.O. Box [Number]
     [City, State, Zip]

     **Lead Counsel**
     Stephen L. Hubbard, Esq.
     Robert W. Biederman, Esq.
     Hubbard & Biederman, LLP
     1717 Main Street, Suite 4700
     Dallas, Texas 75201

     **Allmerica's Counsel**
     Andrea J. Robinson, Esq.
     Jonathan A. Shapiro, Esq.
     Wilmer Cutler Pickering Hale and Dorr LLP
     60 State Street
     Boston, MA 02109

You must include in your request *(i)* your name, address and telephone number, *(ii)* a statement that you want to be excluded, *(iii)* the case name and case number, as indicated on the first page of this Notice, and *(iv)* your signature.  *Be sure to write "Exclusion Request" on the lower left-hand corner of the front of the envelope.*

**ANY REQUEST FOR EXCLUSION <u>MUST</u> BE POSTMARKED BY [OPT-OUT AND OBJECTION DATE], 2006.**

A request for exclusion will be **invalid** if it does not provide all of the requested information, is postmarked after the deadline or is not sent to the correct address.  A Class Member sending an invalid request for exclusion will be treated as if he or she did not send any request for exclusion at all.

If you do not want to resolve your claims through this proposed settlement, *you must request exclusion, even if you already have a pending claim, lawsuit or proceeding against Allmerica.*

**B.    Class Members Involved in Bankruptcy Proceedings.** If you are now, or at any time prior to a Final Settlement Date become, a debtor subject to a pending bankruptcy proceeding under the federal bankruptcy laws (a "Bankruptcy Proceeding"), you will be excluded from the Class – even if you have not requested exclusion and would like to participate in the settlement – *unless* on or before the Final Settlement Date: *(i)* the federal court with jurisdiction over the Bankruptcy Proceeding enters a final order and judgment approving and incorporating the terms of the Settlement Agreement with respect to you; and *(ii)* you file such an order with this Court and deliver to Plaintiffs' Counsel and Allmerica's Counsel copies of the same, at the addresses identified in section 6.A. above. Any Class Member who is subject to a Bankruptcy Proceeding but does not take the steps identified above in *(i)* and *(ii)* will be excluded from the Class and (just like those who request exclusion under section 6.A. above) will not be released under Defendants' Release (and thus may remain subject to Allmerica's Counterclaims and claims that Allmerica may assert in the future).

## 7.    FAIRNESS HEARING, RIGHT TO OBJECT TO PROPOSED SETTLEMENT AND RIGHT TO APPEAR.

**A.    Fairness Hearing—Time, Place and Purpose.** The Court will hold a Fairness Hearing on _____, 2006 in the courtroom of The Honorable F. Dennis Saylor, IV of the United States District Court for the District of Massachusetts, Room _____, Harold D. Donohue Federal Building & Courthouse, 595 Main Street, Worcester, Massachusetts 01068. You may attend the Fairness Hearing if you wish, but you are not required to do so in order to participate in the settlement.

At the Fairness Hearing, the Court will consider:

(1)    whether the Court should find that the proposed settlement, as set forth in the Settlement Agreement, is fair, adequate and reasonable, and in the best interests of Class Members;

(2)    whether the Court should enter a Final Order and Judgment approving the Settlement Agreement, finally certifying the Class for settlement purposes and dismissing *(i)* the pending claims against Allmerica with prejudice and on the merits and releasing the claims against Allmerica; and *(ii)* the pending Counterclaims against the Plaintiffs and Class Members with prejudice and on the merits and releasing the claims against the Plaintiffs and Class Members; and

(3)    whether the Court should approve *(i)* the application for payment of attorneys' fees and reimbursement of expenses that will be filed by Lead Counsel; and *(ii)* the application for Incentive Awards that will be filed by Plaintiffs. (These applications are described in section 8 below.)

If, after conducting the Fairness Hearing, the Court grants final approval of the settlement as set forth in the Settlement Agreement (including any modification or amendment thereto to which Allmerica and Lead Counsel agree), it will enter a Final Order and Judgment. The Court may approve the Settlement Agreement with such modifications as may be agreed to by the Parties and without further notice to the members of the Class. The Fairness Hearing may be adjourned from time to time by the Court, without further prior notice.

The Parties' and the Class Members' rights and obligations under the settlement, including the provision of settlement benefits to Class Members, will not become effective until final judicial approval, which means after the Court has entered a Final Order and Judgment and after exhaustion of all appeals, if any, that result in the affirmance of the Final Order and Judgment. However, Allmerica may elect to implement the settlement after the Final Order and Judgment is entered and before the exhaustion of appeals if it so chooses.

