IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:04-cv-40077-FDS |
| v. | § § | |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP. | § § § § § | |
| Defendants. | § | |

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE
AWARD AND PLAINTIFFS' COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES**
_____

Stephen L. Hubbard
Robert W. Biederman (BBO No. 562279)
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001
*slhubbard@hblawfirm.com*
*rwbiederman@hblawfirm.com*

Nancy Freeman Gans (BBO No. 184540)
**MOULTON & GANS, P.C.**
55 Cleveland Road
Wellesley, MA 02481
Telephone: (781) 235-2246
Facsimile: (781) 239-0353
*nfgans@aol.com*
ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

**TABLE OF CONTENTS**

Table of Authorities .......................................................... ii

INTRODUCTION ............................................................. 1

Statement of Facts ............................................................ 3

    A.    The Experience of Plaintiffs' Counsel ................................. 3  
    B.    Retention By Plaintiffs ............................................ 3  
    C.    The Highly Contested Lawsuit ...................................... 4  
        1.    Pre-Filing Investigation ...................................... 4  
        2.    Filing of the Lawsuit ........................................ 4  
        3.    Motion to Dismiss .......................................... 4  
        4.    Defendants' Answer and Counterclaim ......................... 4  
        5.    Discovery Requests ......................................... 5  
        6.    Discovery Motions ......................................... 5  
        7.    Production of Documents and Depositions ...................... 6  
        8.    Plaintiffs' Motion for Class Certification ........................ 6  
    D.    Settlement Negotiations ............................................ 7  
    E.    Principal Benefits And Value of the Proposed Settlement ................. 8  
    F.    Time And Risk Undertaken by Plaintiffs' Counsel ...................... 9  
    G.    Total Reasonable and Necessary Expenses Incurred by Plaintiffs .......... 9  
    H.    The Time And Risk Undertaken by Plaintiffs and Class Representatives .... 10

ARGUMENT ................................................................ 10

    I.    Attorneys' Fees Should Be Approved ................................ 10  
        A.    The Court Should Use the Percentage of Fund Methodology In  
            Analyzing the Fee Request .................................. 10  
        B.    The POF Method Fully Supports the Award in this Case ........... 12  
            1.    The Size of the Fund Created and the Number of Persons  
                Benefitted ........................................... 12  
            2.    The Presence of Objections ............................ 12  
            3.    Skill and Efficiency of Counsel ......................... 13  
            4.    Complexity and Duration of Litigation ................... 13  
            5.    Financial Risks to the Attorneys ........................ 13  
            6.    Amount of Time Devoted to the Case .................... 13  
            7.    The Awards In Similar Cases ........................... 14  
            8.    Lodestar Check ...................................... 14

II.    Plaintiffs' Request for Incentive Awards Should Be Approved ................. 15

CONCLUSION ............................................................. 15

**TABLE OF AUTHORITIES**

*Bussie v. Allmerica Fin. Corp.*, No. Civ. A. 97-40204-NMG,
 1999 WL 342042 (D. Mass. May 19, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 11,12,14

*Cullen v. Whitman Medical Corp.,* 197 F.R.D. 136 (E.D.Pa. 2000) . . . . . . . . . . . . . . . 12

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 177 F.R.D. 54
 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 989 F. Supp.375
 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

*In re Lupron Marketing And Sales Practices Litigation*,
 01-CV-10861-RGS, 2005 WL 2006833 (Aug. 17, 2005) . . . . . . . . . 11,12,14,15

*In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005) . . . . . . . . . . . 11,12,14

*In re Thirteen Appeals*, 56 F.3d 295 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 10,14

*Weinberger v. Great Northern Nekoosa,* 925 F.2d 518 (1st Cir. 1991) . . . . . . . . . . . . . 11

**INTRODUCTION**

The Stipulation of Settlement ("Proposed Settlement") provides substantial benefits to the Class of 132 participants in the Agent In-Force Annuity Trail Commission Program ("Trail Program"). The total available benefits to the Class exceed $13.9 million which includes the cancellation of approximately $13 million in outstanding notes ("DAC Notes"), refunds of approximately $445,000 in set-offs and refunds of approximately $491,000 in accelerated Note payments.

