IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | | |
|---|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04:04-cv-40077-FDS |
| v. | ) ) | |
| ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., | ) ) ) ) | ) |
| Defendants. | ) ) | |

---

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS'
MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION
FOR ATTORNEYS' FEES AND EXPENSES**

---

Stephen L. Hubbard
Robert W. Biederman (BBO No. 562279)
**HUBBARD & BIEDERMAN, LLP**
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Facsimile: (214) 857-6001
slhubbard@hblawfirm.com
rwbiederman@hblawfirm.com

Nancy Freeman Gans (BBO No. 184540)
**MOULTON & GANS, P.C.**
55 Cleveland Road
Wellesley, MA 02481
Telephone: (781) 235-2246
Facsimile: (781) 239-0353
nfgans@aol.com
ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

I, Stephen L. Hubbard, depose and state as follows:

1.      My name is Stephen L. Hubbard.  I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I am a partner in the Law Firm of Hubbard & Biederman, L.L.P.  I am submitting this declaration in support of Plaintiffs' Motion for Incentive Awards, and Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses.  My Declaration will discuss (i) the experience of my firm in handling class actions and complex litigation; (ii) the retention of my firm in this case, and the terms of that contingent engagement; (iii) the details of this litigation, including the pre-filing investigation, pleadings filed, the extensive discovery requested, the discovery disputes, the substantial discovery undertaken, and the motion for class certification; (iv) settlement negotiations; (v) the principal benefits of the Stipulation of Settlement ("Proposed Settlement"); (vi) the value of the Proposed Settlement; (vii) the time and risk undertaken by Plaintiffs' Counsel; (viii) the time and risk undertaken by Plaintiffs and Class Representatives; (ix) Plaintiffs' reasonable and necessary expenses incurred in this case; (x) the proposed attorneys' fee in light of the factors relating to that request; and (xi) incentive awards requested by Plaintiffs and Class Representatives in light of the factors relating to that request. This case involved highly-contested issues between the parties who were represented by very experienced firms in class and complex litigation that aggressively represented the respective interests of their clients.  During the settlement negotiations, the same arm's-length advocacy was present in the protracted negotiation of nearly every settlement provision. The Proposed Settlement is a successful resolution of the dispute, because it provides the

core relief that motivated Plaintiffs to bring the lawsuit: termination of the Trail Program and the cancellation of their promissory notes.

I.    **Experience of Plaintiffs' Counsel**.

3.    Hubbard & Biederman, L.L.P. ("H&B") is a Dallas, Texas based "AV- rated" commercial and consumer litigation firm experienced in complex litigation, with a concentration in class action litigation primarily involving the insurance industry. My partner, Rob Biederman, and I have handled complex litigation for over 27 years, and have been actively involved in prosecution of class actions for more than 10 years. The firm has successfully represented plaintiffs in numerous class actions throughout the country usually involving insurance companies, including a significant role in *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997). Our most recent class action cases are as follows:

- On June 5, 2006, in *Daniel Silva v. Provident Associates Funding, L.P. et al*, Case No. CIV 443418, pending in the Superior Court of the State of California, In and For the County of San Mateo, H&B successfully argued a motion for nationwide certification involving claims of improper late charges based upon, among other things, breach of the implied covenant of good faith and fair dealing, and California consumer protection statutes, *Cal. Bus. & Prof. Code* 17200 et seq. and *Civil Code* 1750 et seq.;

- During November 2004 in *Guy Dixon, Trustee for Gene B. Dixon, Jr. v. Security Life of Denver Insurance Company, et al.; Civil Action No. 03-D-806-(MJW),* the United States Federal District Court in Denver, Colorado approved a nationwide class settlement that provided over $27 million in settlement benefits which resulted in the class recovering more than 100% of the actual damages claimed in a breach of contract and Colorado consumer fraud statutory action;

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 3

- In July 2004, the Chancery Court in *Robert Gelfman v. Weeden Investors L.P. et al.*, 859 A2d 89 (Del. Ch. 2004), issued its opinion following trial on the merits in favor of a nationwide class that then resulted in a settlement approved during September 2004 that provided substantially the relief to the class as set forth in the Court's opinion.

The firm's resume is attached as Exhibit "1." We retained as local counsel, Moulton & Gans, P.C. ("M&G"), a Boston-based firm, with substantial class and liaison counsel experience. Their firm resume is attached as to the Declaration of Nancy Freeman Gans ("Gans Declar.") filed contemporaneously with my Declaration.

