UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiffs and<br>　　　　Counterclaim Defendants,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP.,<br><br>　　　　Defendants and<br>　　　　Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

**FINAL ORDER AND JUDGMENT
APPROVING CLASS SETTLEMENT**

WHEREAS, Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare (together, the "Plaintiffs") filed a second amended complaint in the above-captioned action.

WHEREAS, the Parties and their attorneys have undertaken an extensive investigation of the relevant facts and law;

WHEREAS, counsel for the putative class ("Plaintiffs' Counsel") and defendants Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation, and First Allmerica Financial Life Insurance Company engaged in an arm's length negotiation of a settlement in this Lawsuit to avoid the expense, uncertainties and burden of protracted litigation, and to put to rest any and all claims or causes of action that have been asserted against Defendants by the Plaintiffs or other

members of the Class and that could have been asserted against Defendants which relate in any respect to the subject of the Class Members' Release, and claims or causes of action that have been asserted against Plaintiffs or other members of the Class by Defendants and that could have been asserted against Plaintiffs or other members of the Class which relate in any respect to the subject of the Defendants' Release;

WHEREAS, the Parties entered into a May 23, 2006 Stipulation of Settlement in which the Parties have agreed upon a settlement of the Lawsuit subject to the approval and determination of the Court as to the fairness, reasonableness and adequacy of the settlement, which, if approved, will result of dismissal of the Lawsuit with prejudice;

WHEREAS, the Court entered a June 26, 2006 Order Preliminarily Certifying a Class for Settlement Purposes, Appointing Lead Counsel for the Class, Directing Issuance of a Class Notice to the Class, and Scheduling a Fairness Hearing ("Hearing Order");

WHEREAS, the Parties have complied with the Hearing Order;

WHEREAS, none of the Class Members have objected to the Settlement Agreement that is before the Court; and

NOW, upon reviewing the Stipulation of Settlement and all exhibits thereto (together, the "Settlement Agreement") and the prior proceedings held herein, upon reviewing the Parties' submissions in support of the settlement, and the matter having come before the Court for a Fairness Hearing on August 11, 2006;

**IT IS ORDERED AS FOLLOWS** (all capitalized terms used herein are defined as they are in the Settlement Agreement):

1. **Incorporation of Documents.** This Final Order and Judgment incorporates herein and makes a part hereof *(i)* the Settlement Agreement (a copy of which, without exhibits,

is appended hereto as <u>Exhibit A</u>); *(ii)* the Class Notice (appended hereto as <u>Exhibit B</u>), and *(iii)* the Post-Settlement Notice (appended hereto as <u>Exhibit C</u>).

2.  **Jurisdiction of the Court.**  The Court has personal jurisdiction over all Class Members because adequate notice has been provided to them and because they have been provided the opportunity to exclude themselves from the Lawsuit. The Court has subject matter jurisdiction over this Lawsuit, including, without limitation, jurisdiction to approve the Settlement Agreement and to dismiss the Lawsuit on the merits and with prejudice.

3.  **Final Certification of the Class for Settlement Purposes.**  A Class for settlement purposes is hereby finally certified consisting of the Plaintiffs and all other original participants in the Trail Program who executed a DAC Note,[1] except any such participants *(i)* who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants, or *(ii)* who have been excluded from the Class (by filing a timely and valid request for exclusion or by virtue of a Bankruptcy Proceeding) pursuant to part 5 of the Settlement Agreement and this Court's Hearing Order of June 26, 2006. A list of those persons who have timely and validly excluded themselves from the Class (and the Requests themselves), and who are therefore not bound by this Final Order and Judgment, has been filed by Defendants with the Court and is incorporated herein.[2] Those Class Members who have not been excluded from the Class are bound by this Final Order and Judgment and the terms of the Settlement Agreement.

---

[1] The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; and the "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001." The Settlement Agreement defines the "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

[2] The following individuals have timely and validly excluded themselves from the Class: *(i)* Stephan Oster; *(ii)* Virdyn Caldwell; *(iii)* William Bates; *(iv)* William Mihm; *(v)* Thomas Stroyne; *(vi)* James Kuekan; *(vii)* John Vaughan; *(viii)* David Bellis; and *(ix)* Estate of Ben Franklin.

4.  **Class Findings.** For purposes of the settlement of the Lawsuit (without an adjudication on the merits), the requirements of due process and the Federal Rules of Civil Procedure and the Rules of the Court have been met in that:

(a) The Class consists of the Plaintiffs and all other original participants in the Trail Program who executed a DAC Note, except any such participant who, prior to April 10, 2006, released his or her claims in connection with the Trail Program pursuant to a settlement with any of the Defendants, or who has been excluded from the Class pursuant to part 5 of the Settlement Agreement and this Court's Hearing Order of June 26, 2006. The Class is ascertainable on the basis of these objective criteria, and members of the Class are so numerous that it is impracticable to bring all members of the Class before the Court.

