

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

## STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between and among Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare, individually and as representatives of others similarly situated, and Allmerica Financial Life Insurance and Annuity Company ("AFLIAC"), The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation ("AFC"), and First Allmerica Financial Life Insurance Company ("FAFLIC"), through their duly authorized counsel, that the above-captioned lawsuit ("Lawsuit") and the matters raised by the Lawsuit, are settled, compromised and dismissed on the merits and with prejudice on the terms and conditions set forth in this Stipulation of Settlement (the "Settlement Agreement" or "Agreement") and the Releases set forth herein, subject to the approval of the Court.

- 1 -

## 1.    INTRODUCTION

### 1.1.    Speakman v. Allmerica Financial Life Ins. & Annuity Co.

1.1.1.    On May 18, 2004, Plaintiffs Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare filed on behalf of themselves and the Class, a class action complaint ("Complaint") in the Lawsuit. The Complaint asserted claims relating to the Trail Program and a wide variety of other matters concerning the prior and current relationship between and among Allmerica, the Plaintiffs, and the Class. Plaintiffs alleged, among other things, that Allmerica *(i)* violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years; *(ii)* knew but failed to disclose certain risks to Plaintiffs at the time they entered into the Trail Program; and *(iii)* engaged in a variety of other alleged misconduct to the detriment of the Plaintiffs and the Class.

1.1.2.    On June 23, 2004, Plaintiffs filed an amended complaint ("First Amended Complaint"). Among other things, the First Amended Complaint removed as defendants certain officers and former officers of Allmerica.

1.1.3.    On August 11, 2004, Defendants moved to dismiss the First Amended Complaint. Defendants argued, among other things, that Plaintiffs had failed to state a claim for a violation of the covenant of good faith and fair dealing and did not have standing to bring a claim under Mass. Gen. Laws ch. 93A. On April 21, 2005, the Court denied Defendants' motion to dismiss.

1.1.4.    On May 12, 2005, Defendants answered the First Amended Complaint and asserted counterclaims against the Plaintiffs concerning the Trail Program and a variety of other matters (the "Counterclaims").

1.1.5.    On June 1, 2005, Plaintiffs answered the Counterclaims.

        1.1.6.            On July 22, 2005, the Plaintiffs moved for certification of the putative class. Defendants opposed that motion on November 18, 2005. The Plaintiffs filed a reply brief and Defendants filed a surreply on December 6 and 13, 2005, respectively. The Court heard oral argument on Plaintiffs' motion for class certification on December 14, 2005, and that motion is under consideration.

       1.2.     Discovery

        1.2.1.            Prior to execution of this Agreement, Plaintiffs' Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of their claims and potential claims and to determine how best to serve the interests of the Plaintiffs and the Class (as defined below).

        1.2.2.            The Parties conducted extensive discovery, including the depositions of each of the Plaintiffs, interrogatories, requests for admissions, the production of voluminous documents, and service of subpoenas on multiple non-parties, and engaged in motion practice concerning the appropriate scope and extent of discovery.

       1.3.     Settlement

        1.3.1.            Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Plaintiffs' Counsel have agreed to settle the Lawsuit pursuant to the provisions of this Agreement after considering such factors as *(i)* the substantial benefits to Plaintiffs and the Class under the terms of this Agreement, *(ii)* the attendant risks and uncertainty of litigation, *(iii)* the difficulties and delays inherent in such litigation; and *(iv)* the desirability of consummating this Agreement promptly, in order to provide expeditious relief to Plaintiffs and the Class.

1.3.2.     Plaintiffs expressly deny any wrongdoing alleged in the Counterclaims and in any of the pleadings and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Lawsuit.

1.3.3.     Plaintiffs and Plaintiffs' Counsel have agreed that this Agreement is fair, reasonable, and adequate because it provides substantial benefits to, and is in the best interests of, the Class.

1.3.4.     The settlement reflected in this Agreement was the product of an arms-length negotiation process, which included extensive negotiation, multiple in-person meetings and telephone conferences, written communications, and an exchange and review of additional documents and data relevant to issues of liability and damages that had arisen in the Lawsuit. Prior to execution of this Agreement, the parties executed a Memorandum of Understanding on April 10, 2006.

