

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP.,<br><br>Defendants and Counterclaim Plaintiffs. | Civil Action No. 4:04-cv-40077-FDS |

**THIS NOTICE IS SENT TO YOU BY A FEDERAL DISTRICT COURT.**

**IT DESCRIBES THE PROPOSED SETTLEMENT OF A
CLASS ACTION LAWSUIT.**

**IMPORTANT BENEFITS MAY BE AVAILABLE TO
YOU UNDER THE PROPOSED SETTLEMENT.**

**YOU NEED NOT RESPOND TO THIS NOTICE IN
ORDER TO RECEIVE THESE BENEFITS.**

**IF YOU DO NOT WANT TO BE PART OF THE SETTLEMENT,
YOU *MUST* EXCLUDE YOURSELF BY JULY 27, 2006.**

**IF YOU CURRENTLY HAVE A LAWSUIT AGAINST ALLMERICA
FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, FIRST ALLMERICA
FINANCIAL LIFE INSURANCE COMPANY, ALLMERICA FINANCIAL
CORPORATION, OR THE HANOVER INSURANCE GROUP, INC.—
OR IF YOU INTEND TO START SUCH A PROCEEDING—THE
PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHT TO DO SO.**

1. **OVERVIEW—WHY DID YOU RECEIVE THIS NOTICE?** You received this Notice because you may be eligible to receive benefits under the proposed settlement of a class action lawsuit that has been brought against Allmerica Financial Life Insurance and Annuity Company, The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation), and First Allmerica Financial Life Insurance Company. (These companies are referred to together as "Allmerica" in this Notice.) The Court has given its preliminary approval to the settlement and preliminarily certified the Class, and has ordered that this Notice be sent to you and all other members of the Class so that you may consider your options.

This Notice summarizes essential terms of the settlement, which are fully detailed in the Settlement Agreement. If there is any conflict between this Notice and the Settlement Agreement, the provisions of the Settlement Agreement govern. Capitalized terms not otherwise defined in this Notice shall have the meaning ascribed to them in the Settlement Agreement.

Your options are explained in detail in this Notice, but may be summarized as follows:

1. **You may do nothing at this time.** If you do nothing and the Court gives its final approval to the settlement, you will stay in the Class and be entitled to receive the settlement benefits described below, **unless**, subject to the terms of section 6.B below, you are involved in a Bankruptcy Proceeding.

2. **You may remove yourself from the Class by filing a valid "request for exclusion."** The deadline for filing a request for exclusion is July 27, 2006. Your request for exclusion must comply with the requirements described in section 6.A below.

3. **You may stay in the Class, but file an objection to the proposed settlement.** The deadline for filing an objection is July 27, 2006. Your objection must comply with the requirements described in section 7 below.

The Court will hold a hearing (the "Fairness Hearing") on August 11, 2006 at 3:00 pm in Courtroom 2 of the United States District Court for the District of Massachusetts, Harold D. Donohue Federal Building & Courthouse, 595 Main Street, Worcester, Massachusetts 01068, to decide whether to give final approval to the proposed settlement. If the Court approves the settlement, and if you have not been excluded from the Class, you will receive a Second Notice. The Second Notice will tell you that the settlement has been approved and provide more information about any benefits you receive.

2. **DEFINITION OF THE CLASS—ARE YOU A MEMBER?** The Class includes all original participants in the Trail Program who executed a Promissory Note in connection with the Trail Program.[1]

---

[1] The Settlement Agreement defines "Trail Program" as "the contractual obligations and business relationship embodied by the Trail Agreements and DAC Notes collectively"; and the "Trail Agreements" as "the In-Force Annuity Trail Commission Agreements executed in connection with the Trail Program on or about January 1, 2001." The Settlement Agreement defines "DAC Notes" as "the Promissory Notes executed in connection with the Trail Program on or about January 1, 2001."

