UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL AND MARK ROBARE, Individually An On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., AND ALLMERICA FINANCIAL CORP.,<br><br>    Defendant | Civil Action<br>No. 04-40077-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT</u>**

**<u>INTRODUCTORY STATEMENT</u>**

This memorandum is submitted by Jordan P. Gates ("Gates") in support of his Motion for Relief from Judgment, pursuant to Fed. R. Civ. P. 60(b)(1). Gates seeks relief from the Final Order and Judgment Approving Class Action Settlement, dated August 11, 2006 (the "Class Action Settlement"), to continue prosecution of claims pending since 2003 in an arbitration proceeding at the National Association of Securities Dealers arising from Gates' termination from employment by an affiliate of the Defendants in this matter. As demonstrated below, Gates failed to "opt out" of this Class Action proceeding by July 27, 2006 due to his own "mistake, inadvertence…or excusable neglect" - which was abetted by the conduct of VeraVest Investments, Inc. and VeraVest Advisors, Inc. (collectively "VeraVest"), his former employer and affiliates of the Defendants, which are not settling parties in this Class Action. VeraVest now seeks to invoke the benefit of the Class Action Settlement by enforcing the associated

release and dismissal, to prevent Gates from prosecuting his claims in the pending arbitration. The motivation of VeraVest is clear - to avoid having to defend Gates' claims, with an exposure of hundreds of thousand of dollars, by instead having the settling Defendants pay Gates the very short dollars to which he would be entitled as a settling plaintiff. The Court should grant Gates relief from the Class Action Settlement, and should prohibit VeraVest from using this Class Action - in which it did not even participate - as a shield to Gates' claims.

## STATEMENT OF FACTS

Gates is a resident of the State of Oregon, and a certified financial planner and a former registered representative and Director of Financial Planning for the Pacific Northwest Branch of VeraVest Investments, Inc. f/k/a Allmerica Financial Investments, Inc. and VeraVest Advisors, Inc. f/k/a Allmerica Investment Management Co., Inc. (collectively "VeraVest"[1]). On or about December 31, 2002, Gates was terminated, allegedly for cause, from his employment at VeraVest (then known as Allmerica Investment Management Company, Inc.), ostensibly on the ground that a client's check was accidentally misdirected, without Gates' knowledge, to his personal account. Specifically, due to a home office error at VeraVest, a $1,000 check from one of Gates' financial planning clients, which was intended to be used as the initial funding for a college fund for one of the clients' children, was made payable by VeraVest to the addressee "Allmerica Financial c/o Jordan P. Gates," by VeraVest, rather than to the proper payees, the account owners. Gates' assistant mistakenly deposited the check to Gates' personal account, and learned of the error several weeks later, when Gates was out of the country on vacation and inaccessible. Gates' assistant immediately notified the Compliance Department, which acknowledged the error and indicated that it would correct the error by immediately issuing a

---

[1] The "Allmerica" entities changed their names to "VeraVest" on or about January 1, 2003.

2

new check to the clients, and arranging to have Gates' next commission check from VeraVest debited $1,000 (Affidavit of Jordan P. Gates, hereinafter "Gates Aff.," ¶¶ 1-5).

Once the misdirection of these funds was called to Gates' attention, and following an investigation within VeraVest, Gates believed that the matter had been resolved, and that his personal account would simply be debited. Instead, Gates was told on December 12, 2002 that his employment with VeraVest would be terminated. Gates' NASD Uniform Notice of Securities Industry Registration (Form U-5) falsely indicated that he was terminated for cause, and that at the time of his termination he was under an internal investigation for fraud (Gates Aff., ¶¶ 6-7).

In or about December 2003, Gates commenced an NASD arbitration proceeding against VeraVest, alleging breach of contract, defamation, interference with business relations and intentional infliction of severe emotional distress all arising out of the termination on his employment with VeraVest (Gates Aff., ¶ 8; Affidavit of Michael C. Lewton, hereinafter "Lewton Aff.," Exhibits A-B).

In or about June 2004, Gates reviewed a copy of the First Amended Class Action Complaint in the above-captioned matter, specifically concerning the right of registered representatives to receive trail commissions for certain variable annuities sold by such registered representatives, and the continuing obligations of such registered representatives to make payments to Allmerica under certain promissory notes ("DAC Notes"), payment of which was to be satisfied by offsets from trail commissions, following Allmerica's termination of the DAC program. Gates had participated in the DAC program, and signed a DAC Note, which are among the eligibility criteria for participation in the Class Action. As alleged in Paragraph 17H of the First Amended Class Action Complaint, however, the Trail Program provided that "if an

agent were terminated for cause, his participation in the Trail Program ended, and he no longer had any obligation to make payments on the DAC Note" (Gates Aff., ¶¶ 9-10).

