UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP.,<br><br>Defendants. | Civil Action No. 4:04-cv-40077-FDS<br><br>**Oral Argument Requested** |

## ALLMERICA'S OPPOSITION TO
## MOTION OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT

Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Allmerica Financial Life Insurance & Annuity Co., First Allmerica Financial Life Insurance Co., and The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corp.*

Dated: November 15, 2006

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................1

I.   GATES IS BOUND BY THE COURT'S FINAL ORDER AND JUDGMENT................1

    A.   Gates Is A Member Of The Class. ..................................................................1

    B.   The NASD Arbitration Has Been Released And Enjoined. ...........................2

II.  GATES SHOULD NOT BE EXCUSED FROM THE FINAL ORDER AND JUDGMENT. ...................................................................................................................4

    A.   The Court Should Not Excuse Gates' Failure To Opt-Out..............................4

        1.   The Decision to "Disregard" Mail is not "Excusable." .......................5

        2.   Mr. Gates' Various Explanations Do Not Make the Neglect Reasonable. ..........................................................................................9

    B.   Allmerica Will Be Prejudiced If Gates Is Permitted To Opt-Out ..................11

        1.   Allmerica Already Has Been Prejudiced by a Large Number of Opt-Outs and Waived Its Rights Under the Blow Provision Based on a Reasonable Belief That There Would be no More.............................12

        2.   Gates Cannot Excuse his Neglect by Blaming Defendants. .................14

        3.   Gates (not Allmerica) Caused Whatever Prejudice He Now Faces........15

CONCLUSION....................................................................................................................17

Defendants Allmerica Financial Life Ins. and Annuity Co., First Allmerica Financial Life Ins. Co., and The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation (collectively "Allmerica" or "Defendants") submit this brief in Opposition to the Motion of Jordan P. Gates ("Gates") for Relief from Judgment ("Gates Motion"). Defendants respectfully request that this Court enforce its Final Order and Judgment, dated August 11, 2006 (Docket No. 90), against Gates, and enjoin prosecution of his claims before an Arbitration Panel of the National Association of Securities Dealers Regulation, Inc. ("NASD Arbitration").[1]

## INTRODUCTION

As set forth below, Gates is a member of the Class certified in this Class Action, and the claims asserted in the NASD Arbitration were fully and forever released by the Final Order and Judgment. Gates' continued prosecution of the NASD Arbitration also violates the express terms of this Court's Permanent Injunction against the prosecution of any lawsuit, in any jurisdiction, based on the claims released in the Class Action.

## ARGUMENT

### I. GATES IS BOUND BY THE COURT'S FINAL ORDER AND JUDGMENT.

#### A. Gates Is A Member Of The Class.

There is no question that Gates is a member of the Class certified by the Final Order and Judgment, which is defined as:

> [T]he Plaintiffs and all other original participants in the Trail Program who executed a DAC Note, except any such participants *(i)* who, prior to April 10, 2006, released their claims in connection with the Trail Program pursuant to a settlement with any of the Defendants, or *(ii)* who have been excluded from the Class (by

---

[1] Jordan P. Gates v. Veravest Investments, Inc., Veravest Investment Advisors, Inc., Allmerica Financial Corporation, dba Allmerica Financial Services, Allmerica Investment Management Company, Allmerica Financial Life Insurance and Annuity Company, and Michael R. Burgoyne, NASD Dispute Resolution No. 03-08688. A copy of the NASD Arbitration Amended Statement of Claim is attached as Exhibit B to the Affidavit of Michael Lewton in Support of Motion for Relief from Judgment ("Lewton Aff.") (Docket No. 97).

>filing a timely and valid request for exclusion or by virtue of a
>Bankruptcy Proceeding) . . . .

See Final Order and Judgment ¶ 3. Gates admits the critical facts that place him within the Class – according to his own affidavit, "I did in fact participate in the DAC program, and I did sign a DAC Promissory Note." See Affidavit of Jordan P. Gates in Support of Motion for Relief from Judgment ("Gates Aff.") ¶ 10. Gates does not even claim to fit within either of the *only* two exceptions to Class membership: *(i)* he did not release Trail Program claims pursuant to a settlement with any of the Defendants; and *(ii)* he did not file a timely and valid request for exclusion from (or "opt-out" of) the Class by the July 27, 2006 deadline set by the Court.[2] Gates Aff. ¶ 17. Accordingly, the Final Order and Judgment (including the Release and Injunction) is "forever binding" on Gates. See Final Order and Judgment ¶¶ 8, 9, 11, 16.

