UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP.,<br><br>Defendants. | Civil Action No. 4:04-cv-40077-FDS |

## AFFIDAVIT OF BRETT R. BUDZINSKI
## IN SUPPORT OF ALLMERICA'S OPPOSITION
## TO MOTION OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT

I, Brett R. Budzinski, declare and state as follows:

1. I am an associate at the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, counsel for Allmerica Financial Life Insurance & Annuity Company, First Allmerica Financial Life Insurance Company, and The Hanover Insurance Group, Inc. formerly known as Allmerica Financial Corporation (collectively, "Allmerica" or "Defendants") in the above-captioned action. I am an attorney in good standing admitted to the bars of the Commonwealth of Massachusetts and this Court.

2. I submit this affidavit based on my personal knowledge, and where I lack personal knowledge, based on information available to me.

-2-

A. **<u>JORDAN P. GATES</u>**

3. On June 27, 2006, I supervised the preparation and first-class mailing of the Class Notice to Jordan P. Gates and the other members of the Class, in accordance with the Court's Hearing Order dated June 26, 2006.

4. The U.S. Post Office did not return the Class Notice that was sent to Mr. Gates. I understand from an affidavit that Mr. Gates filed last month (Docket no. 96) that he did, in fact, receive the Notice.

5. The Class Notice received by Mr. Gates repeatedly and emphatically warned that failure to opt-out of the proposed Settlement of this case would bar him and other Class Members from instituting or prosecuting claims against the Defendants or their affiliates.

    a. Page 1 of the Class Notice states, in bold, capitalized type:

> **IF YOU CURRENTLY HAVE A LAWSUIT AGAINST ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, ALLMERICA FINANCIAL CORPORATION, OR THE HANOVER INSURANCE GROUP, INC.—OR IF YOU INTEND TO START SUCH A PROCEEDING—THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHT TO DO SO.** (emphasis in original)

    b. Page 5 of the Class Notice states:

> **<u>DISMISSAL AND RELEASE OF CLAIMS.</u>** If the Court approves the settlement, all claims described in the Class Members' Release, including claims that have been, could have been, may be or could be asserted in this Lawsuit now or in the future, whether known or unknown, will be dismissed on the merits and with prejudice. *None of these claims may thereafter be asserted in any other lawsuit or other proceeding, and, as set forth in the Settlement Agreement, certain claims that Class Members potentially may be able to assert in the future would be subject to mandatory arbitration.* (emphasis in original)

      c.     Page 10 of the Class Notice encourages Class Members with any questions about the pending Settlement to telephone or write Lead Counsel, and provides Lead Counsel's telephone number and address.

      d.     Pages 12-14 of the Class Notice (Appendix A) contain the full text of the Class Members' Release.

      6.     On August 11, 2006, the Court conducted a Fairness Hearing and thereafter entered a Final Order and Judgment, inter alia, approving the proposed Settlement (including the Releases and Injunction) and certifying the Class. Under the terms of the Settlement, the Final Order and Judgment became final on September 13, 2006, also known as the "Final Settlement Date."

      7.     On October 10, 2006, I supervised the preparation of the Post-Settlement Class Notice to Mr. Gates and the other Class Members who did not opt-out, in accordance with the Court's Final Order and Judgment, dated August 11, 2006.

      8.     Under the Settlement, Class Members, inter alia, were entitled to and did receive forgiveness of a promissory note loan, which in the case of Mr. Gates was approximately $41,438.[1] Defendants, in turn, were relieved of their obligation to pay Trail Commissions as of October 10, 2006, which was the "Disbursement Date" set forth in the Stipulation of Settlement approved by the Court.[2] As a Class Member, Mr. Gates also exchanged broad and mutual Releases with Defendants. Defendants contend that the Releases extinguish the claims that Mr. Gates has asserted in a now-stayed NASD Arbitration.

---

[1]    A copy of Mr. Gates' 2001 Promissory Note is attached hereto as Exhibit A.

[2]    Allmerica paid Trail Commissions consistently and on a quarterly basis to Mr. Gates since the Trail Program began in early 2001 up through the Disbursement Date and each year sent quarterly statements and annual statements reflecting Trail Commissions paid to, and loan payments made by, Mr. Gates. A copy of the December 2004 Statement is attached hereto as Exhibit B.

