**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL AND MARK ROBARE, Individually An On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff<br><br>v.<br><br>ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., AND ALLMERICA FINANCIAL CORP.,<br><br>    Defendant | Civil Action<br>No. 04-40077-FDS |

## MEMORANDUM IN REPLY TO ALLMERICA'S OPPOSITION TO MOTION OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT

The Movant Jordan P. Gates ("Gates") submits this Reply Memorandum to respond to assertions of the Defendants Allmerica Financial Life Insurance and Annuity Co., First Allmerica Financial Life Insurance Co., and the Hanover Insurance Group (collectively "Allmerica") set forth in their Opposition to Gates' Motion for Relief from Judgment, dated November 15, 2006. As set forth below, and in Gates' Motion for Relief from Judgment, Gates should be permitted to prosecute the claims raised against VeraVest in the pending NASD Arbitration,[1] notwithstanding his alleged failure to opt out of the Class Action Settlement. Even if Gates were a member of the class certified by the Court - which he was not, due to his termination for cause by VeraVest well before commencement of the Class Action Lawsuit - his

---

[1] Gates incorporates by reference the defined terms contained in his initial memorandum in support of his Motion for Relief from Judgment.

substantial claims against VeraVest arising from his wrongful termination have nothing to do with the claims forming the basis of the Class Action Lawsuit.

1.  Allmerica contends that Gates has "conspicuously avoided briefing his Rule 60(b) motion under the law of the First Circuit,[2]" taking the position that the First Circuit applies a more rigorous standard than that set by the United States Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership</u>, 507 U.S. 380, 392 (1993) which construes "excusable neglect" as a "somewhat 'elastic concept'… not limited strictly to omissions caused by circumstances beyond control of the movant." See <u>Deo-Agbasi v. Parthenon Group</u>, 229 F.R.D. 348, 350-51 (D. Mass. 2005). The <u>Pioneer</u> Court further went on to note that the determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission, and that in determining excusable neglect, a district court must consider "[t]he danger of prejudice…the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within a reasonable control of the movant, and whether the movant acted in good faith." <u>Pioneer Investments</u>, 507 U.S. at 395; <u>Deo-Agbasi</u>, 229 F.R.D. at 351; <u>Davila-Alvarez v. Escuela de Medicina Universidad Central del Carib</u>, 257 F.3d 58, 64 (1st Cir. 2001). Here, the danger of prejudice to Gates is significant, and the only prejudice to Allmerica is that it would be unable to take unfair advantage of an overly broad interpretation of the impact of the Class Action Settlement.

2.  Allmerica states at page 3 of its Memorandum that "Gates does not dispute that his NASD claims are barred by the Release incorporated in the Final Order and Judgment."

---

[2] While Gates did in fact cite to relevant authority from the First Circuit, the focus of Gates' citations were application of Rule 60(b) to relief from class action judgments due to an alleged failure timely to opt out, as to which there is authority from other Circuits.

2

Allmerica is correct that the broad, general Release of all claims incorporated into the Class Action Judgment would - if enforceable as interpreted by Allmerica- result in the termination of Gates' claims in the NASD Arbitration. The claims asserted in the NASD Arbitration, however, have nothing to do with the claims asserted in the Class Action. It is Allmerica's improper effort to seek broad enforcement of the Release to which Gates objects, and such objection is the *raison d'etre* for his motion for relief from judgment. Indeed, if enforced in the manner argued by Allmerica, the Release is so broad that a personal injury claim that Gates might have had against a former employee of one of Allmerica's affiliates arising before the opt out date would be discharged. Clearly that cannot be the intent of the release, yet that is its effect as interpreted by Allmerica.

    3.    Allmerica contends that if Gates is permitted to opt out, it will be deprived of the benefit of its bargain. The "bargain" for which Allmerica negotiated was termination of its rights and obligations under the DAC Program. Presumably, Allmerica would take the position that the surrender of its right to recover amounts allegedly due under the DAC Note, and its discontinuance of the payment of trail commissions (which served to reduce the balance due on the DAC Note) would constitute a fair transaction. This would be the position of other participants in the DAC Program, whose only claims against Allmerica would arise out of the DAC Program. Gates has no objection to enforcing this bargain, and to this exchange of consideration. Indeed, Gates is willing to accept the impact of the Class Action, by which he releases Allmerica from any claims he might have for trail commissions under the DAC Program, and is released from obligations under the DAC Note,[3] since he asserts no such claim

---

[3] VeraVest has asserted no counterclaim against Gates in the NASD Arbitration, much less a claim under the DAC Note.

3

in the NASD Arbitration (and will stipulate in the NASD Arbitration that he does not).

