UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., <br><br> Defendants. | Civil Action No. 4:04-cv-40077-FDS |

### ALLMERICA'S SUR-REPLY BRIEF IN FURTHER OPPOSITION TO MOTION OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT

Allmerica submits this Sur-Reply Brief to address the errors of fact and law in Jordan Gates' Reply to Allmerica's Opposition Brief ("Gates' Reply"). Gates apparently has abandoned the argument that his failure to read his mail was "excusable neglect," but now raises others in a failed attempt to lift the judgment entered against him and opt-out of the Class after the Court-imposed deadline. For the several reasons set forth below – and those set forth in Allmerica's Opposition – this Court should deny Gates' Motion.

**I.   Under Supreme Court And First Circuit Precedent, Gates Has Failed To Satisfy The Demanding Standard Of Rule 60(b).**

Gates cannot avoid the "demanding" standard that this Circuit applies to Rule 60(b) motions by quoting out-of-context language from Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993). This Court has been explicit that the standard for Rule 60(b) motions – under Pioneer and subsequent First Circuit precedent – is "harsh" and can

only be satisfied by "exceptional circumstances."  See, e.g., Deo-Agbasi v. Parthenon Group, 229 F.R.D. 248, 351 (D. Mass. 2005) ("excusable neglect . . . despite its elasticity, [is] a demanding standard"); Allmerica's Opposition to Motion of Jordan P. Gates for Relief From Judgment ("Allmerica Opposition") at 4-5.  Indeed, the two First Circuit cases that Gates' Reply cites further confirm that his inaction – failure to read and/or react to the Court's Notice – was not excusable neglect.  See Davila-Alvarez v. Escuela de Medicina Universidad Central Del Caribe, 257 F.3d 58 (1st Cir. 2001) (plaintiffs' failure to prosecute case not excusable neglect even where attorney died suddenly and unexpectedly, and court sent several notices to wrong address); Deo-Agbasi, 229 F.R.D. at 352 (busy paralegal's inadvertent failure to file opposition to motion to dismiss not excusable neglect).  Moreover, Gates' purported weighing of the Pioneer factors also disregards that his ability (and failure) to opt-out pursuant to the Notice he ignored was *entirely* "within [his] reasonable control," which is what the Supreme Court has held is the sort of neglect that cannot be excused under Rule 60(b).  See Pioneer, 507 U.S. at 395; Allmerica Opposition at 5-9, 15-16.

## II.     The Plain Language Of The Release Bars Gates' NASD Arbitration.

Gates now apparently argues that the Release bars his NASD claims only if "interpreted" in a certain way or read "broadly."  See Gates' Reply at 2-3.  The Release, however, is to be interpreted according to its plain meaning.  See Stipulation of Settlement § 12.25, at 49.  And the actual text of the Release does not lend itself to any interpretation that would allow the arbitration to proceed.

Specifically, the Release contains general language that plainly extinguishes Gates' claims; it releases:

> any and all causes of action [including those "asserted . . . before
> any regulatory or administrative body"] . . . on the basis of,
> connected with, arising out of, or related to, in whole or in part,

-2-

>any facts or circumstances occurring on or before the Opt-Out and
>Objection Date . . . ."

Stipulation of Settlement § 7.1.2, at 22-23; Allmerica Opposition at 3. The Release also provides a specific example of released claims that precisely covers those Gates asserts in the NASD Arbitration. See Stipulation of Settlement § 7.1.2, at 23 (claims released include any claims "arising out of, based upon, or relating in any way to the Released Transactions"); id. § 7.1.1.5, at 22 ("Released Transactions" defined to include "the employment, agency, business, or other relationships of the Class Member and/or the Defendant Releases").

### III. The Parties' Bargain Is Reflected In The Final Order and Judgment.

Gates cannot resurrect his NASD Arbitration by myopically mischaracterizing the "bargain" reflected in the Stipulation of Settlement. See Gates' Reply at 3. The Settlement Agreement and the Release both extend far beyond the Trail Program and result in a bilateral resolution of virtually all aspects of the parties' relationship. See Allmerica Opposition at 11-12; Stipulation of Settlement § 7, at 21-29. *That* is the bargain that this Court held in the Final Order and Judgment to be "fair, reasonable and adequate as to and in the best interests of" Class Members. See Final Order and Judgment ¶ 7, at 6.

