**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DONALD P. SPEAKMAN, STEPHEN H. WEDEL, and MARK L. ROBARE, individually and on behalf of all others similarly situated, ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) ALLMERICA FINANCIAL LIFE INS. & ANNUITY CO., FIRST ALLMERICA FINANCIAL LIFE INS. CO., and ALLMERICA FINANCIAL CORP., ) ) ) ) ) Defendants. ) ) | Civil Action No. 04-40077-FDS |

**MEMORANDUM AND ORDER ON MOTION**
**OF JORDAN P. GATES FOR RELIEF FROM JUDGMENT**

**SAYLOR, J.**

Class member Jordan P. Gates has moved for relief pursuant to Fed. R. Civ. P. 60(b)(1) from the Final Order and Judgment Approving Class Action Settlement, dated August 11, 2006. In essence, Gates seeks to continue prosecuting claims that have been pending since 2003 in an arbitration proceeding at the National Association of Securities Dealers ("NASD"). The claims asserted in that arbitration are largely unrelated to the claims litigated in this proceeding, but nonetheless fall within the scope of the Final Order and Judgment.

Gates contends that he failed to opt out of the class action proceeding by the relevant deadline due to "mistake, inadvertence . . . or excusable neglect" within the meaning of Rule 60(b)(1). Defendants seek to enforce the Final Order and Judgment and the incorporated

settlement and release in order to prevent Gates from prosecuting his claims in the pending arbitration. For the reasons set forth below, the motion will be denied in part and granted in part. To the extent that Gates is asserting claims in the arbitration concerning the subject matter of this lawsuit, the motion will be denied. To the extent he is asserting claims in the arbitration concerning another subject, the motion will be granted.

## I.     Background

### A.     Gates's Arbitration Proceeding

Gates is a resident of Oregon and a certified financial planner. Prior to 2002, he was a registered representative and Director of Financial Planning for the Pacific Northwest branch of Allmerica Financial Investments, Inc., and Allmerica Investment Management Co., Inc. (collectively, "Allmerica Investments").[1] While at Allmerica Investments, Gates participated in the trail commission program that is the subject of this lawsuit and, in connection with that program, executed a promissory note referred to as a "DAC Note."

Gates is engaged in an apparently separate dispute with Allmerica Investments concerning his termination from employment. According to Gates, a client's check for $1,000 was accidentally misdirected, without his knowledge, to his personal account. Gates's assistant, who mistakenly deposited the check to Gates' personal account, learned of the error several weeks later when Gates was out of the country and inaccessible. The assistant notified the compliance department, which acknowledged the error and indicated that it would correct the error by

---

[1] On January 1, 2003, various affiliated entities with "Allmerica" in the title changed their names to entities with "VeraVest" in the title. Thus, Allmerica Financial Investments, Inc., is now known as VeraVest Investments, Inc., and Allmerica Investment Management Co., Inc., is now known as VeraVest Advisors, Inc. For the sake of convenience, the Court will use the former names throughout this memorandum.

immediately issuing a new check to the clients and arranging to have Gates' next commission check from Allmerica Investments debited $1,000.

According to Gates, he was nonetheless terminated on December 31, 2002. As a result, his NASD Uniform Notice of Securities Industry Registration (Form U-5) indicates that he was terminated for cause and that at the time of his termination he was under an internal investigation for fraud.

In December 2003, Gates commenced an NASD arbitration proceeding against Allmerica Investments, alleging breach of contract, defamation, interference with business relations, and intentional infliction of severe emotional distress, all arising out of the termination of his employment. Gates has been represented by counsel at all relevant times as to that proceeding. It appears—although it is not entirely clear—that Gates is also pursuing a claim in the arbitration concerning the trail commission program and his execution of a DAC Note.

### B.     The Filing of the Class Action

This action was filed on May 18, 2004. The First Amended Class Action Complaint, dated June 23, 2004, alleged various claims by three named plaintiffs on behalf of a class of persons against Allmerica Financial Life Insurance and Annuity Co. ("AFLIAC"), First Allmerica Financial Life Insurance Co., and Allmerica Financial Corp. (collectively, "Allmerica").

According to the complaint, plaintiffs contractually agreed to repay past commissions to AFLIAC on certain variable annuities in return for a stream of future, potentially higher, "trail" commissions on those annuities. Plaintiffs financed their repayment obligation by signing ten-year notes for substantial sums payable to AFLIAC ("DAC Notes"). Under the agreement, the trail commissions would be used to offset the loan payments, and the agents would keep the excess.