**B.    Your Right to Object and Deadline.**  If you are not excluded from the Class, you may file with the Court a written objection to any aspect of the proposed settlement or to the requests for Attorneys' Fees or Incentive Awards.  You do not have to attend the Fairness Hearing to object to the settlement.  Your written objection should include *(i)* a statement of your objection(s), as well as the specific reasons you have for each objection, including any legal support you wish to bring to the Court's attention and any evidence you wish to introduce in support of your objection(s), *(ii)* your name, address and telephone number, and *(iii)* the name of the case and the case number appearing on the first page of this Notice.

Objections **MUST** be *received* by the Clerk of the Court, with copies to Lead Counsel and Allmerica's Counsel, no later than **[date (Opt-Out and Objection Date)]**, 2006 at the following addresses:

> **Clerk of the Court**
> U.S. District Court for the District of Massachusetts
> P.O. Box [Number]
> [City, State, Zip]
>
> **Lead Counsel**
> Stephen L. Hubbard, Esq.
> Robert W. Biederman, Esq.
> Hubbard & Biederman, LLP
> 1717 Main Street, Suite 4700
> Dallas, Texas 75201
>
> **Allmerica's Counsel**
> Andrea J. Robinson, Esq.
> Jonathan A. Shapiro, Esq.
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109

An objection will be **invalid** if the submission does not provide all of the requested information, is received after the deadline stated above or is not sent to the correct address. **An invalid submission will not be considered by the Court.**

Any judgment entered in the Lawsuit, whether favorable or unfavorable to the Class, will include and be binding on all Class Members who have not been excluded, even if they have objected to the proposed settlement and even if they have any other claim, lawsuit or proceeding pending against Allmerica.

- 8 -

    **C.**    **Your Right to Appear.** Only Class Members who have timely submitted objections may appear at the Fairness Hearing (either in person or through an attorney hired at the Class Member's expense) to object to the fairness, reasonableness or adequacy of the Settlement Agreement or to the requests for Attorneys' Fees or Incentive Awards. If a Class Member hires an attorney to represent him or her, the attorney must *(i)* file a notice of appearance with the Clerk or Court no later than **[date (Opt-Out and Objection Date)]** and *(ii)* deliver to Lead Counsel and Allmerica's Counsel no later than **[date (Opt-Out and Objection Date)]** a copy of the same.

**8.**    **COUNSEL FOR THE CLASS, ATTORNEYS' FEES AND INCENTIVE AWARDS.** The Court has designated the law firm of Hubbard & Biederman, LLP as Lead Counsel for purposes of the settlement of this Lawsuit. *You will not be charged for the services of this or any other law firm representing the Class in this Lawsuit.* You have the right to retain your own attorney in this matter, but if you do you will be responsible for paying your own attorneys' fees and expenses.

At the Fairness Hearing, Lead Counsel will apply to the Court for an award of attorneys' fees and expenses ("Attorneys' Fees") not to exceed $[xx]. If the Court approves Lead Counsel's application, Allmerica will pay the award. Payment of the award of Attorneys' Fees will not affect the benefits available to you.

At the Fairness Hearing, the Plaintiffs will apply to the Court for Incentive Awards not to exceed $[xx] per Plaintiff to reimburse them for the risks they have assumed and the value of their time expended on this Lawsuit. If the Court approves Plaintiffs' application, Allmerica will pay the awards. Payment of the Incentive Awards will not affect the benefits available to you.

Allmerica has agreed to pay all costs associated with providing and administering the settlement, including the printing and mailing expense of this Notice and the Second Notice. The payment of the expenses listed above will not diminish the value of the settlement benefits to the Class.

**9.**    **PRELIMINARY INJUNCTION AND EFFECT ON PENDING CLAIMS, LAWSUITS OR OTHER PROCEEDINGS AGAINST ALLMERICA.** The Court has preliminarily enjoined all Class Members who have not been excluded from the Class (and all persons acting on behalf of members of the Class Members who not been excluded from the Class) from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto, and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the

facts and circumstances relating thereto.

At the Fairness Hearing, the Parties will ask the Court, as part of its final approval of the settlement, to enter a permanent injunction similar to the preliminary injunction described above.