The Proposed Settlement is the product of extensive arm's-length negotiations that began in earnest following the December 14, 2005 class certification hearing in this Court and culminated in its execution on May 23, 2006. Preceding these discussions, the litigants engaged in a contentious and hard-fought case between highly-experienced counsel on both sides involving complex liability and damage issues. Defendants retained two competent law firms to represent their interests and fully asserted every defense. The parties engaged in extensive discovery including depositions of each Plaintiff, document production, written discovery and third party subpoenas.

Based upon the significant benefits provided by the Proposed Settlement and the time-consuming and expensive efforts expended, Plaintiffs and Plaintiffs' Counsel make this Motion for Incentive Awards and Attorneys' Fees, respectively. Subject to the Court's approval, Defendants have agreed to pay these proposed awards, which result in no direct or indirect diminution in the Proposed Settlement relief to the Class. Plaintiffs' Counsel undertook this case on a contingent fee arrangement, and thus, have received no payment throughout the duration of this case.

The proposed attorneys' fees are in the amount of $2.6 million, inclusive of expenses incurred in this action. Those expenses total approximately $75,000 through June 30, 2006. Consistent with the decisions in this district, the percentage of fund methodology is the preferred means to evaluate an attorneys' fees request in connection with a class action settlement. In light

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 2

of the settlement benefits of approximately $13.9 million, the requested fee is approximately 18% of those benefits, substantially below the accepted range of 25% to 33 1/3% of the fund in this district. Some courts in this district also perform a so-called lodestar check to determine the relationship to the requested fee to the total lodestar in the case. Plaintiffs' Counsel's total lodestar of $2,181,575 through June 30 is nearly equal to the fee request and far less than the accepted range of two times lodestar. Apart from satisfying the numerical benchmarks, the fee request satisfies the other cited factors in evaluating class fee awards, including the skill and efficiency of counsel, complexity and duration of the litigation, financial risk to counsel, and amount of time devoted to the case.

The proposed $60,000.00 incentive awards to Plaintiffs as Class Representatives ($20,000.00 each) will be paid by Defendants subject to this Court's approval. Plaintiffs devoted a significant amount of time and expense in prosecuting this lawsuit as a class action and were involved in all facets of this case. These three individuals agreed to serve as Class Representatives, realizing that it would result in their devoting substantial time away from their individual businesses. As three of the largest Note holders, they could have pursued their own individual claims instead of pursuing class claims. Plaintiffs paid their pro rata share of expenses in this case. They collectively located and copied over 17,000 pages of documents, reviewed drafts of complaints and answers, and class memoranda, prepared for and sat for full-day depositions, and provided ongoing assistance in the investigation and evaluation of the claims and counterclaims in this action. They continually monitored the status of the case and the settlement negotiations. Consistent with the authority in this district, these efforts justify the proposed incentive awards. As with the attorneys' fees, the proposed incentive awards, if approved, will not diminish in any way the Settlement benefits to the Class.

**Statement of Facts**

  A.  **The Experience of Plaintiffs' Counsel.**

Plaintiffs' Lead Counsel, Hubbard & Biederman, LLP ("H&B"), is a highly-experienced "AV-rated" firm concentrating its practice in the area of complex litigation and class actions. *See* Declaration ("Declar.") of Stephen L. Hubbard In Support of Plaintiffs' Motion for Incentive Awards and Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses ("Hubbard Declar."), ¶ 3 & Exhibit 1 attached thereto. This experience includes nationwide certification of contested class actions, as well as numerous, substantial settlements including numerous class actions against insurance companies, including a significant role in *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997). *Id.* Plaintiffs' Local Counsel, Moulton & Gans, P.C. ("M &G") has substantial experience in class actions. *See* Declaration of Nancy Freeman Gans ("Gans Declar.") & Exhibit 1 attached thereto.

  B.  **Retention By Plaintiffs.**

A group of former agents of Defendants approached H&B to represent them in connection with the Trail Program and DAC Notes. *See* Hubbard Declar., ¶ 4. H&B agreed to represent these individuals on a standard contingent fee basis of forty percent (40%) of the gross recovery. *See* Hubbard Declar., ¶ 5 and Exhibit 2 thereto. In addition, each client agreed to pay their pro rata share of expenses in the lawsuit based upon the size of their original DAC Notes. *Id.* The engagement letters provided that the action was to be brought as a class action. *Id.*

  C.  **The Highly Contested Lawsuit**

    1.  **Pre-Filing Investigation.**

H&B undertook an extensive investigation that involved interviews with Plaintiffs and other participants in the Trail Program, review of voluminous documents provided by Plaintiffs and other participants, and Defendants' extensive public filings. *See* Hubbard Declar., ¶6.