## II.    Retention by Plaintiffs of H&B.

4.    In early 2004, a group of former agents of Defendants approached H&B to represent them concerning the In-Force Annuity Trail Commission Agreements (Trail Program") that included the execution of Promissory Notes ("DAC Notes"). After our initial investigation, H&B entered into engagement letters with several individuals to represent them in connection with their Trail Program claims ("Engagement Letters"). *See* Exhibit 2, Exemplar engagement letter between H&B and Plaintiff Mark Robare. During the entire course of this lawsuit, H&B has responded to frequent inquiries from these clients about the progress of the case, as well as initiating communications to update them about the lawsuit.

5.    The Engagement Letters provide, among other things, that H&B would prosecute the case as a class action. We agreed to undertake the representation on a standard contingent basis of forty (40%) of the gross recovery, or such fee awarded by the Court. Each client agreed to pay their pro- rata share of expenses in the lawsuit based upon the size of their original DAC Notes.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 4

III.     **The Highly Contested Lawsuit.**

    A.     **Pre-Filing Investigation**.

    6.     Prior to bringing the lawsuit, H&B investigated the claims against Defendants, including extensive interviews with Plaintiffs and other participants in the Trail Program, a review of documents provided by Plaintiffs and other participants including the Trail Program documents, correspondence and memoranda from Defendants, and extensive public filings made by Defendant Allmerica Financial Corp.   H&B also researched various legal theories and analyzed forum choices before filing the Complaint.

    B.     **Filing of the Lawsuit**.

    7.     On May 20, 2004, Plaintiffs  filed their Original Class Action Complaint in which they agreed to represent the putative class in connection with the Trail Program claims.   The lawsuit arose out of Defendants' unilateral withdrawal from the annuity business beginning in the Fall of 2002 that culminated in the termination of the entire sales force by the end of 2003 and ultimately the sale of the entire annuity business to The Goldman Sachs Group in August 2005.   Plaintiffs contend that when they entered into the Trail Program in early 2001, it was their reasonable expectation that Defendants would remain in and support this business for the 20-year duration of the Trail Program.   Based upon Defendants' representations, Plaintiffs reasonably believed that the trail commissions generated by the annuities in the Trail Program would be more than adequate to pay  the  DAC  Notes.    Contrary  to  these  expectations,  Plaintiffs  maintain  that  Defendants' abandonment of the annuity business created substantial difficulties in preserving the annuity

business in the Trail Program.  Plaintiffs' Complaint sought damages and cancellation of the DAC Notes due to Defendants' alleged wrongful conduct.

8.      On June 23, 2004, Plaintiffs filed a First Amended Complaint that, in part, dismissed without prejudice the individual defendants named in the Original Complaint as a result of entering into a Tolling Agreement with those defendants. The First Amended Complaint also asserts claims for breach of implied duty of good faith and fair dealing, and MGL ch. 93A.

**C.      Motion to Dismiss**.

9.      On August 11, 2004, Defendants filed a Motion to Dismiss and Memorandum In Support thereof that challenged the legal sufficiency of each claim asserted by Plaintiffs. On September 29, 2004, Plaintiffs filed their Opposition. On November 1, 2004, Defendants filed their Reply Memorandum.

10.      On April 21, 2005, this Court issued its comprehensive Memorandum and Order that denied Defendants' Motion to Dismiss.

**D.      Defendants' Answer and Counterclaim.**

11.      On May 12, 2005, Defendants filed their Answer and Counterclaims.  Defendants denied all material allegations in the First Amended Complaint. Additionally, Defendants asserted numerous affirmative defenses, including set-off for commissions received by Plaintiffs and putative class members for replacing annuities in the Trail Program.  The Counterclaim alleged breach of contract of the Trail Program, Career Agent's Agreement, and Broker's Agreement arising out of the alleged replacement by Plaintiffs and putative class of annuities in and outside the Trail Program.

Defendants also sued Plaintiffs and putative class members for alleged defaults under the DAC Notes.

12.     On June 2, 2005, Plaintiffs filed their Answer and Affirmative Defenses to Defendants' Counterclaims in which they denied any liability to Defendants.

**E.     Scheduling Order**.

13.     On June 21, 2005, the parties filed their Joint Statement Pursuant to L.R. 16.1 in which they each proposed deadlines for discovery, amendment of pleadings, designation of experts, and class certification.  Except for class certification, the parties' deadlines were 6 months apart with Plaintiffs urging the earlier cut-off dates.  As to class certification, the parties agreed to a schedule which provided for Plaintiffs' filing their Motion for Class Certification on July 22, 2005, and subsequent dates for opposition and reply memoranda.