(b) There is a well-defined community of interest among members of the Class in certain questions of law or fact that are common to the Class, are substantially similar and predominate over any individual questions of fact and law. The Plaintiffs allege, inter alia, that the Defendants, acting through their Massachusetts Home Office, violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years, knew but failed to disclose certain risks to Plaintiffs at the time they entered into the Trail Program, and engaged in a variety of other alleged misconduct to the detriment of Plaintiffs and the Class. Thus, common questions include whether *(i)* Allmerica's cessation of new annuity sales and/or the alleged service problems violated the implied covenant of good faith and fair dealing; *(ii)* Allmerica failed to disclose material information to the Class prior to entering the Trail Program; and *(iii)* the alleged breach of the implied covenant of good faith and fair dealing and/or the alleged failure to disclose constituted a deceptive act or practice within the meaning of Mass.

Gen. Laws ch. 93A. These common questions are central to each Class Member's claim and predominate over questions affecting only individual members of the Class.

      (c)      The claims of the Plaintiffs are typical of the claims of the Class, and the Plaintiffs will fairly and adequately protect the interests of the Class, in that: *(i)* the interests of the Plaintiffs and the nature of their alleged claims are consistent with those of the Class; *(ii)* there are no conflicts between or among the Plaintiffs and Class Members; *(iii)* the Plaintiffs have been and are capable of continuing to be active participants in both the prosecution of, and the settlement negotiations of, the Lawsuit; and *(iv)* the Plaintiffs and the Class Members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the second amended complaint.

      (d)      A resolution of the Lawsuit in the manner proposed by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of the Lawsuit. In making these findings, the Court has considered, among other factors: *(i)* the interest of Class Members in individually controlling the prosecution or defense of separate actions; *(ii)* the impracticability or inefficiency or prosecuting or defending separate actions; *(iii)* the extent and nature of any litigation concerning these claims already commenced; and *(iv)* the desirability of concentrating the litigation of the claims in a particular forum.

      5.      **Satisfaction of Due Process.** The Court finds that the mailing of the Class Notice as provided for by, and undertaken pursuant to, the Hearing Order *(i)* constituted the best practicable notice to members of the Class under the circumstances, *(ii)* constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Lawsuit and of the terms of the Settlement Agreement and their rights

thereunder, including their rights to object to those terms or to exclude themselves from the proposed settlement and to appear at the Fairness Hearing, *(iii)* was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and *(iv)* fully complied with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

6. **Adequate Representation.** Plaintiffs' Counsel and the Plaintiffs have adequately represented the Class throughout this litigation.

7. **Final Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members and in full compliance with all applicable requirements of law, including constitutional due process. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions; provided, however, that *(a)* the Parties are hereby authorized, without needing any further approval from the Court, to agree and adopt such amendments to, and modifications and expansions of, the Settlement Agreement and its implementing documents, as are consistent with this Final Order and Judgment and do not limit the relief available under the Settlement Agreement; and *(b)* Defendants are hereby authorized, in their sole discretion but in consultation with Plaintiffs' Counsel, and without the approval of this Court, to implement the settlement prior to the Final Settlement Date.

8. **Claims Released.** The Release set forth in part 7.1 of the Settlement Agreement is expressly incorporated in this Final Order and Judgment in all respects (and also is set forth in its entirety below as Appendix A hereto) and is effective as of the date of this Final Order and Judgment, such that the Defendant Releasees and Plaintiff Releasees are forever discharged from

the claims or liabilities that are the subject of the Class Members' Release and the Defendants' Release, respectively. In addition to other matters set forth in the Class Members' Release, this paragraph covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to this Lawsuit, the settlement of this Lawsuit, the administration of such settlement and/or the subject of the Class Members' Release, except to the extent awarded by the Court. In addition to other matters set forth in the Defendants' Release, this paragraph covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Allmerica's Counsel or any other counsel representing Defendants, or incurred by Defendants, or any of them, in connection with or related in any manner to this Lawsuit, the settlement of this Lawsuit, the administration of such settlement and/or the subject of the Defendants' Release, except to the extent awarded by the Court.

9.    **Permanent Injunction.**  All Class Members who have not been excluded from the Class (and all persons acting on behalf of Class Members who have not been excluded from the Class) are hereby permanently and forever barred and enjoined from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claims or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto; and *(ii)* organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any

lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto. The Court finds that entry of this Permanent Injunction is necessary and appropriate to aid the Court's jurisdiction over the Lawsuit and to protect and effectuate the Settlement Agreement and this Final Order and Judgment.

10. **Notice.** The Parties are hereby directed to mail the Post-Settlement Notice materials in the form attached hereto as Exhibit C, as provided by the Settlement Agreement. The Court finds that the Post-Settlement Notice materials and methodology set forth in the Settlement Agreement *(i)* constitute the best practicable notice to Class Members of the Final Order and Judgment, the relief available to Class Members pursuant to the Final Order and Judgment, and applicable time periods, *(ii)* constitute due, adequate and sufficient notice for all other purposes to all Class Members, and *(iii)* fully comply with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

11. **Binding Effect.** The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Plaintiffs, Class Members, and Defendants, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings that assert claims that are encompassed within the Class Members' Release and the Defendants' Release set forth in part 7.1 of the Settlement Agreement.