1.3.5.     Allmerica expressly denies any wrongdoing alleged in the Complaint, First Amended Complaint and other pleadings and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in the Lawsuit, but considers it desirable for the Lawsuit to be settled and dismissed because this settlement will:  *(i)* avoid further disruption of the management and operation of Allmerica's business due to the pendency and defense of the Lawsuit; *(ii)* finally put to rest the claims of Plaintiffs and the Class and the underlying matters; and *(iii)* avoid the substantial expense, burdens and uncertainties associated with continued litigation.

## 2.   **DEFINITIONS**

2.1.    As used in this Agreement and the annexed exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless a part or subpart of this Agreement or its exhibits provides otherwise:

2.2.    "Agent Plans" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.3.    "Agent Policies" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.4.    "Allmerica" means: *(i)* the Defendants; *(ii)* each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; *(iii)* each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in *(i)* and *(ii)*; and *(iv)* each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in *(i)*, *(ii)*, and *(iii)*.

2.5.    "Allmerica's Counsel" means the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, counsel to the Defendants.

2.6.    "Attorneys' Fees" means such funds as may be awarded to Plaintiffs' Counsel to compensate them (and any other counsel for Plaintiffs herein) for their fees and expenses in connection with the Lawsuit.

2.7.    "Class" means the Plaintiffs and all other original participants in the Trail Program who executed a DAC Note, except any such participants who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants.

2.8.    "Class Members" means all members of the Class, excluding all Opt-Outs.

2.9.    "Class Members' Release" means the release set forth in parts 7.1.2 through and including 7.1.2.5.

2.10.    "Class Notice" means the notice package, as approved in form and content by the Parties and attached hereto as Exhibit B, to be provided to Class Members pursuant to subpart 4.1 of this Agreement.

2.11.    "Court" means the United States District Court for the District of Massachusetts (Judge F. Dennis Saylor, IV) where the Lawsuit is pending.

2.12.    "DAC Notes" means the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001.

2.13.    "Defendants" means Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation, and First Allmerica Financial Life Insurance Company.

2.14.    "Defendants' Release" means the release set forth in parts 7.1.3 through and including 7.1.3.5.

2.15.    "Defendant Releasees" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.16.    "Disbursement Date" means the tenth day following the close of the quarter during which there has been a Final Settlement Date.

2.17. "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to finally certify the Class for settlement purposes, whether to approve this Agreement as fair, reasonable and adequate, and whether to approve Plaintiffs' Counsel's application for Attorneys' Fees, and Plaintiffs' application for Incentive Awards.

2.18. "Final Order and Judgment" means the order approving the Settlement Agreement and the Judgment entered pursuant to that order.

2.19. "Final Settlement Date" means the date on which the Final Order and Judgment approving the Settlement Agreement becomes final, which for purposes of this Agreement, means: *(i)* if no appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired (i.e., 33 days from the entry of such Final Order and Judgment); or *(ii)* if any appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment.

2.20. "Hearing Order" means the order to be entered by the Court concerning notice, administration and the Fairness Hearing, as contemplated in part 9 of this Agreement.

2.21. "Incentive Awards" means such amounts as may be awarded to Plaintiffs as compensation for their role as class representatives and contribution to the prosecution of the Lawsuit.

2.22. "Lawsuit" means the lawsuit captioned Donald P. Speakman, Stephen H. Wedel and Mark L. Robare, Individually and On Behalf of All Others Similarly Situated v. Allmerica

Financial Life Ins. & Annuity Co., First Allmerica Financial Life Ins. Co. and Allmerica

Financial Corp., Civil Action No. 4:04-cv-40077-FDS (D. Mass.).

2.23. "Lead Counsel" means the law firm of Hubbard & Biederman, LLP.

2.24. "Opt-Out" means any member of the Class who is excluded from the settlement in accordance with part 5 of this Agreement.