The Class does <u>not</u> include those persons or entities:

    a.    who prior to April 10, 2006 entered into a settlement agreement with Allmerica that released their claims in connection with the Trail Program; or

    b.    who the Court finds to have filed a timely and valid "request for exclusion" from the Class or who otherwise have been excluded from the Class (see section 6 below).

3.    <u>**NATURE OF THE LAWSUIT AND THE SETTLEMENT PROCESS.**</u> On May 18, 2004, three former Allmerica advisors—they are named as the "Plaintiffs" on the first page of this Notice—filed a class action lawsuit against Allmerica in the United States District Court for the District of Massachusetts. The Lawsuit alleges, among other things, that Allmerica *(i)* violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years; *(ii)* knew but failed to disclose certain risks to the Plaintiffs and the Class at the time they entered into the Trail Program; and *(iii)* engaged in a variety of other alleged misconduct to the detriment of the Plaintiffs and the Class. Allmerica has denied the Plaintiffs' allegations in the Lawsuit.

Allmerica has also asserted several Counterclaims against Plaintiffs and the Class Members (the "Counterclaims"). Allmerica asserts in the Counterclaims that Plaintiffs and Class Members violated their contracts with Allmerica and allegedly engaged in other misconduct, including, among other things, *(i)* by encouraging clients unnecessarily to surrender and/or replace certain annuity contracts; *(ii)* by taking actions to the detriment of Allmerica and its affiliates; and *(iii)* with respect to certain Plaintiffs and Class Members, by defaulting on their obligations under the DAC Notes they signed. Plaintiffs have denied the allegations in the Counterclaims.

**Plaintiffs' Investigation of the Claims and Access to Discovery Material.** The attorneys appointed to represent the Plaintiffs and the Class ("Lead Counsel") have conducted a thorough investigation of the facts and law at issue in the Lawsuit. In the course of their examination, they have reviewed tens of thousands of pages produced by the Allmerica and third parties. The materials produced to the Plaintiffs during discovery are available to Class Members to inspect upon signing a Protective Order. To inspect such documents, contact Lead Counsel at the following address:

    Stephen L. Hubbard, Esq.
    Robert W. Biederman, Esq.
    Hubbard & Biederman, LLP
    1717 Main Street, Suite 4700
    Dallas, Texas 75201
    (214) 857-6000

<u>**Why did Plaintiffs and Allmerica agree to settle?**</u> Plaintiffs and Lead Counsel have conducted a substantial investigation of the law and facts relating to the allegations made in the Lawsuit. Plaintiffs and Lead Counsel are fully advised of the potential strengths and weaknesses of the claims they have brought against Allmerica, and are mindful of the defenses that Allmerica could assert in response to those claims. Plaintiffs and Lead Counsel are also fully advised of the potential strengths and weakness of the Counterclaims against Plaintiffs and the Class Members,

and the defenses that Plaintiffs and Class Members could assert in response to the Counterclaims.

Based on their evaluation of the facts and law, Plaintiffs, Allmerica, and their respective counsel have determined that the proposed settlement is fair, reasonable and adequate. They have reached this conclusion based on the risks, uncertainties and costs inherent in litigation; the benefits conferred by the proposed settlement; and the desirability of resolving the Lawsuit promptly rather than continuing protracted litigation.

The Court will fully consider at the Fairness Hearing the record developed in the Lawsuit, and will decide whether to give final approval to the settlement. The Court will not rule on the merits of the case or decide whether the Plaintiffs' or Allmerica's allegations are true or false.

4.  **SETTLEMENT BENEFITS AVAILABLE.** If you remain in the Class (that is, if you are not excluded from the Class) and the settlement is approved, you will be entitled to relief.

   A.  **Summary of Proposed Benefits.**

   (1) Satisfaction of DAC Notes and Cessation of Trail Commissions. The DAC Note executed by you shall be deemed satisfied on the tenth day following the close of the quarter in which the Final Order and Judgment becomes final (the "Disbursement Date"). Allmerica's obligations to pay, and your rights to receive, Trail Commissions pursuant to the Trail Agreement executed by you also shall cease on the Disbursement Date.