Because Gates was ostensibly terminated for cause, he believed that any obligations that he might have under the DAC Note had been terminated, and that accordingly he did not have a valid claim arising from Allmerica's termination of the DAC program that was actionable in the Class Action. To the extent that Gates had any claims associated with his loss of rights under the DAC program resulting from his alleged termination for cause by VeraVest, those claims were being asserted in the NASD Arbitration, and Gates believed that they could not be brought in the Class Action because he was not a class member, as defined. Additionally, neither VeraVest Investments, Inc., VeraVest Advisors, Inc. (the named respondents in the NASD Arbitration), nor their predecessors in name, were listed as Defendants in the Class Action (Gates Aff., ¶¶ 11-12).

Gates received the Notice of the Proposed Class Action Settlement, dated June 27, 2006, from the United States District Court for the District of Massachusetts (the "Notice"). At that time, the NASD Arbitration was ongoing. The Notice provided in part as follows:

> **PRELIMINARY INJUNCTION AND EFFECT ON PENDING CLAIM, LAWSUITS OR OTHER PROCEEDINGS AGAINST ALLMERICA.** The Court has preliminarily enjoined all Class Members who have not been excluded from the Class (and all persons acting on behalf of members of the Class Members who have not been excluded from the Class) from (i) directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or continuing to prosecute or participate in, or receiving any benefits or other relief from, directly or indirectly (as class members or otherwise), any action, lawsuit, claim or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto…

Gates in good faith believed, and still believes, that he is not a class member, as defined in the Class Action, and accordingly did not exercise the right to "opt out" as a Plaintiff on or before

4

July 27, 2006, as required in the Notice.  The NASD Arbitration could only continue in the face of the injunction issued by the Court in the Class Action if he was not a member of the class of plaintiffs upon which the Class Action Settlement was binding.  Gates never received any communication from VeraVest indicating that he was enjoined from prosecuting the NASD Arbitration (Gates Aff., ¶¶ 15-17).

At the time that Gates received the Notice, the arbitration hearings in the NASD Arbitration had been continued until October 4, 2006.  On or about September 14, 2006 - thirty-one days after entry of the Final Order and Judgment Approving Class Action, and one day after the last date upon which an appeal could be taken from the final judgment approving the Class Action Settlement - Gates' attorney in the NASD Arbitration, Michael C. Lewton, was advised for the first time by Michael Donovan, VeraVest's counsel in the NASD Arbitration, that VeraVest was taking the position that Gates was a member of the class, bound to the Class Settlement Judgment.  During this discussion, Mr. Donovan informed Mr. Lewton that a settlement and associated judgment had entered in the DAC Class Action, and that as a consequence Gates had released any claims against VeraVest and its affiliates that were pending in the NASD Arbitration.  Neither VeraVest nor Mr. Donovan ever gave any indication that the NASD Arbitration should be enjoined at any time between the date of the Notice and Mr. Lewton's conversation with Mr. Donovan on September 14, 2006, nor was any effort made by VeraVest or its counsel to enforce such injunction (Gates Aff., ¶ 18; Lewton Aff., ¶¶ 8-9).

The amount Gates would receive as a member of the class would be in the magnitude of a few thousand dollars, perhaps in the hundreds of dollars.  The claims asserted in the NASD Arbitration - on which Gates has spent approximately $250,000 in legal fees to date, and which

5

extend well beyond any claims under the DAC program - are in the magnitude of hundreds of thousands of dollars (Gates Aff., ¶¶ 17, 20).

## ARGUMENT

**I.  THE COURT IS AUTHORIZED TO GRANT RELIEF TO PERMIT GATES TO BE EXCLUDED FROM THE CLASS DESPITE HIS FAILURE TIMELY TO OPT OUT OF THE CLASS ACTION.**

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for … mistake, inadvertence, surprise or excusable neglect…."  A Court retains the power to permit class members an extension of time to opt-out pursuant to Fed. R. Civ. P. 60(b)(1) (as well as Rules 6(b)(2) and 23(b)), and in doing so must consider the potential impact that late opt-outs would have on the class action settlement.  In re Prudential Insurance Company of America Sales Practices Litigation, 177 F.R.D. 216, 235 (D.N.J. 1997); In re Gypsum Antitrust Cases, 565 F.2d 1123, 1127-28 (9th Cir. 1977).  In determining whether to grant a motion for a late opt out, the Court must determine 1) whether the movant's neglect was excusable, and 2) whether either party would be substantially prejudiced by the Court's action. In re Prudential Securities Inc. Limited Partnership Litigation, 107 F.3d 3 (2d Cir. 1996, unpublished); Supermarket General Corp. v. Grinnell Corp., 490 F.2d 1183, 1186 (2d. Cir. 1974) (*per curiam*).  Relief from a class action judgment under Rule 60(b) is considered a "less drastic" measure than the alternative of the putative class member seeking to collaterally attack the impact of the class action settlement through prosecution of pending litigation.  Silber v. Mabon, 957 F.2d 697, 700 (9th Cir. 1992).[2]

---

[2] The NASD Arbitration has been stayed pending the Court's determination of this motion (Lewton Aff., ¶ 10).