### B. The NASD Arbitration Has Been Released And Enjoined.

In the NASD Arbitration, Gates asserts a series of claims against two of the three Allmerica entities that were sued in the Class Action (Allmerica Financial Corporation and Allmerica Financial Life Insurance & Annuity Company) as well as Allmerica's wholly-owned broker-dealer through which Gates and all the other Class Members sold the variable annuities that were the subject of the Trail Program (VeraVest Investments, formerly known as Allmerica Investments, Inc.). See Amended Statement of Claim at 1. Gates characterizes his claims as "all arising out of the termination of his employment," and he seeks monetary damages for alleged breach of his contract with Allmerica Financial Life Insurance & Annuity Company (including losses related to the Trail Program), tortuous interference with business relations, and severe

---

[2] Although Gates admits the facts that make him a Class Member, he also argues that he nonetheless believed (perhaps "mistakenly") that he "was not" in the Class and/or that he "had been excluded" from the Class because he was terminated "for cause" in 2002. Gates Mem. at 8. Gates' subjective belief does not define membership in the Class, and here any such belief would be unreasonable because there is *nothing* in the controlling documents – including the Court's Final Order and Judgment and its earlier Hearing Order, the Class Notice, and the Stipulation of Settlement – that even remotely suggests that terminated advisors (whether "for cause" or for any reason) are excluded from the Class. See infra § II.A.2.

emotional distress.[3] See Memorandum of Law in Support of Motion of Jordan P. Gates for Relief from Judgment ("Gates Mem.") at 3; Amended Statement of Claim at 9-12.

Gates does not dispute that his NASD claims are barred by the Release incorporated in the Final Order and Judgment.[4] The Release extinguishes:

> any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights of any kind or nature whatsoever, including, without limitation, claims for damages of any kind . . . that have been . . . alleged or asserted . . . by any of the Class Members . . . in any other court action or before any regulatory or administrative body (including any state Department of Insurance, self-regulatory or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

Final Order and Judgment, Ex. A, § 7.1.2 ("Class Members' Release"). There is no question the claims that Gates has asserted in the NASD Arbitration fall within the category of "any and all" claims, and that they are pending before both a "self-regulatory" organization and an "arbitration panel." Id.[5]

Gates' continued prosecution of the NASD Arbitration also violates the Permanent Injunction:

> All Class Members who have not been excluded from the Class . . . are hereby permanently and forever barred and enjoined from *(i)* directly, representatively or in any other capacity filing, commencing, prosecuting, intervening in, or participating in and/or

---

[3] Gates also asserted a defamation claim that the NASD Arbitration Panel dismissed last year.

[4] Indeed, although Gates asks the Court to exclude him from the Class, he acknowledges that his "NASD Arbitration could only continue in the face of the injunction issued by the Court" if the Court does so. See Gates Mem. at 5.

[5] It is equally clear that the claims "arising out of the termination of [Gates'] employment," see Gates Aff. ¶ 1, are "Released Transactions," i.e., those arising out of "the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees," see Stipulation of Settlement § 7.1.1.5, at 22.

> continuing to prosecute or participate in . . . any action, lawsuit, claims or other proceeding, in any jurisdiction based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto . . . ."

Final Order and Judgment ¶ 9. The Permanent Injunction must be enforced to ensure compliance with the Court's Final Order and Judgment, and to allow Defendants to receive the benefit of the bargain they struck by agreeing to settle a Class Action at substantial expense and despite strong defenses. See In re Prudential Life Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 370 (3d Cir. 2001) (Settlement Agreement simply cannot be "enforced without the injunction"). For this reason, the Court retained exclusive jurisdiction to "enforce[]" the Settlement Agreement and its Final Order and Judgment, including "with respect to the Release and Permanent Injunction." See Final Order and Judgment ¶ 15.