**B.      Blow Provision**

9.      Defendants' willingness to settle this Class Action depended not only on the substantive terms that had been negotiated (e.g., consideration to be exchanged, scope of Releases), but that a sufficiently high percentage of the Class would participate so the Settlement would be worthwhile and limit Defendants' exposure to future litigation by those who elected not to participate by opting-out.

10.     For this reason, as a condition to settlement, Defendants negotiated a "Blow Provision" that provided them with a unilateral and fully discretionary right to terminate the Settlement if Class Member participation did not meet or exceed a negotiated threshold. The Blow Provision was an essential component of the Settlement; it was among the key terms of a Memorandum of Understanding executed by the parties in April 2006, and thereafter was set forth in the Stipulation of Settlement that the Court preliminarily and finally approved in June and August 2006, respectively.

11.     The Blow Provision (Stipulation of Settlement § 11.4) provides:

> By written notice to Plaintiffs' Counsel no later than five days prior to the Fairness Hearing, Allmerica also may unilaterally withdraw from and terminate this Agreement if Requests for Exclusion in the aggregate include the holders of 15% or more of the aggregate annuity account values that on September 30, 2005, were subject to the Trail Agreements.

12.     As it turned out, the nine Class Members who opted out on or before the Court's July 27, 2006 deadline well exceeded the negotiated level at which Defendants could unilaterally withdraw from and terminate the Settlement Agreement under the Blow Provision. Specifically, those nine opt-outs included the holders of 21.01% of the aggregate annuity account values that on September 30, 2005 were subject to the Trail Agreements – well above the 15% threshold that

the parties had negotiated in the Blow Provision. As a result, Defendants were entitled to terminate the Settlement Agreement.

13.     Following receipt of the opt-outs, Defendants closely evaluated the Settlement in light of the lower-than-expected participation. Defense counsel communicated with Lead Counsel with respect to this issue, and informed Lead Counsel that Defendants were considering whether to terminate the Settlement. Defendants and their counsel spent considerable time and effort reassessing the economics of the Settlement in light of lower-than-expected participation and their exposure to known and potential future litigation against each of the nine opt-outs, including the expense and distraction of defending such claims.

14.     Ultimately, Defendants waived their right to terminate and went forward with the Settlement. They did so based on their assessment of the risks presented by the nine opt-outs, the benefits of settling with and receiving Releases from those who remained in the Class, and the reasonable expectation that, given the passage of the Court's opt-out deadline, Class Member participation would not decrease further.

## C.     **Mutual Releases**

15.     The Settlement of this case is in some respects atypical because it involved a mutual exchange of consideration (loan forgiveness and cessation of trail payments) and the exchange of mutual releases by and in favor of both Defendants and the Class.

16.     As a result of its Release in favor of Class Members, Defendants have had to forego pending (and relinquish any future) claims against Class Members who did not opt-out.

17.     For example, in 2004, First Allmerica Financial Life Insurance Company, Allmerica Financial Life Insurance and Annuity Company, and VeraVest Investments, Inc. filed an NASD arbitration (NASD No. 04-00848) against two other Class Members (Calvin Sumner and Harold West) for recovery of approximately $100,000 in damages related to certain salaries

and expenses. Messrs. Sumner and West fall within the Class definition and did not opt-out. As a result, the Allmerica entities voluntarily dismissed the Sumner/West NASD Arbitration on their own initiative.

18. Allmerica also has a pending suit against Class Member William Gendron in which it is seeking recovery of approximately $551,000 and has incurred substantial litigation expenses. I understand that Allmerica has notified Mr. Gendron's counsel that the Release bars both parties' claims and counterclaims in that case.

I declare, under the pains and penalties of perjury that the foregoing is true and correct. Executed on November 15, 2006.

_____
Brett R. Budzinski

-7-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 15th day of November 2006 by <u>overnight mail</u> on:

Mark W. Corner
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
David M. Grossman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s/ Brett R. Budzinski
Brett R. Budzinski