4.    Here, however, Allmerica takes the position that in addition to this fair exchange, Gates would additionally be required to surrender the claims associated with his wrongful termination, which have a value of hundreds of thousands of dollars, and have nothing to do with the DAC Program. Indeed, Allmerica notes that the Class Action Settlement "unwound" the Trail Program, and "discharged all parties from virtually all claims arising out of their relationship." In Gates' case, in view of his substantial claim against Allmerica which is unrelated entirely to any potential claims under the DAC Program, the exchange of broad releases is hardly a fair exchange, and one for which Gates did not bargain.

5.    Allmerica contends that Gates' belief that he was not a Class Member "was not in any respect reasonable," stating that "there is no exception for terminated agents ('for cause' or otherwise) in the Class definition contained in the Class Notice," and that '[t]he notion that termination 'for cause' relieved him of his obligation under his DAC Note also finds no support in the Promissory Note and Trail Agreement." Allmerica's contention that Gates' belief was unreasonable is belied by the language contained in Allmerica's Agent In-Force Annuity Trial Commission Agreement, which sets forth the duties and responsibilities of Allmerica and its agents under the DAC Program, and which states that "no further Trail Commissions shall be paid following the date that [Allmerica] terminates a Career Agent's Career Agent of Agent Emeritus Contract for cause." As further noted in a December 14, 2000 Memorandum from James E. Bellner of Allmerica concerning the Advisory in Force Trail Program, a copy of which is attached as Exhibit A:

> **In the event an Advisor is terminated for cause, all future trail commissions will cease and no further loan payments will be required. This is a change from the former definition.**

Based upon Allmerica's own statement, Gates would have no claim to Trail Commissions, and Allmerica would have no claim against Gates under the DAC Note, as a result of Allmerica's termination of Gates' employment for cause. As such, Gates would have no interest in being a member of the Class, since he would have no ability to recover from Allmerica, and no obligation to discharge - precisely the outcome dictated by the Class Action Settlement. Allmerica's assertion that the Class Notice creates no exception for terminated agents neglects the threshold issue of whether Gates had any duties or obligations under the DAC Program as a result of his wrongful termination, allegedly for cause. The argument that Gates was in the program because he received statements from Allmerica is also unpersuasive since Gates had no control over these statements that were sent to him in error - since as noted above, Gates no longer had any rights or obligations under the DAC Program by virtue of his termination for cause.

      6.     Allmerica contends that "if Gates is permitted to opt out now ... it will deprive Allmerica of its bargained for right to make a decision on the blow provision based on a full picture of the class membership." Gates' release (involuntary or otherwise) resulting from his being a member of the class could hardly be considered by Allmerica in its analysis of whether it should have accepted the settlement, despite its assertion that it had to do so in light of the violation of the "blow" provision. Gates' initial balance on his DAC Note was $57,884, or 0.18723% of the original aggregate DAC Loan balance of $31,750,597, and his outstanding loan balance of $36,776 was 0.2126% of the aggregate outstanding balance on the DAC Loans of

5

$17,301,597, which balance was ostensibly forgiven by virtue of the Class Action Judgment.[4] Such a tiny increment could hardly have been seriously considered by Allmerica in determining whether to have exercised its option to invoke the "blow" provision, particularly where more than 21% of aggregate annuity values had previously opted out.

7. Allmerica states that Calvin Sumner and Harold West were within the class definition. This is simply untrue. Both Sumner and West signed an agreement with Allmerica early in 2003 canceling their involvement in the trail program and the DAC note. In this agreement Allmerica released Sumner and West's obligation to pay the DAC note and Sumner and West released Allmerica's obligation to continue to pay trail commissions. After this agreement, Sumner and West no longer received trail commissions, as well as, any DAC note statements.

8. In any event, the fact that Allmerica chose to interpret its obligations under the Class Action Settlement such to dismiss its claims against Sumner and West has no bearing whatsoever on the impact of the Class Action Judgment on Gates' claims against VeraVest in the NASD Arbitration.

---

[4] Source: Allmerica's Answers to Interrogatories, appended to Allmerica's Opposition to Motion for Protective Order (Docket No. 41, filed September 20, 2005.

6

WHEREFORE, Gates' Motion for Relief from Judgment should be ALLOWED, for the reasons contained in this Reply Memorandum and in the materials previously submitted to the Court, and Gates should be permitted to continue prosecution of the NASD Arbitration.

JORDAN P. GATES

By his Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: November 29, 2006

/s/Mark W. Corner
Mark W. Corner, BBO #550156
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

## CERTIFICATE OF SERVICE

Mark W. Corner hereby certifies that the foregoing document was served upon all counsel receiving electronic file notification in this matter on November 29, 2006.

/s/Mark W. Corner
Mark W. Corner

982665.1