In any event, the scope of the Settlement should hardly come as a surprise to Gates; it was clearly spelled out in (and the Release was attached to) the Class Notice that Gates acknowledges he received. See Affidavit of Jordan P. Gates in Support of Motion for Relief from Judgment ("Gates Aff.") ¶ 15, at 5. Of course, if Gates believed that the Release was overbroad or that the Settlement was not a "fair exchange" of consideration, he was free to opt-

out or object prior to the deadline for doing so. See Stipulation of Settlement §§ 5,6. He elected to do neither.[1]

### IV. Gates Is Indisputably A Class Member.

Gates does not (and cannot) argue that he is not within the Class Definition contained in the Stipulation of Settlement, the Hearing Order, the Class Notice, the Final Order and Judgment, and the Final Class Notice. See, e.g., Class Notice at 2 ("The Class includes all *original participants* in the Trail Program who executed a Promissory Note in connection with the Trail Program.") (emphasis added). In fact, Gates concedes that he was an original participant in the Trail Program, and that he signed a note. See Gates Aff. ¶ 10 ("I did in fact participate in the DAC Program, and I did sign a DAC Promissory Note."). Thus, it is undisputed that Gates is a Class Member.

Gates' arguments concerning his subjective "beliefs" or "confusion" as to whether he was a Class Member and/or the legal effect of the Settlement remain irrelevant to his Rule 60(b) motion. Compare Gates Reply at 4-5, with Allmerica Opposition at 6-9; and In re VMS Securities Litig., No. 89 C 9448, 1992 WL 203832, at *4 (N.D. Ill. Aug. 13, 1992) (rejecting Rule 60(b) motion where, as here, class member claimed not to have understood "significance" of class notice). It also is not clear how anyone could credibly claim to have misunderstood a Notice that he or she concededly ignored.

---

[1] Gates' position that he "has no objection to enforcing" a release of Allmerica's obligation to pay trail commissions in exchange for his obligation to pay back the DAC loan – i.e., a *portion* of the Release negotiated by the parties and approved by the Final Order and Judgment – is irrelevant to the Rule 60(b) question, i.e., whether Gates can satisfy the "demanding" standard to excuse his inexplicable failure to read a Notice that repeatedly warned of the Settlement's effect on collateral litigation. Compare Gates' Reply at 3-4, with Allmerica Opposition at 4-10. It also is a disingenuous ploy to secure a windfall. Gates conveniently neglects to inform the Court that since 2003, his quarterly gross Trail Commissions have been insufficient to cover his quarterly DAC loan payments, placing him in default. Accordingly, Gates' self-serving "proposal" would result in Allmerica forgiving a debt of over $40,000 in exchange for a release of Gates' right to contingent, dwindling annual trail commissions that presently total approximately $1,200. See Supplemental Affidavit of Brett R. Budzinski in Support of Allmerica's Opposition to Motion of Jordan P. Gates for Relief from Judgment ("Budzinski Supplemental Aff.") ¶ 3, at 2.

In any event, for a number of reasons, it is both irrelevant and a red herring for Gates to assert that he believed his participation in the Trail Program ended and that he was released from his DAC Note obligation because he thought he was terminated for cause. See Gates' Reply at 4-5. As Gates has already acknowledged, in November 2002, Allmerica Financial Life Insurance & Annuity Company ("AFLIAC") – i.e., the insurance company that was the only other party to Gates' Trail Agreement – notified *all* of its Career Agents (including Gates) that it was canceling all of their Career Agent Agreements. See Lewton Aff., Ex. A (Gates' NASD Amended Statement of Claim ¶ 2.3) ("On November 25, 2002, Gates received written notice that Allmerica was canceling his Allmerica Agent contract effective December 31, 2002, since the company was changing to a different method of compensation. Allmerica did the same for all of its advisors."); see also Budzinski Supplemental Aff. ¶ 4 & Ex. A (November 26, 2002 Career Agent Termination Letter). That termination was ***not*** for cause – AFLIAC terminated all Career Agent Agreements in connection with its cessation of manufacturing and selling new policies. See Budzinski Supp. Aff., Ex. A.[2]

Moreover, Gates' new argument (hatched to seek relief from this judgment) that he subjectively believed that he left the Trail Program in 2002 also is contradicted by the undisputed facts and his own pleadings. See Gates' Reply at 4-5. Gates remained a participant in the Trail Program, continued to receive gross trail commissions, continued to owe the outstanding balance

---

[2] Presumably, Gates' reference to a termination "for cause" relates to his termination by Allmerica's broker-dealer, Allmerica Investments, Inc. (which later became VeraVest Investments, Inc.). But this termination by the *broker-dealer* subsidiary did not terminate Gates' separate relationship with AFLIAC, again the *insurance company* that paid the Trail Commissions and that was owed the money secured by his Note. Despite Gates' attempts to suggest otherwise in his papers, the Trail Agreement could not be more explicit that its termination provisions refer to participants' ***relationship with AFLIAC***, i.e., not the broker-dealer. See Trail Agreement at 9 ("Notwithstanding the foregoing, no further Trail Commissions shall be paid following the date that ***AFLIAC terminates a Career Agent's Career Agent or Agent Emeritus Contract for cause***.") (emphasis added). Gates also conveniently ignores the absence of any provision in the Trail Agreement (which *post*-dates the December 14, 2000 memorandum) extinguishing an Advisor's obligations on the DAC Note if AFLIAC terminated that Advisor for case. See Allmerica Opposition at 10-11. Finally, the memorandum that Gates cites in his Reply at 4-5, also explicitly refers to Gates' relationship with AFLIAC and says nothing about his relationship with the broker-dealer.