Less than two years later, in late 2002, AFLIAC stopped accepting applications for new variable annuity business and severely curtailed its services to existing annuity accounts. That action caused much of the annuity business to disappear, as existing customers moved to other companies, which in turn caused trail commissions to plummet.

Plaintiffs contended that AFLIAC thus destroyed most of the potential value of their trail commissions, making it virtually impossible to earn enough to offset the loan obligations—which AFLIAC refused to cancel. AFLIAC contended that under the Trail Agreement it had no obligation to remain in the annuity business or to provide any minimum level of service, and that it was not required to cancel the loan obligations or reimburse the agents for their losses.[2]

### C.     The Settlement of the Class Action

The parties reported to the Court in June 2006 that they had reached a settlement agreement. On June 26, 2006, the Court issued an order preliminarily certifying a class for settlement purposes only and preliminarily enjoining class members from asserting any pending claims.

A Notice of Proposed Class Action Settlement was issued to the plaintiff class on June 27. It is sixteen pages long, single-spaced, including the appendix. The Notice described the lawsuit as follows:

---

[2] The class was not certified prior to the time the case was settled. The proposed class definition in the amended complaint was as follows:

> . . . all persons who entered into the Trail Program with [AFLIAC] and who ceased to be sales producers at the end of 2002 by virtue of their refusal to sign the proposed new agreements ("2002 Class"), and those persons who entered into the Trail Program with [AFLIAC] and who voluntarily terminated their positions after January 1, 2003, or whose positions were eliminated by the end of 2003 by [AFLIAC] ("2003 Class").

Gates apparently concedes (although it is not clear) that he fell within that definition.

> . . . The lawsuit alleges, among other things, that Allmerica (i) violated the Trail Program by ceasing sales of new annuities and by failing to service annuities sold in prior years; (ii) knew but failed to disclose certain risks to the Plaintiffs and the Class at the time they entered into the Trail Program; and (iii) engaged in a variety of other alleged misconduct to the detriment of the Plaintiffs and the Class.

The Notice described the settlement class as follows:

> . . . all original participants in the Trail Program who executed a Promissory Note in connection with the Trail Program. The Class does <u>not</u> include those persons or entities:
>
> a. who, prior to April 10, 2006, entered into a settlement agreement with Allmerica that released their claims in connection with the Trail Program; or
>
> b. who the Court finds to have filed a timely and valid "request for exclusion" from the Class or [who have filed for bankruptcy].

(footnote omitted; emphasis in original).

The Notice also included, as Appendix A, a release in which class members released the "Defendant Releasees" from the following claims:

> . . . any and all causes of action, claims, [or] damages . . . of any kind or nature whatsoever, including, without limitation, claims for damages of any kind . . . that have been, could have been, may be or could be alleged or asserted now or in the future by any Class Member against any of the Defendant Releasees in the Lawsuit or in any other court action or before any regulatory or administrative body (including any . . . self-regulatory . . . entity or organization), tribunal, arbitration panel, or other adjudicatory body, on the basis of, connected with, arising out of, or related to, in whole or in part, any facts or circumstances occurring on or before the Opt-Out and Objection Date, whether known or unknown, including, but not limited to, any arising out of, based upon, or relating in any way to the Released Transactions.

The term "Defendant Releasees" was defined as:

> Allmerica . . . and each of the other individuals and entities included within the definition of Allmerica . . . , including their past, present and future parents, subsidiaries, affiliates, predecessors, successors, assigns, entities and divisions, and each of their respective past, present and future officers, directors, employees,

>general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint venturers, accountants, trustees, heirs, administrators, executors, predecessors, successors and assigns, or all of them, including any person or entity acting on the behalf of or direction of any of them.[3]

The term "Released Transactions" was defined as:

>(i) the allegations and legal claims asserted in the Lawsuit; (ii) the Trail Program, the Trail Agreements, the DAC Notes, or any other program administered by the Defendant Releasees; (iii) the sales, service, or performance of any policy, contract, or other product issued, sold, distributed or serviced by or related to the Defendant Releasees; and (iv) the employment, agency, business, or other relationships of the Class Members and/or the Defendant Releasees.

The Notice also provided as follows:

>The Court has preliminarily enjoined all Class Members who have not been excluded from the Class . . . from . . . prosecuting . . . or participating in and/or continuing to prosecute or participate in . . . any action, lawsuit, claim or other proceeding, in any jurisdiction[,] based on or relating to any of the claims and causes of action in this Lawsuit and/or the subject of the Class Members' Release, or the facts and circumstances relating thereto . . . .