**10.    HOW TO OBTAIN ADDITIONAL INFORMATION.** This Notice is a summary of the proposed settlement. The full Settlement Agreement is on file with the Clerk of the Court, along with the Class Action complaint, Allmerica's Counterclaims and other papers and Court orders pertaining to this case. You may inspect these documents at the Clerk's office at any time during normal business hours, Monday through Friday, 8:30 a.m. to 5:00 p.m. If you have any questions, call Steve Hubbard or Rob Biederman, Lead Counsel for the Class, at (214) 857-6000 between 9:00 a.m. and 5:00 p.m. CDT, or write them at their address set forth above in paragraph 6 of this Notice. **Please do not call the Court or the Clerk of Court.**

Dated: _____, 2006

_____, Clerk
U.S. District Court for the District of Massachusetts

## APPENDIX A

## RELEASES AND WAIVER

In exchange for the benefits provided under the proposed settlement, Class Members who are not excluded from the Class will release Allmerica, its affiliates, subsidiaries and others from liability for known and also certain unknown claims. Such claims, if any, could include, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other claims available to you in the state where you live, and such claims could give rise to compensatory, exemplary and punitive damages.

In exchange for the benefits provided under the proposed settlement, Allmerica will release Class Members who are not excluded from the Class from liability for known and also certain unknown claims. Such claims, if any, could include, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other claims, and such claims could give rise to compensatory, exemplary and punitive damages.

The full text of the Class Members' Release and Defendants' Release, with definitions, are as follows:

7.1    Releases and Waiver.

    7.1.1    Definitions. As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

        7.1.1.1    "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

        7.1.1.2    "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

        7.1.1.3    "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4,[2] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants,

---

[2]    As defined in subpart 2.4 of the Settlement Agreement, "Allmerica" means: (i) the Defendants; (ii) each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; (iii) each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in (i) and (ii); and (iv) each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in (i), (ii), and (iii).

trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.4      "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27[3] and 2.8,[4] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.5      "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

7.1.1.6      "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in <u>Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr.</u>, No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

7.1.2   <u>Class Members' Release</u>.   Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or

---

[3]      As defined in subpart 2.27 of the Settlement Agreement, "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

[4]      As defined in subpart 2.8 of the Settlement Agreement, "Class Members" means all members of the Class, excluding all Opt-Outs.

could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.2.1    Release of Unknown Claims. Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

7.1.2.2    In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.2.3    Without in any way limiting its scope, the Release set forth in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.2.4    Nothing in the Release set forth in part 7.1.2 shall be deemed to alter:

7.1.2.4.1    claims that *(i)* arise after the Opt-Out and Objection Date; and *(ii)* relate to a Class Member's rights under the express terms of Agent Plans or Agent Policies;

7.1.2.4.2   Class Members' rights to assert claims, defenses, or counterclaims with respect to any matters encompassed by subpart 7.1.3.4.1;

7.1.2.4.3   any rights, defenses, or other claims, if any, that Class Members may have against any of the Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

7.1.2.4.4   the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5   any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.2.5      Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.1.3   Defendants' Release. Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

- 14 -

**7.1.3.1** <u>Release of Unknown Claims</u>.  The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights the Defendants may have under California Civil Code Section 1542, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Defendants hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

**7.1.3.2** In connection with the Release set forth in part 7.1.3, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.  Nevertheless, it is the intention of Defendants in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

**7.1.3.3** Without in any way limiting its scope, the Release set forth in part 7.1.3 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Defendants' Counsel or any other counsel representing Defendants, or by Defendants, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

**7.1.3.4** Nothing in the Release set forth in part 7.1.3 shall be deemed to alter:

**7.1.3.4.1** Defendants' rights with respect to any of the Agent Plans or Agent Policies referred to in subpart 7.1.2.4.1, including the right (if any) to modify, amend or terminate such Agent Plans or Agent Policies;

**7.1.3.4.2** Defendants' rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.1;

**7.1.3.4.3** any rights, defenses, or other claims, or counterclaims, if any, that the Defendants may have against any of the Plaintiff Releasees with respect to indemnification, contribution or recovery from the Plaintiff Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities

- 15 -

of every kind and nature), arising out of or as a result of Third-Party Claims or any matter encompassed by subpart 7.1.2.4.3;

7.1.3.4.4.  Allmerica's rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.4; or

7.1.3.4.5    any claim by The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates against a Plaintiff Releasee solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.3.5        Nothing in the Release set forth in part 7.1.3 shall preclude any action to enforce the terms of the Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

## ARBITRATION OF DISPUTES

13.1    Unless another forum is required by law, any disputes between Allmerica and the Class Members encompassed by subparts 7.1.2.4.1 & 7.1.2.4.2 and 7.1.3.4.1 & 7.1.3.4.2 shall be submitted to the American Arbitration Association for binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules").