### 2. Filing of the Lawsuit.

After the preliminary investigation, Plaintiffs filed the action as a class action and offered to serve as class representatives. *See* Hubbard Declar., ¶ 7. In the First Amended Complaint, Plaintiffs asserted claims based upon the breach of the implied covenant of good faith and fair dealing, and MGL ch. 93A.

### 3. Motion to Dismiss.

On August 11, 2004, Defendants filed a Motion to Dismiss and Memorandum In Support Thereof challenging the legal sufficiency of each claim asserted by Plaintiffs. *See* Hubbard Declar., ¶ 9. Following extensive Opposition by Plaintiffs and Reply Memorandum by Defendants, the Court on April 21, 2005, in its comprehensive Memorandum and Order, denied the Motion to Dismiss. *See* Hubbard Declar., ¶10.

### 4. Defendants' Answer and Counterclaim.

On May 12, 2005, Defendants filed their Answer and Counterclaim. *See* Hubbard Declar., ¶ 11. Defendants denied all material allegations of Plaintiffs' First Amended Complaint, and asserted multiple affirmative defenses and counterclaims against Plaintiffs and the then-putative class, including breach of contract of the Trail Program, Broker's Agreement, and Career Agent's Agreement. *Id*. Generally, these claims were based upon Plaintiffs' and putative Class members' replacement of annuities in and outside the Trail Program. *Id*. Additionally, Defendants sued Plaintiffs and putative class members for alleged default of their DAC Notes. *Id*. In their Answer

filed on June 2, 2005, Plaintiffs denied all material allegations of the Counterclaim. *See* Hubbard Declar., ¶12..

### 5. Discovery Requests.

Following entry of the Scheduling Order on June 29, 2005, the parties exchanged initial disclosures. *See* Hubbard Declar., ¶15. Plaintiffs commenced discovery by serving request for production, interrogatories, and request for admissions on all Defendants that encompassed the merits of the claims and counterclaims as well as class certification issues. *See* Hubbard Declar., ¶16. Following the announcement of Defendants' sale to The Goldman Sachs Group, Inc., Plaintiffs served a subpoena on that entity seeking documents relating to the sale. *See* Hubbard Declar., ¶23. Goldman Sachs objected to this request. *See* Hubbard Declar., ¶ 24. Over the next month, Defendants also proceeded with discovery, including requests for production on Plaintiffs that also included merits and class certification issues, and broad subpoenas on 3 insurance companies (AXA, Lincoln National, Pacific Life), and Plaintiff Speakman's NASD lawyer (Rodney Vincent) and brokerage firm (Main Street). *See* Hubbard Declar., ¶¶17, 20,22. Defendants noticed each of Plaintiffs' depositions. *See* Hubbard Declar., ¶ 19.

### 6. Discovery Motions.

There were extensive motions made by both sides concerning discovery issues. The initial set of motions were filed in early September 2005 concerning the date and locations of Plaintiffs' depositions, Defendants' request for an extension of the class certification briefing and hearing, and protective order to restrict Defendants' ability to voluntarily turn over Plaintiffs' confidential documents to regulatory agencies without prior notice to Plaintiffs. *See* Hubbard Declar., ¶¶ 25-28. On October 5, the Court held a hearing on these motions and resolved them by extending the certification hearing by a month instead of the two months requested by Defendants, and providing

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 6

certain protection Plaintiffs sought concerning Defendants' voluntary turnover of Plaintiffs' confidential documents to regulators. *See* Hubbard Declar., ¶ 29(A)-(B). With the Court's assistance, the parties agreed to the date and location of Plaintiffs' depositions. *See* Hubbard Declar., ¶ 29(C).

On October 27, 2005, Plaintiffs filed a Motion to Compel concerning Defendants' failure to produce certain documents. *See* Hubbard Declar.¶ 30. On December 8, 2005, a hearing was held before Magistrate Judge Swartwood at which the parties agreed that Defendants would produce certain documents for the upcoming class certification hearing on December 14. *See* Hubbard Declar., ¶ 31.