14.     On June 29, 2005, the Court conducted a scheduling hearing and entered a Scheduling Order.  Generally, the Court assigned deadlines that were midway between Plaintiffs' and Defendants' proposed dates, and adopted the parties' class certification schedule.  Additionally, the Court scheduled a hearing on Plaintiffs' Motion for Class Certification for November 14, 2005.

**F.     Initial Disclosures.**

15.     In accordance with the Scheduling Order, on July 1, 2005, the parties exchanged their Initial Disclosures under Fed. R. Civ. P. 26 (a)(1).  (Plaintiffs' Initial Disclosures were attached as Exhibit I to Plaintiffs' Motion for Class Certification filed on July 22, 2005.)  Plaintiffs provided detailed calculations of their alleged damages that required extensive calculations, time, and involvement by Plaintiffs and their Counsel.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 7

G.    **Discovery Requests And Responses.**

16.    In accordance with the Scheduling Order, the first date that the parties could serve discovery was July 1, 2005.  On that date, Plaintiffs served their First Request for Production of Documents (138 requests), First Set of Interrogatories, and First Set of Request for Admissions on all Defendants.  This discovery encompassed the merits as well as class certification issues by seeking information on all aspects of Plaintiffs' claims, Defendants' affirmative defenses and counterclaims.

17.    On July 27, 2005, Defendants served their First Request for Production on Plaintiffs (51 requests), as well as subpoenas on AXA Life & Annuity Co. and Lincoln National Life Ins. Co. This discovery sought documents on the merits, as well as class certification issues, including information on Plaintiffs' specific allegations in their First Amended Complaint, communications with their clients about possible replacement of their annuities, and details pertaining to the merits of the claims and counterclaims.

18.    On August 8, 2005, Defendants filed their Responses to Plaintiffs' First Set of Interrogatories and First Set of Admissions.

19.    On August 18, 2005, Defendants served Notices of Depositions on each of the Plaintiffs for Boston, with Speakman on September 12, Robare on September 26, and Wedel on September 28, 2005.

20.    On August 25, 2006, Defendants served a subpoena on Pacific Life Insurance Company, which sought the same broad categories of documents as the subpoenas on AXA and Lincoln.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 8

21.     On August 29, 2005, Plaintiffs served their Response to Defendants' Request for Production.

22.     On August 30, 2005, Defendants served subpoenas on Main Street Securities, LLC (Speakman's current broker dealer) and Rodney K. Vincent ( Speakman's lawyer for NASD matters), seeking documents about, among other things, his communications with the NASD and replacement of Allmerica annuities.

23.     On or about September 16, 2005, Plaintiffs served a subpoena on The Goldman Sachs Group, Inc. concerning its transaction to acquire Allmerica Financial Life & Annuity Co. and First Allmerica Financial Life Insurance Company.

24.     On September 30, 2005, Goldman Sachs filed  objections to the subpoena.

**H**.     **Discovery Motions.**

25.     On September 2, 2005, Plaintiffs filed their Motion for Protective Order Concerning Scheduling of Plaintiffs' Deposition.  The thrust of this Motion concerned the dates and locations of Plaintiffs' depositions.  Defendants claimed that because Plaintiffs filed the lawsuit in the District of Massachusetts, their depositions had to be taken there, while Plaintiffs maintained for various reasons that the depositions should be taken where they reside.  Also,  Plaintiffs maintained that while they had offered multiple alternate dates for depositions, Defendants had not committed to any particular date.  Plaintiffs sought the Court to set the date and location of each deposition.

26.     On September 8, 2005, Defendants filed their Emergency Motion for Order Extending Scheduling for Class Certification Briefing seeking a 60-day extension of the dates in the

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 9

Scheduling Order based upon scheduling disputes for Plaintiffs' deposition, as well as provisions

of a confidentiality order concerning the production of documents.

27.    On September 13, 2005, Plaintiffs filed their Motion for Protective Order Concerning

Confidentiality of Documents and Information.  The reason for this Motion was a dispute concerning

a proposed provision of a Confidentiality Order allowing Defendants to voluntarily turn over any

documents that had been designated confidential by Plaintiffs to regulatory agencies without any

prior notice to Plaintiffs.

28.    Following filing of these Motions, each of the responding parties to these Motions

filed Oppositions, and each of the moving parties filed Reply Memoranda in support of their

respective Motions.