12. **No Admissions.** Neither this Final Order and Judgment nor the Settlement Agreement (nor any document referred to herein or any action taken to carry out this Final Order

and Judgment) is, may be construed as, or may be used as any evidence, admission or concession by or against the Defendant Releasees or the Plaintiff Releasees of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related thereto shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by any of the Defendant Releasees or the Plaintiff Releasees and shall not be offered or received in evidence in any action or proceeding against any of them in any court, administrative agency or other tribunal for any purpose whatsoever other than as evidence of the settlement or to enforce the provisions of this Final Order and Judgment and the Settlement Agreement; <u>provided however</u>, that this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendant Releasees or Plaintiff Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, covenant not to sue, accord and satisfaction, judgment bar or reduction, full faith and credit, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. **Enforcement of Settlement Agreement.** Nothing in this Final Order and Judgment shall preclude any action to enforce its terms or the terms of the Settlement Agreement, including, without limitation, the Releases and Permanent Injunction.

14. **Nullification of Settlement Agreement.** In the event the Settlement Agreement does not become final, pursuant to its terms, or in the event that it does not become effective as required by its terms for any other reason, this Final Order and Judgment shall become null and void and the Parties shall be restored to their respective positions *status quo ante* as set forth in part 11 of the Settlement Agreement. In such event, the Settlement Agreement and this Final

Order and Judgment shall have no force and effect and neither document may be used or referred to for any purpose whatsoever, except as provided in subpart 11.6 of the Settlement Agreement.

15. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment (including, without limitation, with respect to the Release and Permanent Injunction), and for any other necessary purpose.

16. **Dismissal with Prejudice.** This Lawsuit, including all claims and Counterclaims asserted in it and/or resolved herein, is hereby dismissed on the merits and with prejudice against the Plaintiffs and all other Class Members (with respect to the claims they have asserted) and the Defendants (with respect to the Counterclaims they have asserted), without fees or costs to any party except as otherwise provided in this Final Order and Judgment.

IT IS SO ORDERED.

_____
THE HONORABLE F. DENNIS SAYLOR, IV
U.S. DISTRICT COURT JUDGE

Dated: *August 11*, 2006

## APPENDIX A

The full text of the Class Members' Release and Defendants' Release, with definitions, are as follows:

7.1   Releases and Waiver.

    7.1.1   Definitions. As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

        7.1.1.1   "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

        7.1.1.2   "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

        7.1.1.3   "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4,[3] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

        7.1.1.4   "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27[4] and 2.8,[5] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants,

---

[3] As defined in subpart 2.4 of the Settlement Agreement, "Allmerica" means: *(i)* the Defendants; *(ii)* each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; *(iii)* each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in *(i)* and *(ii)*; and *(iv)* each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in *(i)*, *(ii)*, and *(iii)*.

[4] As defined in subpart 2.27 of the Settlement Agreement, "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

[5] As defined in subpart 2.8 of the Settlement Agreement, "Class Members" means all members of the Class, excluding all Opt-Outs.

trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

    7.1.1.5    "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

    7.1.1.6    "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in <u>Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr.</u>, No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

7.1.2  <u>Class Members' Release</u>. Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

    7.1.2.1    <u>Release of Unknown Claims</u>. Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

7.1.2.2    In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.2.3    Without in any way limiting its scope, the Release set forth in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.2.4    Nothing in the Release set forth in part 7.1.2 shall be deemed to alter:

  7.1.2.4.1   claims that *(i)* arise after the Opt-Out and Objection Date; and *(ii)* relate to a Class Member's rights under the express terms of Agent Plans or Agent Policies;

  7.1.2.4.2   Class Members' rights to assert claims, defenses, or counterclaims with respect to any matters encompassed by subpart 7.1.3.4.1;

  7.1.2.4.3   any rights, defenses, or other claims, if any, that Class Members may have against any of the Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

  7.1.2.4.4   the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications

were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5   any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.2.5   Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.1.3   <u>Defendants' Release</u>. Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.3.1   <u>Release of Unknown Claims</u>. The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights the Defendants may have under California Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Defendants hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

7.1.3.2   In connection with the Release set forth in part 7.1.3, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.  Nevertheless, it is the intention of Defendants in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.3.3   Without in any way limiting its scope, the Release set forth in part 7.1.3 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Defendants' Counsel or any other counsel representing Defendants, or by Defendants, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.3.4   Nothing in the Release set forth in part 7.1.3 shall be deemed to alter:

   7.1.3.4.1   Defendants' rights with respect to any of the Agent Plans or Agent Policies referred to in subpart 7.1.2.4.1, including the right (if any) to modify, amend or terminate such Agent Plans or Agent Policies;

   7.1.3.4.2   Defendants' rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.1;

   7.1.3.4.3   any rights, defenses, or other claims, or counterclaims, if any, that the Defendants may have against any of the Plaintiff Releasees with respect to indemnification, contribution or recovery from the Plaintiff Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims or any matter encompassed by subpart 7.1.2.4.3;

   7.1.3.4.4.   Allmerica's rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.4; or

   7.1.3.4.5   any claim by The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates against a Plaintiff Releasee solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.3.5 Nothing in the Release set forth in part 7.1.3 shall preclude any action to enforce the terms of the Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.