2.25. "Opt-Out and Objection Date" means a date no later than fifteen days before the date of the Fairness Hearing, by which any member of the Class must exclude himself or herself from any settlement, or object to this Agreement or the proposed Settlement or to any award of Attorneys' Fees or Incentive Awards, in accordance with the terms of this Agreement.

2.26. "Parties" means the Plaintiffs and Defendants, collectively.

2.27. "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

2.28. "Plaintiffs' Counsel" means the law firms of Hubbard & Biederman, LLP and Moulton & Gans, LLP.

2.29. "Plaintiff Releasees" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.30. "Post-Settlement Notice" means the notice package, as approved in form and content by the Parties and attached hereto as Exhibit D, to be provided to Class Members pursuant to subpart 4.2 of this Agreement.

2.31. "Quarterly Overpayment" means the extent that any Class Member paid (by direct payment, offset, or otherwise) during any quarter an amount greater than the fixed quarterly payment (reflecting principal plus interest) set forth on the face of the original DAC Notes he or she executed.

- 8 -

2.32. "Release" means the Releases and Waiver as set forth in subpart 7.1 of this Agreement.

2.33. "Released Transactions" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.34. "Ries Complaint" shall have the meaning ascribed to it in the Release set forth in part 7 of this Agreement.

2.35. "Segregated Set-Off Account" means a separate account that Defendants shall maintain on their books equal to the amount of Set-Offs used or applied from May 1, 2005 through the Disbursement Date.

2.36. "Set-Offs" means any commissions or sums other than Trail Commissions that Defendants used or applied, after May 1, 2005, to cover or reduce any shortfall between any Class Member's quarterly DAC Note payments and the Trail Commissions payable in a given quarter.

2.37. "Settlement Agreement" or "Agreement" means this Stipulation of Settlement and the attached exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

2.38. "Supplemental Relief" means the relief described in parts 3.3 and 3.4.

2.39. "Third-Party Claims" means any claim, complaint, legal action, demand, NASD or other arbitration, any investigation or regulatory action or any other governmental, judicial or quasi-judicial proceeding against Allmerica or Class Members that: *(i)* is initiated by any person or entity other than Allmerica or Class Members; and *(ii)* involves (in whole or in part) the rights of any person or entity other than Allmerica or Class Members.

- 9 -

2.40.    "Trail Agreements" means the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001.

2.41.    "Trail Commissions" mean those commissions payable to members of the Class on a quarterly basis pursuant to their respective Trail Agreements.

2.42.    "Trail Program" means the contractual obligations and business relationship embodied by the Trail Agreements and the DAC Notes, collectively.

2.43.    Capitalized terms used in this Agreement but not defined above shall have the meaning ascribed to them herein.

**3.    SETTLEMENT RELIEF**

3.1.    Pursuant to this Agreement, the Parties agree as follows:

3.2.    Satisfaction of DAC Notes and Cessation of Trail Commissions.

3.2.1.    The DAC Notes executed by Class Members shall be deemed satisfied on the Disbursement Date.

3.2.2.    All obligations of Allmerica to pay, and all rights to receive, Trail Commissions pursuant to the Trail Agreements executed by Class Members shall cease on the Disbursement Date.

3.2.3.    As a condition of their receipt of relief pursuant to the Agreement, Class Members each represent and warrant that they have not assigned, and prior to the Disbursement Date will not assign, any of their rights under the Trail Agreements.

3.3.    True-Up Supplemental Relief.

3.3.1.    To the extent that any Class Member made any Quarterly Overpayment, then on the Disbursement Date, Defendants will pay to each such Class Member the net amount of their Quarterly Overpayments (overpayments minus underpayments), subject to subpart 3.5 below.

3.3.2.    The calculation of Quarterly Overpayments assumes that interest continued to accrue for each Class Member through the Final Settlement Date as set forth in the DAC Notes they signed. To illustrate:

3.3.2.1.    A hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $10,000, but each quarter paid $11,000, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date (i.e., $1,000 times the number of quarters that will have elapsed by that Final Settlement Date).