   (2) Supplemental Relief. You may also be eligible for two kinds of supplemental relief: True-Up Supplemental Relief and Set-Off Supplemental Relief. You cannot receive both forms of Supplemental Relief (see paragraph 4.A.(4) below).

   a.  True-Up Supplemental Relief. If you paid (by direct payment, offset or otherwise) during any quarter an amount greater than the fixed quarterly payment (reflecting principal plus interest) set forth on the face of the original DAC Note you executed ("Quarterly Overpayment"), then on the Disbursement Date, you will receive the net amount of your Quarterly Overpayments (overpayments minus underpayments), subject to paragraph 4.A.(4) below.

The calculation of Quarterly Overpayments assumes that interest continued to accrue through the Final Settlement Date. To illustrate:

- A hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of principal plus interest equal to $10,000, but each quarter paid $11,000, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date (i.e., $1,000 times the number of quarters that will have elapsed by that Final Settlement Date).

- Assuming that 21 quarters elapsed by the Final Settlement Date, a hypothetical Class Member who at the inception of the Trail Program in January 2001, executed a DAC Note calling for quarterly payments of

- 4 -

> principal plus interest equal to $15,000, but (i) paid $17,000 per quarter (i.e., $2,000 over the fixed quarterly payment) for 18 quarters, and (ii) paid only $14,000 per quarter (i.e., $1,000 under the fixed quarterly payment) for 3 quarters, would receive a true-up payment in the amount of his net Quarterly Overpayments as of the Final Settlement Date of $33,000 (i.e., $36,000 minus $3,000).

If you are eligible for a True-Up payment under this paragraph, and, prior to April 10, 2006, you paid all amounts due under your DAC Note, your True-Up payment will be calculated as of the date your DAC Note was paid in full.

      (3)    <u>Set-Off Supplemental Relief</u>. To the extent that on or after May 1, 2005, Allmerica used or applied commissions or sums other than Trail Commissions to cover or reduce a shortfall between your quarterly DAC Note payments and the Trail Commissions payable in any given quarter ("Set-Offs"), then on the Disbursement Date, Allmerica will pay you the aggregate amount of such Set-Offs that were used or applied (or will be used or applied) during the period May 1, 2005 to the Disbursement Date, subject to paragraph 4.A.(4) below.

      (4)    <u>No Entitlement to Both True-Up and Set-Off Supplemental Relief</u>. If you qualify for a payment under both the True-Up Supplemental Relief in paragraph 4.A.(2) and the Set-Off Supplemental Relief in paragraph 4.A.(3), you nonetheless shall receive only one form of Supplemental Relief (not both), which shall be the form of the Supplemental Relief that provides you with the greater payment.

    **B.**    **Notification of Eligibility for Settlement Benefits—Second Notice Package.** If the Court approves the settlement, you will be sent a Second Notice describing the form of relief available to you.

    **C.**    **Income Tax Consequences.** Your receipt of settlement benefits could have tax consequences for you. No opinion concerning the tax consequences of any payments, contributions or other relief provided to you through the settlement is given or will be given by Allmerica, Allmerica's Counsel or Lead Counsel, nor are any representations or warranties made in this regard. You should consult your own tax advisor to determine any federal, state, local or foreign tax consequences of the receipt of benefits in your particular circumstances.