As demonstrated below, Gates' failure timely to opt out of this class action is clearly an issue of "mistake, inadvertence…or excusable neglect." Furthermore, the impact of allowing Gates to opt out at this date (less than two months after entry of final judgment,[3] and less than a month after VeraVest first informed Gates that it considered Gates' claims in the NASD Arbitration to be barred by the Class Action Settlement) will be *de minimus*. If allowed to stand, however, Gates will be prohibited from continuing to prosecute the NASD Arbitration, where he has claims against VeraVest - which have little do with the subject matter of this Class Action lawsuit - with a value of hundreds of thousand of dollars, as compared with the few thousand (or even hundred) dollars that he would receive in the Class Action Settlement.

## II.    GATES' FAILURE TIMELY TO OPT OUT WAS BASED ENTIRELY ON HIS "MISTAKE, INADVERTENCE OR EXCUSABLE NEGLECT."

"Excusable neglect" is defined to encompass "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." In Re New England Mutual Life Insurance Company Sale Practices Litigation, 204 F.R.D. 6, 12 (D. Mass. 2001), *citing* Pioneer Investment Services v. Brunswick Associates, 507 U.S. 380, 388 (1993) (internal citations omitted):

> With specific reference to Rule 60(b)(1), 'excusable neglect' is understood to encompass situations in which the failure to comply with the filing deadline is attributable to negligence. Because the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.'…
>
> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable

---

[3] A motion for relief from judgment under Fed. R. Civ. P. 60(b)(1) must be brought within one year of the entry of judgment.

<u>control of the movant, and whether the movant acted in good faith</u>
[emphasis added].

A claim of excusable neglect under Fed. R. Civ. P. 60(b) which provides for relief after judgment is entered, must be considered in light of the purposes and provisions of Rule 23.  <u>In re Four Seasons Securities Laws Litigation</u>, 59 F.R.D. 667, 677 (W.D. Okl. 1973), *rev'd*, 502 F.2d 834 (10th Cir.), *cert. denied sub nom*, <u>Ohio v. Arthur Andersen & Co.</u>, 419 U.S. 1034 (1974).  "[A] too liberal application of Rule 60(b) in class actions would undermine the finality of judgments entered herein and would discourage settlement of such actions.  Defendants would be loathe to offer substantial sums of money and compromise settlement of class actions unless they can rely on the notice provisions of Rule 23 to bind class members."  <u>Id.</u>

Gates did not opt out by July 27, 2006 due to his good faith but (perhaps) mistaken belief that he was not a member of the Class, and that he had no claim in the Class Action.  As a registered representative terminated for cause, he had a different set of rights under the DAC program than those being asserted by the Class Members against Allmerica.  Those rights were being asserted in the NASD Arbitration against VeraVest - which is not a Defendant in the Class Action, and is not a settling defendant in the Class Action Settlement.  VeraVest's own conduct suggested that Gates claims in the NASD Arbitration were not impacted by the Class Action.  Indeed, no reference to the Class Action was ever made by VeraVest in the context of the NASD Arbitration until September 14, 2006 - one day after the Class Action Judgment became final and unappealable.  VeraVest never took the opportunity to enforce the injunction issued by the Court in the Class Action by seeking to enjoin proceedings in the NASD Arbitration.  While Gates' failure timely to opt out was based on his own "excusable neglect," that neglect was abetted by VeraVest's conduct, both passive and active.

Here, the granting of relief from the Class Action Settlement does not invoke a "too liberal application of Rule 60(b)," but rather is consistent with the goals of excusing litigants from their good faith mistakes - where, as demonstrated below, the prejudice to Gates is significant, and the prejudice to the Settling Defendants is minuscule.

**III.    GATES WILL LOSE VALUABLE CLAIMS AGAINST AFFILIATES OF ALLMERICA, AND WILL RECEIVE A VERY SMALL PAYMENT FROM THE CLASS ACTION SETTLEMENT, IF RELIEF FROM JUDGMENT IS NOT GRANTED.**

Gates will suffer a significant loss of rights to pursue his claims against VeraVest in the NASD Arbitration - which has been pending since December 2003 - if relief from the Class Action Judgment is not granted. These claims - on which Gates has already spent approximately $250,000 in legal fees to prosecute - are in the magnitude of hundreds of thousands of dollars. In contrast, while Gates has not yet received a notice of the amount he would receive if determined to be a settling plaintiff in the Class Action, it is believed to be in the magnitude of a few thousand dollars, perhaps as little as a few hundred dollars (Gates Aff., ¶ 20; Lewton Aff., Exhibits A and B).