## II.    GATES SHOULD NOT BE EXCUSED FROM THE FINAL ORDER AND JUDGMENT.

### A.    The Court Should Not Excuse Gates' Failure To Opt-Out.

Mr. Gates seeks exclusion from the Settlement under Fed. Rule Civ. P. 60(b), arguing that he "disregarded" the Court-approved Class Notice and failed to opt-out by the July 27, 2006 deadline for a variety of reasons (some contradictory) that he attributes to "excusable neglect" by him and/or his attorneys. See Gates Mem. at 1. The Rule calls for an assessment of "all the relevant circumstances surrounding [Gates'] omission," including the nature of the mistake, the reasons for the mistake and whether it resulted from circumstances "within [Gates'] reasonable control," and a weighing of the prejudice to Defendants and the relative good faith of Gates. See Pioneer Investment Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Mr. Gates has conspicuously avoided briefing his Rule 60(b) motion under the law of the First Circuit, perhaps because the courts in *this* Circuit have repeatedly held that the "excusable

neglect" test under Fed. R. Civ. P. 60(b) is a "demanding standard," and that "motions invoking this rule should be granted only under *exceptional circumstances*." Deo-Agbasi v. Parthenon Group, 229 F.R.D. 348, 351 (D. Mass. 2005) (emphasis added). Mr. Gates' reliance on cases from elsewhere is particularly unpersuasive because the Court of Appeals has *expressly rejected* the more liberal application of Rule 60(b) of "many courts" in other jurisdictions – "*this Circuit has taken a harsher tack.*" Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001) (emphasis added) ("Rule 60(b) is a vehicle for "*extraordinary relief*" available "only under exceptional circumstances"); Mirpuri v. ACT Manuf., Inc., 212 F.3d 624, 630-31 (1st Cir. 2000) (similar). It thus is not surprising that the *only* case Gates has cited from within the First Circuit goes against him, In re New England Mutual Life Insurance Company Sales Practice Litig., 204 F.R.D. 6 (D. Mass. 2001) (*denying* Rule 60(b) motion where, unlike here, Class Member tried to meet opt-out deadline but was one day late because Post Office did not postmark exclusion request until the morning after it was dropped off).

        1.    *The Decision to "Disregard" Mail is not "Excusable."*

Gates acknowledges his receipt of the Class Notice that was provided to him pursuant to a Court Order designed to safeguard the due process rights of all Class Members. See Hearing Order (Docket No. 79) ¶ 9, at 5; Final Order and Judgment ¶ 5, at 5-6. That Notice could not have been more explicit – it stated on its first page, in bold, capitalized typeface that Class Members who wished to preserve pending or future claims against Allmerica should pay close attention:

> **IF YOU CURRENTLY HAVE A LAWSUIT AGAINST ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, ALLMERICA FINANCIAL CORPORATION, OR THE HANOVER INSURANCE**

**GROUP, INC.—OR IF YOU INTEND TO START SUCH A PROCEEDING—THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHT TO DO SO.**

Class Notice at 1 (emphasis in original). The Class Notice was redundant on this point – page 5 states:

> **DISMISSAL AND RELEASE OF CLAIMS.** If the Court approves the settlement, all claims described in the Class Members' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other proceeding, and, as set forth in the Settlement Agreement, certain claims that Class Members potentially may be able to assert in the future would be subject to mandatory arbitration.* (emphasis in original)

The Class Notice also contains the full text of the Class Member Release. See id. at 12-14 (Appendix A). And the Class Notice clearly sets forth the simple rules for opting out, and instructs recipients to call or write Lead Counsel if they have any questions. See id. at 6-7, 10.

In addition, unlike virtually all other class members, Gates already had a personal attorney (Michael Lewton) who was intimately familiar with this, and with whom he had discussed opt-out issues in the past. See Lewton Aff. ¶ 4. Thus, Mr. Gates was better positioned than virtually all other Class Members to seek whatever guidance he felt necessary to understand the Class Notice and decide whether to opt-out. See In re Terazosin Hydrochloride Antitrust Litig., No. 99-MDL-1317, 2005 U.S. Dist. LEXIS 13992, at *21 & n.9 (neglect not excusable where, as here, class member and counsel were aware of pending case and "at the very least , could have done a public records search" to understand and safeguard class member's rights).