on his DAC Note, and continued to receive Trail Program statements from AFLIAC until the Settlement Agreement became final. See Affidavit of Brett R. Budzinski in Support of Allmerica's Opposition to Motion of Jordan P. Gates for Relief from Judgment ("Budzinski Aff.") at 3 n.2.  Indeed, in both his original and amended NASD Statements of Claim (filed long after his termination), Gates asserts a breach of contract claim alleging that his termination had an adverse impact on the terms of his DAC Note. See Lewton Aff., Exs. A and B, ¶ 3.3 (alleging that termination "caused the terms of his DAC loan to change, and prevented him from receiving lower interest charges and more favorable terms than were given to other advisors.").  That is, Gates' latest assertion that he thought he was released from the Note in 2002 is flatly contradicted by his NASD Statements of Claim in which he claims that post-termination his DAC loan was still outstanding and seeks damages for alleged losses associated with the payback of that loan.

## V.  Allowing Gates To Opt-Out Would Deprive Allmerica Of Its Bargained-For Right To Decide Whether To Trigger The Blow-Provision.

Gates cannot trivialize Allmerica's Blow-Provision analysis by saying that the amount remaining on his DAC Note was a "tiny increment" of the total. See Gates' Reply at 5-6.  Allmerica was entitled to (and did) consider all attributes of those Class Members who opted-out of the Settlement as well as those of Class Members who remained in. See Allmerica Opposition at 12-14.  Among the factors that Allmerica considered in its analysis were the litigation costs and potential recoveries and risks posed by the Class Members who opted-out and the extinction of collateral litigation involving the Class Members who remained in. See Budzinski Aff. ¶¶ 9-14, at 4-5.  Accordingly, Gates' decision to remain in the Class – and the resulting extinguishment of the litigation he now seeks to un-release – was material to Allmerica's

decision to stick with the Settlement and not to exercise its Blow-Provision discretion to withdraw from the deal.[3]

Gates' unsupported statements regarding Messrs. Sumner and West are similarly ill-informed. See Gates' Reply at 6. It is nonsense for Gates to hypothecate that Allmerica voluntarily dismissed a $100,000 collection case against Sumner and West even though (according to Gates) they were not Class Members. To the contrary, as original Trail Program participants, they (like Gates) are Class Members, and Allmerica accordingly was obligated to and did dismiss its claims against them. See Budzinski Aff. ¶ 17, at 5-6.

Similarly, Allmerica's pending suit against Class Member William Gendron seeking over $550,000 is subject to the Class Members' Release. Pursuant to the Final Order and Judgment, Allmerica is required to honor the benefits and burdens contained therein, including the release of claims with respect to all Class Members, including Sumner, West, Gendron, and Gates. Likewise, Gates is required to abide by the terms of the Final Order and Judgment.

## CONCLUSION

For the reasons set forth above and in its Opposition, Allmerica respectfully requests that this Court deny Gates' Motion for Relief from Judgment, and specifically enforce its Final Order and Judgment and Permanent Injunction against Gates.

---

[3] In his Reply, Gates contradicts himself with respect to the import of his NASD Arbitration. On one hand, he argues that it is unfair for him to surrender his supposedly valuable NASD claims, see Gates' Reply at 4, and, on the other, he contends that these same claims "could hardly be considered by Allmerica in its analysis," id. at 5. Gates cannot have it both ways – either the value and exposure of his NASD claims are significant or they are trivial. In any event, the claims have been released.

Respectfully submitted,

ALLMERICA FINANCIAL LIFE INSURANCE &
ANNUITY CO., FIRST ALLMERICA
FINANCIAL LIFE INSURANCE CO., and
ALLMERICA FINANCIAL CORP.

By their attorneys,


/s/ Jonathan A. Shapiro
Andrea J. Robinson (BBO No. 556337)
Jonathan A. Shapiro (BBO No. 567838)
Eric D. Levin (BBO No. 639717)
Brett R. Budzinski (BBO No. 655238)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000


Dated: January 5, 2007

-8-

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served on this 5th day of January 2007 by <u>overnight mail</u> on:

Mark W. Corner
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street
Boston, MA 02109-4216

Stephen L. Hubbard
Robert W. Biederman
David M. Grossman
Hubbard & Biederman, LLP
1717 Main Street, Suite 4700
Dallas, TX 75201

/s Jonathan A. Shapiro
Jonathan A. Shapiro