The Notice stated that those class members who wished to be excluded from the settlement class must provide written notice by first-class mail, postmarked no later than July 26, 2006. Gates received a copy of the Notice, but did not opt out of the settlement.

On August 11, 2006, the Court issued a Final Order and Judgment approving the class settlement. The class was defined in terms essentially identical to the Notice. The release, which

---

[3] "Allmerica" was defined to include:

(i) the Defendants, (ii) each of the past, present and future parent companies of any Defendant, . . . (iii) each of the past, present and future subsidiaries, affiliates, predecessors, successors, assigns, entities and division of the entities described in (i) and (ii); and (iv) each of the past, present and future predecessors, successors, assigns, officers, directors, employees, general agents, agents, producers, brokers, solicitors, representatives, attorneys, insurers, co-insurers, re-insurers, partners, joint ventures, accountants, trustees, heirs, administrators and executors of the entities described in (i), (ii), and (iii).

was incorporated in the Final Order and Judgment, was identical. The Final Order and Judgment also enjoined class members from continuing to prosecute or participating in any proceeding based on, or related to, released claims.

### D. Gates's Awareness of the Existence of the Class Action

According to Gates, in June 2004 he reviewed a copy of the First Amended Class Action Complaint. Gates had participated in the DAC program and signed a DAC Note. He believed, however, that he was not a member of the class, based on his review of the complaint. In particular, he focused on paragraph 17H, which stated that under the Trail Program, "if an agent were terminated for cause, his participation in the Trail Program ended, and he no longer had any obligation to make payments on the DAC Note." In addition, he noted that neither of the two Allmerica Investments entities (the named respondents in the NASD Arbitration) were listed as defendants in the class action. Gates contends that because he was terminated for cause, and because he was proceeding against different entities, he believed in good faith that the class action did not apply to his claim.

Gates acknowledges that he received the Notice of the Proposed Class Action Settlement that was sent in June 2006. At the time he received the Notice, the NASD arbitration hearings had been continued until October 4, 2006. According to Gates, he learned on September 14 for the first time (from opposing counsel) that Allmerica Investments was taking the position that his claim was barred by the class settlement.

According to Gates, his claim concerning the trail commission program is relatively minor, with damages on the order of a few thousand dollars. He is seeking hundreds of thousands of dollars in the arbitration for his wrongful termination claim, on which he has spent approximately

$250,000 in legal fees to date.

Gates filed a motion seeking relief from the judgment on October 11, 2006, two months after entry of the Final Order and Judgment.

## II.     Analysis

### A.     Standard for Relief from Judgment

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . ."

"Excusable neglect" is defined to encompass "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *In re New England Mut. Life Ins. Co. Sale Practices Litig.*, 204 F.R.D. 6, 12 (D. Mass. 2001) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993)).  As the Supreme Court held in *Pioneer* (interpreting a similar provision in Bankruptcy Rule 9006(b)(1)):

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. at 395.[4]

Although Rule 60(b)(1) has been applied liberally in some circuits, the First Circuit "has

---

[4] The cases appear to focus principally on the concept of "excusable neglect," rather than "mistake" or "inadvertence," neither of which are modified by the adjective "excusable."  For present purposes, the Court will apply the standard set forth in *Pioneer*.

taken a harsher tack." *Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 63-64 (1st Cir. 2001). In this Circuit, relief under the rule may be granted "only under exceptional circumstances." *Id.*, 257 F.3d at 64 (citation and internal quotation omitted). "The rule must be applied so as to recognize the desirability of deciding disputes on their merits, while also considering the importance of finality as applied to court judgments." *Id.* (citation and internal quotation omitted).

### B.     Whether Relief Should Be Granted

Gates appears to have two types of claims: a substantial claim against Allmerica Investments for wrongful termination and a relatively minor claim against Allmerica arising out of the trail program. Without relief from judgment under Rule 60(b), both claims would be barred, as the Final Order and Judgment plainly applies in both instances.

There is no dispute that (1) Gates was an "original participant[] in the Trail Program" (2) "who executed a DAC Note" and (3) who does not fall within either of the two exceptions in the class definition. He is thus a member of the class.

Furthermore, his claim for wrongful termination is (1) a "claim[]" that has been "alleged or asserted" before an "arbitration panel," (2) "arising out of . . . facts or circumstances occurring on or before" the relevant dates, and (3) arising out of "the employment, agency, business or other relationships" of a class member and Allmerica Investments. Both of the Allmerica Investments defendants are "subsidiaries" or "affiliates" of the settling defendants. Gates's claims are thus covered by the release.