13.2    Any dispute subject to arbitration under subpart 13.1 above shall be submitted to *(i)* a single arbitrator appointed in accordance with the AAA Rules if the amount in controversy is less than $300,000 (exclusive of any claims for interest or injunctive relief); or *(ii)* a panel of three arbitrators appointed in accordance with the AAA Rules if the amount in controversy is equal to or greater than $300,000 (exclusive of any claims for interest or injunctive relief).

13.3    The parties to any arbitration proceeding commenced under subpart 13.1 above shall each bear their own costs with respect to such proceeding; provided, however, that in the event a party fails to proceed with arbitration, unsuccessfully seeks judicial review of the arbitrator's award, or fails to comply with the arbitrator's award, that party shall be responsible for the reasonable attorneys' fees and expenses incurred by any other party in a successful effort to compel arbitration, defend the award against judicial review, or to enforce the award.

# EXHIBIT C

**EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

**FINAL ORDER AND JUDGMENT
APPROVING CLASS SETTLEMENT**

WHEREAS, Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare (together, the "Plaintiffs") filed a second amended complaint in the above-captioned action.

WHEREAS, the Parties and their attorneys have undertaken an extensive investigation of the relevant facts and law;

WHEREAS, counsel for the putative class ("Plaintiffs' Counsel") and defendants Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation, and First Allmerica Financial Life Insurance Company engaged in an arm's length negotiation of a settlement in this Lawsuit to avoid the expense, uncertainties and burden of protracted litigation, and to put to rest any and all

claims or causes of action that have been asserted against Defendants by the Plaintiffs or other members of the Class and that could have been asserted against Defendants which relate in any respect to the subject of the Class Members' Release, and claims or causes of action that have been asserted against Plaintiffs or other members of the Class by Defendants and that could have been asserted against Plaintiffs or other members of the Class which relate in any respect to the subject of the Defendants' Release;

WHEREAS, the Parties entered into a May 23, 2006 Stipulation of Settlement in which the Parties have agreed upon a settlement of the Lawsuit subject to the approval and determination of the Court as to the fairness, reasonableness and adequacy of the settlement, which, if approved, will result of dismissal of the Lawsuit with prejudice;

WHEREAS, the Court entered a **[date]**, 2006 Order Preliminarily Certifying a Class for Settlement Purposes, Appointing Lead Counsel for the Class, Directing Issuance of a Class Notice to the Class, and Scheduling a Fairness Hearing ("Hearing Order");

WHEREAS, the Parties have complied with the Hearing Order; and

NOW, upon reviewing the Stipulation of Settlement and all exhibits thereto (together, the "Settlement Agreement") and the prior proceedings held herein, upon reviewing the Parties' submissions in support of the settlement, upon reviewing the objections to the Settlement Agreement filed by Class Members, and the matter having come before the Court for a Fairness Hearing on **[date]**, 2006;

**IT IS ORDERED AS FOLLOWS** (all capitalized terms used herein are defined as they are in the Settlement Agreement):

1.     **Incorporation of Documents.**  This Final Order and Judgment incorporates herein and makes a part hereof *(i)* the Settlement Agreement (a copy of which, without exhibits,

is appended hereto as Exhibit A); *(ii)* the Class Notice (appended hereto as Exhibit B), and *(iii)* the Post-Settlement Notice (appended hereto as Exhibit C).

2.    **Jurisdiction of the Court.**  The Court has personal jurisdiction over all Class Members because adequate notice has been provided to them and because they have been provided the opportunity to exclude themselves from the Lawsuit.  The Court has subject matter jurisdiction over this Lawsuit, including, without limitation, jurisdiction to approve the Settlement Agreement and to dismiss the Lawsuit on the merits and with prejudice.

3.    **Final Certification of the Class for Settlement Purposes.**  A Class for settlement purposes is hereby finally certified consisting of the Plaintiffs and all other original participants in the Trail Program who executed a DAC Note,[1] except any such participants *(i)* who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants, or *(ii)* who have been excluded from the Class (by filing a timely and valid request for exclusion or by virtue of a Bankruptcy Proceeding) pursuant to part 5 of the Settlement Agreement and this Court's Hearing Order of **[date]**, 2006.  A list of those persons who have timely and validly excluded themselves from the Class, and who are therefore not bound by this Final Order and Judgment, has been filed jointly by the Parties with the Court and is incorporated herein and made a part hereof.  Those Class Members who have not been excluded from the Class are bound by this Final Order and Judgment and the terms of the Settlement Agreement.