### 7. Production of Documents and Depositions.

In response to the document requests and subpoenas, a total of approximately 80,000 pages of documents was produced. *See* Hubbard Declar., ¶ 35. Of these amounts, Plaintiffs produced 17,254 pages; third parties produced nearly 30,000 pages; and Defendants produced over 32,200 pages. *See* Hubbard Declar., ¶¶ 32-34.

Each Plaintiff gave a full-day deposition. *See* Hubbard Declar., ¶ 36.

### 8. Plaintiffs' Motion for Class Certification.

Plaintiffs filed their Motion for Class Certification on July 22, 2005. *See* Hubbard Declar., ¶ 37. Extensive briefing occurred on this Motion with the submission of a large evidentiary record developed through discovery. *Id*. A three-hour hearing was conducted on December 14, 2005 and the Court took the Motion under advisement.

### D. Settlement Negotiations.

The Hubbard Declaration details the settlement negotiations that occurred in the case. *See* Hubbard Declar., ¶ 39.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 7

The early discussions were conceptual in nature, and ended when the Court overruled the Motion to Dismiss. *See* Hubbard Declar., ¶¶ 40-44.

The arm's-length negotiations that resulted in the Proposed Settlement occurred after December 14, 2005 and involved two basic stages: <u>first</u>, negotiation of a detailed Memorandum of Understanding ("MOU") entered into on April 10, 2006 which required eight drafts, including the initial exchange of letters, numerous telephone conferences, and a meeting in Dallas; and <u>second</u>, negotiation of the Stipulation of Settlement that involved several revised drafts, numerous telephone conferences, and a meeting in Boston. *See* Hubbard Declar., ¶¶ 45-54. At no time during those negotiations was the amount of attorneys' fees or incentive awards raised. *See* Hubbard Declar., ¶¶ 49, 55. Rather, the Proposed Settlement provided that the parties in good faith would seek to agree on an amount for which Plaintiffs' Counsel may submit an application to the Court, and failing agreement, any such award would be determined by the Court. *See* Hubbard Declar., ¶ 54.

The final negotiations between the parties concerned the amount of attorneys' fees and incentive awards that Defendants would agree to pay subject to the Court's approval. *See* Hubbard Declar., ¶ 55. These discussions involved 11 teleconferences that resulted in Defendants agreeing, subject to this Court's approval, to pay a total of $60,000 in incentive awards to the Plaintiffs as Class Representatives, and $2.6 million of attorneys' fees, inclusive of expenses to Plaintiffs' Counsel. As with the Settlement, these negotiations were arms length. *See* Hubbard Declar., ¶¶ 56-58.

    **E.**    **Principal Benefits And Value of the Proposed Settlement.**

There are four principal benefits of the Proposed Settlement: (i) Cancellation of the DAC Notes; (ii) Set-Off Supplemental or Cash Relief; (iii) True-Up Supplemental or Cash Relief; and (iv) Mutual Release. *See* Hubbard Declar., ¶¶ 59-62.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 8

The Proposed Settlement terminates the Trail Program and cancels all outstanding indebtedness in the form of the DAC Notes. *See* Hubbard Declar., ¶ 59. All Class Members are eligible for this relief, which, as of June 30, 2006, relieves the Class of a total of approximately $13 million in outstanding debt. *See* Hubbard Declar., ¶ 63.

The cash set-off relief provides refunds to those Class Members whose commissions outside the Trail Program were offset since May 1, 2005, to reduce shortfalls on quarterly DAC Note payments. *See* Hubbard Declar., ¶ 60. These involved situations where the commissions within the Trail Program were inadequate to meet the quarterly Note payment. *Id.* As of June 30, 2006, these offsets were approximately $445,000, and 67 Class Members qualified for this cash relief. *See* Hubbard Declar., ¶64.

The true-up cash relief provides payments to those individuals who accelerated their Note payments in an amount greater than the originally-scheduled quarterly payments. *See* Hubbard Declar., ¶ 61. As of June 30, 2006, the approximate amount of this relief is $491,000, and 20 Class Members qualified for this relief. *See* Hubbard Declar., ¶ 65. Class Members who are eligible for both the set-off and true-up relief can receive only the greater of the two. *See* Hubbard Declar., ¶ 65. The above numbers reflect the effect of that provision. *Id*.