29.    On October 5, 2005, the Court held a hearing on the three motions set forth in

paragraphs 25-27 of this Declaration, and generally ruled as follows:

> A.    In connection with the Motion for Protective Order Concerning Confidentiality of Documents, the Court inserted a new paragraph into the draft Protective Order that required Defendants to notify the party producing any Confidential material ten (10) days before they intended to voluntarily produce such documents to any governmental or quasi-governmental agency to afford that party an opportunity to show cause why the Court should not permit such disclosure;

> B.    Regarding the Emergency Motion for Order Extending Scheduling for Class Certification Briefing, the Court basically extended the briefing schedule by 30 days, and rescheduled the hearing on the motion for class certification for December 14, 2005, at 2:00 p.m.; and

> C.    Concerning the Motion for Protective Order Concerning Scheduling of Plaintiffs' Deposition, the parties agreed that Plaintiffs Wedel and Robare's depositions would be taken in St. Louis and Dallas, respectively, and Plaintiff Speakman's in Boston.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 10

30.     On October 27, 2005, Plaintiffs filed a Motion to Compel to obtain certain documents from Defendants, including their approval of certain replacements in the form of "switch letters", set-offs taken by Defendants, the actual DAC Notes for all makers, communications with the NASD regarding Plaintiffs and any other participant in the Trail Program, and the documents involving the transaction with The Goldman Sachs Group, Inc. Defendants filed an Opposition and Plaintiffs a Reply in Support of their Motion.

31.     On December 8, 2005, a hearing was held before Magistrate Judge Swartwood on Plaintiffs' Motion to Compel. The parties reached an agreement as to those documents that were necessary for the pending Motion for Class Certification, and continued the hearing as to the remaining documents.

I.     **Production Of Documents.**

32.     As a result of substantial time incurred in identifying and copying non-privileged documents requested by Defendants, Plaintiffs produced the following number of pages of documents: (i) Plaintiff Speakman, 11, 293; (ii) Plaintiff Wedel, 3,947; and Plaintiff Robare, 2,014, for a total production of 17,254 pages.

33.     In response to Plaintiffs' production requests, Defendants produced over 32,200 pages of documents.

34.     In response to Defendants' third party subpoenas, those companies produced the following documents: AXA produced 5,795 pages; Lincoln National produced 1,592 pages; and Pacific Life produced 22, 458, for a total production of 29,845 pages.

35.     Approximately 80,000 pages of documents were produced in the case.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 11

**J.      Depositions of Plaintiffs**.

36.      The depositions of each of the Plaintiffs were taken by Defendants: (I) Plaintiff Wedel in St. Louis on October 24, 2005 (full day); (ii) Plaintiff Robare in Dallas on November 4, 2005 (full day); and Plaintiff Speakman in Boston on November 2 and 11, 2005 (total full day).  The depositions encompassed matters pertaining to the merits of their claims as well as Defendants' counterclaims and defenses.

**K.      Plaintiffs' Motion for Class Certification.**

37.      In connection with Class Certification, there was extensive briefing and submission of evidence. On July 22, 2005, Plaintiffs filed their Motion for Class Certification and Memorandum In Support Thereof.   On November 17, 2005, Defendants filed a lengthy Opposition to Plaintiffs' Motion; on December 6, Plaintiffs filed their Reply Memorandum In Support of the Motion; and on December 12, Defendants filed a Sur-Reply Memorandum In Opposition to the Motion. On December 14, 2005, the Court conducted a three-hour hearing on Plaintiffs' Motion.  At the end of the hearing, the Court commented, that "it was very well argued and well briefed." Transcript of 12/14/05 hearing at 89:24-5.

**IV.    Settlement Negotiations.**

38.      At all times during this case,  negotiations were at arm's length between H&B and Defendants' experienced counsel, Wilmer Cutler Hale and Dorr, LLP ("Wilmer Cutler"). Both counsel aggressively represented the interests of their respective clients.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 12

39.     There were three phases of settlement discussions: (i) those occurring before the April 21, 2005, Memorandum And Order on the Motion to Dismiss;  (ii) those transpiring between the  December 14, 2005, hearing on Plaintiffs' Motion for Class Certification and May 23, 2006, when the Proposed Settlement was executed; and (iii) attorney fee and incentive award negotiations that took place only after May 23, 2006, when the parties had agreed to the Proposed Settlement.

**A.      Pre-April 21, 2005 Settlement Discussions.**

40.     Shortly after filing the Complaint, I traveled to Boston on July 21, 2004  to explore the possibility of settlement before engaging in likely protracted and expensive litigation.  I met with Defense Counsel and General Counsel for Allmerica Financial Corp.  After general discussions, they indicated that they were going to proceed with the litigation and their Motion to Dismiss the Complaint.