- 11 -

3.3.2.2.        Assuming that 21 quarters elapsed by the Final Settlement Date, a hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $15,000, but *(i)* paid $17,000 per quarter (i.e., $2,000 over the fixed quarterly payment) for 18 quarters, and *(ii)* paid only $14,000 per quarter (i.e., $1,000 under the fixed quarterly payment) for 3 quarters, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date of $33,000 (i.e., $36,000 minus $3,000).

3.3.3.        To the extent that any Class Member eligible for a true-up payment under this part had, prior to April 10, 2006, paid all amounts due under his or her DAC Note, the true-up payment for such Class Members would be calculated as of the date the DAC Note was paid in full.

3.4.    Set-Off Supplemental Relief.

3.4.1.        To the extent that Defendants used or applied Set-Offs with respect to a Class Member, then on the Disbursement Date, Defendants will pay to each such Class Member the aggregate amount of such Set-Offs that were used or applied (or will be used or applied) during the period May 1, 2005 to the Disbursement Date, subject to subpart 3.5 below.

3.4.2.        Upon execution of this Agreement, Defendants shall maintain a Segregated Set-Off Account.

3.4.2.1.        On the Disbursement Date, the amounts in the Segregated Set-Off Account shall be paid to each Class Member in accordance with subpart 3.4.1, above; provided, however, that any amounts in the Segregated Set-Off Account that are associated with any Opt-Outs shall revert to Defendants.

- 12 -

3.4.2.2.      The entire Segregated Set-Off Account shall revert to

Defendants in the event that: *(i)* this Agreement is terminated in accordance with its terms; or *(ii)* a Final Settlement Date does not occur, without waiver of the claims of Plaintiffs and/or the Class with respect to such amounts.

3.5.    No Entitlement to Both True-Up and Set-Off Supplemental Relief

3.5.1.      To the extent that a Class Member qualifies for a payment under both the True-Up Supplemental Relief in subpart 3.3 and the Set-Off Supplemental Relief in subpart 3.4, such Class Member nonetheless shall receive only one form of Supplemental Relief (not both), which shall be the form of the Supplemental Relief that provides the greater payment.

3.5.2.      Defendants shall calculate any Supplemental Relief available to a Class Member pursuant to subpart 3.3 or 3.4 based on information available in Allmerica's business records, and shall state the amount(s) of such Supplemental Relief, if any, in the Post-Settlement Notice; provided, however, if a Class Member disagrees with that calculation, he or she bears the burden of establishing within 10 business days of the postmark date of the Post-Settlement Notice, based on supporting documentary evidence, the existence and amount of the error claimed.

- 13 -

**4.    NOTICE TO THE CLASS AND
       COMMUNICATIONS WITH CLASS MEMBERS.**

4.1.    <u>Class Notice</u>. Subject to the requirements of the Hearing Order, no later than 45 days before the Fairness Hearing, the Parties shall send the Class Notice to each member of the Class by first-class mail postage prepaid, to the member's last known address, as reflected in Allmerica's records. Allmerica shall pay for the costs associated with Class Notice.

4.1.1.    <u>General Terms of Notice</u>. The Class Notice shall inform members of the Class that, if they are not excluded from the Class, they may be eligible to receive relief under the proposed settlement. The Class Notice shall *(i)* contain a short, plain statement of the background of the Lawsuit, the certification of the Class and the proposed settlement; *(ii)* describe the Satisfaction of DAC Notes and Cessation of Trail Commissions; *(iii)* describe the True-Up Supplemental Relief; *(iv)* describe the Set-Off Supplemental Relief; *(v)* explain the impact of the proposed settlement on any existing litigation; *(vi)* advise as to the disposition of unknown claims; and *(viii)* state that any relief to Class Members is contingent on the Court's final approval of the proposed settlement. The Class Notice shall conform to all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution and the Rules of the Court and otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

4.1.2.    <u>Notice of Opt-Out and Objection Rights</u>. The Class Notice will advise members of the Class that: *(i)* they may exclude themselves from the Class by submitting written exclusion requests postmarked no later than the Opt-Out and Objection Date or, in the case of a Class Member subject to Bankruptcy Proceedings, may be excluded as set forth in part 5.5; *(ii)* any member of the Class who has not been excluded from the Class may, if he or she desires, object to the proposed settlement by filing and serving a written statement of objections

- 14 -

no later than the Opt-Out and Objection Date; *(iii)* any Class Member who has filed and served written objections to the proposed settlement may enter an appearance at the Fairness Hearing either personally or through counsel; and *(iv)* any judgment entered in the Lawsuit, whether favorable or unfavorable to the Class, will include and be binding on all Class Members who have not been excluded from the Class, even if they have objected to the proposed settlement and even if they have any other claim, lawsuit or proceeding pending against Allmerica.