**5.**    **<u>DISMISSAL AND RELEASE OF CLAIMS</u>.** If the Court approves the settlement, all claims described in the Class Members' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other proceeding, and, as set forth in the Settlement Agreement, certain claims that Class Members potentially may be able to assert in the future would be subject to mandatory arbitration.*

In addition, if the Court approves the settlement, all claims described in the Defendants' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other*

- 5 -

*proceeding, and, as set forth in the Settlement Agreement, certain claims that Defendants potentially may be able to assert in the future would be subject to mandatory arbitration.*

*Because the Class Members' Release and the Defendants' Release are critical elements of the proposed settlement, they are reprinted in their entirety in Appendix A, together with the provisions of the Settlement Agreement pertaining to arbitration.*

6. **EXCLUSION FROM THE CLASS.**

    A. **Request for Exclusion.** You may request to be excluded from the Class. If you do, you will *not* receive settlement benefits, you will remain subject to Allmerica's Counterclaims and claims it may assert in the future, and you may *not* file an objection with the Court. To request exclusion, you must send a written request to the Clerk of the Court, with copies to Lead Counsel and Allmerica's Counsel, no later than July 27, 2006 at the following addresses:

    Clerk of the Court
    U.S. District Court for the District of Massachusetts
    P.O. Box 961485
    Boston, MA 02196

    **Lead Counsel**
    Stephen L. Hubbard, Esq.
    Robert W. Biederman, Esq.
    Hubbard & Biederman, LLP
    1717 Main Street, Suite 4700
    Dallas, Texas 75201

    **Allmerica's Counsel**
    Andrea J. Robinson, Esq.
    Jonathan A. Shapiro, Esq.
    Wilmer Cutler Pickering Hale and Dorr LLP
    60 State Street
    Boston, MA 02109

You must include in your request *(i)* your name, address and telephone number, *(ii)* a statement that you want to be excluded, *(iii)* the case name and case number, as indicated on the first page of this Notice, and *(iv)* your signature. *Be sure to write "Exclusion Request" on the lower left-hand corner of the front of the envelope.*

**ANY REQUEST FOR EXCLUSION MUST BE POSTMARKED BY JULY 27, 2006.**

A request for exclusion will be **invalid** if it does not provide all of the requested information, is postmarked after the deadline or is not sent to the correct address. A Class Member sending an invalid request for exclusion will be treated as if he or she did not send any request for exclusion at all.

- 6 -

If you do not want to resolve your claims through this proposed settlement, *you must request exclusion, even if you already have a pending claim, lawsuit or proceeding against Allmerica.*

   B.   **Class Members Involved in Bankruptcy Proceedings.** If you are now, or at any time prior to a Final Settlement Date become, a debtor subject to a pending bankruptcy proceeding under the federal bankruptcy laws (a "Bankruptcy Proceeding"), you will be excluded from the Class – even if you have not requested exclusion and would like to participate in the settlement – *unless* on or before the Final Settlement Date: *(i)* the federal court with jurisdiction over the Bankruptcy Proceeding enters a final order and judgment approving and incorporating the terms of the Settlement Agreement with respect to you; and *(ii)* you file such an order with this Court and deliver to Plaintiffs' Counsel and Allmerica's Counsel copies of the same, at the addresses identified in section 6.A. above. Any Class Member who is subject to a Bankruptcy Proceeding but does not take the steps identified above in *(i)* and *(ii)* will be excluded from the Class and (just like those who request exclusion under section 6.A. above) will not be released under Defendants' Release (and thus may remain subject to Allmerica's Counterclaims and claims that Allmerica may assert in the future).

7.   **FAIRNESS HEARING, RIGHT TO OBJECT TO PROPOSED SETTLEMENT AND RIGHT TO APPEAR.**

   A.   **Fairness Hearing—Time, Place and Purpose.** The Court will hold a Fairness Hearing on August 11, 2006 at 3:00 pm in Courtroom 2 of the United States District Court for the District of Massachusetts, Harold D. Donohue Federal Building & Courthouse, 595 Main Street, Worcester, Massachusetts 01068. You may attend the Fairness Hearing if you wish, but you are <u>not</u> required to do so in order to participate in the settlement.