Allowing Gates - a single putative class member[4] - to opt out at this date will have no impact on the Class Action Settlement. Compare In re Prudential Securities Corporation Limited Partnership Litigation, 164 F.R.D. 362, 371 (S.D.N.Y. 1996) (where so-called "blow provision" provided that if class members asserting an aggregate of more than $10 million in claims opted out of class by the opt-out deadline, Defendant had right to withdraw from class action settlement) with In re Delvell Financial Corp. Securities Litigation, 154 F.R.D. 95, 96-97 (S.D.N.Y. 1994) ("Our holding is supported by the fact that I/JL is not one of the settling

---

[4] Nine other Class Members have opted out (Final Order, footnote 2)

defendants and hence will not be prejudice if Ms. Heath opts-out of the class at this time") and <u>Mars Steel Corp. v. Continental Illinois National Bank and Trust Co. of Chicago</u>, 120 F.R.D. 51, 53 (N.D. Ill. 1988) ("Finally, we note that Continental does not contradict movant's position that Continental will not be prejudiced by this enlargement of time").

VeraVest, Gates' former employer and the primary respondent in the NASD Arbitration, is not a settling defendant in the Class Action. Neither Allmerica nor VeraVest will suffer any prejudice if Gates is granted leave to opt out late. Allmerica and VeraVest seek to take advantage of the broad release incorporated into the Class Action Settlement, to which Gates would be bound if relief from judgment is not granted, set forth in Section 7.11.2 of the Class Action Settlement Agreement:

> <u>Class Members Release</u>. …Plaintiffs and Class Members hereby, upon entry of Final Order and Judgment approving this Agreement release and discharge Defendant Releasees from, and shall not now or hereafter institute, maintain or assert against the Defendant Releasees…, any and all causes of action, claims, damages… of any kind or nature whatsoever, including, without limitation, claims for damages of any kind …that have been, could have been, may be or could be alleged or asserted now or in the future by any Class Member against any of the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body…tribunal, arbitration panel… on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising our of, based upon, or relating in any way to the Released Transactions.

The term "Defendant Releasees" does not expressly include VeraVest, but is defined to include:

> Allmerica, The Goldman Sachs Group, Inc., and each of the other individuals and entities included within the definition of Allmerica in subpart 2.4, including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers , co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or all of them, including any person or entity acting on the behalf of  or direction of any of them.

"Allmerica" is further defined to include

> (i) the Defendants, (ii) each of the past, present and future parent companies of any Defendant, including without limitations The Hanover Insurance Group, Inc. (formerly known as Allmerica Financial Corporation) and the Goldman Sachs Group, Inc.; (iii) each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and division of the entities described in (i) and (ii); and (iv) each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint ventures, accountants, trustees, heirs, administrators and executors of the entities described in (i), (ii), and (iii).

Nowhere is VeraVest listed as a participant in the Class Action Settlement, nor is it specifically listed anywhere among the Defendant Releasees. See In re Delvell Financial Corp. Securities Litigation, 154 F.R.D. at 96-97. VeraVest only seeks to take advantage of the Release to block Gates' prosecution of the NASD Arbitration by some undisclosed and attenuated relationship with Allmerica that would bring it within the wide web of the broad form release.

Further, VeraVest never sought to enjoin Gates from pursuing the NASD Arbitration following this Court's issuance of injunctive relief. This can be seen either as an acknowledgment that the Class Action had no impact on the NASD Arbitration, or an effort on the part of VeraVest to ambush Gates with the Class Action Judgment only after the time when it became final and unappealable - which happens to be the time that VeraVest first invoked the Class Action Settlement as a means of ending the NASD Arbitration.

There is an obvious benefit to VeraVest from seeking to use the impact of the Class Action Settlement as a shield to the NASD Arbitration - the opportunity to have an affiliate pay a few thousand dollars to Gates, and having VeraVest escape the litigation costs and potential exposure to the claims raised in the NASD Arbitration. This is hardly "prejudice" to Allmerica

and VeraVest, except insofar as taking unfair advantage of a situation to the detriment of a litigant constitutes "prejudice" - a definition not contemplated by the rules or the law.

## CONCLUSION

Jordan P. Gates' Motion for Relief from Judgment should be allowed, and he should be allowed to continue prosecution of the NASD Arbitration against VeraVest without prejudice from the Class Action Settlement, for the reasons contained in this Memorandum.

JORDAN P. GATES

By his Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: October 11, 2006

/s/Mark W. Corner
Mark W. Corner, BBO #550156
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

## CERTIFICATE OF SERVICE

Mark W. Corner states under the penalties of perjury that the following document was served upon all counsel receiving electronic file notification in this matter on October 11, 2006.

/s/Mark W. Corner
Mark W. Corner

974762.2