Mr. Gates, however, testifies that he "did not attribute any significance" to that explicit Notice. Instead, he "disregarded the notice" altogether. Gates Aff. ¶ 15, at 5. Gates' decision to disregard the mail he received is not, however, the "exceptional circumstances" the First Circuit

requires to excuse him from the Final Order and Judgment under Rule 60(b). See supra; see also In re VMS, 1992 WL 203832, at *4 (rejecting Rule 60(b) motion where, as here, class member claimed not to have understood "significance" of notice). The "significance" of the Notice is immediately apparent from the face of the document, which the Court already has found (twice) was sufficiently clear and understandable to satisfy due process. See Hearing Order ¶ 10; Final Order and Judgment ¶ 5. The law also is clear that Gates would be bound to the Final Order and Judgment even if he could not understand the very clear Class definition and the equally clear warnings that the Settlement may bar pending litigation. See Rodgers v. United States Steel Corp., 70 F.R.D. 639, 647 (W.D. Pa. 1976) (notice is adequate if "comprehensible to reasonable and competent individuals" and need not "be reduced to a pablum" to enable every class member "to digest its impact").[6]

Moreover, having received but disregarded the Class Notice, Gates' untimely request for exclusion is less excusable than the Rule 60(b) motions filed by class members who never even received the notice. See, e.g., Magnolia v. Connecticut Gen. Life Ins. Co., 157 F. Supp. 2d 583, 587 (D. Md. 2001) (where, as here, Court-approved procedures provided best notice practicable under the circumstances, "there is *not merit* to [any] contention" that release and settlement are not binding on class member who claim to have not received it); In re Prudential Ins. Co. of America Sales Practices Litig., 177 F.R.D. 216, 231 (D.N.J. 1997) ("Courts have consistently recognized that due process does not require that every class member receive actual notice so

---

[6] Of course, even if Gates did genuinely believe that the Notice that was sent to him was inapplicable, he should have done something to confirm that belief. For example, Gates could have telephoned or written Lead Counsel at the contact information listed in the Class Notice, or he could have discussed the matter with his own counsel.

long as the court reasonably selected a means likely to apprise interested parties.").[7] Even class members who are away from home during the opt-out period to attend to family emergencies have been unable to meet their heavy burden of establishing excusable neglect. See In re VMS, 1992 WL 203832, at *5 & n.9 (no excusable neglect where class member attributed failure to opt-out to extended absence to care for dying sister-in-law but could not demonstrate that "she was herself incapacitated or otherwise unable to attend to her personal affairs at any time during her claimed two month absence").[8]

Mr. Gates' failure to opt-out prior to the Court's deadline – and indeed failure to do *anything* at all upon receipt of the Class Notice – falls far short of the "excusable neglect" standard applied in the *only* First Circuit case he cites, In re New England Mutual Life Ins. Co. Sales Practices Litig., 204 F.R.D. 6 (2001) (cited in Gates Mem. at 7). There, this Court denied a Rule 60(b) motion filed by a group of class members who (unlike Gates) at least attempted to opt-out of a settlement, but missed the deadline by a *single day*. Applying the First Circuit's strict standard, this Court held that plaintiffs' failure to postmark their exclusion requests by the September 5 deadline did not constitute "excusable neglect" – even though it was undisputed that plaintiffs had in fact delivered their requests to the Post Office before 5:00 p.m. on the deadline (the envelopes were not postmarked until the next day, September 6). Id. at 10, 14 ("plaintiffs

---

[7] Gates' acknowledged awareness of the Class Action since its inception – and discussions about the case with both Lead Counsel (in 2004) and the attorney representing him in the NASD Arbitration (in 2005) – make him far less deserving of Rule 60(b) relief than the truly uninformed class members who the courts have held to releases described in settlement notices they never received, in cases they never knew existed. See supra. Specifically, Gates' own affidavit makes clear that he has been fully aware of this Class Action since its inception, see Gates Aff. ¶ 9 ("In or about June 2004, I reviewed a copy of the First Amended Class Action Complaint in the above-captioned matter"), and that he corresponded with Lead Counsel regarding their interest in representing him individually, see id. ¶ 13 ("On or about July 2004, I received a notice from lead counsel in the above-captioned Class Action, inquiring as to whether I wished to be represented by that firm with respect to my claims raised in the DAC Class Action."). Gates also consulted the attorney retained to represent him in his dispute with Allmerica. See Lewton Aff. ¶ 4 ("Sometime in early- to mid-2005, Mr. Gates informed me that this class action lawsuit was filed; that he had talked with attorneys for plaintiff; and that he opted out of the suit.").