It is undisputed that Gates had actual notice of the class action settlement and did not opt out by the court-imposed deadline. The issue, then, is whether his failure to opt out is, in whole

or in part, the product of "mistake, inadvertence . . . or excusable neglect" within the meaning of Rule 60(b).

Part of the case is easily resolved. To the extent that Gates is asserting claims in the arbitration concerning the trail program, trail commissions, or his DAC Note, the Court will summarily reject his request for relief. As to those claims, Gates had actual notice of the settlement, which was clear and unambiguous as to those claims, and apparently chose to interpret it in an unreasonable manner. The fact that he decided to read the notice "through rose-colored glasses" does not constitute excusable neglect. *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir. 2000).

Gates's claims concerning his termination stand in a far different light. On the one hand, Gates was plainly aware of the existence of the class action settlement; had he read the notice more carefully, it would have been clear that the release was drafted so broadly as to capture any claim he had against any Allmerica entity. On the other hand, this lawsuit had nothing whatsoever to do with the allegedly wrongful termination of Gates for misappropriation of client funds. Moreover, the defendants in that arbitration proceeding are not parties to this action. The wrongful termination claim will thus be barred *solely* on the basis of an expansively-drafted release in an *unrelated* action in which *neither* the plaintiff nor the arbitration defendants are named parties. Under the circumstances, it seems inequitable to bar Gates's wrongful termination claim.

That conclusion is reinforced by other equitable considerations. First, the harm to Gates is substantial. Arbitration of the wrongful termination claim was substantially underway when the class action settlement took effect, and Gates has expended considerable attorneys' fees

prosecuting the claim. The value of that claim is large, at least from Gates's perspective. Second, the prejudice to Allmerica is minimal. Allowing Gates—a single class member—relief from the breadth of the release language will have virtually no impact on the class action settlement. Indeed, he is not being permitted to "opt out" of the trail commission settlement itself, and therefore the financial considerations underlying that settlement remain unchanged.[5] It is possible, of course, that defendants fully intended to try to bar Gates's wrongful termination claim through the drafting of an expansive release in the settlement of the class action. The equities of that position, however, are far from compelling.[6]

Third, Gates's delay in filing the motion for relief from judgment was not unreasonable. The motion was filed less than two months after that judgment was entered, and approximately one month after Gates became aware of the issue.

Finally, there is no evidence that Gates acted in bad faith. As noted, he was certainly careless, but there is no evidence of deliberate misconduct.

It is not enough simply to say that plaintiff Gates should have been more attentive and read the notice with greater care. Of course he should have. But with rare exceptions, every party seeking relief under Rule 60(b)(1) has been careless; the only issue is whether the

---

[5] Nine other class members have opted out.

[6] Gates argues at length that Allmerica Investments somehow abetted his failure to opt out of the class action settlement by failing to advise him that the settlement by its terms would apply to the wrongful termination claims asserted in the arbitration. Specifically, Gates argues that on September 14, 2006, he was advised for the first time that Allmerica Investments was taking the position that Gates was a member of the class who was bound by the judgment. According to Gates, neither Allmerica Investments nor its counsel ever gave any indication that the arbitration should be enjoined at any time between the June 27 notice and the September 14 communication, nor was any effort made by Allmerica Investments to enforce the injunction.

The Court finds this argument unpersuasive. Allmerica Investments had no obligation to inform Gates of his rights under the class action settlement, and there is no evidence of any affirmative misrepresentations or improper lulling.

circumstances are sufficiently exceptional as to warrant extraordinary relief.

The Court concludes that the circumstances here are exceptional enough to grant the motion. While the Court is fully cognizant of the need for finality of judgments, it seems fundamentally inequitable to bar an unrelated arbitration claim based on overbroad release language buried in a lengthy document in a class action settlement. Accordingly, while Gates's claims, if any, concerning the trail commission program or the DAC Note should be barred by the class action settlement, his claims for wrongful termination should not. To that extent, the motion for relief from judgment will be granted.

### III.     Conclusion

For the foregoing reasons, the Motion of Jordan P. Gates for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(1) is GRANTED in part and DENIED in part. To the extent that Gates seeks relief from judgment as to (1) the claims asserted in the First Amended Complaint filed in this action, or (2) any other claims concerning the trail program, the trail commissions, or DAC Notes, the motion is DENIED. To the extent that Gates seeks relief from judgment to pursue his claim in arbitration concerning his allegedly wrongful termination, the motion is GRANTED. The Final Order and Judgment entered on August 11, 2006, is hereby modified accordingly.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: January 24, 2007               United States District Judge