---

[1]        The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; and the "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001."  The Settlement Agreement defines the "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

4.    **Class Findings.** For purposes of the settlement of the Lawsuit (without an

adjudication on the merits), the requirements of due process and the Federal Rules of Civil

Procedure and the Rules of the Court have been met in that:

(a)    The Class consists of the Plaintiffs and all other original participants in

the Trail Program who executed a DAC Note, except any such participant who, prior to April 10,

2006, released his or her claims in connection with the Trail Program pursuant to a settlement

with any of the Defendants, or who has been excluded from the Class pursuant to part 5 of the

Settlement Agreement and this Court's Hearing Order of **[date]**, 2006. The Class is

ascertainable on the basis of these objective criteria, and members of the Class are so numerous

that it is impracticable to bring all members of the Class before the Court.

(b)    There is a well-defined community of interest among members of the

Class in certain questions of law or fact that are common to the Class, are substantially similar

and predominate over any individual questions of fact and law. The Plaintiffs allege, inter alia,

that the Defendants, acting through their Massachusetts Home Office, violated the Trail Program

by ceasing sales of new annuities and by failing to service annuities sold in prior years, knew but

failed to disclose certain risks to Plaintiffs at the time they entered into the Trail Program, and

engaged in a variety of other alleged misconduct to the detriment of Plaintiffs and the Class.

Thus, common questions include whether *(i)* Allmerica's cessation of new annuity sales and/or

the alleged service problems violated the implied covenant of good faith and fair dealing; *(ii)*

Allmerica failed to disclose material information to the Class prior to entering the Trail Program;

and *(iii)* the alleged breach of the implied covenant of good faith and fair dealing and/or the

alleged failure to disclose constituted a deceptive act or practice within the meaning of Mass.

-4-

Gen. Laws ch. 93A. These common questions are central to each Class Member's claim and predominate over questions affecting only individual members of the Class.

   (c)   The claims of the Plaintiffs are typical of the claims of the Class, and the Plaintiffs will fairly and adequately protect the interests of the Class, in that: *(i)* the interests of the Plaintiffs and the nature of their alleged claims are consistent with those of the Class; *(ii)* there are no conflicts between or among the Plaintiffs and Class Members; *(iii)* the Plaintiffs have been and are capable of continuing to be active participants in both the prosecution of, and the settlement negotiations of, the Lawsuit; and *(iv)* the Plaintiffs and the Class Members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the second amended complaint.

   (d)   A resolution of the Lawsuit in the manner proposed by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of the Lawsuit. In making these findings, the Court has considered, among other factors: *(i)* the interest of Class Members in individually controlling the prosecution or defense of separate actions; *(ii)* the impracticability or inefficiency or prosecuting or defending separate actions; *(iii)* the extent and nature of any litigation concerning these claims already commenced; and *(iv)* the desirability of concentrating the litigation of the claims in a particular forum.

   5.  **Satisfaction of Due Process.** The Court finds that the mailing of the Class Notice as provided for by, and undertaken pursuant to, the Hearing Order *(i)* constituted the best practicable notice to members of the Class under the circumstances, *(ii)* constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Lawsuit and of the terms of the Settlement Agreement and their rights

thereunder, including their rights to object to those terms or to exclude themselves from the proposed settlement and to appear at the Fairness Hearing, *(iii)* was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and *(iv)* fully complied with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

6. **Adequate Representation.** Plaintiffs' Counsel and the Plaintiffs have adequately represented the Class throughout this litigation.

7. **Final Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members and in full compliance with all applicable requirements of law, including constitutional due process. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions; provided, however, that *(a)* the Parties are hereby authorized, without needing any further approval from the Court, to agree and adopt such amendments to, and modifications and expansions of, the Settlement Agreement and its implementing documents, as are consistent with this Final Order and Judgment and do not limit the relief available under the Settlement Agreement; and *(b)* Defendants are hereby authorized, in their sole discretion but in consultation with Plaintiffs' Counsel, and without the approval of this Court, to implement the settlement prior to the Final Settlement Date.

8. **Claims Released.** The Release set forth in part 7.1 of the Settlement Agreement is expressly incorporated in this Final Order and Judgment in all respects (and also is set forth in its entirety below as Appendix A hereto) and is effective as of the date of this Final Order and Judgment, such that the Defendant Releasees and Plaintiff Releasees are forever discharged from

-6-

the claims or liabilities that are the subject of the Class Members' Release and the Defendants' Release, respectively. In addition to other matters set forth in the Class Members' Release, this paragraph covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to this Lawsuit, the settlement of this Lawsuit, the administration of such settlement and/or the subject of the Class Members' Release, except to the extent awarded by the Court. In addition to other matters set forth in the Defendants' Release, this paragraph covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Allmerica's Counsel or any other counsel representing Defendants, or incurred by Defendants, or any of them, in connection with or related in any manner to this Lawsuit, the settlement of this Lawsuit, the administration of such settlement and/or the subject of the Defendants' Release, except to the extent awarded by the Court.