The Proposed Settlement has broad mutual releases that result in the dismissal with prejudice of the claims and counterclaims. *See* Hubbard Declar., ¶62. There are, however, certain carve-outs for the release that preserve claims in connection with pension and retirement benefits, commissions outside the Trail Program, and claims in *Ries v. Allmerica Financial Corp.*, No. GD 04:9786 pending in the Court of Common Pleas, Allegheny County, Pennsylvania, that was removed to and then remanded by this Court. *Id.* While the releases in favor of the Class have substantial value, Plaintiffs have not quantified this value. *See* Hubbard Declar., ¶ 66.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 9

In summary, the benefits of the Proposed Settlement as of June 30, 2006, are approximately $13.9 million. *See* Hubbard Declar., ¶ 67.

F.     **Time And Risk Undertaken by Plaintiffs' Counsel.**

Through June 30, 2006, the total lodestar (time x hourly rate) of Plaintiffs' Counsel is $2,181,575. *See* Hubbard Declar., ¶¶ 68-71 & Exhibit 3 thereto, and Gans Declar.,¶ 4 & Exhibit 2 thereto. The hourly rates of Plaintiffs' Counsel are well within the customary rates within this judicial district. *See* Gans Declar., ¶ 5. Plaintiffs' lodestar and expenses will increase as a result of continued questions from the Class, preparation for and attendance at the Fairness Hearing in August, 2006, and work required during the implementation of the Settlement.

G.     **Total Reasonable and Necessary Expenses Incurred by Plaintiffs.**

Through June 30, 2006, Plaintiffs' total unreimbursed reasonable and necessary expenses are $74,911.05. *See* Hubbard Declar., ¶¶ 74-76 & Exhibit 4 thereto & Gans Declar., ¶ 4 & Exhibit 2 thereto.

H.     **The Time And Risk Undertaken by Plaintiffs and Class Representatives.**

Plaintiffs agreed to file the lawsuit, and serve as class representatives knowing that it would impose substantial demands on them that would detract from their business and personal life. *See* Hubbard Declar., ¶ 72. Plaintiffs devoted substantial time and effort to prosecuting this case as a class action instead of simply asserting their individual claims.

## ARGUMENT

I.     **Attorneys' Fees Should Be Approved.**

   A.     **The Court Should Use the Percentage of Fund Methodology In**

**Analyzing the Fee Request.**

The First Circuit has noted that in connection with common funds or benefits provided in class-wide settlements, courts have the discretion to use the percentage of fund or lodestar methodology in awarding attorneys' fees. *See In re Thirteen Appeals*, 56 F.3d 295,306 (1st Cir. 1995). The focus of the percentage of fund (POF) methodology excuses "the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended" and "permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." *Thirteen Appeals*, 56 F.3d at 307 (cit. omitted). Conversely, the lodestar methodology requires such an analysis of the "number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Thirteen Appeals*, 56 F.3d at 305.

The POF method is desirable because it "enhances efficiency, or put in reverse, using the lodestar method in such a case encourages inefficiency." *Thirteen Appeals*, 56 F.3d at 307. Moreover, "because the POF technique is result-oriented rather than process oriented, it better approximates the workings of the marketplace." *Id.*[1] The Court noted that the only advantage of the lodestar method is that "it may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources." *Id*. In another situation, "if the likely recovery is relatively small," the use of the POF method may discourage firms from taking such cases. *Id*.

---

[1] See also, *Duhaime v. John Hancock Mutual Life Ins. Co.*, 989 F. Supp.375, 377 (D. Mass. 1997)("The POF method resembles contingent fee arrangements often made between attorneys and clients in cases like this– the greater the value secured for the class, the greater the fee earned by class counsel, and conversely, the smaller the value created for the class, the smaller the fee award.").