41.     Through April 21, 2005, there were sporadic telephone conferences where we sought basic Trail Program information, including the number of original participants, the aggregate amount of the DAC Notes, the number of DAC Notes in default, etc.  We exchanged letters discussing general concepts allowing for a possible resolution, but the discussions did not progress beyond these very preliminary concepts.

42.     During this time period, my partner, Mr. Biederman, and I met at Wilmer Cutler in Boston with Defense Counsel and General Counsel.  While this meeting lasted about a half a day, again, only general conceptual ideas were discussed, and no offers were made by either party.

43.     Following this meeting, there were additional telephonic discussions concerning updating information and details as to the Trail Program, but again, no settlement discussions.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 13

44.    After the Court's April 21st ruling on the Motion to Dismiss, the parties proceeded to actively litigate the case.

**B.    December 14, 2005 - May 23, 2006 Settlement Negotiations.**

45.    On December 8, 2005, Defendants sent a letter to Plaintiffs outlining certain provisions for a possible resolution of the Trail Program. This letter was prompted by informal discussions between counsel after the public announcement of the sale of the variable annuity business to The Goldman Sachs Group.

46.    Following the class certification hearing, Plaintiffs responded to Defendants' settlement concept letter. I suggested a meeting in our offices for more detailed negotiations. Mr. Shapiro and Mark Stepakoff, Assistant Vice President and Counsel for Allmerica Financial Corp., attended this meeting in person and Ms. Robinson participated by telephone. Again, concepts and details were discussed that, if agreed to by the parties, would provide resolution of the Trail Program dispute.

47.    Serious negotiations were subsequently conducted by telephone and correspondence as to the specific terms of proposed relief to a proposed class, including details involving termination of the Trail Program and cancellation of the DAC Notes, cash refunds for payments of Allmerica commissions outside the Trail Program that were offset by Defendants to pay shortfalls on the DAC Notes, and true-up payments to those participants who had accelerated their Note payments in amounts greater than the scheduled payments. Additionally, there were numerous discussions concerning the scope of a release, and possible carve-outs for various matters unrelated to the lawsuit.

48.    These negotiations continued through numerous telephonic conference calls and e-

mail exchanges.  Until this point, no settlement offer had been made by Defendants to resolve the case.

49.    By mid-February 2006, the parties agreed to memorialize their general agreement in principle in a Memorandum of Understanding ("MOU").  Again, there were frequent discussions and negotiations as to the terms of the MOU as reflected in the preparation of at least six revisions before agreement was reached by the parties. At no time during these negotiations was there any discussion about the payment or amount of attorneys' fees or incentive awards.

50.    On April 10, 2006, counsel for Plaintiffs and Defendants signed the MOU that contained details concerning the terms of a proposed settlement. The MOU explicitly provided for the drafting, negotiation, and execution of a formal Stipulation of Settlement that would contain standard provisions, including a proposed class notice, terms of a proposed preliminary and final order approving the settlement.

51.    Shortly after its execution, the parties informed the Court of the MOU and that they were negotiating a formal settlement agreement.

52.    On May 3, 2006, Mr. Biederman and I met with Ms. Robinson and Mr.  Shapiro in Boston to negotiate the terms of a final settlement agreement.

53.    These negotiations continued until May 23, 2006, when Plaintiffs executed the Proposed Settlement, and Defendants agreed to its terms.  Shortly thereafter, Defendants and their counsel executed the Proposed Settlement.  There were at least 3 major revision drafts of the Proposed Settlement before agreement was reached.  Upon execution of the Proposed Settlement, the

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 15

parties informed the Court that the parties contemplated filing by June 21, 2006 the necessary Motion seeking preliminary approval of the Proposed Settlement.

54.    The Proposed Settlement contemplated that the parties in good faith would seek to agree on amounts for which Plaintiffs would apply for awards of attorneys' fees and incentive awards, which Defendants would not oppose. *See* Proposed Settlement at 30, 8.1.  Absent such an agreement, the Proposed Settlement provided that the awards would be determined by the Court. *Id*. It was agreed that whatever amounts were awarded, there would be no diminution in the settlement benefits offered to the Class.

### C.    Post-May 23, 2006 Attorney Fee and Incentive Award Discussions.

55.    Only following the parties' agreement as to all terms in the Proposed Settlement did we discuss the amount of attorneys' fees and incentive awards that Defendants would pay, subject to this Court's approval.