                    4.1.3.          Notice of Fees and Costs. The Class Notice shall provide information about the Attorneys' Fees and Incentive Awards. It shall also state that Allmerica will pay the Attorneys' Fees and Incentive Awards and any costs arising from notifying the Class or administering the proposed settlement, except that individual Class Members shall be responsible for any fees and costs of any counsel they may retain to represent them individually for any reason, including, but not limited to, counsel retained in connection with the Fairness Hearing.

                    4.1.4.          Remailing of Notice. Allmerica shall remail any notices returned by the Postal Service with a forwarding address that are received by Allmerica at least 20 days before the Fairness Hearing.

                    4.1.5.          Proof of Notice. Allmerica or its administrator shall provide an affidavit to the Court, at or prior to the Fairness Hearing as the Court may direct, with a copy to Plaintiffs' Counsel, attesting to the measures taken to provide notice of the settlement to members of the Class.

              4.2.      Post-Settlement Notice. On the Disbursement Date, Allmerica shall send the Post-Settlement Notice to all Class Members who have not been excluded from the Class.

- 15 -

4.2.1.     The Post-Settlement Notice shall inform Class Members: *(i)* that the order approving the settlement has become final and no longer subject to appeal; and *(ii)* that they are entitled to the relief available under, and are subject to all the terms set forth in this Agreement and the Final Order and Judgment.

4.3.     Right of Communication with Class Members. The Parties and their counsel agree that Allmerica may communicate with and respond to inquiries from Class Members orally and/or in writing.

## 5.    **EXCLUSION FROM THE CLASS**

5.1.    Any member of the Class who wishes to be excluded from the Class must *(i)* mail a written request for exclusion to the Clerk of the Court, in care of the address provided in the Class Notice, postmarked no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, and *(ii)* deliver to Plaintiffs' Counsel and Allmerica's Counsel a copy of the same. A list of the requests for exclusion shall be filed with the Court by Plaintiffs' Counsel or Allmerica's Counsel at or before the Fairness Hearing.

5.2.    Any member of the Class who neither files a timely, valid written request for exclusion as provided in the preceding subpart, nor is excluded pursuant to subpart 5.5 below, shall be bound by all subsequent proceedings, orders and judgments in this Lawsuit, even if he or she has pending, or subsequently initiates, litigation against Allmerica relating to the claims released in this Lawsuit. Allmerica shall have no obligation to notify separately adverse counsel in other pending litigation concerning the facts or terms of the proposed settlement.

5.3.    A request for exclusion will be invalid if it does not provide the information required by part 5.1, is postmarked after the deadline or is not sent to the correct address.

5.4.    Allmerica shall have the right to permit a member of the Class who has filed a timely written request for exclusion to withdraw such request and to participate in the settlement as if such request had never been made.

5.5.    If, on or before the Final Settlement Date, any Class Member is a debtor subject to a pending bankruptcy proceeding with respect to such Class Member under the federal bankruptcy laws (a "Bankruptcy Proceeding"), such Class Member shall be excluded from the Class and neither this Agreement nor the Final Order and Judgment (including, without limitation, the Release and the relief set forth in parts 7 and 3, respectively) shall have any effect with respect to the Class Member, unless on or before the Final Settlement Date: *(i)* a final order

- 17 -

and judgment approving and incorporating the terms of this Agreement as to such Class Member (in its entirety and without qualification or conditions that affect Allmerica's rights hereunder), or such other final order and judgment that the Parties agree to, has been entered by the federal court having jurisdiction over such Bankruptcy Proceeding; and *(ii)* the Class Member files such an order with this Court and delivers to Plaintiffs' Counsel and Allmerica's Counsel copies of the same.