   At the Fairness Hearing, the Court will consider:

   (1)   whether the Court should find that the proposed settlement, as set forth in the Settlement Agreement, is fair, adequate and reasonable, and in the best interests of Class Members;

   (2)   whether the Court should enter a Final Order and Judgment approving the Settlement Agreement, finally certifying the Class for settlement purposes and dismissing *(i)* the pending claims against Allmerica with prejudice and on the merits and releasing the claims against Allmerica; and *(ii)* the pending Counterclaims against the Plaintiffs and Class Members with prejudice and on the merits and releasing the claims against the Plaintiffs and Class Members; and

   (3)   whether the Court should approve *(i)* the application for payment of attorneys' fees and reimbursement of expenses that will be filed by Lead Counsel; and *(ii)* the application for Incentive Awards that will be filed by Plaintiffs. (These applications are described in section 8 below.)

If, after conducting the Fairness Hearing, the Court grants final approval of the settlement as set forth in the Settlement Agreement (including any modification or amendment thereto to which Allmerica and Lead Counsel agree), it will enter a Final Order and Judgment. The Court may approve the Settlement Agreement with such modifications as may be agreed to by the Parties

and without further notice to the members of the Class. The Fairness Hearing may be adjourned from time to time by the Court, without further prior notice.

The Parties' and the Class Members' rights and obligations under the settlement, including the provision of settlement benefits to Class Members, will not become effective until final judicial approval, which means after the Court has entered a Final Order and Judgment and after exhaustion of all appeals, if any, that result in the affirmance of the Final Order and Judgment. However, Allmerica may elect to implement the settlement after the Final Order and Judgment is entered and before the exhaustion of appeals if it so chooses.

     **B.**    **Your Right to Object and Deadline.** If you are not excluded from the Class, you may file with the Court a written objection to any aspect of the proposed settlement or to the requests for Attorneys' Fees or Incentive Awards. You do not have to attend the Fairness Hearing to object to the settlement. Your written objection should include *(i)* a statement of your objection(s), as well as the specific reasons you have for each objection, including any legal support you wish to bring to the Court's attention and any evidence you wish to introduce in support of your objection(s), *(ii)* your name, address and telephone number, and *(iii)* the name of the case and the case number appearing on the first page of this Notice.

Objections MUST be *received* by the Clerk of the Court, with copies to Lead Counsel and Allmerica's Counsel, no later than July 27, 2006 at the following addresses:

    **Clerk of the Court**
    U.S. District Court for the District of Massachusetts
    Donohue Federal Building
    595 Main Street
    Worcester, MA 01608
    Re: Case No. 04-40077

    **Lead Counsel**
    Stephen L. Hubbard, Esq.
    Robert W. Biederman, Esq.
    Hubbard & Biederman, LLP
    1717 Main Street, Suite 4700
    Dallas, Texas 75201

    **Allmerica's Counsel**
    Andrea J. Robinson, Esq.
    Jonathan A. Shapiro, Esq.
    Wilmer Cutler Pickering Hale and Dorr LLP
    60 State Street
    Boston, MA 02109

An objection will be **invalid** if the submission does not provide all of the requested information, is received after the deadline stated above or is not sent to the correct address. **An invalid submission will not be considered by the Court.**

Any judgment entered in the Lawsuit, whether favorable or unfavorable to the Class, will include and be binding on all Class Members who have not been excluded, even if they have objected to the proposed settlement and even if they have any other claim, lawsuit or proceeding pending against Allmerica.

    **C.**  **Your Right to Appear.** Only Class Members who have timely submitted objections may appear at the Fairness Hearing (either in person or through an attorney hired at the Class Member's expense) to object to the fairness, reasonableness or adequacy of the Settlement Agreement or to the requests for Attorneys' Fees or Incentive Awards. If a Class Member hires an attorney to represent him or her, the attorney must *(i)* file a notice of appearance with the Clerk or Court no later than July 27, 2006 and *(ii)* deliver to Lead Counsel and Allmerica's Counsel no later than July 27, 2006 a copy of the same.

**8.**  **COUNSEL FOR THE CLASS, ATTORNEYS' FEES AND INCENTIVE AWARDS.** The Court has designated the law firm of Hubbard & Biederman, LLP as Lead Counsel for purposes of the settlement of this Lawsuit. *You will not be charged for the services of this or any other law firm representing the Class in this Lawsuit.* You have the right to retain your own attorney in this matter, but if you do you will be responsible for paying your own attorneys' fees and expenses.

At the Fairness Hearing, Lead Counsel will apply to the Court for an award of attorneys' fees and expenses ("Attorneys' Fees") not to exceed $2.6 million. If the Court approves Lead Counsel's application, Allmerica will pay the award. Payment of the award of Attorneys' Fees will not affect the benefits available to you.

At the Fairness Hearing, the Plaintiffs will apply to the Court for Incentive Awards not to exceed $20,000 per Plaintiff to reimburse them for the risks they have assumed and the value of their time expended on this Lawsuit. If the Court approves Plaintiffs' application, Allmerica will pay the awards. Payment of the Incentive Awards will not affect the benefits available to you.

Allmerica has agreed to pay all costs associated with providing and administering the settlement, including the printing and mailing expense of this Notice and the Second Notice. The payment of the expenses listed above will not diminish the value of the settlement benefits to the Class.

**9.**  **PRELIMINARY INJUNCTION AND EFFECT ON PENDING CLAIMS, LAWSUITS OR OTHER PROCEEDINGS AGAINST ALLMERICA.** The Court has preliminarily enjoined all Class Members who have not been excluded from the Class (and all persons acting on behalf of members of the Class Members who not been excluded from the Class) from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto, and *(ii)* organizing Class Members who have not

- 9 -

been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto.

At the Fairness Hearing, the Parties will ask the Court, as part of its final approval of the settlement, to enter a permanent injunction similar to the preliminary injunction described above.

10.     **HOW TO OBTAIN ADDITIONAL INFORMATION.** This Notice is a summary of the proposed settlement. The full Settlement Agreement is on file with the Clerk of the Court, along with the Class Action complaint, Allmerica's Counterclaims and other papers and Court orders pertaining to this case. You may inspect these documents at the Clerk's office at any time during normal business hours, Monday through Friday, 8:30 a.m. to 5:00 p.m. If you have any questions, call Steve Hubbard or Rob Biederman, Lead Counsel for the Class, at (214) 857-6000 between 9:00 a.m. and 5:00 p.m. CDT, or write them at their address set forth above in paragraph 6 of this Notice. **Please do not call the Court or the Clerk of Court.**

Dated: June 27, 2006

                             Sarah Allison Thornton, Clerk
                             U.S. District Court for the District of Massachusetts

## APPENDIX A

## RELEASES AND WAIVER

In exchange for the benefits provided under the proposed settlement, Class Members who are not excluded from the Class will release Allmerica, its affiliates, subsidiaries and others from liability for known and also certain unknown claims. Such claims, if any, could include, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other claims available to you in the state where you live, and such claims could give rise to compensatory, exemplary and punitive damages.

In exchange for the benefits provided under the proposed settlement, Allmerica will release Class Members who are not excluded from the Class from liability for known and also certain unknown claims. Such claims, if any, could include, without limitation, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other claims, and such claims could give rise to compensatory, exemplary and punitive damages.

The full text of the Class Members' Release and Defendants' Release, with definitions, are as follows:

7.1   Releases and Waiver.

    7.1.1   Definitions. As used in these releases and waiver and elsewhere in this Agreement, the following terms have the following meanings:

        7.1.1.1   "Agent Plans" means any pension, retirement or retiree medical plan sponsored by any of the Defendants and under which the Class Member is a participant, and any agreement for the payment of commissions other than the Trail Program;

        7.1.1.2   "Agent Policies" means any insurance policy or annuity issued by any of the Defendants.

        7.1.1.3   "Defendant Releasees" means Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4,[2] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants,

---

[2] As defined in subpart 2.4 of the Settlement Agreement, "Allmerica" means: *(i)* the Defendants; *(ii)* each of the past, present and future parent companies of any Defendant, including without limitation The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and The Goldman Sachs Group, Inc.; *(iii)* each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions of the entities described in *(i)* and *(ii)*; and *(iv)* each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators and executors of the entities described in *(i)*, *(ii)*, and *(iii)*.

trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.4    "Plaintiff Releasees" means the Plaintiffs and the Class Members as defined in subparts 2.27[3] and 2.8,[4] including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or any of them, including any person or entity acting on the behalf or direction of any of them.

7.1.1.5    "Released Transactions" means *(i)* the allegations and legal claims asserted in the Lawsuit; *(ii)* the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; *(iii)* the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and *(iv)* the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

7.1.1.6    "Ries Complaint" shall mean the Class Action Complaint In Civil Action filed in the Court of Common Pleas, Allegheny County, Pennsylvania on May 12, 2004 in <u>Sean D. Ries, et al. v. Allmerica Financial Corporation, Allmerica Financial Life Insurance and Annuity Company, and Frederick H. Eppinger Jr.</u>, No. GD 04:9786, as that complaint existed on the date of its filing and without regard to any subsequent *(i)* amendments, *(ii)* pleadings, or *(iii)* other papers filed or actions taken in that action.

7.1.2    <u>Class Members' Release</u>. Except as set forth in subparts 7.1.2.4 and 7.1.2.5 below, Plaintiffs and the Class Members hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or

---

[3]    As defined in subpart 2.27 of the Settlement Agreement, "Plaintiffs" means Donald P. Speakman, Stephen H. Wedel, and Mark L. Robare.

[4]    As defined in subpart 2.8 of the Settlement Agreement, "Class Members" means all members of the Class, excluding all Opt-Outs.

could be alleged or asserted now or in the future by any of the Class Members against the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

> 7.1.2.1 <u>Release of Unknown Claims</u>. Plaintiffs and Class Members expressly, knowingly and voluntarily waive any and all rights they may have against the Defendant Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights Plaintiffs and Class Members may have under California Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Plaintiffs and Class Members hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.
>
> 7.1.2.2 In connection with the Release set forth in part 7.1.2, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).
>
> 7.1.2.3 Without in any way limiting its scope, the Release set forth in part 7.1.2 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or Class Members, or by Plaintiffs or Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.
>
> 7.1.2.4 Nothing in the Release set forth in part 7.1.2 shall be deemed to alter:
>
>> 7.1.2.4.1 claims that *(i)* arise after the Opt-Out and Objection Date; and *(ii)* relate to a Class Member's rights under the express terms of Agent Plans or Agent Policies;

7.1.2.4.2   Class Members' rights to assert claims, defenses, or counterclaims with respect to any matters encompassed by subpart 7.1.3.4.1;

7.1.2.4.3   any rights, defenses, or other claims, if any, that Class Members may have against any of the Defendant Releasees with respect to indemnification, contribution or recovery from the Defendant Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities of every kind and nature), arising out of or as a result of Third-Party Claims;

7.1.2.4.4   the claims against AFC, AFLIAC and Frederick H. Eppinger, Jr. asserted in the Ries Complaint relating to the alleged "100% pay-out of commissions" for the sale of non-proprietary products for which applications were submitted during the period between October 1, 2002 and November 15, 2002; or

7.1.2.4.5   any claim by a Plaintiff Releasee against The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.2.5   Nothing in the Release set forth in part 7.1.2 shall preclude any action to enforce the terms of this Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

7.1.3   <u>Defendants' Release.</u>   Except as set forth in subparts 7.1.3.4 and 7.1.3.5 below, the Defendants hereby, upon entry of a Final Order and Judgment approving this Agreement, release and discharge the Plaintiff Releasees from, and shall not now or hereafter institute, maintain or assert against the Plaintiff Releasees, either directly or indirectly, derivatively, on their own behalf, on behalf of a class or any other person or entity, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, including, without limitation, claims for damages of any kind (including compensatory, punitive, consequential and those in excess of actual damages, claims for legal fees and claims for mental anguish) or claims for any other form of relief or benefit, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by any of the Defendants against the Plaintiff Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the date of this Agreement, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

7.1.3.1     Release of Unknown Claims.  The Defendants expressly, knowingly and voluntarily waive any and all rights they may have against the Plaintiff Releasees under any statute or law of any jurisdiction that provides in substance that a general release does not extend to claims which the plaintiff does not know or suspect exist, including all rights the Defendants may have under California Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Defendants hereby expressly agree to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.

7.1.3.2     In connection with the Release set forth in part 7.1.3, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.  Nevertheless, it is the intention of Defendants in executing this Release to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

7.1.3.3     Without in any way limiting its scope, the Release set forth in part 7.1.3 covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Defendants' Counsel or any other counsel representing Defendants, or by Defendants, in connection with or related in any manner to the Lawsuit, the settlement of the Lawsuit, the administration of such settlement and/or the Released Transactions, except to the extent otherwise specified in the Settlement Agreement.

7.1.3.4     Nothing in the Release set forth in part 7.1.3 shall be deemed to alter:

7.1.3.4.1   Defendants' rights with respect to any of the Agent Plans or Agent Policies referred to in subpart 7.1.2.4.1, including the right (if any) to modify, amend or terminate such Agent Plans or Agent Policies;

7.1.3.4.2   Defendants' rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.1;

7.1.3.4.3   any rights, defenses, or other claims, or counterclaims, if any, that the Defendants may have against any of the Plaintiff Releasees with respect to indemnification, contribution or recovery from the Plaintiff Releasees (including, without limitation, rights or claims to money damages, losses, expenses, judgments, settlements, attorneys fees incurred and other liabilities

of every kind and nature), arising out of or as a result of Third-Party Claims or any matter encompassed by subpart 7.1.2.4.3;

7.1.3.4.4. Allmerica's rights to assert claims, defenses or counterclaims with respect to any matters encompassed by subpart 7.1.2.4.4; or

7.1.3.4.5  any claim by The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates against a Plaintiff Releasee solely to the extent that the claim is unrelated to *(a)* any Defendant, *(b)* the Released Transactions or *(c)* any of the acts, facts, transactions, occurrences, representations or omissions that were or could have been alleged in the Lawsuit.

7.1.3.5     Nothing in the Release set forth in part 7.1.3 shall preclude any action to enforce the terms of the Agreement, the Final Order and Judgment, the Release, or the Permanent Injunction.

## ARBITRATION OF DISPUTES

13.1   Unless another forum is required by law, any disputes between Allmerica and the Class Members encompassed by subparts 7.1.2.4.1 & 7.1.2.4.2 and 7.1.3.4.1 & 7.1.3.4.2 shall be submitted to the American Arbitration Association for binding arbitration in Boston, Massachusetts, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules").

13.2    Any dispute subject to arbitration under subpart 13.1 above shall be submitted to *(i)* a single arbitrator appointed in accordance with the AAA Rules if the amount in controversy is less than $300,000 (exclusive of any claims for interest or injunctive relief); or *(ii)* a panel of three arbitrators appointed in accordance with the AAA Rules if the amount in controversy is equal to or greater than $300,000 (exclusive of any claims for interest or injunctive relief).

13.3    The parties to any arbitration proceeding commenced under subpart 13.1 above shall each bear their own costs with respect to such proceeding; provided, however, that in the event a party fails to proceed with arbitration, unsuccessfully seeks judicial review of the arbitrator's award, or fails to comply with the arbitrator's award, that party shall be responsible for the reasonable attorneys' fees and expenses incurred by any other party in a successful effort to compel arbitration, defend the award against judicial review, or to enforce the award.