[8] Compare id. at 5 (granting Rule 60(b) motion where seventy-seven year old class member demonstrated excusable neglect by offering "specific explanation and supporting documentation" that he was "incapacitated, requiring hospitalization and surgery" due to stroke, diabetes, and prostrate problems).

bore the risk that the envelope would not be timely postmarked, and should have or could have taken further steps to ensure compliance.").[9]

        2.    *Mr. Gates' Various Explanations Do Not Make the Neglect Reasonable.*

Even if disregarding notices could ever be excused under Rule 60(b), Mr. Gates has provided no basis upon which to do so here. The handful of explanations he proffers as to how and/or why he did not opt-out do not come close to the "exceptional circumstances" he needs to establish under First Circuit precedent, and if anything, tend to spotlight his lack of care.

It was not excusable neglect for Gates to disregard the Class Notice based on his assumption that it was an "error made by VeraVest," Gates Aff. ¶ 15. This argument is put to rest by the very first line of the Notice, which states: **"THIS NOTICE IS SENT TO YOU BY A FEDERAL DISTRICT COURT."** Class Notice at 1 (emphasis in original).[10]

Gates also cannot rationalize his failure to react to the Class Notice with the incorrect assertion that the NASD Arbitration is against VeraVest, an entity he claims has only an "undisclosed and attenuated relationship with Allmerica." See Gates Mem. at 11. Indeed, two of the named Defendants in this matter, Allmerica Financial Corporation and Allmerica Financial Life Insurance and Annuity Company, are also named defendants in Gates' NASD Arbitration. See NASD Arbitration, Amended Statement of Claim at 1. Of course, even if Gates

---

[9] Accord In re Prudential Securities Inc., No. 95-9209(L), 1996 U.S. App. LEXIS 33665, at *16-17 (2d Cir. Dec. 27, 1996) (rejecting various class members' attempts to opt-out of class action settlement after deadline, including motion of class member who mistakenly believed that class action settlement would not affect his pending arbitration); In re Diet Drugs Prods. Liab Litig., No. 99-20592, 2002 U.S. Dist. LEXIS 121319, at * 21 (E.D. Pa. Jan 16, 2002) ("The pendency of an individual action does not excuse class members from filing valid requests for exclusion."); Demint v. NationsBank of Florida, N.A., 208 F.R.D. 639, 641 (M.D. Fla. 2002) ("[S]oundly reasoned authority prescribes that the pendency of a separate, individual action neither excuses a litigant from compliance with an applicable 'opt-out' procedure in a related class action nor obligates any party or court to treat the litigant as unique or different in any respect from other potential class members.").

[10] Gates also cannot justify his "confusion" over the Class Notice and supposed belief that the Notice was sent in "error" by saying that VeraVest erroneously sent him two e-mails in early January 2003 (approximately two weeks after he was terminated). See Gates Aff. ¶ 15. Gates has not attached the e-mails he claims support his position, and even if VeraVest sent those e-mails in error, it would not justify his decision to disregard a Notice sent from this Court 3 ½ years later.

had only sued VeraVest (and not also sued two businesses named "Allmerica"), he does not dispute that VeraVest is a wholly-owned Allmerica subsidiary and that the Release extends to "affiliates" and "subsidiaries." See Settlement Agreement § 7.1.1.3, at 21.

Gates also says he did not opt-out because he believed (perhaps mistakenly) that he "was not a member of the Class" because he was terminated "for cause" in 2003. Gates Mem. at 8. And after he was terminated he no longer had "any obligations" to make payments under the Promissory Note and did not have a "valid claim" that was actionable in the Class Action. Gates Aff. ¶ 11. That subjective belief is not in any respect reasonable.

First, there is no exception for terminated agents ("for cause" or otherwise) in the Class definition contained in the Class Notice. Nor does Gates' "for cause" exception exist in the Final Order and Judgment, the Hearing Order, or the Stipulation of Settlement. See Final Order and Judgment ¶ 3, at 3, at 6; Class Notice at 2-3; Stipulation of Settlement § 2.7, at 6.[11]

Second, Gates' supposed belief that his loan repayment obligation and other involvement in the Trail Program ended when he was terminated "for cause" (in 2002) is not credible given what has occurred over the last four years. Gates has sued various Allmerica entities in part for requiring him to continue making payments on his DAC Note (the one that Allmerica just forgave pursuant to the Final Order and Judgment) after his termination. See NASD Amended Statement of Claim ¶ 3.3, at 9. And since the Trail Program began, he has been consistently receiving statements from Defendants describing his Trail Program performance, including

---

[11] Having disregarded the plain meaning of the Class Notice and all the other settlement documents, it is quite a stretch for Gates to suppose it was reasonable to instead believe that he was not a Class Member by selectively relying on a superseded version of the Class Action Complaint filed two years earlier. See Gates Mem. at 3-4 ("As alleged in Paragraph 17H of the First Amended Class Action Complaint, however, the Trail Program provided that 'if an agent were terminated for cause, his participation in the Trail Program ended, and he no longer had any obligation to make payments on the DAC Note.'"). As noted, Mr. Gates continued to participate in the Trail Program until six weeks ago, i.e., years after he was terminated. The notion that termination "for cause" relieved him of his obligations under his DAC Note also finds no support in the Promissory Note and Trail Agreement that he signed, which say nothing of the sort. Of course, even if a buried allegation in a superseded complaint could somehow trump the definition of the Class that this Court certified, Gates also does not claim to have read that old Complaint at the time he disregarded the opt-out deadline in the Class Notice.

commissions earned through that program, and payments made on his DAC Note. <u>See</u> Affidavit of Brett R. Budzinski in Support of Allmerica's Opposition to Motion of Jordan P. Gates for Relief from Judgment ("Budzinski Aff.") ¶ 8 & n.2.

Finally, even if Gates had some cogent reason to have construed the definition of the Class to have excluded him, the law in this Circuit is clear that such a mistake is not excusable neglect. <u>See, e.g.</u>, <u>Mirpuri v. ACT Manuf.</u>, 212 F.3d 624, 631 (1st Cir. 2000) ("A misunderstanding that occurs because a party (or his counsel) elects to read the clear, unambiguous terms of a judicial decree through rose-colored glasses cannot constitute excusable neglect."); <u>see also</u> <u>In re Prudential Securities Inc.</u>, No. 95-9209(L), 1996 U.S. App. LEXIS 33665, at *16-17 (2d Cir. Dec. 27, 1996) (not excusable neglect for class member who was prosecuting employment claims in separate arbitration proceeding to fail to opt-out based on mistaken belief that settlement would not foreclose employment claims).

**B. Allmerica Will Be Prejudiced If Gates Is Permitted To Opt-Out**

Gates' Motion also rests on his unsupported assertion that allowing him to opt-out "will have no impact on the Class Action Settlement" and that the prejudice to Defendants would be "*de minimus*" and "miniscule." Gates Mem. at 7, 9. An assessment of prejudice, however, should focus on the specific circumstances of this case and also the reasonable expectations of *all* parties, not superficial conclusions.

Specifically, after several months of negotiations, the parties jointly put before the Court a detailed Stipulation of Settlement to finally bring to a close a complicated and deeply-acrimonious business relationship that went back decades. By design, the Settlement not only unwound the Trail Program (which otherwise would have remained in place until 2020), but through the exchange of mutual and broad Releases discharged all parties from virtually all claims arising out of their relationship. <u>See</u> Final Order and Judgment § 8, at 8-9. Having done

-11-

so, Defendants are entitled to the certainty and finality that the Settlement affords, and conversely will be prejudiced if they are deprived of the benefit of the bargain they struck. See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1, 8 (1st Cir. 1999) (noting "systemic interest in finality of judgments – an interest that might be thought particularly strong in the class-action context").

Indeed, the need to hold parties to the settlements they reach – especially class action settlements approved by courts following notice and an opportunity to be heard – is apparent even from the authority cited by Gates:

> [A] too liberal application of Rule 60(b) in class actions would undermine the finality of judgments entered herein and would discourage settlement of such actions. Defendants would be loathe to offer substantial sums of money and compromise settlement of class actions unless they can rely on the notice provisions of Rule 23 to bind class members.

In re Four Seasons Securities Litig., 59 F.R.D. 667, 677 (W.D. Okl. 1973) (cited in Gates Mem. at 8). For this reason, "Courts have cautioned that a too liberal application of excusable neglect in class actions would undermine the finality of judgments entered therein and would discourage settlement of such actions." In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2002 U.S. Dist. LEXIS 12139, at *18 (E.D. Pa. Jan 16, 2002).

      1.    *Allmerica Already Has Been Prejudiced by a Large Number of Opt-Outs and Waived Its Rights Under the Blow Provision Based on a Reasonable Belief That There Would be no More.*

Allmerica would suffer particular prejudice if Gates is now permitted to opt-out because the Settlement Agreement includes a "Blow Provision," which provided:

> By written notice to Plaintiffs' Counsel no later than five days prior to the Fairness Hearing, Allmerica also may unilaterally withdraw from and terminate this Agreement if Requests for Exclusion in the aggregate include the holders of 15% or more of the aggregate annuity account values that on September 30, 2005, were subject to the Trail Agreements.

Settlement Agreement § 11.4, at 40. The nine Class Members who timely opted out of the Settlement were holders of 21% of the aggregate annuity values as of September 30, 2001, and thus, Allmerica had the option to withdraw from the Settlement. See Budzinski Aff. ¶ 12.

Following receipt of the opt-outs, Allmerica closely evaluated the Settlement. Defense counsel communicated with Lead Counsel with respect to this issue, and informed Lead Counsel that Allmerica was considering whether to terminate the Settlement. Allmerica and their counsel spent considerable time and effort reassessing the economics of the Settlement in light of the lower-than-expected participation and their exposure to known and potential future litigation with each of the nine opt-outs, including the expense and distraction of defending such claims. See Budzinski Aff. ¶13.

Allmerica ultimately decided to waive its right to terminate and went forward with the Settlement. See Budzinski Aff. ¶ 14. If Gates is permitted to opt-out now, however, it will deprive Allmerica of its bargained-for right to make a decision on the blow-provision based on a full picture of the Class membership. See In re Prudential Securities Inc. Lmtd. Partnership, 164 F.R.D. 362, 370, 371 (S.D.N.Y 1996) (noting "severe prejudice" that late opt-out would cause to defendant, where defendant "[I]n making its decision whether or not to waive the 'blow' provision . . . considered the quantity and quality of the exclusion requests *timely* received and regarded all other pending litigations and arbitrations as encompassed" within settlement).

Moreover, the Release has already deprived Defendants of valuable claims and, consistent with the Final Order and Judgment, Defendant are entitled to the reciprocal benefit of having the NASD Arbitration dismissed. For example, in 2004, Allmerica initiated an NASD arbitration against Class Members Calvin Sumner and Harold West seeking recovery of approximately $100,000. See Budzinski Aff. ¶ 17. Because Messrs. Sumner and West are

within the Class definition and did not opt-out of the Settlement, Allmerica on its own initiative without any consideration dismissed the arbitration with prejudice. See id.[12] Simply put, Defendants must live with the benefits and burdens of the Settlement approved by the Court, and reasonably expect that all other parties will as well.

### 2. *Gates Cannot Excuse his Neglect by Blaming Defendants.*

Mr. Gates cannot diminish the prejudice to Defendants by falsely asserting that Allmerica somehow "abetted" his own failure to act, or somehow "ambushed" him by not seeking to enforce the Court's injunction until September 14, 2006. See Gates Mem. at 5, 11. The notion that Allmerica sat on its rights, or in any respect conducted itself improperly, disregards the chronology of a settlement process that safeguarded Gates' due process rights and resulted in a Final Settlement Date on September 13, 2006.

First, the Court did not preliminarily approve the Settlement Agreement until it entered the Hearing Order, which, inter alia, specified the form and manner of providing notice to the Class of the proposed settlement. The next day, Defendants promptly sent the Class Notice to Gates informing him (repeatedly, and in bold and capitalized letters) of the Settlement's impact on pending litigation against Allmerica or its affiliates. See Budzinski Aff. ¶ 5. Defendants did not "ambush" Gates by sending him a Court-ordered Notice that for whatever reason, he "disregarded." See Gates Aff. ¶ 15, at 5. Nor could Defendants have notified Gates any earlier because the Settlement Agreement prohibited Allmerica from disclosing the proposed Settlement until the Class Notice was mailed. See Stipulation of Settlement § 12.3, at 43.

---

[12] Allmerica also has a pending suit against Class Member William Gendron in which Allmerica is seeking recovery of over $550,000 and has incurred substantial litigation expense. Allmerica has notified Mr. Gendron's counsel that the Release bars equally the parties' respective claims and counterclaims. See Budzinski Aff. ¶ 18.

-14-

Second, pursuant to the Hearing Order and as set forth in the Class Notice, Class Members' requests for exclusion had to be postmarked on or before July 27, 2006. See Hearing Order at 7. There is no basis whatsoever for Gates to complain that Allmerica never separately reminded him to read the Class Notice. See Gates Mem. at 5 ("Gates never received any communication from VeraVest indicating that he was enjoined from prosecuting the NASD Arbitration."). To the contrary, the Settlement Agreement *expressly* stated that Defendants were under no such obligation. See Stipulation of Settlement § 5.2, at 17 ("Allmerica shall have no obligation to notify separately adverse counsel in other pending litigation concerning the facts or terms of the proposed settlement."); cf. In re VMS Securities Litig., No. 89 C 9448, 1992 WL 203832, at *3 (N.D. Ill. Aug. 13, 1992) (not excusable neglect for class member to fail to opt-out where their counsel did not receive supplement notice advising of the effect of class settlement on individual litigation – such supplemental notice "not included in notice procedures" and not "necessary to meet due process requirements").

Finally, contrary to Gates' suggestion, there is nothing nefarious about the fact that Defendants did not attempt to enforce the Injunction until September 14, 2006. The Settlement (including the Release and Injunction) did not become final until the "Final Settlement Date," which was thirty-three days after entry of the Final Order and Judgment. See Stipulation of Settlement § 2.19, at 7. The Final Settlement Date occurred on September 13, 2006. The very next day (September 14) – Allmerica notified Gates of its position that his claims were released and enjoined by the Final Order and Judgment.

        3.     *Gates (not Allmerica) Caused Whatever Prejudice He Now Faces.*

In some sense, everyone who loses a claim that he or she deems valuable is prejudiced. In this case, any prejudice that Gates sustained by releasing his claims was the result of aftermath of *his* and/or his attorneys' own decision to disregard the not-complicated Notice sent pursuant to

a Court Order. None of this was complicated. If Gates wanted to continue suing (and being sued by) Allmerica, he could have opted-out. That Gates' ability – and failure to –opt-out was *entirely* "within [his] reasonable control" also compels denial of this Rule 60(b) motion. See Pioneer Investment Servs. v. Brunswick Assocs., 507 U.S. 380, 395 (1993).

Finally, Gates cannot establish "prejudice" by trivializing the settlement relief he received. He received loan forgiveness of approximately $41,438 and a broad Release from Allmerica. See Budzinski Aff. ¶ 8.[13] Again, Mr. Gates was not obligated to participate; if he thought the relief was inadequate, he could have opted-out (as other members of the Class did) or he could have objected to that or any other aspect of the Settlement. Instead, Gates did nothing.

For these reasons, this Court should not allow Mr. Gates to opt-out of the Class.

---

[13] In his Supplemental Affidavit, Gates offers a nonsensical argument that his loan forgiveness "result[s] in a net benefit of zero" because "the value of this DAC Note was derived from commissions that I earned in the past." Supplemental Affidavit of Jordan P. Gates in Support of Motion for Relief From Judgment ¶ 4, at 2. Whatever the source of Gates' debt to Allmerica, it was secured by a promissory note and had to be repaid. Thus, Allmerica's forgiveness of the loan resulted in a net economic benefit to Gates in the amount of the loan – or $41,438.

## CONCLUSION

For the reasons set forth above, Allmerica respectfully requests that this Court deny Gates' Motion for Relief from Judgment, and specifically enforce its Final Order and Judgment and Permanent Injunction against Gates.

        Respectfully submitted,

        ALLMERICA FINANCIAL LIFE INSURANCE &
        ANNUITY CO., FIRST ALLMERICA
        FINANCIAL LIFE INSURANCE CO., and
        ALLMERICA FINANCIAL CORP.

        By their attorneys,

        /s/ Jonathan A. Shapiro
        Andrea J. Robinson (BBO No. 556337)
        Jonathan A. Shapiro (BBO No. 567838)
        Eric D. Levin (BBO No. 639717)
        Brett R. Budzinski (BBO No. 655238)
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, MA 02109
        (617) 526-6000

Dated: November 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 15th day of November 2006 by <u>overnight mail</u> on:

Mark W. Corner
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
David M. Grossman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s Jonathan A. Shapiro
Jonathan A. Shapiro