       9.    **Permanent Injunction.** All Class Members who have not been excluded from the Class (and all persons acting on behalf of Class Members who have not been excluded from the Class) are hereby permanently and forever barred and enjoined from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claims or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto; and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any

lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto. The Court finds that entry of this Permanent Injunction is necessary and appropriate to aid the Court's jurisdiction over the Lawsuit and to protect and effectuate the Settlement Agreement and this Final Order and Judgment.

10.    **Notice.** The Parties are hereby directed to mail the Post-Settlement Notice materials in the form attached hereto as Exhibit C, as provided by the Settlement Agreement. The Court finds that the Post-Settlement Notice materials and methodology set forth in the Settlement Agreement *(i)* constitute the best practicable notice to Class Members of the Final Order and Judgment, the relief available to Class Members pursuant to the Final Order and Judgment, and applicable time periods, *(ii)* constitute due, adequate and sufficient notice for all other purposes to all Class Members, and *(iii)* fully comply with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

11.    **Binding Effect.** The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Plaintiffs, Class Members, and Defendants, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings that assert claims that are encompassed within the Class Members' Release and the Defendants' Release set forth in part 7.1 of the Settlement Agreement.

12.    **No Admissions.** Neither this Final Order and Judgment nor the Settlement Agreement (nor any document referred to herein or any action taken to carry out this Final Order

and Judgment) is, may be construed as, or may be used as any evidence, admission or concession by or against the Defendant Releasees or the Plaintiff Releasees of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever.  Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related thereto shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by any of the Defendant Releasees or the Plaintiff Releasees and shall not be offered or received in evidence in any action or proceeding against any of them in any court, administrative agency or other tribunal for any purpose whatsoever other than as evidence of the settlement or to enforce the provisions of this Final Order and Judgment and the Settlement Agreement; provided however, that this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendant Releasees or Plaintiff Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, covenant not to sue, accord and satisfaction, judgment bar or reduction, full faith and credit, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     **Enforcement of Settlement Agreement.**  Nothing in this Final Order and Judgment shall preclude any action to enforce its terms or the terms of the Settlement Agreement, including, without limitation, the Releases and Permanent Injunction.

14.     **Nullification of Settlement Agreement.**  In the event the Settlement Agreement does not become final, pursuant to its terms, or in the event that it does not become effective as required by its terms for any other reason, this Final Order and Judgment shall become null and void and the Parties shall be restored to their respective positions *status quo ante* as set forth in part 11 of the Settlement Agreement.  In such event, the Settlement Agreement and this Final

Order and Judgment shall have no force and effect and neither document may be used or referred to for any purpose whatsoever, except as provided in subpart 11.6 of the Settlement Agreement.

       15.    **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment (including, without limitation, with respect to the Release and Permanent Injunction), and for any other necessary purpose.

       16.    **Dismissal with Prejudice.** This Lawsuit, including all claims and Counterclaims asserted in it and/or resolved herein, is hereby dismissed on the merits and with prejudice against the Plaintiffs and all other Class Members (with respect to the claims they have asserted) and the Defendants (with respect to the Counterclaims they have asserted), without fees or costs to any party except as otherwise provided in this Final Order and Judgment.

       IT IS SO ORDERED.

 

                    _____

                    THE HONORABLE F. DENNIS SAYLOR, IV
                    U.S. DISTRICT COURT JUDGE

Dated: _____, 2006

## APPENDIX A

The full text of the Class Members' Release and Defendants' Release, with definitions, are as follows:

7.1   <u>Releases and Waiver</u>.

    7.1.1   <u>Definitions</u>. As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

        7.1.1.1      "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

        7.1.1.2      "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

        7.1.1.3      "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4,[2] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

        7.1.1.4      "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27[3] and 2.8,[4] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants,

---

[2]     As defined in subpart 2.4 of the Settlement Agreement, "Allmerica" means: *(i)* the Defendants; *(ii)* each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; *(iii)* each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in *(i)* and *(ii)*; and *(iv)* each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in *(i)*, *(ii)*, and *(iii)*.

[3]     As defined in subpart 2.27 of the Settlement Agreement, "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

[4]     As defined in subpart 2.8 of the Settlement Agreement, "Class Members" means all members of the Class, excluding all Opt-Outs.

trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.5    "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

7.1.1.6    "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in <u>Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr.</u>, No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

7.1.2    <u>Class Members' Release</u>.  Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.2.1    <u>Release of Unknown Claims</u>.  Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

7.1.2.2    In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.2.3    Without in any way limiting its scope, the Release set forth in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.2.4    Nothing in the Release set forth in part 7.1.2 shall be deemed to alter:

7.1.2.4.1    claims that *(i)* arise after the Opt-Out and Objection Date; and *(ii)* relate to a Class Member's rights under the express terms of Agent Plans or Agent Policies;

7.1.2.4.2    Class Members' rights to assert claims, defenses, or counterclaims with respect to any matters encompassed by subpart 7.1.3.4.1;

7.1.2.4.3    any rights, defenses, or other claims, if any, that Class Members may have against any of the Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

7.1.2.4.4    the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications

-13-

were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5    any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.2.5    Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.1.3    Defendants' Release.  Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.3.1    Release of Unknown Claims.  The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights the Defendants may have under California Civil Code Section 1542, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Defendants hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

-14-

7.1.3.2    In connection with the Release set forth in part 7.1.3, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Defendants in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.3.3    Without in any way limiting its scope, the Release set forth in part 7.1.3 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Defendants' Counsel or any other counsel representing Defendants, or by Defendants, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.3.4    Nothing in the Release set forth in part 7.1.3 shall be deemed to alter:

   7.1.3.4.1    Defendants' rights with respect to any of the Agent Plans or Agent Policies referred to in subpart 7.1.2.4.1, including the right (if any) to modify, amend or terminate such Agent Plans or Agent Policies;

   7.1.3.4.2    Defendants' rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.1;

   7.1.3.4.3    any rights, defenses, or other claims, or counterclaims, if any, that the Defendants may have against any of the Plaintiff Releasees with respect to indemnification, contribution or recovery from the Plaintiff Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims or any matter encompassed by subpart 7.1.2.4.3;

   7.1.3.4.4.    Allmerica's rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.4; or

   7.1.3.4.5    any claim by The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates against a Plaintiff Releasee solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.3.5 Nothing in the Release set forth in part 7.1.3 shall preclude any action to enforce the terms of the Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

# EXHIBIT D

**EXHIBIT D**

# NOTICE OF APPROVAL
# OF SETTLEMENT

**\* \* \***

**THIS IS NOTICE TO YOU OF THE SETTLEMENT
OF A CLASS ACTION LAWSUIT.**

IMPORTANT BENEFITS MAY BE AVAILABLE TO YOU UNDER THE SETTLEMENT.

THE ENCLOSED MATERIALS DESCRIBE THE BENEFITS THAT ARE AVAILABLE

## 1.     PURPOSE OF THIS NOTICE

In [_____ of 2006], Class Members were sent Notice of the proposed settlement of a class action lawsuit against Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation), and First Allmerica Financial Life Insurance Company. (In this Notice, these companies are referred to collectively as "Allmerica"). On [_____, 2006], the Court held a Fairness Hearing to determine whether the proposed settlement was fair, reasonable and adequate. The Court heard presentations by Plaintiffs and Allmerica [, **and also considered objections raised by certain Class Members**]. On [date], the Court issued an Order certifying the Class (of which you are a member) for settlement purposes and approving the settlement, and that Order is now final.

**The purpose of this Second Notice is to tell you that the Court has entered a Final Order and Judgment approving the settlement and to provide information on the available benefits.**

## 2.     RELIEF AVAILABLE

**A.     Overview.** A description of the relief provided to the Class (and the manner with which it was determined and calculated) is set forth below. If you also qualify for a form of Supplemental Relief, a check in the amount of your Supplemental Relief is enclosed with this Notice. If there is no check enclosed with this Notice, you do not qualify for Supplemental Relief. (A breakdown of your eligibility for Supplemental Relief is set forth in section 2.C.)

If you believe that you are entitled to Supplemental Relief but did not receive a check, or if you disagree with the amount of the Supplemental Relief that you received, **YOU MUST SEND DOCUMENTARY EVIDENCE SUPPORTING THE EXISTENCE AND AMOUNT OF THE CLAIMED ERROR TO [address] WITHIN TEN BUSINESS DAYS AFTER THE POSTMARK DATE OF THIS NOTICE.**

**B.     Form of Relief**

**(1)     Satisfaction of DAC Notes and Cessation of Trail Commissions.** The DAC Note executed by you is deemed to have been satisfied as of [**specify date (Disbursement Date)**].[1] Allmerica's obligations to pay, and your rights to receive, Trail Commissions pursuant to the Trail Agreement executed by you also have ceased as of the [**specify date (Disbursement Date)**].

**(2)     Supplemental Relief.**

a)     <u>True-Up Supplemental Relief</u>. If you paid (by direct payment, offset or otherwise) during any quarter an amount greater than the fixed quarterly payment (reflecting principal plus interest) set forth on the face of the original DAC Note you executed

---

[1]     Capitalized terms have the meaning set forth in the Settlement Agreement unless otherwise noted. The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; and the "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001." The Settlement Agreement defines "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

("Quarterly Overpayment"), then you are eligible to receive the net amount of your Quarterly Overpayments (overpayments minus underpayments), subject to paragraph 2.A.(2)c) below.

The calculation of Quarterly Overpayments assumes that interest continued to accrue through **[the close of the last quarter]**. To illustrate:

- A hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $10,000, but each quarter paid $11,000, would receive a true-up payment in the amount of his net Quarterly Overpayments as of **[the date that Supplemental Relief is calculated]** (i.e., $1,000 times the number of quarters that would have elapsed by **[that date]**).

- Assuming that 21 quarters elapsed by **[the date that Supplemental Relief is calculated]**, a hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $15,000, but (i) paid $17,000 per quarter (i.e., $2,000 over the fixed quarterly payment) for 18 quarters, and (ii) paid only $14,000 per quarter (i.e., $1,000 under the fixed quarterly payment) for 3 quarters, would receive a true-up payment in the amount of his net Quarterly Overpayments as of **[the date that Supplemental Relief is calculated]** of $33,000 (i.e., $36,000 minus $3,000).

If you are eligible for a True-Up payment under this paragraph, and, prior to April 10, 2006, you paid all amounts due under your DAC Note, your True-Up payment has been calculated as of the date your DAC Note was paid in full.

        b)      Set-Off Supplemental Relief. To the extent that on or after May 1, 2005, Allmerica used or applied commissions or sums other than Trail Commissions to cover or reduce a shortfall between your quarterly DAC Note payments and the Trail Commissions payable in any given quarter ("Set-Offs"), then you are eligible to receive the aggregate amount of such Set-Offs that were used or applied during the period from May 1, 2005 to **[the date of this Notice]**, subject to paragraph 2.A.(2)c) below.

        c)      No Entitlement to Both True-Up and Set-Off Supplemental Relief. If you qualified for a payment under both the True-Up Supplemental Relief and the Set-Off Supplemental Relief, consistent with the Settlement Agreement the Court approved, you nonetheless have received only one form of Supplemental Relief (not both), which is the form of the Supplemental Relief that provides you with the greater payment.

## C.    Breakdown of Supplemental Relief

The following chart contains a breakdown of the Supplemental Relief, if any, to which you are entitled under the settlement:

- 3 -

| NAME | TRUE-UP SUPPLEMENTAL RELIEF | SET-OFF SUPPLEMENTAL RELIEF | AMOUNT ENCLOSED |
|------|------|------|------|
|  |  |  |  |

### 3.    TAX CONSEQUENCES

Your receipt of settlement benefits could have tax consequences for you.  No opinion concerning the tax consequences of any payments, contributions or credits provided through the settlement is given or will be given by Allmerica, Allmerica's Counsel or Lead Counsel.  *You should consult your own tax advisor to determine any federal, state, local or foreign tax consequences of the receipt of benefits in your particular circumstances.*

### 4.    COURT-ORDERED PROHIBITION AGAINST OTHER LAWSUITS

The Court has permanently enjoined you and all other Class Members who have not been excluded from the Class (and all persons acting on behalf of you and any Class Members who have not been excluded from the Class) from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto; and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto.

### 5.    HOW TO GET FURTHER INFORMATION

This Notice is only a summary of the Settlement Agreement, which is a more detailed legal document.  The full Settlement Agreement, the Court's Final Order and Judgment, the Class Action Complaint, Allmerica's Counterclaims and other papers and Court orders pertaining to this case are on file with the Clerk of the Court, which you may inspect at the Clerk's Office, Room ___, Harold D. Donohue Federal Building & Courthouse, 595 Main Street, Worcester, Massachusetts 01068 any time during normal business hours, Monday - Friday, 8:30 a.m. to 5:00 p.m., EST.

**DO NOT CALL THE COURT OR THE CLERK OF COURT.**

[Dated]

_____, Clerk
United States District Court
For the District of Massachusetts

- 4 -