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 11

Applying these standards in class-wide settlements, such as the instant case, that involve substantial recoveries and have been preceded by years of litigation, courts have applied the POF method. *See, e.g., Duhaime*, 989 F. Supp. at 377; *Bussie v. Allmerica Fin. Corp.*, No. Civ. A. 97-40204-NMG, 1999 WL 342042 at 2 (D. Mass. May 19, 1999); *In re Lupron Marketing And Sales Practices Litigation*, 01-CV-10861-RGS, 2005 WL 2006833 at 3 (Aug. 17, 2005); and *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 77-78 (D. Mass. 2005). The fact that Defendants have agreed to pay the fee, and that it is not taken out of the fund, has not affected the decision to use the POF method. *See Duhaime*, *id*; *Bussie, id.*[2]

**B.    The POF Method Fully Supports the Award in this Case.**

In applying the POF method, certain courts in this district examined multiple factors. *See, e.g., Lupron*, 2005 WL 2006833 at 3; *Relafen*, 231 F.R.D. at 79 (in accord). These factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence of absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

---

[2] The agreement that a defendant pay the fee is referred to as a "clear sailing agreement", and does require "close judicial scrutiny" to assure that "the principal evils identified by the Court of Appeals [in *Weinberger v. Great Northern Nekoosa,* 925 F.2d 518, 524(1st Cir. 1991)] as lurking in 'clear sailing' fee agreements–extortion and collusion are not present in this case." *Duhaime*, 989 F. Supp. at 379. As in *Duhaime*, the Hubbard Declar., ¶¶49,55, demonstrates "that the separate, arm's length negotiation of attorneys' fees after the other substantive terms of the settlement had been resolved convincingly negative any suspicions that might arise about those sorts of problems." *Id*.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 12

*Id.*[3]

### 1.    The Size of the Fund Created and the Number of Persons Benefitted.

The Class benefits are approximately $13.9 million including approximately $13 million in note cancellation, $445,000 in cash set-off relief, and $491,000 in cash true-up relief. All Class Members are eligible for the $13 million debt relief. *See* Hubbard Declar., ¶ 59; *see also, Cullen v. Whitman Medical Corp.*, 197 F.R.D.136, 147 (E.D. Pa. 2000)(in class settlement, amount of debt forgiveness was included as part of percentage of fund analysis for purposes of determining award of attorneys' fees). Additionally, over one-half of the Class Members are eligible for the Set-Off cash relief and 20 are eligible for the True-Up cash relief. *See* Hubbard Declar., ¶ ¶64,65

### 2.    The Presence of Objections.

As of the filing of this Memorandum, there have been no objections to the proposed Settlement. Plaintiffs will supplement this Memorandum after the deadline.

### 3.    Skill and Efficiency of Counsel.

Plaintiffs' Counsel have efficiently and skillfully prosecuted this lawsuit. Hubbard & Biederman, LLP two partners, Steve Hubbard and Rob Biederman, participated in virtually every hearing, discovery and contact with Defendants in this lawsuit. They have years of class action, insurance and insurance litigation experience that was necessary for the pursuit of these claims as class claims.

---

[3] In *Duhaime*, 989 F. Supp. at 377-78, the Court looked primarily at the value of the benefits provided to the class, and in *Bussie*, 1999 WL 342042 at 2, the Court looked at the value of the benefits and awards in similar cases.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 13

### 4. Complexity and Duration of Litigation.

This case has spanned over 2 years, and has involved complex issues including the scope of the implied covenant of good faith as applied to the facts of this case; application of MGL ch. 93A; and theories of damage recovery.

### 5. Financial Risks to the Attorneys.

Plaintiffs' Counsel undertook this case on a contingent basis. Defendants are large financial enterprises with substantial assets and ability to defend their interests. Defendants' primary Counsel is a large national law firm and employed experienced litigators to aggressively advocate the position of Defendants. Accordingly, Plaintiffs' Counsel faced substantial financial risk throughout this lawsuit.

### 6. Amount of Time Devoted to the Case.

As the Hubbard Declar. reflects there have been multiple proceedings in this Court preceding settlement, including motion to dismiss, multiple discovery disputes, and class certification, which required substantial time and involvement on the part of Plaintiffs' Counsel, especially Hubbard & Biederman's two partners. Contemporaneous records maintained reflect over 4,500 hours of lawyers' time devoted to this case. *See* Hubbard Declar., ¶¶ 69-71 & Exhibit 3 thereto, and Gans Declar., ¶ 4 and Exhibit 2 thereto.

### 7. The Awards In Similar Cases.

Recent opinions from this district reflect that for class settlements under $100 million, a percentage fee ranging from 25% to 33 1/3% has been approved and is appropriate. *See Relafen*, 231 F.R.D. at 81 (approving attorneys' fee award of 33 1/3% of fund of $67 million as consistent with awards in other cases); *Lupron*, 2005 WL 2006833 at 7 (approving attorneys' fee and cost

award of 25% of fund of $95 million). [4] Based upon a $13.9 million settlement, the requested fee award, exclusive of expenses, is approximately 18%, which is well below percentages approved in other cases.

### 8. Lodestar Check.

The First Circuit does not require a district court to check the requested POF against the lodestar to determine reasonableness. *See Thirteen Appeals*, 56 F.3d at 307. Some courts in this district, however, have engaged in such a cross-check, and held that multiples exceeding 2.0 are acceptable. *See, e.g., Relafen*, 231 F.R.D. at 82 ("A multiplier of 2.02 is appropriate."); *Lupron*, 2005 WL 2006833 at 6 (multiplier of 1.41 approved). In the instant case, the total time billed is $2,181,575, which compared to the proposed award, net of expenses, of $2,525,088.95 results in an multiplier of approximately 1.1, far less than approved in other similar cases.

### II.     Plaintiffs' Request for Incentive Awards Should Be Approved.

In this district, courts have approved incentive awards up to $25,000 to class representatives for services performed on behalf of the class. *See Lupron*, 2005 WL 2006833 at 7. Plaintiffs submit that their requested compensation should be in the same range as that approved in *Lupron*, because of the extensive work they have undertaken in this case. As set forth above and in the Hubbard Declar., ¶73, Plaintiffs were actively involved in all facets of the case. Additionally, Plaintiffs undertook the risk of not being reimbursed for their litigation expenses including their

---

[4] In *Hancock*, 989 F. Supp. at 377-8, the requested fee that Defendants agreed to pay represented 9.3% of an estimated fund exceeding $400 million, and in *Bussie*, the amount that Defendants agreed to pay represented 7.1% of a fund estimated to exceed $108 million.

MEMORANDUM IN SUPPORT OF MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES - Page 15

$17,000 contribution to the expense retainer.  *See* Hubbard Declar., ¶ 73.  Based upon this substantial effort and involvement, the requested incentive awards should be approved.

## CONCLUSION

The parties have proposed a settlement that provides substantial relief to the Class, and brings an end to a highly-contentious lawsuit.  Defendants have agreed to pay Plaintiffs' Counsel's attorneys' fees and expenses, subject to this Court's approval, in addition to providing the settlement benefits to the Class.  The payment by Defendants of the attorneys' fees is an additional benefit to the Class by making the benefits of the Settlement available without having to deduct attorneys' fees.  The proposed fee is below the acceptable range of percentage fees and approximates the total time and expense that Plaintiffs' Counsel will have incurred in this case through the fairness hearing, final settlement date and implementation process.  Similarly, the incentive awards that Defendants have agreed to pay, subject to this Court's approval, are within the acceptable range for such awards considering the time and effort of Plaintiffs as Class Representatives and the proposed settlement benefits.  Plaintiffs request that this Court grant their Motion for Incentive Awards and Attorneys' Fees.

Respectfully submitted,

/s/ *Robert W. Biederman*
Stephen L. Hubbard
Robert W. Biederman (BBO No. 562279)
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001
*slhubbard@hblawfirm.com*
*rwbiederman@hblawfirm.com*

Nancy Freeman Gans (BBO No. 184540)
**MOULTON & GANS, P.C.**

        55 Cleveland Road
        Wellesley, MA 02481
        Telephone: (781) 235-2246
        Facsimile: (781) 239-0353
        nfgans@aol.com

        ATTORNEYS FOR PLAINTIFFS
        AND THE CLASS

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 12, 2006.

        Andrea J. Robinson, Esq.
        Jonathan A. Shapiro, Esq.
        Eric D. Levin, Esq.
        Brett R. Budzinski, Esq.
        WILMER CUTLER PICKERING HALE and DORR LLP
        60 State Street
        Boston, MA 02109
        (617) 526-5000 fax

        Brian E. Whiteley (BBO No. 555683)

SCIBELLI, WHITELEY & STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
(617) 722-6003 fax


*/s/ Robert W. Biederman*
ROBERT W. BIEDERMAN