56.    Just like the terms of the proposed Settlement, the fees and incentive awards were negotiated separately and at arms-length.   We conducted 11 teleconferences with Defendants' Counsel from May 23 to June 22 concerning the amount of the incentive awards and attorney' fees.

57.    After serious negotiation and compromise by all parties, we reached an agreement on June 21, 2006 as to incentive awards.  We notified the Court in Plaintiffs' Memorandum In Support of the Joint Motion for Preliminary Approval of Settlement and Hearing Order that Defendants would not oppose Plaintiffs' application for a $60,000.00 incentive award, allocated $20,000 to each Plaintiff.

58.     On June 22, the parties finally reached an agreement and notified the Court by letter that Defendants would  not oppose Plaintiffs' Counsel's application for an attorneys' fee award of $2.6 million, inclusive of expenses.

**V.     Principal Benefits of the Proposed Settlement**.

      **A.     Termination of the Trail Program:  Cancellation of the DAC Notes.**

59.     The Proposed Settlement provides for the termination of the Trail Program and cancellation of all outstanding indebtedness on the DAC Notes.  *See* Proposed Settlement at 11, § 3.1.  All Class Members are eligible for this relief.

      **B.     Cash Payments.**

            **1.     Set-off Supplemental Cash Relief.**

60.     To the extent that commissions generated by the Trail Program have been inadequate to meet the quarterly payments on the DAC Notes, and to the extent that a participant has generated trail commissions outside the Trail Program, Defendants unilaterally exercised a set-off to cover, in whole or in part, the resulting quarterly payment shortfall.  The parties have agreed that set-offs that were taken on or after May 1, 2005, will be refunded to affected Class Members.  *See* Proposed Settlement at 12, § 3.4.1. Since the execution of the Proposed Settlement, Defendants have maintained a Segregated Set-Off Account" to preserve these cash amounts from May 1, 2005, to the actual Disbursement Date.[1]  *See* Proposed Settlement at 9, § 2.35 (Definition of Segregated Set-Off

---

[1] In order for the Proposed Settlement to become effective, it requires, among other things,  the entry of a final order approving the Proposed Settlement in a form to which the parties have agreed, the passage of the period of appeal with no appeals having been filed, and the elapse of 10 days from the close of the quarter in which the order approving the settlement becomes final.  *See* Proposed Settlement at 6, § 2.16 (Definition of "Disbursement Date"), at 7

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 17

Account) & at 12, § 3.42 ("Upon execution of this Agreement, Defendants shall maintain a Segregated Set-Off Account.").

### 2.     True-Up Supplemental Cash Relief.

61.     Certain Class Members accelerated the amount of the quarterly payments due on the DAC Notes. Relief will be paid to those Class Members who paid on a net basis more than the originally-scheduled quarterly payments on the DAC Notes.  *See* Proposed Settlement at 11, §§3.3.1-3.3.3.  Such Class Members, are entitled to the greater of the Set-Off Supplemental Relief or True-Up Supplemental Relief, but not both.  *See* Proposed Settlement at 13, §3.5.1.

### 3.     Release.

62.     The Proposed Settlement has broad mutual releases that resolve all claims and counterclaims in the lawsuit as well as any other claims arising out of their business relationship.  *See* Proposed Settlement at 21, 29, §§ 7.1-7.2.  There are certain mutual carve-outs from the releases, including the Class' preservation of claims in connection with retirement and pension benefits, commissions outside the Trail Program, and commission claims in the *Ries v. Allmerica Financial Corporation*, No. GD 04:9786 in the Court of Common Pleas, Allegheny County, Pennsylvania. (**"*Ries Complaint*"**).  *See* Proposed Settlement at 24-26, §§ 7.1.2.4.-7.1.2.5.  Defendants have retained

---

§§ 2.18 (Definition of "Final Order and Judgement"), 2.19 (Definition of "Final Settlement Date"), and at 36-38,§§ 10.1-10.1.13 (Final Approval and Final Order and Judgment). If the Final Order and Judgment is entered on the scheduled final hearing date of August 11, 2006, and no appeal is filed, then the relief will become effective (the Disbursement Date) October 10, 2006, 10 days after the close of the quarter ending on September 30, 2006.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 18

corresponding defenses and counterclaims to these carve-out claims. *See* Proposed Settlement at 28-29, §§ 7.1.3.4-7.1.3.4.5.[2]

## VI.     Estimated Value of the Proposed Settlement.

### A.     Cancellation of the DAC Notes.

63.     As of June 30, 2006, the amount of the outstanding indebtedness was approximately $13 million.[3]

### B.     Set-off Supplemental Cash Relief.

64.     As of June 30, 2006, the total amount of the set-off cash payments is $445,808.83, and as of that date, 67 class members qualify for this relief.

### C.     True-Up Supplemental Cash Relief.

65.     As of June 30, 2006, the total amount of the true-up supplemental cash payment is $491,145.12, and 20 Class Members qualify for this relief.[4]

---

[2] For certain of these carve-out claims the parties further have agreed that if disputes arise, that they will be resolved by arbitration unless another forum is required by law. *See* Proposed Settlement at 53, §13.1-13.3.

[3] This amount, as well as the Set-Off Supplemental Cash Relief and the True-Up Supplemental Cash Relief described below, are based upon documents provided to Plaintiffs' Counsel by Defendants.  Because these documents reveal the specific amounts of the proposed relief to each Class Member by name, the parties do not believe such information should be part of the public record.  These amounts reflect updated data through the second quarter of 2006, which was unavailable at the time of filing the Joint Motion For Preliminary Approval of Stipulation of Settlement and Entry of Hearing Order, and Plaintiffs' Memorandum In Support Thereof. The amounts set forth in that Memorandum were based upon first quarter 2006 data.

[4] An additional provision of the Proposed Settlement is that a Class Member, who is eligible for both the Set-Off and True-Up Cash Relief will receive the greater of the two amounts. *See* Proposed Settlement at 13, §3.5. The above amounts of the Set-Off Supplemental Cash Relief and True-Up Supplemental Cash Relief reflect the adjustments made to conform to this provision.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 19

**D.    Release**.

66.    While there is significant value to the Class in the dismissal with prejudice of Defendants' Counterclaims which, in part, assert set-off claims involving commissions arising out of the replacement of annuities, this value has not been quantified.

**E.    Summary.**

67.    Based upon the foregoing, the estimated value of the benefits of the Proposed Settlement to the Class through the second quarter of 2006 exceeds $13.9 million

**VII.    The Time And Risk Undertaken By Plaintiffs' Counsel.**

68.    Plaintiffs' Counsel agreed to undertake this representation on a contingency basis. During the entire duration of this litigation, Plaintiffs Counsel have not been paid any attorneys' fees.

69.    Plaintiffs' Counsel keep time records reflecting the amount of time billed by each attorney and paralegal working on the case. A summary of the time billed and hourly rates of H&B in this case is attached as Exhibit 3. This document reflects a total amount of fees incurred through June 30, 2006, of $2,153,905.00. Since June 30, Plaintiffs' Counsel, and particularly Mr. Biederman and I, continue to work on this case, including responding to nearly daily inquiries from Class Members, and preparing for the fairness hearing and implementation of the Proposed Settlement.

70.    Nancy F. Gans of M&G has billed, through June 30, 2006, a total of 55.90 hours at $495 per hour for a total of $27,670.50. *See* Gans Declar.

71.    Accordingly, Plaintiffs' Counsel's total "lodestar"through June 30, 2006 is $2,181,575. In my opinion, this time and hourly rates are reasonable in light of the undertaking.

**VIII.    The Time And Risk Undertaken by Plaintiffs And Class Representatives.**

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 20

72.     Plaintiffs agreed to file the lawsuit and serve as class representatives knowing that it would impose substantial demands on their personal and business affairs.  Plaintiffs devoted substantial time including (i) assisting Plaintiffs' Counsel in the pre-filing investigation; (ii) reviewing and commenting on drafts of the Complaints and Amended Complaints; (iii) reviewing drafts of Plaintiffs' class certification papers and reviewing Defendants' Opposition papers; (iv) identifying, gathering, and copying documents that were responsive to Defendants' voluminous document requests; (v) preparing for their depositions; (vi) attending their depositions; (vii) reviewing the transcripts of their depositions; (viii) Mr. Speakman's attending the hearing on class certification; (ix) constant monitoring of the case; and (x) assisting in the negotiations of the Proposed Settlement.          73.     As provided in the Engagement Letters, Plaintiffs paid their pro-rata share of the expense retainer with Plaintiff Speakman paying $10,500.00; Wedel paying $3,950.00; and Robare paying $2,750.00.

## IX.    Plaintiffs' Reasonable And Necessary Expenses Incurred In This Case.

74.     H&B has paid expenses in connection with the prosecution of this case in the total amount of $73,815.36 through June 30, 2006, from funds provided by Plaintiffs' Counsel, Plaintiffs, and other Trail Program participants who engaged H&B.  *See* Exhibit 4.[5]

75.     As reflected in the Gans Declar., M&G has incurred unreimbursed expenses in the amount of $ 2,297.53.

---

[5] If the Court approves Plaintiffs' Counsel's Motion, the expense retainer will be refunded to our clients.

76.    Based upon the above, the total reasonable and necessary expenses incurred through June 30, 2006, are in the amount of $74,911.05.[6]

## IX.    The Proposed Attorneys' Fees In Light of the Factors Relating to That Request.

77.    As indicated in our letter dated June 22, 2006, Defendants agreed to pay $2.6 million, inclusive of expenses, subject to this Court's approval.

78.    For reasons set forth in the accompanying Memorandum, we believe that, consistent with the authority in this district, the Court should apply a percentage of fund (POF) methodology to the proposed fee request.

79.    **Size of the fund**.  In applying the POF methodology, the starting point is the available benefits to the Class, which I have estimated to be approximately $13.9 million through June 30, 2006.

80.    **Skill and efficiency of counsel**.  In my opinion, Plaintiffs' Counsel exhibited skill and efficiency in the handling of this complex and contested case. As the attached time summaries reflect, my partner and I have expended the lion's share of the effort in this case. At least in part our long experience with insurance class actions and knowledge of the insurance industry enhanced the pursuit of these class claims and the resolution of this dispute.

81.    **Complexity and duration of litigation**. The case has spanned more than 2 years, and involved complex issues, including the variable annuity industry practices, the Trail Program,

---

[6] This amount reflects a credit of $1,201.84 for Defendants' reimbursement of certain copying costs.

Defendants' business practices and decisions, and widely differing claims of damages and offsets.

82.     **Financial Risks to Plaintiffs' Counsel**.     While we were confident as to their prospects of prevailing in this lawsuit, there is never any assurance of that outcome.  Even if Plaintiffs prevailed as to liability, there were many complex issues as to the type and amount of damages to which the class would be entitled.  In light of the contingent arrangement, we assumed the substantial risk of non-payment for our time and effort throughout the case.

83.     **Amount of Time Devoted to the Case**.  Plaintiffs' Counsel devoted substantial time in this case as reflected in the summary above.

84.     **The Awards In Similar Cases**.  As discussed in the accompanying Memorandum, the Courts in this district have approved awards on a POF basis from 25% to 33 1/3% of the benefits provided by the settlement.  Accordingly, if there is full participation in the Proposed Settlement, estimated benefits of $13.9 million would support a fee award of between approximately $3.5 million and $4.6 million.  Plaintiffs' Counsel's fee request, net of expenses is approximately 18% of $13.9 million.

85.     **Lodestar check**.  While not required, some courts in this district use a lodestar check.  Specifically, they compare the total "lodestar" (time x hourly rate) with the amount requested.  In this case, the total lodestar through June 30, 2006, is $2,181,575, compared to the fee request, net of expenses of $2,525,088.95.  This results in a 1.1 lodestar multiplier, well within the acceptable range of 2 times multiplier that many courts have approved in similar situations.

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 23

X.    **Plaintiffs' and Class Representatives' Proposed Incentive Awards.**

86.    As noted above, Defendants agreed to pay subject to this Court's approval, $20,000.00 to each Class Representative ($60,000.00 total), for their role in prosecuting this case as a class action.

87.    Plaintiffs expended substantial time and expense in this case in order to obtain relief from the entire Class not just their individual interests.  In my opinion, their time, effort and the results obtained support the incentive award.

XI.    **Conclusion**.

88.    This hard-fought litigation has been brought to a successful conclusion following protracted litigation and arms-length settlement negotiations. The outcome was due to the combined efforts of Plaintiffs and Plaintiffs' Counsel.  In my opinion, the requested fees and incentive awards are fair and reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July12, 2006 in Dallas, Texas.


                                                              /s/ *Stephen L. Hubbard*
                                                              STEPHEN L. HUBBARD


**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 24

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 12, 2006.

Andrea J. Robinson, Esq.
Jonathan A. Shapiro, Esq.
Eric D. Levin, Esq.
Brett R. Budzinski, Esq.
WILMER CUTLER PICKERING HALE and DORR LLP
60 State Street
Boston, MA 02109
(617) 526-5000 fax

Brian E. Whiteley (BBO No. 555683)
SCIBELLI, WHITELEY & STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
(617) 722-6003 fax

*/s/ Stephen L. Hubbard*
STEPHEN L. HUBBARD

**DECLARATION OF STEPHEN L. HUBBARD IN SUPPORT OF PLAINTIFFS' MOTION FOR INCENTIVE AWARDS, AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** - Page 25