**6.    OBJECTIONS TO SETTLEMENT**

6.1.    Any Class Member who has not been excluded from the Class and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, or to any award of Attorneys' Fees or any Incentive Awards, must deliver to Plaintiffs' Counsel and Allmerica's Counsel and file with the Court, no later than the Opt-Out and Objection Date or as the Court otherwise may direct, a statement of the objection, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of the objection. Class Members may do so either on their own or through an attorney hired at their own expense.

6.2.    Any member of the Class and his or her own attorneys may obtain access at his or her own expense to the documents disclosed through discovery to Plaintiffs' Counsel by Allmerica in this Lawsuit, and also to deposition transcripts and attached exhibits generated in the Lawsuit, but first must agree in writing to be bound by the Protective Order entered in this Lawsuit. These documents shall be made available at the offices of Plaintiffs' Counsel. Plaintiffs' Counsel promptly shall inform Allmerica's Counsel of any requests by members of the Class or their attorneys for access to such documents.

6.3.    If a member of the Class hires an attorney to represent him or her, the attorney must *(i)* file a notice of appearance with the Clerk of Court no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, and *(ii)* deliver to Plaintiffs' Counsel and Allmerica's Counsel no later than the Opt-Out and Objection Date a copy of the same.

6.4.    Any Class Member who files and serves a written objection, as described in the preceding subpart, may appear at the Fairness Hearing, either in person or through an attorney hired at the Class Member's expense, to object to the fairness, reasonableness or adequacy of this

- 19 -

Agreement or the proposed settlement, or to any award of Attorneys' Fees or any Incentive Awards. Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing must deliver to Plaintiffs' Counsel and Allmerica's Counsel and file with the Court no later than the Opt-Out and Objection Date, or as the Court otherwise may direct, a notice of intention to appear.

6.5.    Any Class Member who fails to comply with the provisions of the preceding subparts 6.1, 6.3 and 6.4 shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in this Lawsuit. By filing an objection, a member of the Class *does not* exclude his or herself from the Class, and if the Settlement Agreement is approved by the Court, that Class Member will be bound by the terms of this Agreement and by all proceedings, orders and judgments in the Lawsuit.

- 20 -

## 7.     RELEASES AND WAIVER, AND ORDER OF DISMISSAL

### 7.1.     Releases and Waiver.

7.1.1.          Definitions.  As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

7.1.1.1.          "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

7.1.1.2.          "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

7.1.1.3.          "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4, including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.4.          "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27 and 2.8, including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors,

- 21 -

successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.5.    "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

7.1.1.6.    "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr., No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

7.1.2.    Class Members' Release.  Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form

- 22 -

of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

      7.1.2.1.      <u>Release of Unknown Claims</u>.  Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

      7.1.2.2.      In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those

- 23 -

which they now know or believe to be true with respect to the matters released herein.
Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to
fully, finally and forever settle and release all such matters, and all claims relating thereto, which
exist, hereafter may exist, or might have existed (whether or not previously or currently asserted
in the Lawsuit).

       7.1.2.3.       Without in any way limiting its scope, the Release set forth
in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or
disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or
Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related
in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such
settlement and/or the Released Transactions, except to the extent otherwise specified in the
Settlement Agreement.

       7.1.2.4.       Nothing in the Release set forth in part 7.1.2 shall be
deemed to alter:

          7.1.2.4.1.       claims that *(i)* arise after the Opt-Out and Objection
Date; and *(ii)* relate to a Class Member's rights
under the express terms of Agent Plans or Agent
Policies;

          7.1.2.4.2.       Class Members' rights to assert claims, defenses, or
counterclaims with respect to any matters
encompassed by subpart 7.1.3.4.1;

          7.1.2.4.3.       any rights, defenses, or other claims, if any, that
Class Members may have against any of the

- 24 -

Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

7.1.2.4.4.  the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5.  any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

     7.1.2.5.   Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

     7.1.3.   Defendants' Release. Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

     7.1.3.1.   Release of Unknown Claims. The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees